**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES L. KOPECKY, RECEIVER** | ) | |
| **FOR BRAD A. WEAVER AND** | ) | |
| **BETA ASSET MANAGEMENT, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  08 C 3135** |
| | ) | |
| **MARK VEHSLAGE, HEATHER** | ) | |
| **LENGYEL, and RICHARD** | ) | **Honorable Blanche M. Manning** |
| **SCHRIPSEMA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**RECEIVER'S STATEMENT OF UNDISPUTED FACTS**
**IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AGAINST DEFENDANT MARK VEHSLAGE**

Plaintiff, James L. Kopecky ("the Receiver"), Receiver for Brad A. Weaver ("Weaver") and Beta Asset Management, Inc. ("Beta"), pursuant to Rule 56.1(a)(3) of the Local Rules of the District Court for the Northern District of Illinois, submits this Statement of Undisputed Facts in support of his Motion for Partial Summary Judgment Against Mark Vehslage ("Vehslage"):

**THE PARTIES**

1.      Plaintiff is the Receiver for Weaver and Beta in *Securities Exchange Commission v. Weaver*, No. 04 C 8279 (hereinafter "*SEC v. Weaver*").  (Complaint, Exhibit A, ¶ 5.)

2.      The Receiver was appointed for the benefit of investors to "marshal, conserve, protect, hold funds, operate, and with the approval of the Court, dispose of all assets of any nature … in which [Weaver] and [Beta] have a legal, equitable or beneficial

interest, including money that [Weaver and Beta] improperly paid to investors …."

(Order Appointing Receiver, Exhibit B.)

3.      Weaver is an individual currently incarcerated at the Kankakee County

Jail in Kankakee, Illinois.  (Transcript of Deposition of Brad Weaver ("Weaver Dep."),

Exhibit C, p. 6, ll. 23-24 to p. 7, l. 1)  During the time periods relevant to this lawsuit,

Weaver held himself out as president of Beta.  (Weaver Dep., Exhibit C, p. 40, l. 24 to p.

41, ll. 1-5.)

4.      Lakewood Properties, Ltd. ("Lakewood") is an Illinois corporation formed

by Defendants Vehslage and Schripsema.  Lakewood was an investor in Beta

(Complaint, Exhibit A, ¶ 11)

5.      Defendant Mark Vehslage ("Vehslage") is a citizen and resident of the

State of California, residing at 2232 Santa Barbara Street, Santa Barbara, California.

(Complaint, Exhibit A, ¶ 8)

6.      Defendant Heather Lengyel ("Lengyel") is a citizen and resident of the

State of California, residing at 2232 Santa Barbara Street, Santa Barbara, California.

Lengyel is the wife of Defendant Vehslage. (Complaint, Exhibit A, ¶ 9)

7.      Defendant Richard Schripsema ("Schripsema") is a citizen and resident of

the State of California, residing at 1106 Harbor Hills Drive, The Mesa, Santa Barbara,

California.  (Complaint, Exhibit A, ¶ 10)

## FACTS SUPPORTING VENUE AND JURISDICTION

8.      The Court has subject matter jurisdiction pursuant to Section 22(a) of the

Securities Act, 15 U.S.C. § 77v(a), Section 27 of the Exchange Act, 15 U.S.C. § 78aa,

and 28 U.S.C. § 1367.  (Complaint, Exhibit A, ¶ 3.)

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in the Northern District of Illinois and the events giving rise to this lawsuit occurred in the Northern District of Illinois. (Complaint, Exhibit A, ¶ 4.)

## STATEMENT OF UNDISPUTED MATERIAL FACTS

10.     Weaver formed and incorporated Beta in 1998.  (Plea Agreement, Exhibit D, ¶ 5.a.)

11.     At all times relevant to this matter, Weaver was the sole owner of Beta and served as its president.  (Plea Agreement, Exhibit D, ¶ 5.a.)

12.     Weaver was also the sole owner of several related entities formed to offer interests in a hedge fund to investors and to manage the hedge fund, including: (1) Beta Capital Partners, LP; (2) Beta Capital Advisors, LLC; and (3) Beta Capital Management, LLC.  (Plea Agreement, Exhibit D, ¶ 5.b.)

13.     Weaver, through Beta and other entities, sold to the public "investments," including: (1) so-called "error account" trades; (2) shares in a Beta Capital Partners, L.P. hedge fund; and (3) notes purportedly issued by entities such as Raymond James and Beta Asset Management. (Plea Agreement, Exhibit D, ¶ 5.e.)

14.     Weaver was a registered broker, or associated with a registered broker, from approximately 1999 through January 2004.  (Plea Agreement, Exhibit D, ¶ 5.d.)

15.     In Chicago and elsewhere, Weaver devised and participated in a scheme to defraud and to obtain money and property from investors and potential investors in the so-called "error trades," in the Beta Capital Partners, L.P. hedge fund, and in notes purportedly issued by entities such as Raymond James and Beta Asset Management, by means of materially false and fraudulent pretenses, representations and promises and by means of material omissions.  (Plea Agreement, Exhibit D, ¶ 5.f.)

16.     Weaver did not intend to use and, in fact, did not use money acquired from investors for the investments he had promised to them.  (Plea Agreement, Exhibit D, ¶ 5.k.)

17.     Little to none of the money received by Weaver was invested in legitimate investments in 2003 or 2004.  (Weaver Dep., Exhibit C, p. 126, ll. 7-11.)

18.     Weaver misappropriated the investors' money.  (Plea Agreement, Exhibit D, ¶ 5.k.)

19.     Weaver used the money he received from some investors to make payments to other investors.  (Plea Agreement, Exhibit D, ¶ 5.k.; Weaver Dep., Exhibit C, p. 125, ll. 7-10.)

20.     At all times relevant to this matter, Beta was the owner of Account No. 0028 7204 4535 at Bank of America (Beta's Bank Records, Exhibit E.)

21.     During the course of the scheme, Weaver caused approximately 87 investors to lose over $20 million.  (Plea Agreement, Exhibit D, ¶ 5.p.)

22.     At all times relevant to this matter, Vehslage was the owner of Account No. 2423669 at the Northern Trust Co.  (Complaint, Exhibit A, Ex. B 004; Lakewood's Responses to Requests to Admit, Exhibit F, ¶¶ 18-19).

23.     On June 4, 2004, Beta received a wire transfer in the amount of $3,000,000 from an individual "investor" in Beta's Ponzi scheme. (Complaint, Exhibit A, ¶ 19, Ex. B001; Beta's Bank of America Records, Exhibit E).

24.     On the same day, Beta wired $2.6 million from its Bank of America Account No. 0028 7204 4535 to an escrow account at Chicago Title and Trust Company in the name of, or for the benefit of Lakewood, directly or through its principals. (Complaint, Exhibit A, Ex. B001-4; Lakewood's Responses to Requests to Admit,

Exhibit F, ¶ 48; Defendant's Supplemental Discovery Responses, Exhibit G,

Interrogatory No. 11 Supplemental Response; Complaint, Exhibit A, ¶ 19, Ex. B002;

Beta's Bank of America Records, Exhibit E.)

25.    Also on June 4, 2004, $2,658,275.22 was wired from Lakewood's

Chicago Title and Trust Company escrow account to an account owned by Mark

Vehslage.  (Complaint, Exhibit A, Ex. B001-4.)

26.    The transfer of funds from Beta to Lakewood was to the detriment of other

investors of Beta.  (Weaver Dep., Exhibit C, p. 126, ll. 14-17.)

27.    The funds that Weaver caused to transfer to Lakewood came from other

investors of Beta.  (Weaver Dep., Exhibit C, p. 126, ll. 11-14.)

28.    The transfers of funds to Lakewood and to Mark Vehslage, allowed the

scheme to continue unabated.  (Weaver Dep., Exhibit  C, p. 128, ll. 20-24; p. 129, ll. 1-7.)

29.    Lakewood provided no services to, or for the benefit of, Beta or Weaver.

(Lakewood's Objections and Responses to Plaintiff's Interrogatories, Exhibit H, ¶ 6.)

30.    Lakewood provided no products or tangible goods to, or for the benefit of,

Beta or Weaver.  (Lakewood's Objections and Responses to Plaintiff's Interrogatories,

Exhibit H, ¶ 7.)

31.    Mark Vehslage did not provide any services, products, or tangible goods

to, or for the benefit of, Beta or Weaver. (Vehlsage's Answers to Plaintiff's Rule 31

Deposition by Written Questions, Exhibit I, Nos. 22-25.)  Mark Vehslage did not provide

any services, products, or tangible goods to, or for the benefit of, Lakewood. (Vehlsage's

Answers to Plaintiff's Rule 31 Deposition by Written Questions, Exhibit I, No. 66)

32.    Until recently, Lakewood did not report the funds it received from Beta on

Lakewood's corporate tax returns.  (Lakewood's 2004 S Corporation Income Tax Return

(c/o Mark Vehslage) dated March 13, 2008, Exhibit N; Form 8275, Exhibit P, MV 0015.)
Likewise, Vehslage failed to report the funds it received from Lakewood on his personal
tax return (Vehslages' Amended Tax Return, Exhibit O; Form 8275, Exhibit P, MV
0015.)

33.    Jon E. Withey, Lakewood's accountant, was unaware that Vehslage and
Schripsema had invested any of Lakewood's funds in Beta in 2003.  (Withey Dep.,
Exhibit Q, p. 74, ll. 11-24 to p. 75, ll. 1-6; p. 150, ll. 6-20.)  If Withey had been aware of
Lakewood's investment in Beta, that investment would have been reflected on
Lakewood's 2003 tax return and balance sheet.  (*Id.*, p. 76, ll. 2-6; p. 110, ll. 9-14.; p.
176, l. 13 to p. 178, l. 4.)

34.    Likewise, Withey was unaware that Vehslage and Schripsema had
invested any of Lakewood's funds in Beta in 2004.  (Withey Dep., Exhibit Q, p. 117, ll 7-
11; p. 150, ll. 6-20.)  Had Withey known about the investment, that investment would
have been reflected in Lakewood's 2004 tax return and balance sheet.  (*Id.*, p. 110, ll. 5-
14.)  According to Withey, Vehslage was "fairly astute" about numbers. (*Id.*, p. 31, ll.
12-19.). Withey confirmed that the money Lakewood received from Beta in June 2004
alone was "a significant amount of money." (*Id.*, p. 116, ll. 2-21.)

35.    Withey was also unaware that Lakewood received in excess of $2.6
million from Beta in 2004.  (Withey Dep., Exhibit Q, p. 164, ll. 15-18.)  Had Withey
known that Lakewood had "profited" on its investment with Beta, that "profit" would
have been reflected on Lakewood's tax return.  (*Id.*, p. 117, ll. 18-22.)

36.    At the time of transfer to Vehslage, Beta was insolvent.  (Weaver Dep.,
Exhibit C, p. 127, ll. 4-7.)

37.    On July 22, 2005, the United States charged Weaver by Information with five counts of wire fraud, in violation of 18 U.S.C. §1343.  (U.S. v. Weaver, 04 CR 1113, Exhibit J.)  On May 25, 2006, Weaver pled guilty to Count One of the Information.  (Plea Agreement, Exhibit D, ¶¶ 1, 4.)  On February 20, 2008, the Court sentenced Weaver to 151 months imprisonment.  (Judgment and Commitment Order, Exhibit K.)

38.    On December 23, 2004, the Commission filed its Complaint in *SEC v. Weaver* alleging that Weaver's and Beta's conduct violated section 17(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77q(a)), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)), and Rule 10b-5 promulgated thereunder (17 C.F.R. 240.10b-5).  (Complaint, Exhibit A, ¶ 14.)  The court entered a Final Judgment and Permanent Injunction against Weaver and Beta on February 3, 2006.  (Judgment as to Brad A. Weaver and Beta Asset Management, Inc., Exhibit L.)

39.    On May 22, 2007, as part of his duties as Receiver, the Receiver filed a lawsuit against Lakewood to recoup monies paid to Lakewood by Beta.  During the course of that case, the Receiver served on Lakewood Plaintiff's Rules 31 and 30(b)(6) Deposition of Defendant by Written Questions.  Vehslage responded to the written questions on behalf of Lakewood by invoking the Fifth Amendment and declining to answer all but 2 of the 128 questions propounded on Lakewood.  (Lakewood's Answers to Plaintiff's Rules 31 and 30(b)(6) Deposition by Written Questions, Exhibit M.)  On June 9, 2008, the Receiver filed a motion for summary judgment against Lakewood on the Receiver's UFTA and unjust enrichment claims. (See *Kopecky et al. v. Lakewood Properties, Inc.*, Case No. 07 C 2863, Docket No. 73).

40.     Vehslage also invoked the Fifth Amendment and declined to answer all but 2 of the 71 written deposition questions propounded to him. (Vehslage's Answers to Plaintiff's Rule 31 Deposition by Written Questions, Exhibit I, Nos. 3-69.)

41.     Vehslage is an experienced investor and was aware that Lakewood and, as subsequent transferee, he received unreasonably excessive returns on the investments with Beta.  (Vehslage's Answers to Plaintiff's Rule 31 Deposition by Written Questions, Exhibit I, Nos. 28, 37-38, 44-58.)

Respectfully submitted,

JAMES L. KOPECKY, RECEIVER FOR
BRAD A. WEAVER AND
BETA ASSET MANAGEMENT, INC.

 /s James L. Kopecky
Attorney for Plaintiff

James L. Kopecky, ARDC No. 6225359
Elizabeth Neugent Dixon, ARDC No. 6280713
James L. Kopecky, P.C.
190 S. LaSalle St., Ste. 850-A
Chicago, Illinois 60603
T: (312) 527-3966
F: (312) 527-3968
Jim@jlkopecky.com
Elizabeth@jlkopecky.com

**LIST OF EXHIBITS SUBMITTED IN SUPPORT OF RECEIVER'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Exhibit A      Complaint

Exhibit B      Order Appointing Receiver

Exhibit C      Excerpts from Transcript of Deposition of Brad Weaver

Exhibit D      Plea Agreement

Exhibit E      Beta Asset Management's Bank of America Records

Exhibit F      Defendant Lakewood's Objections and Responses to Plaintiff's Requests to Admit

Exhibit G      Defendant's Supplemental Discovery Responses

Exhibit H      Defendant Lakewood's Objections and Responses to Plaintiff's Interrogatories

Exhibit I      Answers to Plaintiff's Rule 31 Deposition of Mark Vehslage by Written Questions

Exhibit J      *U.S. v. Weaver* Information (July 22, 2005)

Exhibit K      *U.S. v. Weaver* Criminal Judgment Order (Feb. 20, 2008)

Exhibit L      Judgment as to Defendants Brad A. Weaver and Beta Asset Management, Inc.

Exhibit M      Answer to Plaintiff's Rule 31 and 30(b)(6) Deposition of Defendant by Written Questions

Exhibit N      Lakewood's 2004 S Corporation Income Tax Return (c/o Mark Vehslage) dated March 13, 2008

Exhibit O      Mark and Heather Vehslage's 2004 Amended Tax Return

Exhibit P      Form 8275 Disclosure Statement

Exhibit Q      Excerpts from Transcript of Deposition of Jon Withey

# Exhibit
# A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES L. KOPECKY, RECEIVER FOR BRAD A. WEAVER AND BETA ASSET MANAGEMENT, INC., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.  08 C 3135 |
| MARK VEHSLAGE, HEATHER LENGYEL, and RICHARD SCHRIPSEMA, | ) ) ) ) | Honorable Blanche M. Manning |
| Defendants. | ) ) ) | |

## AMENDED COMPLAINT

Plaintiff, James L. Kopecky ("the Receiver"), Receiver for Brad A. Weaver ("Weaver") and Beta Asset Management, Inc. ("Beta"), for his Amended Complaint against Defendants Mark Vehslage, Heather Lengyel and Richard Schripsema ("Defendants"), alleges as follows:

### NATURE OF THE CASE

1.      This case arises from a Ponzi scheme perpetrated by Weaver and Beta.  Weaver and Beta raised over $22 million from more than 100 investors by, among other things, making various fraudulent representations relating to their ability to trade in error accounts.  Defendants received in excess of $3 million from Weaver's and Beta's fraudulent financial scheme as subsequent transferees who took the funds without providing consideration or services.  The money received by Defendants was taken from capital raised from other investors who subsequently lost part or all of the monies they invested in Weaver's and Beta's scheme.

2.      Defendants funneled this money through a company they used as a front to hide

1

their fraudulent receipt of the funds. The purpose of this lawsuit is to recover the proceeds given to Defendants so those funds can be equitably redistributed to the other investors who lost part or all of the monies they invested in Weaver's and Beta's scheme.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. This Court has supplemental jurisdiction over the Illinois State law claim pursuant to 28 U.S.C. §1367. Jurisdiction is also proper as the amount in controversy exceeds $75,000 and there is complete diversity of the parties, pursuant to 28 U.S.C. 1332(a).

4.     Venue is proper pursuant to 28 U.S.C. §1391(b). The acts and practices giving rise to the claims asserted herein occurred in this District.

## THE PARTIES

### Plaintiff

5.     Plaintiff, James L. Kopecky, is the Receiver for Weaver and Beta in *Securities Exchange Commission v. Weaver*, No. 04 C 8279 (hereinafter "*SEC v. Weaver*"). The Receiver was appointed for the benefit of investors to "marshal, conserve, protect, hold funds, operate, and with the approval of the Court, dispose of all assets of any nature ... in which [Weaver] and [Beta] have a legal, equitable or beneficial interest, including money that [Weaver and Beta] improperly paid to investors ...." (Emphasis supplied.) (A copy of the Order Appointing Receiver is attached hereto as Exhibit A.). Because the Receiver was not appointed until after the transfers which are the subject of this Complaint were made, the Receiver does not have personal knowledge of the facts alleged in this Complaint and therefore alleges those facts on information and belief. Receiver is a citizen and resident of the State of Illinois.

2

6.      Weaver is an individual, who, at all relevant times, resided in Chicago, Illinois. During the time periods relevant to this Complaint, Weaver held himself out as president of Beta. Weaver was employed as a registered representative by Raymond James Financial Services, Inc. ("Raymond James"), a registered broker-dealer, from 1999 until April 15, 2003.

7.      Beta is an Illinois corporation with its principal place of business in Chicago, Illinois.

### Defendants

8.      Defendant Mark Vehslage ("Vehslage") is a citizen and resident of the State of California, residing at 2232 Santa Barbara Street, Santa Barbara, California.

9.      Defendant Heather Lengyel ("Lengyel") is a citizen and resident of the State of California, residing at 2232 Santa Barbara Street, Santa Barbara, California.  Lengyel is the wife of Defendant Vehslage.

10.     Defendant Richard Schripsema ("Schripsema") is a citizen and resident of the State of California, residing at 1106 Harbor Hills Drive, The Mesa, Santa Barbara, California.

### Related Parties

11.     Lakewood Properties, Ltd. ("Lakewood") is an Illinois corporation formed by Defendants Vehslage and Schripsema, purportedly to invest in real estate, however, used for the purpose of fraudulently funneling funds to Defendants.

### GENERAL ALLEGATIONS

### The Fraudulent Financial Scheme

12.     From January 2003 to December 2004, Brad Weaver and Beta operated a Ponzi scheme which raised over $22 million from more than 100 investors by, among other things, making various fraudulent representations relating to their ability to trade in error accounts.  The

3

13.      During the period of Weaver's and Beta's fraudulent financial scheme, on or about June 4, 2004, Beta Asset wired $2.6 million dollars to Chicago Title & Trust for the benefit of Defendants and not in exchange for products, services or other consideration. Throughout the relevant time period, Lakewood received funds in excess of its investment with Beta and passed those funds on to Defendants in exchange for no value.

## The Commission's Lawsuit against Weaver and Beta

14.      On December 23, 2004, the Commission filed its Complaint in *SEC v. Weaver* alleging that Weaver's and Beta's conduct violated section 17(a) of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77q(a)), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. § 78j(b)), and Rule 10b-5 promulgated thereunder (17 C.F.R. 240.10b-5).

15.      On January 4, 2005, Weaver and Beta consented to the entry of a preliminary injunction restraining them from violating section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Securities Exchange Act.

16.      On February 3, 2006, the Court permanently enjoined Weaver and Beta from violating section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Securities Exchange Act.

## The Receiver's Lawsuit Against Lakewood Properties, Ltd.

17.      On May 22, 2007, the Receiver filed an action against Lakewood in the Northern District of Illinois, *Kopecky et al. v. Lakewood Prop., Ltd.* Case No. 07 C 02863 ("Lakewood Case"). The three-count Complaint asserted 1) that Lakewood should be required to disgorge funds it acquired from Weaver's and Beta's violations of the Securities Act, the Exchange Act

4

18.     During the course of the discovery taken in the Lakewood case, the Receiver became aware that funds transferred by Weaver and Beta to Lakewood were for the benefit of, or transferred to, Defendants Vehslage, Lengyel, and Schripsema without reasonably equivalent value in exchange.

### Transfers from Lakewood to Defendants

19.     On June 4, 2004, Beta received a wire transfer in the amount of $3,000,000 from an individual "investor" in Beta's Ponzi scheme. (A copy of the account statements reflecting the relevant transfers are attached hereto as Exhibit B[1] at B001). On the same day, Beta wired $2.6 million from its Bank of America account to an account at Chicago Title and Trust Company for the benefit of Lakewood. (B002).

20.     Also on June 4, 2004, Defendant Vehslage caused the $2.6 million that Beta wired to Lakewood's account at Chicago Title and Trust, plus additional funds, to be wired in turn to an account at Northern Trust Company. This account is held by Mark R. Vehslage, personally. (B004).

21.     Upon information and belief, from June 2004 to the present, Defendant Vehslage, Defendant Lengyel, and Defendant Schripsema have not been employed and have had no source of income other than from income received from Lakewood. The $2.6 million, along with the other Lakewood profits, transferred from Beta to Lakewood then subsequently transferred to Defendant Vehslage's personal account, have been used to fund Defendants' extravagant lifestyles, including, but not limited to, the purchase of a $3 million dollar home for Defendants

Vehslage and Lengyel, and the purchase of automobiles for all three Defendants.

22.    Further, Defendants provided no reasonably equivalent value for any of the funds received from Beta through Lakewood.

## COUNT I

### Disgorgement of Funds Acquired through Weaver's and Beta's Violations of the Securities Act and the Exchange Act and Rule 10b-5 Thereunder

23.    Paragraphs 1 through 22 are realleged and incorporated by reference as though fully set forth herein.

24.    Weaver's and Beta's fraudulent financial scheme violated Sections 17(a)(1), (2) and (3) of the Securities Act, 15 U.S.C. § 77(q)(a)(1)-(3) and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)), and Rule 10b-5 thereunder (17 C.F.R. 240.10b-5).

25.    Defendants received a profit in excess of $3 million from the fraudulent financial scheme perpetrated by Weaver and Beta.

26.    Defendants have no legitimate entitlement to or interest in the proceeds of Weaver's and Beta's fraudulent financial scheme.

27.    Defendants should be required to disgorge the proceeds they received from Weaver's and Beta's fraudulent financial scheme, or the value of those proceeds that they may have subsequently transferred to third parties.

## COUNT II

### Unjust Enrichment

28.    Paragraphs 1 through 27 are realleged and incorporated by reference as though fully set forth herein.

29.    Defendants unjustly received a profit of more than $3 million dollars from the

---

[1]  To protect the identity of third parties, portions of the account statements have been redacted.

fraudulent financial scheme perpetrated by Weaver and Beta.

30.     Defendants were unjustly enriched to the detriment of the other investors in the fraudulent financial scheme.

31.     Defendants' retention of the proceeds of the fraudulent financial scheme violates fundamental principles of justice, equity and good conscience.

## COUNT III

### Uniform Fraudulent Transfer Act

32.     Paragraphs 1 through 31 are realleged and incorporated by reference as though fully set forth herein.

33.     The transfer of funds from Beta to Lakewood to Defendant Vehslage's personal account and used for the benefit of all Defendants constitutes either direct fraudulent conveyances or a subsequent fraudulent conveyance for no reasonably equivalent value under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq*. (2003).

34.     The transfer of funds from Beta to and for the benefit of Lakewood Properties, Ltd. and the Defendants personally was done with actual intent to hinder, delay or defraud any creditor of Beta.

35.     The transfer of funds from Beta to and for the benefit of Lakewood Properties, Ltd. and the Defendants personally was done without Beta receiving a reasonably equivalent value in exchange for the transfer or obligation, and Beta was engaged or was about to engage in the business or transaction for which the remaining assets of Beta were unreasonably small in relation to the business transaction; and intended to incur, or believe or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

36.    The subsequent transfer of funds from Lakewood to and for the benefit of Defendants was done without Beta receiving any equivalent value in exchange for the transfer or obligation.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order setting aside the transfer; enter a monetary judgment in an amount in excess of $3 million, plus pre-judgment interest; and enter such other and further relief as the Court deems just and appropriate.

June 3, 2008                                          Respectfully submitted,

                                     _____/s James L. Kopecky_____
                                              Plaintiff-Receiver

James L. Kopecky, P.C.
190 South LaSalle Street, Suite 850-A
Chicago, Illinois 60603
312.380.6522
ARDC No. 6225359

# Exhibit A

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SECURITIES AND EXCHANGE )
COMMISSION, )
)
Plaintiff, )
)
v. )  Case No: 04 C 8279
)  Judge Rebecca R. Pallmeyer
BRAD A. WEAVER, BETA ASSET )  Magistrate Judge Geraldine
MANAGEMENT, INC., )  Soat Brown
)
Defendants. )

## ORDER APPOINTING A RECEIVER

Plaintiff, Securities and Exchange Commission ("Commission"), requested that the Court appoint a Receiver for the benefit of investors to marshal, conserve, protect, hold funds, operate and, with the approval of the Court, dispose of all assets of any nature, wherever those assets may be found, in which Brad A. Weaver and Beta Asset Management, Inc. ("Defendants") have a legal, equitable or beneficial interest, including money that Defendants improperly paid to investors (collectively "Receivership Property").

The Commission requests the appointment of James L. Kopecky as receiver over Defendants and the Receivership Property.

1.      The Receiver shall have the following powers and duties to fulfill his obligations:

a.     Use reasonable efforts to determine the nature, location, and value of all assets and property owned by Defendants and their affiliates, in their possession or subject to their control;

Case 1:08-cv-03135     Document 20-2     Filed 07/29/2008     Page 12 of 129

Case 1:08-cv-03135     Document 8     Filed 06/03/2008     Page 11 of 21
Case 1:04-cv-08279     Document 40     Filed 02/24/2006     Page 2 of 6

b.    Use reasonable efforts to determine the identity of all of

Defendants' investors; the amount of money that Defendants

received from each investor; the amount of money that

Defendants' paid to each investor; and seek to recover excessive

payments, if any paid to certain investors, for more equitable

distribution;

c.    Engage and employ, with the approval of the Court, any accounting

firms or other necessary individuals or entities the Receiver deems

necessary to assist in his duties ("Retained Personnel");

d.    Take such action as necessary and appropriate to prevent the

dissipation or concealment by Defendants or their affiliates of any

funds or assets constituting Receivership Property and otherwise

preserve any such funds and assets;

e.    The Receiver shall have the authority to issue subpoenas to compel

testimony of persons or production of records, consistent with the

Federal Rules of Civil Procedure, concerning any subject matter

relating to the identification, preservation, collection and/or

liquidation of the Receivership Property, including, without

limitation, Defendants and their affiliated entities' assets, money

received from or paid to investors, or otherwise related to the

discharge of the Receiver's duties;

f.    Oversee the operations of any and all businesses owned or

controlled by Defendants or otherwise constituting a part of the

Receivership Property; and

g.      The Receiver may bring such legal actions based on law or equity

in any state, federal, or foreign court as he deems necessary or

appropriate in discharging his duties as Receiver or on behalf of

investors whose interests he is protecting.

2.      Within sixty (30) days of his appointment as Receiver, or such longer time

as the Court may approve, the Receiver shall file an inventory and appraisal of all

property and assets in Defendants' possession, custody or control or in which Defendants

hold a beneficial interest.

3.      Within thirty (30) days after the filing of the inventory, and at regular

intervals of not less than three (3) months thereafter until discharged, the Receiver shall

file reports of his acts and transactions in his official capacity as Receiver.

4.      The Receiver shall establish one or more bank account(s), in his

discretion, to deposit any of Defendants' funds frozen by prior Orders in this case and any

other funds the Receiver may recover, including any money recovered from investors or

derived from liquidating Receivership Property ("Receivership Accounts").  The Receiver

shall use such funds for any legitimate purpose consistent with the Receiver's powers and

duties and this Order, including paying fees and expenses of the Receiver and Retained

Personnel, as approved by the Court.

5.      The Receiver and Retained Personnel are entitled to reasonable

compensation and expense reimbursement to the extent that funds are available to make

such payments from the Receivership Accounts.  Such compensation shall be in amounts

commensurate with the services performed by the Receiver and Retained Personnel and

shall be subject to the approval of the Court. The Receiver and Retained Personnel shall apply to the Court for such compensation and expense reimbursement quarterly, beginning with the first report the Receiver files pursuant to paragraph 3 of this Order and such amounts shall be paid from the Receivership Accounts.

6.    The Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary duties and obligations in this matter unless and until this Court so orders.

7.    The Receiver and Retained Personnel are entitled to rely on all outstanding rules of law and Court orders and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties.

8.    Defendant Weaver is required to assist the Receiver in fulfilling his duties and obligations. As such, he must respond promptly and truthfully to all requests for information and documents from the Receiver. However, this requirement does not impinge on Weaver's rights to assert any applicable privilege.

9.    All investors, creditors, and other persons, and all others acting on behalf of any such investor, creditor or other persons, including sheriffs, marshals, other officers, deputies, servants, agents, employees and attorneys, are stayed from:

a.    Commencing, prosecuting, continuing or enforcing any suit or

Case 1:08-cv-03135    Document 20-2    Filed 07/29/2008    Page 15 of 129

Case 1:08-cv-03135    Document 8    Filed 06/03/2008    Page 14 of 21
Case 1:04-cv-08279    Document 40    Filed 02/24/2006    Page 5 of 6

proceeding against or affecting Defendants or any other part of the Receivership Property, except that such actions may be filed to toll any statutes of limitations;

b.   Using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any portion of the Receivership Property, including, without limitation, any property owned by or in the possession of Defendants or the Receiver, wherever situated;

c.   Attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement with Defendants or any entities controlled by Defendants, or otherwise affecting the Receivership Property; and

d.   Doing any act to interfere with the taking control, possession, or management, by the Receiver, of any portion of the Receivership Property, including, without limitation, Defendants' assets and assets owned, controlled, or in the possession of the Receiver, or to in any way interfere with or harass the Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Property.

10.   From time to time upon application of the Receiver, the Court shall reissue

Case 1:08-cv-03135    Document 20-2    Filed 07/29/2008    Page 16 of 129

Case 1:08-cv-03135    Document 8    Filed 06/03/2008    Page 15 of 21
Case 1:04-cv-08279    Document 40    Filed 02/24/2006    Page 6 of 6

this order and upon applications of the Receiver may amend this order.

11.    All persons, and all others acting on behalf of any such persons, including sheriffs, marshals, other officers, deputies, servants, agents, employees and attorneys, are ordered to turn over to the Receiver any and all property, including records of any nature in which Defendants are the owner or have an interest in, immediately upon receiving notice of the entry of this order.

Dated: ___2/24/06___

_[signature]_

United States District Court Judge

Order Form (01/2005)    Case 1:04-cv-08279    Document 57    Filed 06/23/2007    Page 61 of 21

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 8279 | **DATE** | 2/1/2007 |
| **CASE TITLE** | Securities and Exchange Commission vs. Brad A. Weaver | | |

**DOCKET ENTRY TEXT**

Status hearing held on 2/1/2007. Status hearing set for 5/1/2007 at 9:00. Receiver's application to reissue order appointing a receiver (56) granted. James L. Kopecky is appointed as receiver over defendants and the Receivership Property effective February 2, 2007.

Docketing to mail notices.

00:03

| | | Courtroom Deputy Initials: | ETV |
|---|---|---|---|

# Exhibit B

Page 2 of 9
Account Number: 0028 7204 4535
E0  E  EA Enclosures 0    54
Statement Period
06/01/04 through 06/30/04    0019012

BETA ASSET MANAGEMENT, INC.

## Deposits and Credits - Continued

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 06/02 | 55,000.00 | | 903706020015847 |
| 06/03 | 10,000.00 | | 903706030010084 |
| 06/03 | 10,000.00 | | 903706030010151 |
| 06/04 | 3,000,000.00 | Wire Type:Wire IN Date: 040604 Time:1157 Et Trn:2004060400017906 Seq:Bn040604141568/001727 Orig:▓▓▓▓▓▓▓▓▓▓▓▓▓ Snd Bk:Bank One, N .A. ID:▓▓▓▓▓▓ Pmt Det:Bn040604141568 Further Cr Edit ▓▓▓▓▓▓ | 903706040017906 |
| 06/07 | 25,000.00 | | 903706070031539 |
| 06/07 | 20,000.00 | | 903706070031466 |
| 06/08 | 50,000.00 | | 903706080019690 |
| 06/08 | 13.65 | | 905706070595575 |
| 06/09 | 100,000.00 | | 903706090014894 |
| 06/09 | 100,000.00 | | 903706090029350 |
| 06/09 | 50,000.00 | | 903706090030471 |

B 001

Page 6 of 9
Account Number: 0028 7204 4535
E0  E  EA Enclosures 0          54
Statement Period
06/01/04 through 06/30/04        0019016

BETA ASSET MANAGEMENT, INC.

## Withdrawals and Debits - Continued

**Other Debits**

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 06/03 | 135,000.00 | | 903706030041422 |
| 06/03 | 20.00 | | 903706030015092 |
| 06/04 | 2,600,000.00 | Wire Type:Wire Out Date:040604 Time:1256 Et Trn:2004060400022163 Service Ref:000508 Bnf:Chicago Title & Trust Co ID:5800038704 Bnf Bk: Lasalle Bank N.A. ID:071000505 Pmt Det:Ref:Es# 024 055384 | 903706040022163 |
| 06/04 | 55,000.00 | | 903706040022311 |
| 06/04 | 20.00 | | 903706040015304 |
| 06/04 | 20.00 | | 903706040015302 |
| 06/07 | 105,000.00 | | 903706070024691 |
| 06/07 | 20.00 | | 903706070015404 |
| 06/10 | 2,000.00 | | 903706100031146 |
| 06/10 | 2,000.00 | | 903706100031381 |
| 06/10 | 20.00 | | 903706100014336 |
| 06/10 | 20.00 | | 903706100014334 |
| 06/15 | 1,192,800.00 | | 903706150014664 |
| 06/15 | 20.00 | | 903706150014640 |
| 06/16 | 100,000.00 | | 903706160032673 |
| 06/16 | 500.00 | | 957106167524723 |
| 06/16 | 20.00 | | 903706160013177 |
| 06/17 | 2,000.00 | | 957206177509975 |
| 06/17 | 3,000.00 | | 902541682259798 |
| 06/18 | 85,000.00 | | 903706180022707 |

ESCRINQ                                    ESCROW ACCOUNT INQUIRY                                ESUBE-01401
                                                                                                  03/13/07
                                                                                               PAGE 001 OF 002
        ESCROW ACCOUNT: 01401-024055384-001
          ESCROW ADMIN: PMC   PATRICE M. CONNOLLY                      BUYER: LAKEWOOD PROPERTIES, LTD.
       CLOSING LOCATION: LND                                           SELLER: NO PRIMARY SELLER
            DATE OPENED: 05/14/04
     LAST ACTIVITY DATE: 06/04/04                            CASH BALANCE:              0.00+
         DATE OVERDRAWN:   /  /                           SECURITY BALANCE:             0.00+
         DATE ARCHIVED:    /  /       ARCHIVED DEVICE:      UNPOSTED CASH:              0.00+

     DATE    POST DATE  CLEAR DATE  TRN   DOCUMENT  BNK      PAYOR/PAYEE            USER    AMOUNT      ST OFFICE  ORDER NUMBER
    06/04/04  06/04/04    /  /      DW  000000001371 102 MARK R VEHSLAGE            PMC  2,658,275.22- L  01401  01401-024055384
    06/02/04  06/02/04    /  /      DW  000000010960 102 CITIBANK (WEST), FSB       JA1  1,226,052.08- L  01401  01401-024055384
    06/02/04  06/02/04    /  /      DW  000000010961 102 CITIBANK (WEST), FSB       JA1  1,323,081.20- L  01401  01401-024055384
    06/02/04  06/02/04    /  /      DW  000000000144 100 VOID - $2,658,275.22+ MARK R VEHSL  PMC     0.00+ V  01401  00000-
    06/01/04  06/01/04    /  /      R   000000010769 99B ESCROW 24057728 UNIT 1     JA1    400,085.00+ L  01401  01401-024055384
    06/01/04  06/01/04    /  /      R   000000010770 99B ESCROW 24057696 855-1      JA1    281,752.50+ L  01401  01401-024055384
    06/01/04  06/01/04    /  /      R   000000010771 99B ESCROW 24057695 857-2      JA1    392,961.00+ L  01401  01401-024055384
    06/01/04  06/01/04    /  /      R   000000010786 99B ESCROW 24057745 UNIT 857-G  JA1   295,102.50+ L  01401  01401-024055384
    06/01/04  06/01/04    /  /      R   000000010787 99B ESCROW 24057691 UNIT 859-4  JA1   456,497.50+ L  01401  01401-024055384
    06/01/04  06/04/04    /  /      RW  000000010906 102 LAKEWOOD PROPERTIES, LTD    PMC  2,600,000.00+ L  01401  01401-024055384

     <S> SECURITY   <L> LEDGER   <R> RECEIPT   <I> RCPTINQ   <E> ESCRMAIN   <D> DISBURSE

B 003

 **The Northern Trust Company**
50 South LaSalle Street, Chicago, Illinois 60675

MARK R VEHSLAGE
40 E. CHICAGO # 403
CHICAGO IL 60611

STATEMENT OF WIRE ACTIVITY

ACCOUNT NO 0002423669

DATE: JUNE 4, 2004

PAGE: 1

Inquiries regarding this statement may be
phoned to: Electronic Banking (312) 444-3695

| Transaction Description | Debit | Credit |
|---|---|---|
| FWI TRN 20040604-113300    0604G1Q6760C00363306041521FT01 | | $2,658,275.22 |
| ORG: CHICAGO TITLE AND TRUST CO LOOP 171 N CLARK | | |
| ATT DONNA KRUPSKI CHICAGO, IL 60601 | | |
| FROM: LASALLE BANK N.A.        ABA/071000505 | | |
| BNFACCT: 2423669 | | |
| BNF: MARK R VEHSLAGE | | |
| RFB: 0496040006620 | | |
| BBI: DEP TO ABOVE ACCT | | |

```
        SUMMARY
        -------
                        NUMBER              AMOUNT
                        ------              ------

        DEBITS            0                  $.00
        CREDITS           1              $2,658,275.22
        ------
        TOTAL             1
```

ABBREVIATION:    FWO - Fed Wire Out    IBT - Internal Bank Transfer    FWI - Fed Wire In

B 004

LWP 000107

# Exhibit

# B

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 04 C 8279 |
| | ) | Judge Rebecca R. Pallmeyer |
| BRAD A. WEAVER, BETA ASSET MANAGEMENT, INC., | ) ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| Defendants. | ) | |

ORDER APPOINTING A RECEIVER

Plaintiff, Securities and Exchange Commission ("Commission"), requested that

the Court appoint a Receiver for the benefit of investors to marshal, conserve, protect,

hold funds, operate and, with the approval of the Court, dispose of all assets of any

nature, wherever those assets may be found, in which Brad A. Weaver and Beta Asset

Management, Inc. ("Defendants") have a legal, equitable or beneficial interest, including

money that Defendants improperly paid to investors (collectively "Receivership

Property").

The Commission requests the appointment of James L. Kopecky as receiver over

Defendants and the Receivership Property.

1.     The Receiver shall have the following powers and duties to fulfill his

obligations:

a.     Use reasonable efforts to determine the nature, location, and value

of all assets and property owned by Defendants and their affiliates,

in their possession or subject to their control;

b.      Use reasonable efforts to determine the identity of all of

Defendants' investors; the amount of money that Defendants

received from each investor; the amount of money that

Defendants' paid to each investor; and seek to recover excessive

payments, if any paid to certain investors, for more equitable

distribution;

c.      Engage and employ, with the approval of the Court, any accounting

firms or other necessary individuals or entities the Receiver deems

necessary to assist in his duties ("Retained Personnel");

d.      Take such action as necessary and appropriate to prevent the

dissipation or concealment by Defendants or their affiliates of any

funds or assets constituting Receivership Property and otherwise

preserve any such funds and assets;

e.      The Receiver shall have the authority to issue subpoenas to compel

testimony of persons or production of records, consistent with the

Federal Rules of Civil Procedure, concerning any subject matter

relating to the identification, preservation, collection and/or

liquidation of the Receivership Property, including, without

limitation, Defendants and their affiliated entities' assets, money

received from or paid to investors, or otherwise related to the

discharge of the Receiver's duties;

f.      Oversee the operations of any and all businesses owned or

controlled by Defendants or otherwise constituting a part of the

Receivership Property; and

g.    The Receiver may bring such legal actions based on law or equity in any state, federal, or foreign court as he deems necessary or appropriate in discharging his duties as Receiver or on behalf of investors whose interests he is protecting.

2.    Within sixty (30) days of his appointment as Receiver, or such longer time as the Court may approve, the Receiver shall file an inventory and appraisal of all property and assets in Defendants' possession, custody or control or in which Defendants hold a beneficial interest.

3.    Within thirty (30) days after the filing of the inventory, and at regular intervals of not less than three (3) months thereafter until discharged, the Receiver shall file reports of his acts and transactions in his official capacity as Receiver.

4.    The Receiver shall establish one or more bank account(s), in his discretion, to deposit any of Defendants' funds frozen by prior Orders in this case and any other funds the Receiver may recover, including any money recovered from investors or derived from liquidating Receivership Property ("Receivership Accounts"). The Receiver shall use such funds for any legitimate purpose consistent with the Receiver's powers and duties and this Order, including paying fees and expenses of the Receiver and Retained Personnel, as approved by the Court.

5.    The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement to the extent that funds are available to make such payments from the Receivership Accounts. Such compensation shall be in amounts commensurate with the services performed by the Receiver and Retained Personnel and

shall be subject to the approval of the Court. The Receiver and Retained Personnel shall

apply to the Court for such compensation and expense reimbursement quarterly,

beginning with the first report the Receiver files pursuant to paragraph 3 of this Order and

such amounts shall be paid from the Receivership Accounts.

6.      The Receiver shall not be required to post bond or give an undertaking of

any type in connection with his fiduciary duties and obligations in this matter unless and

until this Court so orders.

7.      The Receiver and Retained Personnel are entitled to rely on all outstanding

rules of law and Court orders and shall not be liable to anyone for their own good faith

compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver

or Retained Personnel be liable to anyone for their good faith compliance with their

duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or

Retained Personnel be liable to anyone for any actions taken or omitted by them except

upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad

faith, gross negligence, or in reckless disregard of their duties.

8.      Defendant Weaver is required to assist the Receiver in fulfilling his duties

and obligations. As such, he must respond promptly and truthfully to all requests for

information and documents from the Receiver. However, this requirement does not

impinge on Weaver's rights to assert any applicable privilege.

9.      All investors, creditors, and other persons, and all others acting on behalf

of any such investor, creditor or other persons, including sheriffs, marshals, other officers,

deputies, servants, agents, employees and attorneys, are stayed from:

a.      Commencing, prosecuting, continuing or enforcing any suit or

proceeding against or affecting Defendants or any other part of the Receivership Property, except that such actions may be filed to toll any statutes of limitations;

b.   Using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any portion of the Receivership Property, including, without limitation, any property owned by or in the possession of Defendants or the Receiver, wherever situated;

c.   Attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement with Defendants or any entities controlled by Defendants, or otherwise affecting the Receivership Property; and

d.   Doing any act to interfere with the taking control, possession, or management, by the Receiver, of any portion of the Receivership Property, including, without limitation, Defendants' assets and assets owned, controlled, or in the possession of the Receiver, or to in any way interfere with or harass the Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Property.

10.   From time to time upon application of the Receiver, the Court shall reissue

this order and upon applications of the Receiver may amend this order.

11.    All persons, and all others acting on behalf of any such persons, including sheriffs, marshals, other officers, deputies, servants, agents, employees and attorneys, are ordered to turn over to the Receiver any and all property, including records of any nature in which Defendants are the owner or have an interest in, immediately upon receiving notice of the entry of this order.

Dated: ___2/24/06___

_____
United States District Court Judge

# Exhibit
# C

BRAD A. WEAVER, MARCH 3, 2008

Page 1

1           IN THE UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF ILLINOIS

3                  EASTERN DIVISION

4

5    JAMES L. KOPECKY, RECEIVER,          )

6    FOR BRAD A. WEAVER AND               )

7    BETA ASSET MANAGEMENT, INC.,         )

8                   Plaintiff,            )

9         vs.                             ) No. 07 C 2863

10   LAKEWOOD PROPERTIES, LTD.,           )

11                  Defendant.            )

12

13           The videotaped deposition of BRAD A.

14   WEAVER, called for examination, taken pursuant to

15   the Federal Rules of Civil Procedure of the United

16   States District Courts pertaining to the taking of

17   depositions, taken before INA RUTH EAVENSON, a

18   Notary Public within and for the County of Cook,

19   State of Illinois, and a Certified Shorthand

20   Reporter of said state, at 400 East Merchant

21   Street, Kankakee, Illinois, on the 3rd day of

22   March, A.D. 2008, at 10:37 a.m.

23

24

BRAD A. WEAVER, MARCH 3, 2008

Page 6

```
 1        A.     Yeah, yeah, I had a brief discussion
 2   with him.
 3        Q.     Yeah.  And he at least told us that he
 4   had chosen not to be present today --
 5        A.     Uh-huh.
 6        Q.     -- and that we could go ahead and
 7   proceed without you having any counsel present.
 8        A.     Absolutely.
 9        Q.     Okay.  And that's all right with you as
10   well?
11        A.     That's okay with me as well.
12        Q.     Okay.  I know that you probably, you
13   know, are feeling fine and that sort of thing, but
14   I have to at least ask you some questions about
15   that only because if there's ever a question later
16   I just want to make sure --
17        A.     Sure.
18        Q.     -- that you're feeling okay.
19               Is there anything that would interfere
20   with your ability to kind of understand my
21   questions and to give answers?
22        A.     No, not at all.
23        Q.     And right now we are in the Kankakee
24   County jail facility; is that right?
```

BRAD A. WEAVER, MARCH 3, 2008

Page 7

1      A.      That is correct.

2      Q.      How long have you been in that

3  facility?

4      A.      I've been here about 18 months.

5      Q.      And you don't have any issues with

6  regard to hearing; is that right?

7      A.      No.

8      Q.      And with regard to reading?

9      A.      No.

10     Q.      Any medical conditions at all that

11  might interfere with our conversation this

12  morning?

13     A.      No, sir.

14     Q.      And obviously, since you are here, you

15  are not on any drugs or alcohol I presume, right?

16     A.      No.

17     Q.      Nothing medication as well?

18     A.      No.

19     Q.      Okay.  Okay.  Have you given a

20  deposition before?

21     A.      A long time ago, but -- so I know the

22  basics.

23     Q.      You know the basics, then.  You

24  understand that you are under oath?

BRAD A. WEAVER, MARCH 3, 2008

Page 39

1    investment; is that right?

2        A.    Right, or Beta Asset Management.  Most

3    of the funds were deposited in our Beta Asset

4    Management account, which Beta Asset Management

5    was originally our -- our operating company.  You

6    know, when we worked for Raymond James we were a

7    Raymond James firm, but Beta Asset Management was

8    how we paid our bills and -- and operated that

9    way.

10       Q.    So regardless of how the money came in,

11   though, you may have told somebody, you know,

12   "Invest with me because I've got this opportunity

13   in a busted trade"?

14       A.    Absolutely, yes.

15       Q.    So it's just a difference on how you

16   might hold it, but, nonetheless, it was still part

17   of the Ponzi scheme?

18       A.    Yeah.  It was a busted trade, whether

19   it was from Raymond James or the hedge fund or

20   whatever it may be.

21       Q.    Right.  So -- so tell me a little bit

22   about Beta Asset Management.  You, I assume,

23   formed Beta Asset Management?

24       A.    Yeah.  Mike and I and Carl were all the

BRAD A. WEAVER, MARCH 3, 2008

Page 40

1    original -- that was formed when we opened Thomas

2    White as an operating company, basically, not --

3    not as a brokerage firm or anything.  It started

4    off as an operating company.

5         Q.    That would have been about 1998?

6         A.    Yeah, around 1998 approximately.

7         Q.    What was your location at that point?

8         A.    440 North Wells was the -- all the way

9    through, yeah, from the beginning to the end.

10        Q.    Until you were arrested?

11        A.    Exactly, yeah.

12        Q.    And what was the purpose of Beta Asset

13   Management?

14        A.    Again, operations at the beginning, pay

15   bills.  You know, the lights were under Beta Asset

16   Management's name, so the office operating side

17   was under Beta Asset Management.  It wasn't put

18   out there as a brokerage firm at the beginning.

19        Q.    Later did it change?

20        A.    Yeah.  Eventually we started using Beta

21   Asset Management as, you know, the top name on our

22   business card, "Securities offered through Raymond

23   James Financial Services."

24        Q.    Who was the owner of Beta Asset

BRAD A. WEAVER, MARCH 3, 2008

Page 41

```
 1    Management?

 2         A.    Originally it was Mike, Carl and I, and

 3    then I became the sole owner.

 4         Q.    Were you the president?

 5         A.    I was the president.

 6         Q.    And just so I get the different

 7    corporations in mind, there's Beta Capital

 8    Partners, Beta Capital Advisors --

 9         A.    Uh-huh.

10         Q.    -- and Beta Capital Management?

11         A.    Right.

12         Q.    Can you tell us what each of those does

13    or did?

14         A.    I'll try.  When you open a hedge fund,

15    you have to have three different entities, one

16    to -- one that is actually the limited partnership

17    that people buy an interest in, which I believe is

18    Beta Capital Partners.

19         Q.    It's LP, right?

20         A.    LP, yeah, limited partnership.

21         Q.    Uh-huh.

22         A.    Then there's Beta Capital Management,

23    which takes -- which accepts the management fee,

24    which was 2 percent a year.  So that entity would
```

BRAD A. WEAVER, MARCH 3, 2008

Page 125

```
1    And I'm assuming you know no nodding of the head.

2    Unless you say otherwise, you understand the same

3    rules apply to me when I'm asking you questions?

4         A.    Yes.

5         Q.    Okay.  I'll be pretty brief,

6    Mr. Weaver.  You talked a little about this Ponzi

7    scheme.  The monies that came in from investors

8    were basically used from -- to pay off other

9    investors; is that correct?

10        A.    Yes.

11        Q.    So -- and that was the case also for

12   Lakewood Properties, the money that was used to

13   pay Lakewood Properties came from other investors?

14        A.    Absolutely.

15        Q.    And you said -- and I believe it was

16   the phrase "velocity," that in -- by 2003 it was

17   traveling at such a high velocity that money was

18   coming, money was going out.  What did you mean by

19   that?

20        A.    Literally within minutes, I would wait

21   for a wire or a check to clear and I would have to

22   wire -- I would have the instructions with the

23   bank manager already to wire funds out to another

24   client.
```

BRAD A. WEAVER, MARCH 3, 2008

Page 126

1       Q.      So when you had the transfers in 2003

2   and 2004, that would be the time period when you

3   were talking about this high velocity of funds

4   coming in, funds going out?

5       A.      Definitely towards the end '03, '04, it

6   was just literally in and out.

7       Q.      Okay.  So none of the funds coming in

8   in 2003 and 2004 were actually being invested in

9   any legitimate investments?

10      A.      I don't know about all of '03.

11  Specifically it was very little, though.

12      Q.      Would it be fair to say 2004?

13      A.      2004, there was nothing.  It was --

14      Q.      And so the money paid to Lakewood in

15  2004, that would be to the detriment of other

16  investors?

17      A.      Yes.

18      Q.      And Beta Asset Management became

19  insolvent as a result of monies that it

20  transferred to Lakewood and other investors

21  because there was no exchange of money provided;

22  is that right?

23      A.      Right.

24      MR. CROWL:  I'm just going to object to the

BRAD A. WEAVER, MARCH 3, 2008

Page 127

1    form.

2        MR. RAO:   Okay.   I'll rephrase.

3    BY MR. RAO:

4        Q.     Beta Asset Management became insolvent

5    because there wasn't as much money coming in as

6    there was going out to investors; is that correct?

7        A.     That is correct, yes.

8        Q.     And the funds that came in to Beta

9    Asset Management, including the $2.6 million wired

10   to Lakewood Properties and then transferred to

11   these investors, were intended to hinder, delay

12   and defraud creditors of Beta Asset Management?

13       MR. CROWL:   Objection to form and foundation.

14   BY THE WITNESS:

15       A.     "Creditors" meaning --

16   BY MR. RAO:

17       Q.     Let me rephrase briefly.

18            The funds that were being transferred

19   to these other investors were done to avoid

20   detection?

21       A.     Yes, absolutely.

22       Q.     Okay.  And it would be fair to say they

23   were done to delay investors from finding out what

24   was going on with the Ponzi scheme?

BRAD A. WEAVER, MARCH 3, 2008

Page 128

1      A.    I was definitely buying time, yeah.

2      Q.    Okay.  And did it -- did it hinder

3   investors' ability to figure out that there was a

4   Ponzi scheme going on?

5      A.    Yes.

6      Q.    And did it also hinder their ability to

7   detect the fact that there were no real

8   investments?

9      MR. CROWL:  Objection, foundation.

10  BY MR. RAO:

11     Q.    Were these --

12     MR. KOPECKY:  Did he answer that?  I'm sorry.

13     MR. RAO:  No.  I'll withdraw the question.

14  I'll rephrase.

15  BY MR. RAO:

16     Q.    Were these -- these transfers being

17  done to keep investors from complaining to

18  authorities?

19     A.    Yes.

20     Q.    And by these transfers, were you

21  allowed to continue with the scheme?

22     A.    Yes.  It allowed it to go on.

23     Q.    And did that include the transfers to

24  Lakewood?

BRAD A. WEAVER, MARCH 3, 2008

Page 129

```
1       A.    Yes.

2       Q.    Okay.  Did that include transfers to

3   Mark Vehslage?

4       A.    Yes.

5       Q.    Did that include transfers to Richard

6   Schripsema?

7       A.    Yes.

8       MR. RAO:  No further questions.

9       MR. CROWL:  Nothing more.

10      THE VIDEOGRAPHER:  Off the record at

11  12:41 p.m.

12              FURTHER DEPONENT SAITH NOT.

13

14

15

16

17

18

19

20

21

22

23

24
```

# Exhibit
# D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**F I L E D**

MAY 2 5 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No.   04 CR 1113 |
| | ) | Judge John W. Darrah |
| BRAD A. WEAVER | ) | |

### PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, BRAD A. WEAVER, and his attorneys, ROYAL B. MARTIN and LEIGH D. ROADMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 04 CR 1113.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, BRAD A. WEAVER, and his attorneys, ROYAL B. MARTIN and LEIGH D. ROADMAN, have agreed upon the following:

1.     Defendant acknowledges that he has been charged in the information in this case with wire fraud in violation of Title 18, United States Code, Sections 1343 and 2.

2.      Defendant has read the charges against him contained in the information, and those charges have been fully explained to him by his attorney.

3.      Defendant fully understands the nature and elements of the crime with which he has been charged.

4.      Defendant will enter a voluntary plea of guilty to Count One of the information in this case.

5.      Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

a. The defendant formed Beta Asset Management, Inc. (Beta Asset Management), and incorporated the entity in 1998. Beta Asset Management was located at 440 North Wells Street in Chicago, Illinois, and was in the business of offering and selling investments to the public. Defendant was the sole owner of Beta Asset Management and served as its president.

b. The defendant was also the sole owner of several related entities formed to offer interests in a hedge fund to investors and to manage the hedge fund, including: (1) Beta Capital Partners, LP; (2) Beta Capital Advisors, LLC; and (3) Beta Capital Management, LLC.

c. The defendant was registered with the National Association of Securities Dealers (NASD). The NASD is a self-regulatory organization in the securities industry that works in conjunction with the Securities and Exchange Commission in regulating the securities industry.

d. The defendant was employed by a securities brokerage firm called Raymond James Financial Services, Inc. (Raymond James) from in or about 1999 to in or about April 2003. Beginning in or about in April 2003 and continuing to in or about January 2004, the defendant was

2

a person associated with Frontier Financial Consultants.   As such, the defendant was a registered broker or associated with a registered broker or dealer from approximately 1999 to January 2004.

   e. The defendant, both individually and through others, offered and sold investments to the public through Beta Asset Management, including, among others, investments in:  (1) so-called error account trades; (2) the Beta Capital Partners, L.P. hedge fund; and, (3) notes purportedly issued by entities such as Raymond James and  Beta Asset Management.

   f.  Between in or about 1999 and continuing through in or about December 2004, in Chicago and elsewhere, the defendant devised and intended to devise, and participated in a scheme and artifice to defraud and to obtain money and property from investors and potential investors in the so-called error account trades, in the Beta Capital Partners, L.P. hedge fund, and in notes purportedly issued by entities such as Raymond James and  Beta Asset Management, by means of materially false and fraudulent pretenses, representations and promises and by means of material omissions.

   g. The defendant made and relied upon multiple material misrepresentations in order to convince individuals to invest sizable amounts of money with him.  The defendant, for example, told prospective and actual investors that they could invest in the so-called error account trades by investing in already completed, profitable securities transactions, primarily options trades, which for one reason or another were allocated to Beta Asset Management's error account rather than to a customer.  Defendant also told prospective and actual investors that securities industry regulations did not allow him to benefit from these profitable error trades.

   h. The false representations, which the defendant made or caused others to make during the course of his scheme, included the following:  (1) the investments in promissory notes

purportedly issued by Raymond James and Pershing LLC were backed by Raymond James or Pershing LLC, when neither entity knew about the promissory notes; (2) the promissory notes purportedly issued by Raymond James and Pershing and those issued by Beta Asset management earned returns of generally more than 10%, when the only way the defendant could consistently pay such returns was by using funds from new investors to pay earlier investors in ponzi-type payments; (3) the "error account" investments allowed an investor to profit from a previously-made trade with which the investor had not previously been affiliated and were (i) risk free; (ii) placed for a short period of time; and (iii) involved an already determined profit of usually around 20% to 30%, when no such error accounts or trades existed; (4) a securities regulation prohibited the defendant himself from profiting on error account trades, when there was no such regulation; (5) the error account itself contained $30,000,000 as a further means of reducing risk, when no such account existed; (6) Beta Asset Management had $50,000,000 under management in its funds and was registered with the NASD, when Beta Asset Management had less than $30,000 under management and was not registered with the NASD; (7) the trading strategy employed by defendant in managing the hedge fund was very profitable, having increased in value by as much as 140% in 36 months, when there had been no actual trading; and (8) a particular investor would make a 32% profit on a $5,200,000 investment in less than a week through an already completed IBM option trade, when there was no such trade or profit.

i. The defendant, while making these representations or causing them to be made, knew that neither he nor Beta Asset Management had an "error account" of the nature described to prospective and actual investors, and that the described "error account" was, in fact, a fiction he created in order to give prospective and actual investors a false sense of security about an investment

4

with him. The defendant also knew that the profitable "error account" trades he himself reported to prospective and actual investors as having been made, or caused others to report, were, in fact, all fictitious. The defendant also knew that Beta Asset Management was not registered with the NASD and that the "hedge fund" he marketed to investors, or caused others to market to investors, operated for less than three weeks with no more than $30,000 in it. The defendant also knew that Raymond James did not issue or even know about the notes defendant marketed to prospective and actual investors.

j. The defendant acknowledges that these misrepresentations had a significant affect on investors and had a direct impact on their decision to: (1) give him their money; (2) maintain their money with him; (3) tell other individuals about him; (4) invest additional money with him; and (5) prevent them from reporting him to securities-related or law enforcement authorities.

k. The defendant did not intend to use, and in fact did not use, money acquired from investors for the investments he had promised to them and, instead, misappropriated the investors' money. The defendant also intended to use and did use money from investors to make payments to individuals in the form of purported returns or purported profits on those individuals' investments in order to prompt those individuals and other individuals to invest more money with him and to sustain the false impression that, as represented, the investments through Beta Asset Management were short-term in nature and highly profitable. The defendant also made these "Ponzi" type payments in order to keep investors from complaining to authorities and thereby to allow his scheme to continue.

l. The defendant and another individual acting at the defendant's direction posed in telephone and email communications with prospective and actual investors as "Paul Seritelli."

"Seritelli" purported to be a securities brokerage employee at a third-party firm who had knowledge

of the status of the error account trades. Defendant, in fact, created the persona of "Seritelli" in order

to falsely assure prospective and actual investors about the safety and profitability of defendant's

investments.

       m. The defendant created and provided to investors phony account statements and

made misrepresentations to them in person, over the telephone, by fax, by mail and by email about

the status of their accounts. The defendant created the phony account statements and misrepresented

to investors the true status of their investments in order to lull investors into a false sense of security

about the handling and profitability of their investments and to encourage the investors to keep the

money invested with him and his entities and to make additional investments with him and his

entities.

       n. The defendant knowingly provided the NASD with fraudulently altered bank

documents in order to allow his scheme to continue. The defendant also testified falsely under oath

before the NASD about the funds received for investments and monies paid out from Beta Asset

Management.

       o. The defendant used the United States mails and interstate wire transmissions in

his communications with prospective and actual investors and in the receipt and handling of their

investment funds. For example, on or about August 15, 2003, the defendant, for the purpose of

executing the above-described scheme, and attempting to do so, did knowingly cause to be

transmitted by means of wire communication in interstate commerce a writing, sign and signal, in

that defendant caused $20,000 to be wire transferred from the account of investors at First Bank,

through the Federal Reserve's facility in East Rutherford, New Jersey, to the Beta Asset Management

account at North Community Bank, Chicago, Illinois.

p. The defendant obtained over $50,000,000 from over 100 investors through his

fraud scheme. During the course of the scheme, the defendant, individually and through others

acting at his direction, caused approximately 87 investors to lose between $20,000,000 and

$50,000,000 of the money they placed with defendant for investment or placement in investment-

related accounts.

6. For purposes of calculating the guidelines promulgated by the United States

Sentencing Commission pursuant to Title 28 United States Code, Section 994, the parties agree on

the following points and disagree on the following points:

a. The Sentencing Guidelines manual in effect as of November 1, 2005, shall be used

to calculate defendant's sentencing range.

b. The base offense level for this offense is level 7 pursuant to Guideline §

2B1.1(a)(1)(B).

c. The offense level is increased 22 levels pursuant to Guideline § 2B1.1(b)(1)(L)

because the amount of loss through defendant's scheme was between $20,000,000 and $50,000,000.

d. The offense level is increased 4 levels pursuant to Guideline § 2B1.1(b)(2)(B)

because the offense involved between 50 and 250 victims.

e. The offense level is increased 4 levels pursuant to Guideline § 2B1.1(b)(15)(A)(ii)

and (iii) because the offense involved a violation of securities laws and, at the time of the offense,

the defendant was a registered broker or associated with a registered broker or dealer.

7

f. The government contends that offense level is increased 2 levels pursuant to Guideline § 3B1.1(c) because the defendant was an organizer, leader, manager, and supervisor of the scheme. The defendant disagrees that this enhancement applies to his case. Both parties are free to argue and to present evidence about their respective positions at the sentencing hearing.

g. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guideline § 3E1.1, a two-level reduction in the offense level is appropriate.

h. Defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently, within the meaning of Guideline § 3E1.1(b). Accordingly, at the time of defendant's sentencing hearing, the government will move for an additional 1-level reduction in the offense level, provided the Court determines the offense level to be 16 or greater prior to the operation of Guideline § 3E1.1(a).

i. The defendant has no known prior convictions. Thus, based on the facts known to the government, the defendant's criminal history points equal zero and the defendant's criminal history category is I.

j. The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and

that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

7.    Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

8.    Defendant understands that, in imposing the sentence, the Court will be guided by the United States Sentencing Guidelines. The defendant understands that the Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.    Defendant understands the count to which he will plead guilty carries a maximum penalty of 20 years imprisonment, and a maximum fine of $250,000. Defendant understands, however, that because his offense involved the derivation of a pecuniary gain or a pecuniary loss to another individual or entity, the Court may impose instead a fine corresponding to not more than the greater of twice the gross gain or twice the gross loss pursuant to Title 18, United States Code, Section 3571(d). The Court may also order restitution in addition to any fine imposed. Defendant understands that this count also carries a term of supervised release of at least two years but not more than three years, which the court may specify.

10.    The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on

each count to which he has pled guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

11.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt and that it was to consider each count of the information separately.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

d.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.  Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.  In turn, defendant could present witnesses and other evidence in his own behalf.  If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

e.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

f.  Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a legally constituted grand jury consisting of not less than sixteen and not more than twenty-three members.  Defendant previously waived this right and, by signing this Agreement, defendant again knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

12.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph.  Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and only may appeal the validity of this plea of guilty or the sentence.

13.     Nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from the defendant or defendant's corporations.

a.  Defendant agrees to transmit his original records, or copies thereof, and any additional books and records which may be helpful, to the Examination Division of the Internal Revenue Service so that the Internal Revenue Service can complete its civil audit of defendant for the years 1999 through 2004.

b.  Preliminary to or in connection with any judicial proceeding, as that term is used in F.R.Cr. P. 6(e), defendant will interpose no objection to the entry of an order under Rule 6(e) authorizing disclosure of those documents, testimony and related investigative materials which may constitute grand jury material.  Defendant will not object to the government soliciting consent from third parties, who provided information to the grand jury pursuant to grand jury subpoena, to turn those materials over to the Civil Division, appropriate federal or state administrative agency or the Internal Revenue Service, for use in civil or administrative proceedings or investigations, rather than returning them to such third party for later summons or subpoena in connection with the civil case or collection of taxes from defendant.

14.    Defendant understands that the information and this Plea Agreement are matters of public record and may be disclosed to any party.

15.    Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

16.    At the time of sentencing, the government is free to recommend any sentence at any point within the applicable advisory Guideline range.

17.     It is understood by the parties that the sentencing judge is neither a party to nor bound
by this Agreement and may impose up to the maximum penalties as set forth in paragraph 9 above.
However, the sentencing court is obligated to consult and take into account the Sentencing
Guidelines in imposing a reasonable sentence. The defendant further acknowledges that if the court
does not accept the sentencing recommendation of the parties, the defendant will have no right to
withdraw his guilty plea.

18.     Regarding restitution, the parties acknowledge that the amount of restitution owed
to the victims is greater than $20,000.00, and that, pursuant to Title 18, United States Code, Section
3663A, the Court must order defendant to make restitution in an amount to be determined at the time
of sentencing, minus any credit for funds repaid prior to sentencing. The defendant understands that
Title 18, United States Code, Section 3664 and Sections 5E1.1 and 5E1.2 of the Sentencing
Guidelines set forth the factors to be weighed in setting a fine and in determining the schedule, if
any, according to which restitution is to be paid in this case. The defendant agrees to provide full
and truthful information to the court and United States Probation Officer regarding all details of his
economic circumstances in order to determine the proper restitution schedule according to which the
defendant may be ordered to pay.  Defendant understands that providing false or incomplete
information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as
a contempt of the court.

19.     After sentence has been imposed on the count to which defendant pleads guilty as
agreed herein, the government will move to dismiss the remaining counts of the information.

20.     Defendant understands that his compliance with each part of this Plea Agreement
extends throughout and beyond the period of his sentence, and failure to abide by any term of the

13

Plea Agreement is a violation of the Agreement. He further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

21.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

22.     Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

23.     Should the judge refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

24.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____

PATRICK J. FITZGERALD
United States Attorney

BRAD A. WEAVER
Defendant

VICTORIA PETERS
LEONARD GAIL
Assistant United States Attorneys

ROYAL B. MARTIN
LEIGH D. ROADMAN
Attorney for Defendant

15

# Exhibit
# E



# Bank of America

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

1.800.432.1000
www.bankofamerica.com

IH

01885 E01 SCM999 I123  0

BETA ASSET MANAGEMENT, INC.
440 NORTH WELLS
SUITE 340
CHICAGO IL 60610-4559

Our free Online Banking service allows you to check account balances,
transfer funds, pay bills and more.  Enroll at www.bankofamerica.com.

## Your Bank of America Business Advantage Summary

| Account Name | Account Number | Qualifying Balance* | Type of Balance | Date | Total |
|---|---|---|---|---|---|
| Deposit Accounts | | | | | |
| Business Advantage Checking | 0028 7204 4535 | 339,509.73 | Average | 06-29 | |
| Business Interest Maximizer | 0028 7220 1190 | 85.07 | Average** | 06-29 | |
| Total Deposit Account Balance | | | | | $339,594.80 |

Balances in your linked accounts that are used to avoid a monthly maintenance fee are listed here.  These balances reflect the average or principal balance in your account - for your actual ending account balance, please see the "Account Summary Information" section of your statement.
Detailed information about this account is not included in this statement.

## Business Advantage Checking

### Account Summary Information

| | | | |
|---|---|---|---|
| Statement Period | 06/01/04 through 06/30/04 | Statement Beginning Balance | 131,505.54 |
| Number of Deposits/Credits | 39 | Amount of Deposits/Credits | 8,327,040.24 |
| Number of Withdrawals/Debits | 104 | Amount of Withdrawals/Debits | 8,348,665.87 |
| Number of Deposited Items | 0 | Statement Ending Balance | 109,879.91 |
| Number of Enclosures | 0 | Average Ledger Balance | 338,788.88 |
| Number of Days in Cycle | 30 | Service Charge | 0.00 |

### Deposits and Credits

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 6/02 | 120,000.00 | Wire Type:Wire IN Date: 040602 Time:1249 Et Trn:2004060200021203 Seq:040602025866/002192 Orig:Matthew S Wirick ID:1010041431261 Snd Bk:Wach Ovia Bank, Na ID:053000219 Pmt Det:040602000558 Fb O Matthew Wirick | 903706020021203 |



BETA ASSET MANAGEMENT, INC.

## Deposits and Credits - Continued

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 06/02 | 55,000.00 | Wire Type:Wire IN Date: 040602 Time:1139 Et Trn:2004060200015847 Seq:20040602093056Lt/000012 Orig:Kentner Farms ID:8100122202 Snd Bk:First Midw Est Bank ID:071901604 | 903706020015847 |
| 06/03 | 10,000.00 | Wire Type:Wire IN Date: 040603 Time:1006 Et Trn:2004060300010084 Seq:040603001299/000379 Orig:Bandyk And Associates ID:7161877787 Snd Bk:Fi Fth Third Bank ID:042000314 Pmt Det:Ref: Bandyk & Associates | 903706030010084 |
| 06/03 | 10,000.00 | Wire Type:Wire IN Date: 040603 Time:1007 Et Trn:2004060300010151 Seq:040603001311/000384 Orig:Bandyk And Associates ID:7161877787 Snd Bk:Fi Fth Third Bank ID:042000314 Pmt Det:Ref: Bandyk & Associates | 903706030010151 |
| 06/04 | 3,000,000.00 | Wire Type:Wire IN Date: 040604 Time:1157 Et Trn:2004060400017906 Seq:Bn040604141568/001727 Orig:Crown Cash Fund ID:1012616 Snd Bk:Bank One, N .A. ID:071000013 Pmt Det:Bn040604141568 Further Cr Edit David Drew Trust 33F007281 | 903706040017906 |
| 06/07 | 25,000.00 | Wire Type:Wire IN Date: 040607 Time:1454 Et Trn:2004060700031539 Seq:040607004020/001555 Orig:Bandyk And Associates ID:7161877787 Snd Bk:Fi Fth Third Bank ID:042000314 Pmt Det:Fbo Bandyk And Associates | 903706070031539 |
| 06/07 | 20,000.00 | Wire Type:Wire IN Date: 040607 Time:1453 Et Trn:2004060700031466 Seq:040607004002/001548 Orig:Bandyk And Associates ID:7161877787 Snd Bk:Fi Fth Third Bank ID:042000314 Pmt Det:Fbo Bandyk And Associates | 903706070031466 |
| 06/08 | 50,000.00 | Wire Type:Wire IN Date: 040608 Time:1253 Et Trn:2004060800019690 Seq:5724700160Ft/002494 Orig:Amberwood Partners Lp ID:Z421615431 Snd Bk:Jp Morgan Chase Bank ID:021000021 Pmt Det:Swf Of 04/0 6/08 | 903706080019690 |
| 06/08 | 13.65 | CheckCard  0607 Paypal *mipdogg 402 935 7733 CA 74492154159820551018299 | 905706070595575 |
| 06/09 | 100,000.00 | Wire Type:Wire IN Date:040609 Time:1135 Et Trn:2004060900014894 Sndr Ref:040609059022 Orig:Betty Wallace Ttee Betty ID:16548186 Orig Bk: Charles Schwab And Co Inc ID:30429609 Pmt Det:/Rfb /Lct41610584700Sch Ref(N 5025706 0001920460978) /I | 903706090014894 |
| 06/09 | 100,000.00 | Wire Type:Wire IN Date: 040609 Time:1456 Et Trn:2004060900029350 Seq:040609061999/002540 Orig:Betty Wallace Trust Of 19 ID:0921051777 Snd Bk:Union Bank Of California, N.A ID:122000496 Pmt Det:092 04060901365Fbo: Bandyk & Ass. 1515 Mic | 903706090029350 |
| 06/09 | 50,000.00 | Wire Type:Wire IN Date: 040609 Time:1509 Et Trn:2004060900030471 Seq:34764/000034 Orig:Connie Balignasay ID:75193329 Snd Bk:San Dieg O County Credit Union ID:322281617 Pmt Det:For Fur Ther Credit To: Connie P Balignasay Fbo: Bandyk & | 903706090030471 |





BETA ASSET MANAGEMENT, INC.

## Deposits and Credits - Continued

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 06/09 | 25,000.00 | Wire Type:Book IN Date:040609 Time:1600 Et Trn:2004060900034939 Sndr Ref:040609052405 Orig:Bert Baumer ID:0526102998 Snd Bk:Cal/Пx Clea Ring Account ID:1070811998000 Pmt Det:/Rfb/0104060 9002072Nn Furthercreditto Bandyr Assoc 1515Michiga | 903706090034939 |
| 06/09 | 10,000.00 | Wire Type:Wire IN Date:040609 Time:1523 Et Trn:2004060900031656 Sndr Ref:040609077782 Orig:Virginia Thiers Ttee 17 S ID:80476123 Orig Bk :Charles Schwab And Co Inc ID:30429609 Pmt Det:/Rf B/Lct41611119900Sch Ref(Y 1 0000381273877) /Ins/Ci | 903706090031656 |
| 06/10 | 40,000.00 | Wire Type:Wire IN Date: 040610 Time:1217 Et Trn:2004061000003517/000369 Orig:Virginia Thiers ID:6010640372546 Snd Bk:Bank One, N.A. ID:122100024 Pmt Det:Fct Bandyc And Asso Ciates | 903706100018729 |
| 06/10 | 35,000.00 | Wire Type:Wire IN Date: 040610 Time:1736 Et Trn:2004061000043108 Seq:040610058214/000919 Orig:Norris L Mcferren ID:5485060851 Snd Bk:Wells Fargo Bank, N.A. (West) ID:102000076 Pmt Det:Fw048 57162001512Fbo Bandyk And Associates Grand Rapids, | 903706100043108 |
| 06/10 | 20,000.00 | Wire Type:Wire IN Date: 040610 Time:1150 Et Trn:2004061000016714 Seq:040610103619H200/000049 Orig:Chase Peabody And Associa ID:001075640 Snd Bk:Central Trust Bank ID:086500634 Pmt Det:Fbo ;Bankyk And Associates, 1515 Michigan St Ne Grand | 903706100016714 |
| 06/14 | 100,000.00 | Wire Type:Wire IN Date: 040614 Time:1243 Et Trn:2004061400021265 Seq:040614002857/000957 Orig:Bandyk And Associates ID:7161877787 Snd Bk:Fi Fth Third Bank ID:042000314 Pmt Det:Bandyk And Ass Ociates | 903706140021265 |
| 06/14 | 50,000.00 | Wire Type:Wire IN Date: 040614 Time:1055 Et Trn:2004061400021697/000594 Seq:040614001697/000594 Orig:Bandyk And Associates ID:7161877787 Snd Bk:Fi Fth Third Bank ID:042000314 Pmt Det:Ref: Bandyk & Associates | 903706140013733 |
| 06/14 | 30,000.00 | Wire Type:Wire IN Date: 040614 Time:1242 Et Trn:2004061400021208 Seq:040614002845/000955 Orig:Bandyk And Associates ID:7161877787 Snd Bk:Fi Fth Third Bank ID:042000314 Pmt Det:Ref Bandyk And Associates | 903706140021208 |
| 06/14 | 20,000.00 | Wire Type:Wire IN Date:040614 Time:1616 Et Trn:2004061400039818 Sndr Ref:040614090555 Orig:000012511928619 ID:00125 Orig Bk:Franklin Tem Pleton Universal ID:009102735215 Pmt Det:/Rfb/Cap Of 04/06/141213003385 Bandyk And Associates . . . . | 903706140039818 |
| 06/15 | 150,000.00 | Wire Type:Wire IN Date: 040615 Time:1109 Et Trn:2004061500013958 Seq:1/000001 Orig:Robertson Corners Inc ID:2350008193 Snd Bk:No Rth Shore Community Bank & ID:071925444 | 903706150013958 |

BETA ASSET MANAGEMENT, INC.

## Deposits and Credits - Continued

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 06/15 | 150,000.00 | Wire Type:Wire IN Date: 040615 Time:1701 Et Trn:2004061500044816 Seq:040615010016/000747 Orig:Daniel C Corby Jr ID:000022902695 Snd Bk:Key Bank ID:125000574 Pmt Det:Ffc Dan Corby A/C 433592 68 | 903706150044816 |
| 06/15 | 100,000.00 | Wire Type:Wire IN Date: 040615 Time:1008 Et Trn:2004061500009851 Seq:20040615083400Ds/000009 Orig:D Drew Development Ltd Snd Bk:Cole Taylor Ban K ID:071000343 Pmt Det:Fbo: David Marc Drew Acct. No. 33F007281 | 903706150009851 |
| 06/15 | 50,000.00 | Wire Type:Wire IN Date: 040615 Time:1508 Et Trn:2004061500033803 Seq:02462/000009 Orig:Mark R. Rahner, OD ID:165271 Snd Bk:First Nat Ional Bank Of Durang ID:102100552 | 903706150033803 |
| 06/15 | 40,000.00 | Wire Type:Wire IN Date: 040615 Time:1333 Et Trn:2004061500025360 Seq:2004167018100/000039 Orig:Christopher Charters ID:215586387 Snd Bk:Nati Onal Penn Bank ID:031308784 Pmt Det:Fct: Brandy K & Asso | 903706150025360 |
| 06/15 | 4,000.00 | Online Banking transfer from Chk 4993 Confirmation# 7312346553 | 957206157565536 |
| 06/16 | 500,010.00 | Wire Type:Wire IN Date: 040616 Time:1249 Et Trn:2004061600019485 Seq:040616104877/002234 Orig:Mark R Vehslage Trustee F ID:0002423669 Snd Bk:The Northern Trust Company ID:071000152 Pmt Det:For Ben Of:Mark R Vehslage | 903706160019485 |
| 06/16 | 60,000.00 | Wire Type:Wire IN Date: 040616 Time:1721 Et Trn:2004061600041429 Seq:08240616/003312 Orig:Brian K Gallagher Snd Bk:Washington Mutual Ba Nk, F.A. ID:321180748 Pmt Det:Bandy K & Associates | 903706160041429 |
| 06/18 | 220,000.00 | Wire Type:Wire IN Date: 040618 Time:1514 Et Trn:2004061800033662 Seq:2004170135300008/000028 Orig:Michael B Busby ID:000000000003010154 Snd Bk:Kl Ein Bank ID:113008012 Pmt Det:Benefit For Busby | 903706180033662 |
| 06/18 | 1,114.36 | CheckCard  0617 Hotel San Roman DE Esca Escalante        745997641699100000090464 | 905706170793736 |
| 06/22 | 7,000.00 | Wire Type:Wire IN Date: 040622 Time:1510 Et Trn:2004062200029015 Seq:7669000174Ft/003330 Orig:Alan S Weisz ID:X430493361 Snd Bk:Jpmorgan Ch Ase Bank ID:021000021 Pmt Det:Swf Of 04/06/22 Ref David Drew No 33F007281 | 903706220029015 |
| 06/22 | 102.23 | CheckCard  0619 J. Crew Retail #616 Chicago       IL 746104341730040079537768 | 905706190730575 |
| 06/24 | 3,000,000.00 | Wire Type:Wire IN Date: 040624 Time:1238 Et Trn:2004062400020257 Seq:Bn040624098987/002051 Orig:Crown Cash Fund ID:1012616 Snd Bk:Bank One, N .A. ID:071000013 Pmt Det:Bn040624098987 Further Cr Edit David Drew Trust 33F007281 | 903706240020257 |
| 06/29 | 49,800.00 | Wire Type:Wire IN Date: 040629 Time:1231 Et Trn:2004062900021000 Seq:20041810016800/000060 Orig:Karen L Reese ID:105879071 Snd Bk:Old Nationa L Bank ID:086300012 | 903706290021000 |



BETA ASSET MANAGEMENT, INC.

Page 5 of 9
Account Number: 0028 7204 4535
E0 E  EA Enclosures 0          54
Statement Period
06/01/04 through 06/30/04     0019015

IH

## Deposits and Credits - Continued

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 06/30 | 50,000.00 | Wire Type:Wire IN Date: 040630 Time:1408 Et Trn:2004063000045308 Seq:12336/000006 Orig:Johan M O'Dea ID:2551407 Snd Bk:Pen Air Feder AL Credit Union ID:263281695 Pmt Det:F/C Bandyk & Assoc Ph 616-458-8610 1515 Michigan St Ne Grand Ra | 903706300045308 |
| 06/30 | 25,000.00 | Wire Type:Wire IN Date: 040630 Time:1529 Et Trn:2004063000056471 Seq:20040630142749Tt/000456 Orig:Jerome Shaffer OR Snd Bk:Associated Bank-Glad Stone Nor ID:071002147 Pmt Det:Ffc: Bandyk & Assoc Iates 1515 Michigan St Ne Grand Rapids, MI 49503 J | 903706300056471 |
| 06/30 | 25,000.00 | Wire Type:Wire IN Date: 040630 Time:1552 Et Trn:2004063000059817 Seq:040630011447/002489 Orig:62881356 Snd Bk:Bank One, N.A. ID:111000614 Pmt Det:Fbo: Bandyk & Associates | 903706300059817 |
| 06/30 | 25,000.00 | Wire Type:Wire IN Date: 040630 Time:1623 Et Trn:2004063000064028 Seq:241241Jb/001265 Orig:Earl Hollis Lowder OR Snd Bk:Colonial Bank, N Ational Assoc ID:062001319 | 903706300064028 |

## Withdrawals and Debits

| Check Number | Amount | Date Posted | Bank Reference | Check Number | Amount | Date Posted | Bank Reference |
|---|---|---|---|---|---|---|---|
| 1085 | 2,000.00 | 06/01 | 813003420931597 | 1095 | 100,000.00 | 06/16 | 813004120397599 |
| 1086 | 1,150.00 | 06/02 | 813004020380800 | 1096 | 5,000.00 | 06/16 | 813004020279763 |
| 1087 | 300.00 | 06/22 | 813003720575227 | 1097 | 2,350.00 | 06/18 | 813108320129026 |
| 1088 | 2,600.00 | 06/15 | 813003720845381 | 1099 * | 1,453.10 | 06/21 | 813003920699532 |
| 1089 | 108.00 | 06/14 | 813004020437765 | 1100 | 52,000.00 | 06/29 | 813108720261575 |
| 1090 | 7,040.09 | 06/11 | 813004120659963 | 1101 | 1,400.00 | 06/28 | 813003920145123 |
| 1091 | 537.00 | 06/24 | 813008230649331 | 1102 | 1,150.00 | 06/28 | 813004120670630 |
| 1092 | 1,080.00 | 06/16 | 813004020330883 | 1103 | 69.18 | 06/30 | 813108420642995 |
| 1093 | 138.36 | 06/09 | 813108120430703 | 1104 | 145.28 | 06/30 | 813108420642997 |
| 1094 | 500,000.00 | 06/16 | 813006130636458 | | | | |

Preceding check (or checks) is outstanding, is included in summary listing, or has been included in a previous statement.

## Other Debits

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 6/02 | 100,000.00 | Wire Type:Wire Out Date:040602 Time:1246 Et Trn:2004060200019920 Service Ref:000473 Bnf:Bandyk And Associates ID:7161877787 Bnf Bk:Fif Th Third Bank ID:042000314 | 903706020019920 |
| 6/02 | 48,000.00 | Online Banking transfer to Chk 4993 Confirmation# 6195504690 | 957106027576545 |
| 6/02 | 20.00 | Wire Transfer Fee | 903706020015190 |



BETA ASSET MANAGEMENT, INC.

## Withdrawals and Debits - Continued

**Other Debits**

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 06/03 | 135,000.00 | Wire Type:Wire Out Date:040603 Time:1650 Et Trn:2004060300041422 Service Ref:000984 Bnf:Bandyk And Associates ID:7161877787 Bnf Bk:Fif Th Third Bank ID:042000314 | 903706030041422 |
| 06/03 | 20.00 | Wire Transfer Fee | 903706030015092 |
| 06/04 | 2,600,000.00 | Wire Type:Wire Out Date:040604 Time:1256 Et Trn:2004060400022163 Service Ref:000508 Bnf:Chicago Title & Trust Co ID:5800038704 Bnf Bk: Lasalle Bank N.A. ID:071000505 Pmt Det:Ref:Es# 024 055384 | 903706040022163 |
| 06/04 | 55,000.00 | Wire Type:Wire Out Date:040604 Time:1256 Et Trn:2004060400022311 Service Ref:000508 Bnf:Frank Perry ID:11874991 Bnf Bk:Bank One, N.A. ID:071000013 | 903706040022311 |
| 06/04 | 20.00 | Wire Transfer Fee | 903706040015304 |
| 06/04 | 20.00 | Wire Transfer Fee | 903706040015302 |
| 06/07 | 105,000.00 | Wire Type:Wire Out Date:040607 Time:1337 Et Trn:2004060700024691 Service Ref:000582 Bnf:Bandyk And Associates ID:7161877787 Bnf Bk:Fif Th Third Bank ID:042000314 | 903706070024691 |
| 06/07 | 20.00 | Wire Transfer Fee | 903706070015404 |
| 06/10 | 2,000.00 | Wire Type:Wire Out Date:040610 Time:1511 Et Trn:2004061000031146 Service Ref:000746 Bnf:The Weaver Refrigeration ID:101803820 Bnf Bk:O Ld National Bank ID:086300012 | 903706100031146 |
| 06/10 | 2,000.00 | Wire Type:Wire Out Date:040610 Time:1512 Et Trn:2004061000031381 Service Ref:000791 Bnf:Kentner Farms ID:8100122202 Bnf Bk:First Midwe St Bank ID:071901604 | 903706100031381 |
| 06/10 | 20.00 | Wire Transfer Fee | 903706100014336 |
| 06/10 | 20.00 | Wire Transfer Fee | 903706100014334 |
| 06/15 | 1,192,800.00 | Wire Type:Wire Out Date:040615 Time:1117 Et Trn:2004061500014664 Service Ref:000298 Bnf:At World Properties Llc. ID:10600493 Bnf Bk:Br Idgeview Bank Group ID:071923569 | 903706150014664 |
| 06/15 | 20.00 | Wire Transfer Fee | 903706150014640 |
| 06/16 | 100,000.00 | Wire Type:Wire Out Date:040616 Time:1541 Et Trn:2004061600032673 Service Ref:000774 Bnf:D Drew Development Ltd ID:069070350 Bnf Bk:Col E Taylor Bank ID:071000343 | 903706160032673 |
| 06/16 | 500.00 | Online Banking transfer to Chk 4993 Confirmation# 7388986571 | 957106167524723 |
| 06/16 | 20.00 | Wire Transfer Fee | 903706160013177 |
| 06/17 | 2,000.00 | Online Banking transfer to Chk 4993 Confirmation# 7455840417 | 957206177509975 |
| 06/17 | 3,000.00 | Gecorporatecard ;Des = payment    ;Id = xxxxx9914 Eff Date: 040617;Indn:Beta Asset Mgmt Inc | 902541682259798 |
| 06/18 | 85,000.00 | Wire Type:Wire Out Date:040618 Time:1307 Et Trn:2004061800022707 Service Ref:000506 Bnf:D. Drew Development Ltd. ID:069070350 Bnf Bk:C Ole Taylor Bank ID:071000343 | 903706180022707 |



BETA ASSET MANAGEMENT, INC.

## Withdrawals and Debits - Continued

### Other Debits

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 06/18 | 65,000.00 | Wire Type:Wire Out Date:040618 Time:1553 Et Trn:2004061800036497 Service Ref:000932 Bnf:D Drew Development ID:069070350 Bnf Bk:Cole Ta Ylor Bank ID:071000343 | 903706180036497 |
| 06/18 | 20.00 | Wire Transfer Fee | 903706180014938 |
| 06/18 | 20.00 | Wire Transfer Fee | 903706180014986 |
| 06/22 | 30,000.00 | Wire Type:Wire Out Date:040622 Time:1551 Et Trn:2004062200031886 Service Ref:000735 Bnf:Ivey Equity Partners ID:4523302109 Bnf Bk:Citi Zens Bank ID:072400528 Pmt Det:Ref-Attn John Faust Er | 903706220031886 |
| 06/22 | 7,000.00 | Wire Type:Wire Out Date:040622 Time:1551 Et Trn:2004062200032003 Service Ref:000793 Bnf:Merrill Lynch ID:1011730 Bnf Bk:Mellon Bank, N . A. ID:043000261 Pmt Det:Ref-Fbo David Mark Drew Acct#63711692 | 903706220032003 |
| 06/22 | 20.00 | Wire Transfer Fee | 903706220012883 |
| 06/22 | 20.00 | Wire Transfer Fee | 903706220012881 |
| 06/24 | 2,111,700.00 | Wire Type:Wire Out Date:040624 Time:1244 Et Trn:2004062400020407 Service Ref:000427 Bnf:Dan Corby ID:22902695 Bnf Bk:Key Bank ID:12500 0574 | 903706240020407 |
| 06/24 | 600,000.00 | Wire Type:Wire Out Date:040624 Time:1243 Et Trn:2004062400020477 Service Ref:000465 Bnf:Wirick & Associates ID:1010041431261 Bnf Bk:WA Chovia Bank, Na ID:053000219 | 903706240020477 |
| 06/24 | 20.00 | Wire Transfer Fee | 903706240014067 |
| 06/24 | 20.00 | Wire Transfer Fee | 903706240014065 |
| 06/28 | 1,000.00 | Online Banking transfer to Chk 4993 Confirmation# 8431294115 | 957206287533921 |
| 06/29 | 400,000.00 | Wire Type:Wire Out Date:040629 Time:1018 Et Trn:2004062900010877 Service Ref:000222 Bnf:Bandyk And Associates ID:7161877787 Bnf Bk:Fif Th Third Bank ID:042000314 | 903706290010877 |
| 06/29 | 400.00 | Online Banking transfer to Chk 4993 Confirmation# 8522563276 | 957106297553207 |
| 06/29 | 20.00 | Wire Transfer Fee | 903706290015144 |
| 06/30 | 15,000.00 | Wire Type:Wire Out Date:040630 Time:1533 Et Trn:2004063000055062 Service Ref:002057 Bnf:James A Smith ID:53555348 Bnf Bk:Bancorpsouth Bank ID:065300486 | 903706300055062 |
| 06/30 | 20.00 | Wire Transfer Fee | 903706300018400 |

### Card Account # 4635 8100 0002 9873:

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 6/01 | 240.00 | CheckCard  0528 Interpark #9000 | 905705280204098 |
| 6/01 | 142.75 | CheckCard  0531 Webster'S Wine Bar | 905705310386816 |
| 6/01 | 63.55 | CheckCard  0528 Uncle Julios Hacienda | 905705280521473 |
| 6/01 | 43.41 | CheckCard  0529 Northside Cafe | 905705290843654 |
| 6/01 | 42.40 | CheckCard  0529 Northwestern Cutlery | 905705290352407 |
| 6/03 | 1,115.40 | CheckCard  0601 State Farm Insurance | 905706010231724 |
| 6/03 | 200.00 | CheckCard  0602 Paypal *badnarikcam | 905706020562384 |
| 6/03 | 195.00 | CheckCard  0601 Hirsch Organizati00 Of | 905706010421592 |
| 6/03 | 99.50 | CheckCard  0602 Experts Exchange Llc | 905706020710833 |
| 6/03 | 68.65 | CheckCard  0602 Paypal *mipdogg | 905706020562700 |



Page 8 of 9
Account Number: 0028 7204 4535
E0  E  EA Enclosures 0        54
Statement Period
06/01/04 through 06/30/04      0019018

BETA ASSET MANAGEMENT, INC.

## Withdrawals and Debits - Continued

**Other Debits**

| Date Posted | Amount | Description | Bank Reference |
|---|---|---|---|
| 06/04 | 29.00 | CheckCard  0603 Franks | 905706030650167 |
| 06/07 | 148.00 | CheckCard  0603 The Tin Lizzie | 905706030697739 |
| 06/07 | 79.80 | CheckCard  0604 Cafe Ba-Ba Reeba | 905706040378014 |
| 06/07 | 27.00 | CheckCard  0604 Sports Corner | 905706040496445 |
| 06/08 | 49.00 | CheckCard  0604 R-Group,Llc(Wavespeak) | 905706040394373 |
| 06/09 | 239.00 | CheckCard  0607 Best Software Sb, Inc. | 905706070062145 |
| 06/10 | 165.00 | CheckCard  0609 National Ethics Bureau | 905706090221508 |
| 06/11 | 375.00 | CheckCard  0610 Dorsey, Wright & Assoc | 905706100560312 |
| 06/14 | 728.61 | CheckCard  0611 Wolf Camera #1477 | 905706110268393 |
| 06/14 | 109.41 | CheckCard  0611 South Street Rest | 905706110562286 |
| 06/14 | 108.70 | CheckCard  0611 Sunglass Hut  60034097 | 905706110028192 |
| 06/14 | 99.00 | CheckCard  0612 Ago*strategic Investme | 905706120011126 |
| 06/14 | 96.50 | CheckCard  0611 The Tin Lizzie | 905706110427529 |
| 06/14 | 10.00 | CheckCard  0612 J2 *efax Plus Service | 905706120358763 |
| 06/15 | 105.66 | CheckCard  0612 Chu | 905706120354664 |
| 06/15 | 104.93 | CheckCard  0614 Weiss Ratings | 905706140621853 |
| 06/15 | 61.54 | CheckCard  0613 Gaylord Opryland Restrn | 905706130070774 |
| 06/17 | 200.00 | CheckCard  0616 Innovative Marketing As | 905706160588767 |
| 06/17 | 187.68 | CheckCard  0616 Treasure Island #29 | 905706160718989 |
| 06/21 | 198.50 | CheckCard  0618 The Tin Lizzie | 905706180384872 |
| 06/23 | 100.00 | BkofAmerica ATM 06/22 #000008986 Withdrwl | 950606220008986 |
| 06/24 | 199.95 | CheckCard  0622 Advice Trade Inc. | 905706220002651 |
| 06/24 | 139.90 | CheckCard  0622 Advice Trade Inc. | 905706220002671 |
| 06/25 | 500.00 | CheckCard  0623 Most Choice | 905706230103009 |
| 06/25 | 86.28 | CheckCard  0624 Pequod'S Pizza | 905706240678975 |
| 06/25 | 49.00 | CheckCard  0622 R-Group,Llc(Wavespeak) | 905706220339761 |
| 06/25 | 39.00 | CheckCard  0623 ibillcs.Com *hotel Heir | 905706230004267 |
| 06/28 | 101.50 | Always Open-43  06/26 #000365892 Withdrwl | 950606260365892 |
| 06/28 | 100.00 | CheckCard  0625 The Tin Lizzie | 905706250384472 |
| 06/28 | 64.24 | CheckCard  0625 Treasure Island #29 | 905706250745864 |
| 06/28 | 38.54 | CheckCard  0625 Amoco Oil      01063064 | 905706250139517 |
| 06/28 | 1.50 | Always Open-43  06/26 #000365892 Withdrwl | 950606260365892 |
| 06/29 | 1,995.00 | CheckCard  0627 Schaeffer'S Investment | 905706270770799 |
| 06/30 | 641.00 | CheckCard  0628 US Treasury Tax Paymen | 905706280325689 |
| 06/30 | 15.96 | CheckCard  0628 Tax Pymt Convenience F | 905706280327897 |
| **Subtotal** | **9,404.86** | | |

## Daily Ledger Balances

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 06/01 | 128,973.43 | 06/11 | 740,728.28 | 06/23 | 122,533.24 |
| 06/02 | 154,803.43 | 06/14 | 939,468.06 | 06/24 | 409,916.39 |
| 06/03 | 38,104.88 | 06/15 | 237,775.93 | 06/25 | 409,242.11 |
| 06/04 | 383,035.88 | 06/16 | 91,185.93 | 06/28 | 405,386.33 |
| 06/07 | 322,761.08 | 06/17 | 85,798.25 | 06/29 | 771.33 |
| 06/08 | 372,725.73 | 06/18 | 154,522.61 | 06/30 | 109,879.91 |
| 06/09 | 657,348.37 | 06/21 | 152,871.01 | | |
| 06/10 | 748,143.37 | 06/22 | 122,633.24 | | |



IH

BETA ASSET MANAGEMENT, INC.

Page 9 of 9
Account Number: 0028 7204 4535
E0  E   EA Enclosures 0                    54
Statement Period
06/01/04 through 06/30/04           0019019

## Message Center

*Earn airline miles, travel and vacation rewards, merchandise, hotel and restaurant discounts and much more.  Plus benefits, services and protections designed for your business. Select the Bank of America Business Credit Card that's right for your business. Visit www.bankofamerica.com/introrate or visit your nearest banking center to apply.*

# Exhibit

# F

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES L. KOPECKY, RECEIVER | ) | |
| FOR BRAD A. WEAVER. AND | ) | |
| BETA ASSET MANAGEMENT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 2863 |
| | ) | |
| v. | ) | Judge Pallmeyer |
| | ) | |
| LAKEWOOD PROPERTIES, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT LAKEWOOD PROPERTIES, LTD.'S
## OBJECTIONS AND RESPONSES TO PLAINTIFF'S
## REQUESTS TO ADMIT

Lakewood Properties, Ltd. ("Defendant" or "Lakewood"), through its undersigned attorneys, hereby objects and responds to Plaintiff's Requests to Admit.

### Preliminary Statement

Defendant's General Objections to Plaintiff's Requests to Admit are set forth below. To avoid the necessity of restating in full each objection, the General Objections are incorporated within each response, and the assertion of additional specific objections to certain of Plaintiff's Requests to Admit shall not be construed as waiving any applicable General Objection.

Defendant's response to a Request to Admit does not waive its right to challenge the relevance, materiality, and admissibility of the information or documents provided, or to object to the use of the information in any subsequent proceeding or trial in this action.

Defendant's search for information is ongoing and its responses to Plaintiff's Requests to Admit are based on information known to it at this time. Defendant reserves the right to supplement or amend its responses at any time prior to trial.

<u>**General Objections**</u>

1.      Defendant objects to Plaintiff's Requests to Admit to the extent that they seek to impose a discovery obligation on any person or entity not a party to this case, call for information or things that are not in Defendant's possession, custody, or control, or otherwise exceed the scope of properly discoverable information or Defendant's obligations under applicable law.

2.      Defendant objects to the definitions of "you," "your," and "Lakewood" in Paragraph A of the "Definitions and Instructions" on the grounds that they are overly broad and unduly burdensome to the extent that those terms are defined to include any individual or entity other than Defendant Lakewood Properties, Ltd. Individuals or entities other than Defendant Lakewood are not parties to this action and discovery may not be had of them pursuant to the party discovery rules. Defendant further objects to the Requests to Admit and the Definitions and Instructions to the extent that any individual Request to Admit seeks information other than that related to the ponzi scheme allegedly perpetrated by Brad Weaver ("Weaver") and Beta Asset Management, Inc. ("Beta"), and Lakewood's investment in Weaver's and Beta's alleged scheme.

3.      Defendant objects to the Requests to Admit and the Definitions and Instructions to the extent that any individual Request to Admit seeks information protected by the attorney-client privilege, the work product doctrine, or any other privilege or protection. The fact that Defendant does not specifically object to an individual Request to Admit on the ground that it seeks such privileged or protected information or documents shall not be deemed a waiver of the

protection afforded by the attorney-client privilege, the attorney work product doctrine, or of any other applicable privilege or protection.

4.      Defendant objects to the Requests to Admit and the Definitions and Instructions to the extent that they purport to impose obligations greater than or inconsistent with those imposed by the Federal Rules of Civil Procedure.

5.      Defendant objects to the Requests to Admit and the Definitions and Instructions to the extent they call for disclosure of information or documents that contain and/or constitute confidential, proprietary, and/or sensitive information of the Defendant or others, the disclosure of which could harm the disclosing party or others.

6.      Defendant objects to the Requests to Admit to the extent that they seek information generally available to the public and/or in the public domain.

7.      Defendant objects to the Requests to Admit to the extent that they are redundant and duplicative.

8.      Defendant objects to the Requests to Admit to the extent that they contain vague and undefined terms.

## Specific Objections and Responses

1.      Admit that Mark Vehslage is or was President of Lakewood Properties.

   **Response:**     Admitted.

2.      Admit that Mark Vehslage is or was an officer or agent of Lakewood Properties.

   **Response:**     Admit that Mark Vehslage was an officer of Lakewood.  Deny the remainder.

3.      Admit that Mark Vehslage is or was a partner of Lakewood Properties.

   **Response:**     Denied.

4.      Admit that Mark Vehslage is or was an owner of Lakewood Properties.

3

       **Response:**    Admit that Mark Vehslage was a shareholder of Lakewood. Deny the remainder.

5.    Admit that Richard Schripsema is or was Secretary of Lakewood Properties.

       **Response:**    Admitted.

6.    Admit that Richard Schripsema is or was an officer or agent of Lakewood Properties.

       **Response:**    Admit that Richard Schripsema was an officer of Lakewood. Deny the remainder.

7.    Admit that Richard Schripsema is or was a partner of Lakewood Properties.

       **Response:**    Denied.

8.    Admit that Richard Schripsema is or was an owner of Lakewood Properties.

       **Response:**    Admit that Richard Schripsema was a shareholder of Lakewood. Deny the remainder.

9.    Admit that Richard Schripsema and Mark Vehslage are or were the only owners or partners of Lakewood Properties.

       **Response:**    Admit that Richard Schripsema and Mark Vehslage were the only shareholders of Lakewood. Deny the remainder.

10.    Admit that Mark Vehslage incurred monetary losses from Lakewood Properties.

       **Response:**    Denied.

11.    Admit that Mark Vehslage received distributions of profit from Lakewood Properties.

       **Response:**    Admitted.

12.    Admit that Richard Schripsema incurred monetary losses from Lakewood Properties.

       **Response:**    Denied.

13.    Admit that Richard Schripsema received distributions of profit from Lakewood Properties.

       **Response:**    Admitted.

14.    Admit that Lakewood Properties possessed or controlled account number 2423669 at Northern Trust Co.

**Response:**    Denied.

15.    Admit that Northern Trust account number 2423669 was in the name of Lakewood Properties.

**Response:**    Denied.

16.    Admit that Northern Trust held funds for the benefit of Lakewood Properties in account number 2423669.

**Response:**    Denied.

17.    Admit that an agent or representative of Lakewood Properties could deposit or withdraw funds from Northern Trust account number 2423669.

**Response:**    Denied.

18.    Admit that Mark Vehslage possessed or controlled account number 2423669 at Northern Trust Co in 2003 and/or 2004.

**Response:**    Mark Vehslage owned such account.  Deny the remainder.

19.    Admit that Northern Trust account number 2423669 was in the name of Mark Vehslage.

**Response:**    Admitted.

20.    Admit that Northern Trust held funds for the benefit of Mark Vehslage in account number 2423669.

**Response:**    Denied.

21.    Admit that Mark Vehslage could deposit or withdraw funds from Northern Trust account number 2423669.

**Response:**    Admitted.

22.    Admit that Lakewood Properties possessed or controlled an account or accounts at Citibank in 2003 and/or 2004.

**Response:**    Admitted.

23.    Admit that Lakewood Properties possessed or controlled account number 000800071267 at Citibank.

**Response:**    Admit that Lakewood owned such account.  Deny the remainder.

24.    Admit that Citibank account number 000800071267 was in the name of Lakewood Properties.

**Response:**    Admitted.

25.    Admit that Citibank held funds for the benefit of Lakewood Properties in account number 000800071267.

**Response:**    Denied.

26.    Admit that an agent or representative of Lakewood Properties could deposit or withdraw funds from Citibank account number 000800071267.

**Response:**    Admitted.

27.    Admit that Lakewood Properties possessed or controlled account number 0980781550 at Citibank.

**Response:**    Admit that Lakewood owned such account.  Deny the remainder.

28.    Admit that Citibank account number 0980781550 was in the name of Lakewood Properties.

**Response:**    Admitted.

29.    Admit that Citibank held funds for the benefit of Lakewood Properties in account number 0980781550.

**Response:**    Denied.

30.    Admit that an agent or representative of Lakewood Properties could deposit or withdraw funds from Citibank account number 0980781550.

**Response:**    Admitted.

31.    Admit that in the time period between January, 2003, and December, 2004, money was wired from Citibank account number 000800071267 to a bank account or accounts in the name of Beta Asset Management.

**Response:**    Admitted.

32.    Admit that in the time period between January, 2003, and December, 2004, money received from Beta Asset Management was deposited into Citibank accounts possessed or controlled by Lakewood Properties, Mark Vehslage and/or Richard Schripsema.

**Response:**    Admitted.

33.    Admit that on or about January 30, 2003, $125,000.00 was wired from Citibank account number 000800071267 to North Community Bank account number 1213000712.

      **Response:**    Admitted.

34.    Admit that on or about February 25, 2003, $40,000.00 was wired from North Community Bank account number 1213003385 to Citibank account number 000800071267.

      **Response:**    Admitted.

35.    Admit that on or about February 25, 2003, $95,000.00 was wired from North Community Bank account number 1213003385 to Citibank account number 000800071267.

      **Response:**    Admitted.

36.    Admit that on or about March 21, 2003, $135,000.00 was wired from Citibank account number 000800071267 to North Community Bank account number 1213003385.

      **Response:**    Admit that on or about March 21, 2003, $135,000.00 was wired from Citibank account number 000800071267, deny the remainder.

37.    Admit that on or about April 30, 2003, $150,000.00 was wired from North Community Bank account number 1213003385 to Citibank account number 000800071267.

      **Response:**    Admitted.

38.    Admit that on or about May 12, 2003, $113,000.00 was wired from Citibank account number 000800071267 to North Community Bank account number 1213003385.

      **Response:**    Admitted.

39.    Admit that on or about May 20, 2003, $50,000.00 was wired from Citibank account number 000800071267 to North Community Bank account number 1213003385.

      **Response:**    Admitted.

40.    Admit that on or about June 3, 2003, $60,000.00 was wired from Citibank account number 000800071267 to North Community Bank account number 1213003385.

      **Response:**    Admitted.

41.    Admit that on or about July 3, 2003, a check for $50,000.00 from Beta Asset Management was deposited into a Citibank account possessed or controlled by Lakewood Properties.

      **Response:**   Denied.

42.    Admit that on or about August 7, 2003, a check for $20,000.00 from Beta Asset Management was deposited into Citibank account number 0980781550.

      **Response:**   Denied.

43.    Admit that on or about September 2, 2003, a check for $35,000.00 from Beta Asset Management was deposited into a Citibank account possessed or controlled by Lakewood Properties.

      **Response:**   Admitted.

44.    Admit that on or about September 26, 2003, a check for $50,000.00 from Beta Asset was deposited into Citibank account number 0980781550.

      **Response:**   Admitted.

45.    Admit that on or about October 16, 2003, a check for $50,000.00 from Beta Asset Management was deposited into Citibank account possessed or controlled by Lakewood Properties.

      **Response:**   Admitted.

46.    Admit that on or about November 24, 2003, a check for $100,000.00 from Beta Asset Management was deposited into Citibank account possessed or controlled by Lakewood .Properties.

      **Response:**   Admitted.

47.    Admit that on or about December 29, 2003, a check for $50,000.00 from Beta Asset Management was deposited into Citibank account possessed or controlled by Lakewood Properties.

      **Response:**   Admitted.

48.    Admit that on or about June 4, 2004, Brad Weaver and/or Beta Asset Management wired $2,600,000.00 to Chicago Title and Trust Co. for the benefit of Lakewood Properties.

      **Response:**   Admitted.

49.    Admit that on or about June 4, 2004, the Chicago Title and Trust Co. wired $2,658,275.22 to Northern Trust Co. account number 2423669.

**Response:**     Admitted.

50.     Admit that in the time period between January, 2003, and December, 2004, Lakewood Properties wired approximately $483,000.00 to Brad Weaver and/or Beta Asset Management.

**Response:**     Denied.

51.     · Admit that in the time period between January, 2003, and December, 2004, Lakewood Properties received approximately $3,240,000.00 from Brad Weaver and/or Beta Asset Management.

**Response:**     Denied.

52.     Admit that in the time period between January, 2003, and Decembers, 2004, Brad Weaver and/or Beta Asset Management did not provide any products to Lakewood Properties.

**Response:**     Denied.

53.     Admit that in the time period between January, 2003, and December, 2004, Brad Weaver and/or Beta Asset Management did not provide any services to Lakewood Properties.

**Response:**     Denied.

54.     Admit that in the time period between January, 2003, and December, 2004, Brad Weaver and/or Beta Asset Management wired approximately $3,240,000.00 to Lakewood Properties without receiving reasonably equivalent consideration.

**Response:**     Denied.

Dated:  December 28, 2007

Respectfully Submitted,

Lakewood Properties, Ltd.

Matthew C. Crowl
One of its Attorneys

Eugene J. Geekie, Jr.
Matthew C. Crowl
Zhiyuan "Mike" Xu
SCHIFF HARDIN LLP
6600 Sears Tower
233 South Wacker Drive
Chicago, IL  60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
egeekie@schiffhardin.com
mcrowl@schiffhardin.com
mxu@schiffhardin.com

10

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on December 28, 2007, copies of **Defendant Lakewood Properties, Ltd.'s Objections and Responses to Plaintiff's Requests to Admit** were caused to be served upon the party listed below in the manner identified below.

### Via Hand-Delivery

James L. Kopecky

James L. Kopecky, P.C.

312 North Clark Street, Suite 2200

Chicago, Illinois 60610

Phone (312)-527-3966

Fax (312)-527-3968

jim@jlkopecky.com

*Counsel for Plaintiff*

Matthew C. Crowl

CHI\5389787.4

# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES L. KOPECKY, RECEIVER    )
FOR BRAD A. WEAVER AND       )
BETA ASSET MANAGEMENT, INC.,  )   Case No. 07 C 2863
                            )
       Plaintiff,        )
                            )   Judge Rebecca R. Pallmeyer
v.                          )
                            )
LAKEWOOD PROPERTIES, LTD.,    )
                            )
       Defendant.      )

## DEFENDANT'S SUPPLEMENTAL DISCOVERY RESPONSES

Lakewood Properties, Ltd. ("Defendant" or "Lakewood"), through its undersigned attorneys, hereby provides its supplemental discovery responses, pursuant to the Court's order of January 14, 2008:

### Preliminary Statement

Lakewood incorporates and restates its Preliminary Statement, General Objections, and specific objections set forth in Lakewood's Objections and Responses to Plaintiff's Interrogatories and its Objections and Responses to Plaintiff's Requests to Produce.

### Responses

<u>Interrogatory No. 3 Supplemental Response</u>:  Subject to its objections, Lakewood responds that:

(a)    There was only one class of stock issued.  It is unknown how many shares were authorized, issued, or outstanding.  Mark Vehslage and Richard Schripsema were the co-equal and sole shareholders at all relevant times herein.

(b)    Mark Vehslage and Richard Schripsema were the only board members at all relevant times herein.  There was no person designated as Chairman.

(c)    Mark Vehslage is President.  Richard Schripsema is Vice-President and Secretary.

(d)    The nature and business of Lakewood is to own real estate and invest funds for its principals.

(e)    No.

(f)    Richard Schripsema is Lakewood's custodian of records.

Interrogatory No. 4 Supplemental Response:    Subject to its objections, Lakewood responds that the responsive documents are those Bates-stamped LWP 046.

Interrogatory No. 5 Supplemental Response:    Subject to its objections, Lakewood responds that the responsive documents are those Bates-stamped LWP 046 and 120.

Interrogatory No. 8 Supplemental Response:    Subject to its objections, Lakewood responds that the responsive documents are those Bates-stamped LWP 047, 055, 063, 068, 108-110, and 114-118.

Interrogatory No. 9 Supplemental Response:    Subject to its objections, Lakewood responds that funds provided to Beta and/or Weaver was intended to be an investment with Beta and/or Weaver.

Interrogatory No. 10 Supplemental Response:    Subject to its objections, Lakewood responds that consideration was not required in exchange for the funds provided to Beta and/or

-2-

Weaver, and any consideration provided by Beta and/or Weaver for such transfers is immaterial and irrelevant, because the receiver has not alleged that Lakewood engaged in fraudulent transfers by and through the funds provided to Beta and/or Weaver. Further answering, and subject to the foregoing, Lakewood states that Beta and/or Weaver provided consideration to Lakewood for such funds by, among other things, promising to render and actually rendering investment advice and investment services.

Interrogatory No. 11 Supplemental Response: Subject to its objections, Lakewood responds that the responsive documents are those Bates-stamped LWP 051, 059, 096-107, and 111-113.

Interrogatory No. 12 Supplemental Response: Subject to its objections, Lakewood responds that the purpose of such transfers was a return on and of Lakewood's invested funds, among other things.

Interrogatory No. 13 Supplemental Response: Subject to its objections, Lakewood responds that consideration was not required for such transfers, and the consideration provided by Lakewood for such transfers is immaterial and irrelevant, because, at a minimum, Lakewood received a return of its investment funds held in trust by Beta and/or Weaver. Further answering, to the extent that consideration is relevant, and subject to the foregoing objections, Lakewood states that, among other things, the consideration provided to Beta and/or Weaver were investment funds that Lakewood provided, and which Beta and/or Weaver held in trust and invested on behalf of Lakewood.

Interrogatory No. 14 Supplemental Response: Subject to its objections, Lakewood responds that the responsive documents are those Bates-stamped LWP 047, 055, 063, 068, 108-110, and 114-118.

Interrogatory No. 15 Supplemental Response:   Subject to its objections, Lakewood responds that the responsive documents are those Bates-stamped LWP 051, 059, 096-107, and 111-113.

Dated:  February 06, 2008

Lakewood Properties, Ltd.

One of its Attorneys

Eugene J. Geekie, Jr.
Matthew C. Crowl
Zhiyuan "Mike" Xu
SCHIFF HARDIN LLP
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
egeekie@schiffhardin.com
mxu@schiffhardin.com

-4-

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on February 06, 2008, copies of **Defendant's Supplemental Discovery Responses** were caused to be served upon the party listed below in the manner identified below.

### Via Facsimile

James L. Kopecky

James L. Kopecky, P.C.

312 North Clark Street, Suite 2200

Chicago, Illinois 60610

Phone (312)-527-3966

Fax (312)-527-3968

jim@jlkopecky.com

*Counsel for Plaintiff*

Eugene J. Geekie, Jr.

CRI\5417830.2

# Exhibit H

12/12/07   HED 10:40 FAX              S H CHICAGO                    ☒001

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAMES L. KOPECKY, RECEIVER              )
FOR BRAD A. WEAVER AND                  )
BETA ASSET MANAGEMENT, INC.,            )
                                        )
        Plaintiff,              )      Case No. 07 C 2863
                                        )      Judge Rebecca R. Pallmeyer
    v.                                )
                                        )
LAKEWOOD PROPERTIES, LTD.,              )
                                        )
        Defendant.              )


## DEFENDANT LAKEWOOD PROPERTIES, LTD.'S
## OBJECTIONS AND RESPONSES TO PLAINTIFF'S
## INTERROGATORIES

    Lakewood Properties, Ltd. ("Defendant" or "Lakewood"), through its undersigned attorneys, hereby objects and responds to Plaintiff's Interrogatories.

### Preliminary Statement

    Defendant's General Objections to Defendant's Interrogatories are set forth below. To avoid the necessity of restating in full each objection, the General Objections are incorporated within each response, and the assertion of additional specific objections to certain of Plaintiff's Interrogatories shall not be construed as waiving any applicable General Objection.

    Defendant's response to Interrogatories does not waive its right to challenge the relevance, materiality, and admissibility of the information or documents provided, or to object to the use of the information in any subsequent proceeding or trial in this action.

Defendant's search for information is ongoing and its responses to Plaintiff's Interrogatories are based on information known to it at this time. Defendant reserves its right to supplement or amend its responses at any time prior to trial.

## General Objections

1.    Defendant objects to Plaintiff's Interrogatories to the extent that they seek to impose a discovery obligation on any person or entity not a party to this case, call for information or things that is not in Defendant's possession, custody, or control, or otherwise exceed the scope of properly discoverable information or Defendant's obligations under applicable law.

2.    Defendant objects to the definitions of "you," "your," and "Lakewood" in Paragraph A. 2. of the "Instructions and Definitions" on the grounds that they are overly broad and unduly burdensome to the extent that those terms are defined to include any individual or entity other than Defendant Lakewood Properties, Ltd.  Individuals or entities other than Defendant Lakewood are not parties to this action and discovery may not be had of them pursuant to the party discovery rules.  Defendant further objects to the Interrogatories and the Instructions and Definitions to the extent that any individual Interrogatory seeks information other than that related to the ponzi scheme perpetrated by Brad Weaver ("Weaver") and Beta Asset Management, Inc. ("Beta") and Lakewood's investment in Weaver's and Beta's scheme.

3.    Defendant objects to the Interrogatories and the Instructions and Definitions to the extent that any individual Interrogatory seeks information protected by the attorney-client privilege, the work product doctrine, or any other privilege or protection.  The fact that Defendant does not specifically object to an individual Interrogatory on the ground that it seeks such privileged or protected information or documents shall not be deemed a waiver of the protection afforded by the attorney-client privilege, the attorney work product doctrine, or of any

- 2 -

other applicable privilege or protection.  Inadvertent production of any information otherwise protected from disclosure or subject to objection on any ground (including relevance, for example) shall not waive that protection, privilege, or objection and is expressly reserved.

4.    Defendant objects to the Interrogatories and the Instructions and Definitions to the extent that they purport to impose obligations greater than or inconsistent with those imposed by the Federal Rules of Civil Procedure.

5.    Defendant objects to the time frame set forth in the Instructions and Definitions as overbroad and unduly burdensome.  As alleged by Plaintiff in his complaint, the relevant years when Lakewood invested in and/or received monies from the ponzi scheme perpetrated by Weaver and Beta include 2003 and 2004.

6.    Defendant objects to the Interrogatories and the Instructions and Definitions to the extent they call for disclosure of information or documents that contain and/or constitute confidential, proprietary, and/or sensitive information of the Defendant or others, the disclosure of which could harm the disclosing party or others.  Defendant's production of any confidential information documents hereunder will be made only after a suitable protective order has been entered by the Court.

7.    Defendant objects to the Interrogatories and the Instructions and Definitions to the extent that they call for disclosure of information or documents that already have been produced pursuant to the subpoena issued by Plaintiff on or about March 26, 2007.

### Specific Objections and Responses

1.    Please state the full name, address, current occupation, job title and relationship to the parties herein of each person who is answering these interrogatories, assisting the answering of these interrogatories (or has assisted), and who has been consulted for purposes of answering these interrogatories.

**ANSWER:**   Subject to its General Objections, Defendant responds:  Mark Vehslage and Richard Schripsema.  Both may be contacted through Defendant's counsel.

2.   Set forth the names, addresses and relationships to the parties of all persons from whom written statements relating to the facts alleged in the complaint have been taken; indicate the date that each statements was taken and the person who now possesses it.

**ANSWER:**   In addition to its General Objections, Defendant objects to this interrogatory to the extent that it calls for the production of information and/or documents covered by attorney-client privilege or the work-product doctrine.  Subject to these objections, Defendant responds that no produceable statements have been taken at this time.

3.   With respect to the corporation known as Lakewood Properties, Ltd., please set forth the following information:

A.   Describe each class of stock and, for each such class, set forth the total number of shares authorized, the total number of shares issued and the total number of shares outstanding;

B.   Set forth the name and address of each member of the board of directors and specify the number of shares of each class of stock owned by each director.  Also indicate which director is the Chairman of the Board;

C.   Set forth the name and address of the current President, Vice President, Treasurer and Secretary; and, to the extent that you have not already done so, specify the number of shares of each class of stock owned by each officer;

D.   Summarize and briefly describe the nature and business of the corporation;

E.   Has the charter of the corporation ever been suspended, revoked, dissolved or cancelled?  If your answer is anything other than an unqualified "No," please set forth details with respect to each such action.  Your answer should include, but not be limited to, the date and reason for each such action and the person, persons, entities or agencies who initiated the action;

F.   Please set forth the name, address and telephone number of the custodian of the corporation's:

     i.   Minute Book
     ii.   Balance sheets for the years 2000 to present.
     iii.   Income statements for the years 2000 to present.
     iv.   Ledgers for the years 2000 to present.

**ANSWER:**  In addition to its General Objections, Defendant objects because this interrogatory is overbroad, unduly burdensome, and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence, given the claims and issues in this case as framed by Plaintiff. Defendant further objects that this is a multi-part interrogatory, each subpart of which should apply towards the interrogatory limit set forth in the local rules for the Northern District of Illinois.

4.    Identify each and every bank account held by, or for the benefit of, Lakewood.

**ANSWER:**  In addition to its General Objections, Defendant objects because this interrogatory is overbroad and unduly burdensome, as it seeks information regarding accounts unrelated to Beta, Weaver, or any funds transferred to or from such entities. Subject to these objections, Defendant responds that it will produce responsive documents pursuant to F.R.C.P. 33(d) regarding accounts related to transfers to or from Beta or Weaver.

5.    Identify each account held at a broker dealer or other financial institution in the name of, or for the benefit of, Lakewood.

**ANSWER:**  In addition to its General Objections, Defendant objects because this interrogatory is overbroad and unduly burdensome, as it seeks information regarding accounts unrelated to Beta, Weaver, or any funds transferred to or from such entities. Subject to these objections, Defendant responds that it will produce responsive documents pursuant to F.R.C.P. 33(d) regarding accounts related to transfers to or from Beta or Weaver.

6.    Did Lakewood Properties provide any service to, or for the benefit of, Brad Weaver or Beta Asset Management? If yes, describe in detail each and every service provided and the compensation received by Lakewood for each and every service.

**ANSWER:**  Subject to its General Objections, Defendant responds that it did not provide any service directly to Weaver or Beta.

- 5 -

    7.    Did Lakewood Properties provide any product or tangible goods to, or for the benefit of, Brad Weaver or Beta Asset Management? If yes, describe in detail each such product or tangible good, state the date on which it was provided and the compensation received by Lakewood for each product or tangible good provided.

    **ANSWER:** Subject to its General Objections, Defendant responds that it did not provide any product or tangible goods directly to Weaver or Beta.

    8.    List each transfer of funds from an account held by, or for the benefit of, Lakewood to, or for the benefit of, Brad Weaver or Beta Asset Management.

    **ANSWER:** In addition to its General Objections, Defendant objects because the term "transfer of funds" is vague and ambiguous. Subject to these objections, Defendant responds that it will produce responsive documents pursuant to F.R.C.P. 33(d).

    9.    For each transfer identified in interrogatory number 8, state the purpose of such transfer.

    **ANSWER:** In addition to its General Objections, Defendant objects because the term "transfer" is vague and ambiguous. Subject to these objections, Defendant responds that the answer to this interrogatory is better obtained through deposition testimony in the already-noticed Rule 30(b)(6) deposition of Defendant's representative.

    10.    For each transfer identified in response to interrogatory number 8 above, describe the consideration, if any, provided to, or for the benefit of, Lakewood from, for, or on behalf of Brad Weaver or Beta Asset Management.

    **ANSWER:** In addition to its General Objections, Defendant objects because the term "transfer" is vague and ambiguous. Subject to these objections, Defendant responds that the consideration provided was the promise of the return of the funds provided to Weaver or Beta. Defendant further responds that the answer to this interrogatory is better obtained through deposition testimony in the already-noticed Rule 30(b)(6) deposition of Defendant's representative.

11.    List each transfer of funds from an account held by, or for the benefit of, Brad Weaver or Beta Asset Management to, or for the benefit of, Lakewood Properties.

**ANSWER:**    In addition to its General Objections, Defendant objects because the term "transfer of funds" is vague and ambiguous.  Subject to these objections, Defendant responds that it will produce responsive documents pursuant to F.R.C.P. 33(c).

12.    For each transfer identified in interrogatory number 11, state the purpose of such transfer.

**ANSWER:**    In addition to its General Objections, Defendant objects because the term "transfer" is vague and ambiguous, and because the information sought is better obtained from the entity causing such transfer.

13.    For each transfer identified in response to interrogatory number 11 above, describe the consideration, if any, provided to, or for the benefit of, Brad Weaver or Beta Asset Management from, for, or on behalf of, Lakewood.

**ANSWER:**    In addition to its General Objections, Defendant objects because the term "transfer" is vague and ambiguous, and because the answer to this interrogatory is better obtained through the deposition testimony in the already-noticed Rule 30(b)(6) deposition of Defendant's representative.    Subject to these objections, Defendant responds that the consideration provided was monetary consideration provided to Brad Weaver or Beta Asset Management from, or on behalf of, Lakewood.

14.    State the total amount of funds transferred from any person or entity on behalf of Lakewood to, or for the benefit of, Brad Weaver or Beta Asset Management.

**ANSWER:**    In addition to its General Objections, Defendant objects because the term "funds transferred" is vague and ambiguous.  Subject to these objections, Defendant responds that it will produce responsive documents pursuant to F.R.C.P. 33(d).

15.    State the total amount of funds received by Lakewood, or by another person or entity for the benefit of Lakewood, from, or on behalf of, Brad Weaver or Beta Asset Management.

- 7 -

**ANSWER:**    Subject to its General Objections, Defendant responds that it will produce responsive documents pursuant to F.R.C.P. 33(d).

16.    Does Lakewood Properties contend that it provided reasonably equivalent value to, or for the benefit of, Brad Weaver or Beta Asset Management in exchange for the transfer of the funds to or for its benefit as identified in response to interrogatory number 15.

**ANSWER:**    In addition to its General Objections, Defendant objects because the term "transfer of funds" is vague and ambiguous.  Subject to these objections, Defendant responds that it provided reasonably equivalent value for the transfers identified in response to Interrogatory 15.

17.    List each transfer of funds from Lakewood Properties to, or for the benefit of, Mark Vehslage between January 1, 2002, and the present.

**ANSWER:**    In addition to its General Objections, Defendant objects because this interrogatory is overbroad, unduly burdensome, and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence, given the claims and issues in this case as framed by Plaintiff.

18.    List each transfer of funds from Lakewood Properties to, or for the benefit of, Richard Schripsema between January 1, 2002, and the present.

**ANSWER:**    In addition to its General Objections, Defendant objects because the term "transfer of funds" is vague and ambiguous, and because this interrogatory is overbroad, unduly burdensome, and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence, given the claims and issues in this case as framed by Plaintiff.

19.    Identify each individual or entity that had an ownership interest in Lakewood Properties, Ltd., between January 1, 2002, and the present.

- 8 -

**ANSWER:**  In addition to its General Objections, Defendant objects because this interrogatory is overbroad, unduly burdensome, and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence, given the claims and issues in this case as framed by Plaintiff.

20.    Identify each officer and director of Lakewood Properties, LLC between January 1, 2002 and the present.

**ANSWER:**  In addition to its General Objections, Defendant objects because this interrogatory is overbroad, unduly burdensome, and seeks irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence, given the claims and issues in this case as framed by Plaintiff.

Dated:  December 12, 2007              Respectfully Submitted,

                                       Lakewood Properties, Ltd.

                                       Matthew C. Crowl
                                       One of its Attorneys

                                       Eugene J. Geekie, Jr.
                                       Matthew C. Crowl
                                       Zhiyuan "Mike" Xu
                                       SCHIFF HARDIN LLP
                                       6600 Sears Tower
                                       233 South Wacker Drive
                                       Chicago, IL  60606
                                       Telephone: (312) 258-5500
                                       Facsimile: (312) 258-5600
                                       egeekie@schiffhardin.com
                                       mcrowl@schiffhardin.com
                                       mxu@schiffhardin.com

- 9 -

## VERIFICATION OF INTERROGATORY RESPONSES

I, Mark Vehslage , hereby make this Verification on behalf of

Lakewood Properties . I verify that the statements made in the foregoing Defendant Lakewood

Properties, Ltd.'s Objections and Responses to Plaintiff's Interrogatories are true and correct to

the best of my knowledge, information, and belief. I understand that any false statements made

herein are subject to the penalties as provided by law.

Dated: 12/12/07

Subscribed to and sworn to before me
this 12 day of December , 2007.

_____
Notary Public

CHGNZZ17\531.1

PATRICIA LUZ CABALLERO
Commission # 1640137
Notary Public · California
Santa Barbara County
My Comm. Expires Jan 22, 2010

12/12/07   WED 15:51 FAX                    S H CHICAGO                     –                    ☒011

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on December 12, 2007, copies of **Defendant Lakewood Properties, Ltd.'s Objections and Responses to Plaintiff's Interrogatories** were caused to be served upon the party listed below in the manner identified below.

<u>Via Facsimile</u>

James L. Kopecky

James L. Kopecky, P.C.

312 North Clark Street, Suite 2200

Chicago, Illinois 60610

Phone (312)-527-3966

Fax (312)-527-3968

jim@jlkopecky.com

*Counsel for Plaintiff*

Matthew C. Crowl

# Exhibit

# I

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JAMES L. KOPECKY, RECEIVER FOR  )
BRAD A. WEAVER AND BETA ASSET   )
MANAGEMENT, INC.,                    )
                                     )
           Plaintiff,         )    Case No. 07 C 2863
                                   )
     v.                       )    Judge Pallmeyer
                                   )
LAKEWOOD PROPERTIES, LTD.     )
                                   )
          Defendant.     )

**ANSWERS TO PLAINTIFF'S RULE 31 DEPOSITION OF**
**MARK VEHSLAGE BY WRITTEN QUESTIONS**

    Mark Vehslage, through its undersigned attorneys, responds to Plaintiff's Rule 31

Deposition of Mark Vehslage by Written Questions as follows:

    1.     Your name is Mark Vehslage, correct?

    **RESPONSE:** Yes.


    2.     What is your correct home address?

    **RESPONSE:** 2232 Santa Barbara Street, Santa Barbara, California 93105.


    3.     Are you an officer or director of Lakewood Properties, Ltd. ("Lakewood")?

    **RESPONSE:** I respectfully assert my constitutional privilege under the Fifth

Amendment to the Constitution of the United States and decline to answer the question on the

grounds that the answer may tend to incriminate me.


    4.     As an officer or director of Lakewood you are familiar with its business, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

5.    As an officer or director of Lakewood you are aware that Lakewood entered into transactions with Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

6.    As an officer or director of Lakewood you are familiar with its transactions with Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

7.    For purposes of income tax treatment, Lakewood made an "S" election, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

8.    Lakewood is an "S Corporation," correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

9.    You, Mark Vehslage, caused Lakewood to be created and incorporated?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

      10.    Mark Vehslage and Richard Schripsema are the only shareholders of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

      11.    Mark Vehslage and Richard Schripsema have always been the only shareholders of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

      12.    Mark Vehslage and Richard Schripsema created Lakewood for their individual benefit, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

      13.    Lakewood was formed to, and did, benefit its two shareholders, Mark Vehslage and Richard Schripsema, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

14.   Richard Schripsema and Mark Vehslage are the only officers and directors of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

15.   From 1997 to the present, Richard Schripsema and Mark Vehslage have been the only officers and directors of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

16.   At all times Mark Vehslage and Richard Schripsema controlled Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

17.   Lakewood did not hold an annual shareholders meeting from 1997 to the present, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

18.   Lakewood did not hold officers and directors meetings from 1997 to the present, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 4 -

19.   Lakewood does not have Board resolutions authorizing the transactions it entered into with Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

20.   Lakewood did not maintain minutes of Board or shareholder meetings addressing its transactions with Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

21.   Lakewood failed to maintain corporate formalities between 1997 and the present, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

22.   Mark Vehslage never provided any products to Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

23.   Mark Vehslage never provided any services to Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 5 -

24.   Mark Vehslage never provided any products for the benefit of Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

25.   Mark Vehslage never provided any services for the benefit of Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

26.   Lakewood's primary business was real estate investment and management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

27.   Mark Vehslage never completed any contract, account opening, or other documentation relating to its purported investments with Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

28.   Mark Vehslage is an experienced investor, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 6 -

29.   Mark Vehslage caused Lakewood to transfer funds to Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

30.   Mark Vehslage commingled personal funds with Lakewood funds, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

31.   On June 4, 2004, Chicago Title and Trust transferred $2,658,275.22 to Mark Vehslage's account number 0002423669 at The Northern Trust Company, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

32.   The $2,658,275.22 transferred by Chicago Title and Trust was funds received by Chicago Title and Trust from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

33.   Mark Vehslage did not provide value in good faith for the receipt of the funds transferred from Chicago Title and Trust to his account on June 4, 2004, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

34.   Mark Vehslage caused Lakewood to accept funds from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

35.   Mark Vehslage did not investigate Brad Weaver or Beta Asset Management before providing funds to Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

36.   Mark Vehslage did not conduct due diligence on Beta Asset Management or Brad Weaver prior to providing funds to Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

37.   Other than its transactions with Beta Asset Management and Brad Weaver, Mark Vehslage has never received more then a 25% return in less then two years on an investment, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

38.   The return Lakewood received from Beta Asset Management and Brad Weaver is the largest return on a securities investment Mark Vehslage has ever seen or been aware of, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

39.   Lakewood profited in the amount of $3,019,265.22 from its transactions with Brad Weaver and Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

40.   Did Lakewood provide reasonably equivalent value to or for the benefit of Beta Asset Management or Brad Weaver in exchange for the funds it received from Beta Asset Management and Brad Weaver?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

41.   You knew that Lakewood did not provide reasonably equivalent value to or for the benefit of Beta Asset Management or Brad Weaver in exchange for the funds it received from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

42.   Did Lakewood provide reasonably equivalent value to or for the benefit of Beta Asset Management or Brad Weaver in exchange for the $3,019,265.22 it received from Beta Asset Management and Brad Weaver?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 9 -

43.    You knew that Lakewood did not provide reasonable equivalent value to or for the benefit of Beta Asset Management or Brad Weaver in exchange for the $3,019,265.22 it received from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

44.    Attached as Exhibit 1 is a document purporting to be an account statement or Mark Vehslage's account at Beta Asset Management, dated 9/21/2004 correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

45.    Exhibit 1 purports to show Mark Vehslage's account has a Net Worth at Beta Asset Management of $16,193,128.00 as of September 21, 2004, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

46.    Based on your experience as an investor, you knew that Exhibit 1 showed an objectively unreasonable return on your investment, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

47.    Based on your experience as an investor, you knew that Exhibit 1 could not be true account statement and was, in fact, false, correct?

- 10 -

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

48. Attached as Exhibit 2 is a document purporting to be an account statement for Mark Vehslage's account at Beta Asset Management, dated 10/15/2004 correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

49. Exhibit 2 purports to show Mark Vehslage's account has a Net Worth at Beta Asset Management of $16,532,429.00 as of October 15, 2004, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

50. Based on your experience as an investor, you knew that Exhibit 2 showed an objectively unreasonable return on your investment, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

51. Based on your experience as an investor, you knew that Exhibit 2 could not be true account statement and was, in fact, false, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

52.     Attached as Exhibit 3 is a document purporting to be an account statement for Mark Vehslage's account at Beta Asset Management, dated 11/15/2004 correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

53.     Exhibit 3 purports to show Mark Vehslage's account has a Net Worth at Beta Asset Management of $17,365,876.00 as of November 15, 2004, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

54.     Based on your experience as an investor, you knew that Exhibit 3 showed an objectively unreasonable return on your investment, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

55.     Based on your experience as an investor, you knew that Exhibit 3 could not be true account statement and was, in fact, false, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

56.     Attached as Exhibit 4 is a document showing an exchange of e-mails between you and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 12 -

57.     The exchange of e-mails between you and Brad Weaver shows you requesting that Brad Weaver generate a false account statement for your personal use, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

58.     You knew that the account statements provided by Brad Weaver and Beta Asset Management were false, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

59.     You knew that Beta Asset Management was insolvent at the time of the transfers, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

60.     You knew that Beta Asset Management and Brad Weaver transferred funds to Lakewood, and for its benefit, with the actual intent to hinder, delay, or defraud any creditor including other purported Beta Asset Management investors, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

61.     You caused Lakewood to fail to accurately report the transfers it received from Beta Asset Management and Brad Weaver on its income tax returns filed with the Internal Revenue Service, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

62.   You caused Lakewood to file false tax returns with the Internal Revenue Service, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

63.   Lakewood transferred the funds it received from Beta Asset Management and Brad Weaver to Mark Vehslage, Heather Vehslage and Richard Schripsema, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

64.   You caused Lakewood to transfer funds it received from Beta Asset Management and Brad Weaver to Mark Vehslage, Heather Vehslage and Richard Schripsema, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

65.   Lakewood's transfers of funds received from Beta Asset Management and Brad Weaver to Mark Vehslage were not made in good faith, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 14 -

66.     Lakewood's transfers of funds received from Beta Asset Management and Brad Weaver to Mark Vehslage were not made for value, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

67.     Lakewood's transfers of funds received from Beta Asset Management and Brad Weaver to Richard Schripsema were not made in good faith, correct?

**RESPONSE:** *I respectfully assert my constitutional privilege under the Fifth* Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

68.     Lakewood's transfers of funds received from Beta Asset Management and Brad Weaver to Richard Schripsema were not made for value, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

69.     Lakewood's transfers of funds received from Beta Asset Management and Brad Weaver to Heather Vehslage were not made in good faith, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

70.     Lakewood's transfers of funds received from Beta Asset Management and Brad Weaver to Heather Vehslage *were not made for value, correct?*

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 15 -

71.     You used funds Lakewood received from Beta Asset Management and Brad Weaver to, among other things, purchase property in Santa Barbara, California, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

Dated:   March 12, 2008

Respectfully Submitted,
Lakewood Properties, Ltd.

Matthew C. Crowl
One of its Attorneys

Eugene J. Geekie, Jr.
Matthew C. Crowl
Zhiyuan "Mike" Xu
SCHIFF HARDIN LLP
6600 Sears Tower
233 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
egeekie@schiffhardin.com
mcrowl@schiffhardin.com
mxu@schiffhardin.com

- 16 -

## <u>CERTIFICATION OF ANSWERS TO WRITTEN DEPOSITION QUESTIONS</u>

I, Mark Vehslage, hereby certify that the answers made in the foregoing

Answers to Plaintiff's Rules 31 Deposition By Written Questions are true and correct to

the best of my knowledge, information, and belief.

Dated: <u>March 12, 2008</u>

_____
Mark Vehslage

Subscribed to and sworn to before me
this _____ day of _____, 2008.

_____
Notary Public

*see Attached*

CH1\5524340.1

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Santa Barbara_ }

On _March 12, 2008_ before me, _Patricia Luz Caballero, Notary Public_
     Date                        Here Insert Name and Title of the Officer

personally appeared _Mark R. Vehslage_
                                Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                   Signature of Notary Public

```
PATRICIA LUZ CABALLERO
Commission # 1640137
Notary Public - California
Santa Barbara County
My Comm. Expires Jan 22, 2010
```

Place Notary Seal Above

----------- **OPTIONAL** -----------

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____  Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on March 12, 2008, a copy of **Answers to Plaintiff's Rule 31 Deposition of Mark Vehslage by Written Questions** was caused to be served upon the party listed below in the manner identified below.

**Via Messenger**

Pravin B. Rao

Perkins Coie LLP

131 South Dearborn Street, Suite 1700

Chicago, IL 60603-5559

Phone (312) 324-8592

Fax (312) 324-9400

PRao@perkinscoie.com

*Counsel for Plaintiff*

Matthew C. Crowl

CH1\5524395.1

# Exhibit

# J

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE DARRAH
MAGISTRATE JUDGE NOLAN

UNITED STATES OF AMERICA

FILED

JUL 2 2 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

v.

BRAD A . WEAVER

)
)
)
)

No. 04 CR 1113

Violations: Title 18, United States Code,
Sections 1343 and 2

**COUNT ONE**

The UNITED STATES ATTORNEY charges:

1.      At times material herein:

        a.      Beta Asset Management, Inc. (Beta Asset Management) was incorporated in
1998 and was located at 440 North Wells Street in Chicago, Illinois.  The company was in the
business of offering and selling investments to the public.

        b.      Defendant BRAD A. WEAVER formed Beta Asset Management, was its
president  and its sole owner.  The defendant was also the sole owner of several related entities
including: Beta Capital Partners, LP; Beta Capital Advisors, LLC; and, Beta Capital Management,
LLC.   In addition to operating Beta Asset Management, defendant BRAD A. WEAVER was
employed in the securities brokerage business as a registered representative by NASD members,
including Raymond James Financial Services, Inc. (Raymond James), from in or about 1994 to
January 2004.

        c.      Defendant BRAD A. WEAVER, as a registered representative and through
Beta Asset Management and a small network of salesmen, offered and sold investments to the
public, including, among others: investments in his so-called error account trades; investments in

Beta Asset Management's hedge fund; and investments in notes purportedly issued by entities such as Raymond James and Beta Asset Management.

   d.    The investment in the so-called error account trades, as described by defendant BRAD A. WEAVER to investors and prospective investors, involved investing in already completed, profitable securities transactions, primarily options trades, which for one reason or another were allocated to Beta Asset Management's error account rather than to a customer. The defendant represented that the investments were risk free, were for a short period of time and involved an already determined, guaranteed profit of usually around 20% to 30%. As an example, the defendant told one prospective investor that if he invested $5,200,000, in less than a week the prospective investor would make a 32% profit on an already completed IBM option trade.

   e.    In the context of the securities brokerage business, an error account is one into which transactions not meeting customers' directions are placed. In other words, the securities brokerage firms rather than the customers accept liability for these mistakes in executing securities transactions. At times, these mistakes in executing trades result in profitable trades and at other times the mistakes result in losing trades. The defendant offered investments in what he represented to be profitable error account trades and represented to investors and prospective investors that securities industry regulations did not allow him to benefit from these profitable error trades. The defendant also represented to at least some prospective investors that he had $30,000,000 in the error account, further reducing any risk to investors.

   f.    The Beta Asset Management hedge fund investment, as described by defendant BRAD A. WEAVER to prospective investors and investors, was a very profitable fund, increasing in value by as much as 140% in 36 months. The defendant was the manager of the fund.

2

g.    The investment in notes purportedly issued by entities such as Raymond James and Beta Asset Management, as described by defendant BRAD A. WEAVER to investors and prospective investors, involved the investment of funds for a period of time, usually a year, to earn a particular return, generally in excess of 10%, all of which was backed by the issuer.

h.    The NASD is a self-regulatory organization in the securities industry tasked with overseeing the conduct of its securities brokerage firm members and their employees. The NASD's activities in turn are reviewed by the United States Securities and Exchange Commission, a federal regulatory agency responsible for enforcing the federal securities laws. Defendant BRAD A. WEAVER was employed by members of the NASD from in or about 1994 to January 2004.

2.    Beginning in or about 1999 and continuing through in or about December 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRAD A. WEAVER,

defendant herein, devised and intended to devise, and participated in a scheme and artifice to defraud and to obtain money and property from investors and potential investors in the so-called error account trades, in the Beta Asset Management hedge fund and in notes purportedly issued by entities such as Raymond James and Beta Asset Management by means of materially false and fraudulent pretenses, representations and promises and by means of material omissions, which scheme to defraud is further described below.

3.    During the period from in or about 1999 to in or about December 2004, defendant BRAD A. WEAVER offered and sold, and caused to be offered and sold, to more than 90 individuals, over $45,000,000 in investments in the so-called error account trades, the Beta Asset

3

Management hedge fund investment and the investment in notes purportedly issued by entities such as Raymond James and Beta Asset Management.

4.    It was part of the scheme to defraud that the defendant, in offering and selling, and causing others to offer and sell, investments in the so-called error account trades, made and caused to be made material misrepresentations about, among other things: (1) the existence of the error account; (2) the existence of the profitable trades; (3) the expected return on the investment; (4) the risk involved in the investment; (5) the existence of a securities industry regulation prohibiting the defendant from profiting on error account trades; and (6) the use of funds raised from investors. Neither the defendant nor Beta Asset Management had an error account as described by the defendant and the profitable trades the defendant reported to investors and prospective investors were all fictitious. The defendant intended to and did misappropriate investors' funds for his own use and benefit and to make ponzi-type payments to earlier investors. The defendant made these ponzi-type payments to keep investors from complaining to authorities and to create the false impression that the investments were profitable in order to encourage current investors to reinvest and others to make new investments.

5.    It was further part of the scheme to defraud that the defendant, in offering and selling, and causing others to offer and sell, investments in the Beta Asset Management hedge fund, made and caused to be made material misrepresentations about, among other things: (1) the profitability of the fund; (2) the trading record of the fund; and (3) the use of funds raised from investors. Although the defendant represented that the hedge fund had profited by as much as 140% over a 36 month period and at one point in time had $30,000,000 in it, in fact the hedge fund operated for less

4

than three weeks with no more than $30,000 in it. Moreover, the defendant intended to and did use investors' funds intended for the hedge fund to make ponzi-type payments to earlier investors.

6.      It was further part of the scheme to defraud that the defendant, in offering and selling, and causing others to offer and sell, investments in notes purportedly issued by entities such as Raymond  James  and  Beta  Asset  Management,  made  and  caused  to  be  made  material misrepresentations about, among others things: (1) the issuers of the notes; (2) the expected return on the notes; (3) the risk in the investment; and (4) the use of funds raised from the sale of notes. The defendant knew that Raymond James did not issue or even know about the notes and that Beta Asset Management did not have the financial ability to pay the returns without using money from later investors to make ponzi-type payments to earlier investors.

7.      It was further part of the scheme to defraud that defendant BRAD A. WEAVER misrepresented the financial condition and status of Beta Asset Management, including representing to at least one prospective investor that Beta Asset Management had $30,000,000 in its error account, that it had $50,000,000 under management in its funds and that it was registered with the NASD. The company had no error account as described by the defendant, no more than $30,000 in its funds and was not registered in any capacity with the NASD.

8.      It was further part of the scheme to defraud that defendant misappropriated funds from investors, commingled the funds from various investments, and then misappropriated the funds to make ponzi-type payments to earlier investors and to use for his own benefit. The defendant made the ponzi-type payments to earlier investors to keep investors from complaining to authorities and to make investors and prospective investors believe that the investments were profitable.

9.     It was further part of the scheme to defraud that defendant BRAD A. WEAVER and another individual at the defendant's direction misrepresented themselves in communications over the telephone and by email with prospective investors and investors to be "Paul Seritelli", a fictitious securities brokerage employee created by the defendant, whom the defendant represented as having knowledge of the status of the error account trades.

10.     It was further part of the scheme to defraud that defendant BRAD A. WEAVER, for the purpose of retaining funds received from investors, created and provided phony periodic account statements to investors and otherwise misrepresented to investors the status of their investments in person, over the telephone, by fax, by mail and by email.

11.     It was further part of the scheme to defraud that to avoid detection of his scheme, defendant BRAD A. WEAVER knowingly provided the NASD with fraudulently altered bank documents and further provided the NASD with false testimony under oath about the business and the financial condition of Beta Asset Management.

12.     It was further part of the scheme to defraud that the defendant misrepresented, concealed, hid and caused to be misrepresented, concealed and hidden the purposes of and acts in furtherance of this fraud scheme.

13.     As a result of the scheme to defraud, over 75 investors lost over $ 20,000,000.

14.     As a further part of the scheme, the defendant used the United States mails and interstate wire transmissions to further his scheme, primarily in communicating with prospective investors and investors and in receiving and using proceeds raised from investors.

6

15.    On or about August 15, 2003, in the Northern District of Illinois, Eastern Division,

BRAD A. WEAVER,

defendant herein, for the purpose of executing the above-described scheme, and attempting to do so,

did knowingly cause to be transmitted by means of wire communication in interstates commerce a

writing, sign and signal, in that defendant caused $20,000 to be wire transferred from the account

of investors at First Bank, through the Federal Reserve's facility in East Rutherford, New Jersey, to

the Beta Asset Management account at North Community Bank, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT TWO

The UNITED STATES ATTORNEY further charges:

1. Paragraphs One through Fourteen of this information are re-alleged and incorporated herein as if fully set forth.

2. On or about September 30, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

### BRAD A. WEAVER,

defendant herein, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce a writing, sign and signal, in that defendant caused $90,000 to be wire transferred from the account of an investor at National City Bank, through the Federal Reserve's facility in East Rutherford, New Jersey, to the Beta Asset Management account at North Community Bank, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

8

## COUNT THREE

The UNITED STATES ATTORNEY further charges:

1. Paragraphs One through Fourteen of this information are re-alleged and incorporated herein as if fully set forth.

2. On or about February 4, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

### BRAD A. WEAVER,

defendant herein, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce a writing, sign and signal, in that defendant caused $200,000 to be wire transferred from the account of Bellco Credit Union at SunCorp Corporate Credit Union, through the Federal Reserve's facility in East Rutherford, New Jersey, to the Beta Asset Management account at North Community Bank, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT FOUR

The UNITED STATES ATTORNEY further charges:

1. Paragraphs One through Fourteen of this information are re-alleged and incorporated herein as if fully set forth.

2. On or about April 6, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

### BRAD A. WEAVER,

defendant herein, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce a writing, sign and signal, in that defendant caused $83,562.01 to be wire transferred from the account of Moritz Title Company at Community First National Bank, through the Federal Reserve's facility in East Rutherford, New Jersey, to the Beta Asset Management account at Bank of America, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNT FIVE

The UNITED STATES ATTORNEY further charges:

1. Paragraphs One through Fourteen of this information are re-alleged and incorporated herein as if fully set forth.

2. On or about July 13, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

### BRAD A. WEAVER,

defendant herein, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce a writing, sign and signal, in that defendant caused $30,000 to be wire transferred from the account of an investor at Sun Trust Bank, through the Federal Reserve's facility in East Rutherford, New Jersey, to the Beta Asset Management account at North Community Bank, Chicago, Illinois;

In violation of Title 18, United States Code, Section 1343 and 2.


UNITED STATES ATTORNEY

# Exhibit K

℥AO 245B   (Rev. 06/05) Judgment in a Criminal Case
           Sheet 1

# UNITED STATES DISTRICT COURT

|  |  |
|---|---|
| __Northern__ District of | __Illinois, Eastern Division__ |

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| V. | |
| Brad A. Weaver | |

Case Number:        04 CR 1113 - 1

USM Number:       17511- 424

Marc M. Barnett
Defendant's Attorney

## THE DEFENDANT:

X pleaded guilty to count(s)     one of the indictment.

☐ pleaded nolo contendere to count(s)
    which was accepted by the court.

☐ was found guilty on count(s)
    after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. Sect. 1343 | Wire Fraud | 8/15/2003 | one |

       The defendant is sentenced as provided in pages 2 through    6    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

X Count(s)    any remaining counts    ☐ is    X are   dismissed on the motion of the United States.

      It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/20/2008
Date of Imposition of Judgment

Signature of Judge

John W. Darrah, U.S. District Court Judge
Name and Title of Judge

3/4/2008
Date

AO 245B    (Rev. 06/05) Judgment in Criminal Case
Sheet 2 — Imprisonment

| | |
|---|---|
| DEFENDANT: Brad A. Weaver | Judgment — Page 2 of 6 |
| CASE NUMBER: 04 CR 1113 - 1 | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

151 months on count one of the indictment.

X    The court makes the following recommendations to the Bureau of Prisons:
That the defendant be placed at the Duluth, MN. BOP facility. That the defendant participate in a comprehensive program for mental health.

X    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐    at _____ ☐ a.m. ☐ p.m.    on _____ .

    ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐    before 2 p.m. on _____

    ☐    as notified by the United States Marshal.

    ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
          Sheet 3 — Supervised Release

| | | Judgment—Page __3__ of __6__ |
|---|---|---|

DEFENDANT:      Brad A. Weaver
CASE NUMBER:    04 CR 1113 - 1

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

3 years on count one of the indictment.

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | | Judgment—Page 4 of 6 |
|---|---|---|

DEFENDANT:          Brad A. Weaver
CASE NUMBER:      04 CR 1113 - 1

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant shall participate in a mental health treatment program at the direction of the probation officer.

That defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

The defendant shall pay any financial penalty that is imposed by this judgment, and that remains unpaid at the commencement of the term of supervised release. The monthly installment payments shall be in an amount equal to 10% of the defendant's net monthly income.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case Document 83    Filed 02/20/2008    Page 5 of 9
Sheet 5 — Criminal Monetary Penalties

| | | Judgment — Page __5__ of __6__ |
|---|---|---|
| DEFENDANT: | Brad A. Weaver | |
| CASE NUMBER: | 04 CR 1113 - 1 | |

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ 22,684,200.16 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| see attached list entitled "weaver claimants" | | $22,684,200.16 | |

| **TOTALS** | $ _____ 0 | $ _____ 22,684,200.16 |
|---|---|---|

☒ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

| | | Judgment — Page ___6___ of ___6___ |
|---|---|---|

DEFENDANT:    Brad A. Weaver
CASE NUMBER:    04 CR 1113 - 1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    X    Lump sum payment of $ __22,684,300.16__ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance    ☐ C,    ☐ D,    ☐    E, or    ☐ F below; or

B    ☐    Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

C    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    ☐    Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

## WEAVER CLAIMANTS

| Last | First | Loss |
|------|-------|------|
| | | $ 17,000.00 |
| | | $ 159,000.00 |
| | | $ 90,000.00 |
| | | $ 36,500.00 |
| | | $ 82,150.00 |
| | | |
| | | $ 150,913.17 |
| | | |
| | | $ 75,750.00 |
| | | $ 28,700.00 |
| | | $ 57,000.00 |
| | | $ 22,100.00 |
| | | $ 30,000.00 |
| | | $ 22,250.00 |
| | | $ 30,000.00 |
| | | $ 5,000.00 |
| | | $ 133,800.00 |
| | | $ 44,500.00 |
| | | $ 50,000.00 |
| | | $ 30,862.00 |
| | | $ 1,035,000.00 |
| | | $ 28,000.00 |
| | | $ 10,000.00 |
| | | $ 4,920,947.00 |
| | | $ 29,000.00 |
| | | $ 35,000.00 |
| | | $ 55,030.00 |
| | | $ 39,750.00 |
| | | $ 36,500.00 |

| | |
|---|---:|
| $ | 81,800.00 |
| $ | 31,000.00 |
| $ | 255,000.00 |
| $ | 82,450.00 |
| $ | 32,000.00 |
| $ | 33,800.00 |
| $ | 2,395,000.00 |
| $ | 31,400.00 |
| $ | 98,700.00 |
| $ | 283,562.00 |
| $ | 40,000.00 |
| $ | 86,600.00 |
| $ | 239,015.00 |
| $ | 109,600.00 |
| $ | 113,000.00 |
| $ | 44,500.00 |
| $ | 20,000.00 |
| $ | 230,000.00 |
| $ | 270,489.00 |
| $ | 5,681,600.00 |
| $ | 30,000.00 |
| $ | 45,984.00 |
| $ | 1,859,200.00 |
| $ | 20,000.00 |
| $ | 130,400.00 |
| $ | 75,000.00 |
| $ | 49,500.00 |
| $ | 2,000.00 |
| $ | 69,000.00 |
| $ | 100,000.00 |
| $ | 17,250.00 |
| $ | 22,250.00 |
| $ | 75,000.00 |
| $ | 91,000.00 |

Case 1:04-cr-01113    Document 83    Filed 02/20/2008    Page 9 of 9

| | |
|---|---|
| $ | 45,750.00 |
| $ | 149,538.99 |
| $ | 125,750.00 |
| $ | 141,900.00 |
| $ | 40,000.00 |
| $ | 99,948.50 |
| | $34,453.00 |
| $ | 49,904.69 |
| $ | 45,000.00 |
| $ | 100,000.00 |
| $ | 136,850.00 |
| $ | 18,000.00 |
| $ | 21,333.48 |
| $ | 136,400.00 |
| $ | 30,267.66 |
| $ | 75,620.00 |
| $ | 34,034.00 |
| $ | 20,000.00 |
| $ | 46,100.00 |
| $ | 81,400.00 |
| $ | 76,900.00 |
| $ | 821,400.00 |
| $ | 64,934.00 |
| $ | 192,325.00 |
| | |
| $ | 15,000.00 |
| $ | 66,687.66 |
| $ | 13,851.01 |
| | |
| | $22,684,200.16 |

# Exhibit L

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 04 C 8279 |
| | ) | Judge Rebecca R. Pallmeyer |
| BRAD A. WEAVER, BETA ASSET MANAGEMENT, INC., | ) ) ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| Defendants. | ) | |

## JUDGMENT AS TO DEFENDANTS BRAD A. WEAVER
## AND BETA ASSET MANAGEMENT, INC.

The Securities and Exchange Commission having filed a Complaint and Defendants Brad

A. Weaver and Beta Asset Management, Inc. ("Defendants") having entered a general

appearance; consented to the Court's jurisdiction over Defendants and the subject matter of this

action; consented to entry of this Final Judgment; waived findings of fact and conclusions of law;

and waived any right to appeal from this Final Judgment:

### I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendants and

Defendants' agents, servants, employees, attorneys, and all persons in active concert or

participation with them who receive actual notice of this Final Judgment by personal service or

otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section

10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and

Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or

instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants and Defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or

2

would operate as a fraud or deceit upon the purchaser.

III.

Upon motion of the Commission, the Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and, if so, the amount(s) of the disgorgement and/or civil penalty. If disgorgement is ordered against one or both of the Defendants, they shall pay prejudgment interest thereon, calculated from December 23, 2004, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendants will be precluded from arguing that they did not violate the federal securities laws as alleged in the Complaint; (b) Defendants may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties.

3

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is

incorporated herein with the same force and effect as if fully set forth herein, and that Defendants

shall comply with all of the undertakings and agreements set forth therein.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

Dated: _Feb. 3, 2006_

_Rebecca Ra____y_
UNITED STATES DISTRICT JUDGE

4

# Exhibit M

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES L. KOPECKY, RECEIVER    )
FOR BRAD A. WEAVER AND        )
BETA ASSET MANAGEMENT, INC.,  )
                              )
        Plaintiff,            )        Case No. 07 C 2863
                              )
    v.                        )        Judge Pallmeyer
                              )
LAKEWOOD PROPERTIES, LTD.,    )
                              )
        Defendant.            )

ANSWERS TO PLAINTIFF'S RULES 31 AND 30(b)(6)
DEPOSITION OF DEFENDANT BY WRITTEN QUESTIONS

Lakewood Properties, Ltd. ("Defendant" or "Lakewood"), through its undersigned

attorneys, hereby responds to Plaintiff's Rules 31 and 30(b)(6) Deposition of Defendant by

Written Questions as follows:

1.    Mark Vehslage is the person most knowledgeable and prepared to testify on behalf
      of Lakewood Properties, Ltd. concerning the transactions with Beta Asset
      Management and/or Brad A. Weaver, correct?

      **RESPONSE:** Yes.

2.    Mark Vehslage is the person most knowledgeable and prepared to testify on behalf
      of Lakewood Properties, Ltd. concerning the subject matter described in Plaintiff's
      Complaint, Defendant's Answers and Affirmative Defenses, correct?

      **RESPONSE:** Yes.

3.    Lakewood is an Illinois corporation, correct?

      **RESPONSE:** I respectfully assert my constitutional privilege under the Fifth

Amendment to the Constitution of the United States and decline to answer the question on the

grounds that the answer may tend to incriminate me.

4.      Lakewood was incorporated in 1997, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

5.      For purposes of income tax treatment, Lakewood made an "S" election, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

6.      Lakewood is an "S Corporation," correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

7.      Mark Vehslage and Richard Schripsema caused Lakewood to be created and incorporated, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

8.      Mark Vehslage and Richard Schripsema are the only shareholders of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 2 -

9.      Mark Vehslage and Richard Schripsema have always been the only shareholders of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

10.     Mark Vehslage and Richard Schripsema created Lakewood for their individual benefit, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

11.     Lakewood was formed to, and did, benefit its two shareholders, Mark Vehslage and Richard Shripsema, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

12.     Richard Schripsema and Mark Vehslage are the only officers and directors of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

13.     From 1997 to the present, Richard Schripsema and Mark Vehslage have been the only officers and directors of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 3 -

14.    At all times Mark Vehslage and Richard Schripsema controlled Lakewood, correct?

**RESPONSE:** *I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.*

15.    Lakewood did not hold an annual shareholders meeting in 1997, correct?

**RESPONSE:** *I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.*

16.    Lakewood did not hold an annual shareholders meeting in 1998, correct?

**RESPONSE:** *I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.*

17.    Lakewood did not hold an annual shareholders meeting in 1999, correct?

**RESPONSE:** *I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.*

18.    Lakewood did not hold an annual shareholders meeting in 2000, correct?

**RESPONSE:** *I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.*

19.    Lakewood did not hold an annual shareholders meeting in 2001, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

20.    Lakewood did not hold an annual shareholders meeting in 2002, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

21.    Lakewood did not hold an annual shareholders meeting in 2003, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

22.    Lakewood did not hold an annual shareholders meeting in 2004, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

23.    Lakewood did not hold an annual shareholders meeting in 2005, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

24.    Lakewood did not hold an annual shareholders meeting in 2006, correct?

- 5 -

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

25.    Lakewood did not hold an annual shareholders meeting in 2007, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

26.    Lakewood did not hold officers and directors meetings in 1997, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

27.    Lakewood did not hold officers and directors meetings in 1998, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

28.    Lakewood did not hold officers and directors meetings in 1999, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

29.    Lakewood did not hold officers and directors meetings in 2000, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

      30.     Lakewood did not hold officers and directors meetings in 2001, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

      31.     Lakewood did not hold officers and directors meetings in 2002, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

      32.     Lakewood did not hold officers and directors meetings in 2003, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

      33.     Lakewood did not hold officers and directors meetings in 2004, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

      34.     Lakewood did not hold officers and directors meetings in 2005, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

35.    Lakewood did not hold officers and directors meetings in 2006, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

36.    Lakewood did not hold officers and directors meetings in 2007, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

37.    Lakewood transferred funds to, and received funds from, Beta Asset Management and Brad Weaver between January 30, 2003 and June 16, 2004, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

38.    Attached as Exhibit 6 are portions of the tax returns Lakewood filed with the Internal Revenue Service for the year 2003, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

39.    Exhibit 6 is a true and genuine copy of the 2003 tax returns Lakewood filed with the Internal Revenue Service, correct?

- 8 -

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

40.   Lakewood does not have Board resolutions authorizing the transactions it entered into with Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

41.   Lakewood did not maintain minutes of Board or shareholder meetings addressing its transactions with Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

42.   Lakewood failed to maintain corporate formalities between 1997 and the present, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

43.   Lakewood never provided any product to Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 9 -

44.   Lakewood never provided any services to Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

45.   Lakewood never provided any product for the benefit of Beta Asset Management or Brad Waver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

46.   Lakewood never provided any services for the benefit of Beta Asset Management or Brad Waver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

47.   Lakewood's primary business is, and always has been, real estate investment and management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

48.   Other then its transactions with Beta Asset Management and Brad Weaver, Lakewood did not do any other securities related investing, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

49. Lakewood never completed any subscription agreements with Beta Asset Management or Brad Waver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

50. Lakewood never completed any contract, account opening, or other documentation relating to its purported investments with Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

51. Richard Schripsema is a sophisticated, accredited investor, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

52. Mark Vehslage is an experienced investor, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

53. Lakewood represented to Raymond James that it had extensive experience with investments in equities, bonds, options/futures, mutual funds and margin trading, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 11 -

54.   Mark Vehslage and Richard Schripsema caused Lakewood to transfer funds to Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

55.   Mark Vehslage commingled personal funds with Lakewood funds, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

56.   Richard Schripsema commingled personal funds with Lakewood funds, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

57.   Mark Vehslage and Richard Schripsema caused Lakewood to accept funds from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

58.   Lakewood did not investigate Brad Weaver or Beta Asset Management before providing funds to Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 12 -

59.    Lakewood did not conduct due diligence on Beta Asset Management or Brad Weaver prior to providing funds to Beta Asset Management or Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

60.    Other than its transactions with Beta Asset Management and Brad Weaver, Lakewood has never received more then a 25% return in less than two years on an investment, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

61.    The return Lakewood received from Beta Asset Management and Brad Weaver is the largest return on a securities investment Lakewood has ever seen or been aware of, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

62.    Attached as Exhibit 1 are all the documents Lakewood provided in response to Plaintiff's Interrogatory Number 8, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

63.    Plaintiff's Interrogatory Number 8 asked for a list of each transfer of funds from an account held by, or for the benefit of, Lakewood to, or for the benefit of, Brad Weaver or Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

64.    Lakewood fully, completely and accurately responded to Plaintiff's Interrogatory Number 8 correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

65.    Exhibit 1 contains a complete record of every transfer of funds from an account held by, or for the benefit of, Lakewood to, or for the benefit of, Brad Weaver or Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

66.    A total of $983,010.00 was transferred from an account held by, or for the benefit of, Lakewood to, or for the benefit of, Brad Weaver or Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

67.    Attached s Exhibit 2 are all the documents Lakewood provided in response to Plaintiff's Interrogatory Number 11, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 14 -

68.    Plaintiff Interrogatory Number 11 asked Lakewood to list each transfer of funds from an account held by, or for the benefit of, Brad Weaver or Beta Asset Management to, or for the benefit of, Lakewood Properties, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

69.    Lakewood fully, completely and accurately responded to Interrogatory Number 11, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

70.    Exhibit 2 contains a complete record of each transfer of funds from an account held by, or for the benefit of, Brad Weaver or Beta Asset Management to, or for the benefit of, Lakewood Properties, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

71.    On or about January 30, 2003 Mark Vehslage and Richard Schripsema caused $125,000 to be transferred to Beta Asset Management or Brad Weaver for the benefit of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

72.    On or about March 21, 2003 Mark Vehslage and Richard Schripsema caused $77235,000 to be transferred to Beta Asset Management or Brad Weaver for the benefit of Lakewood, correct?

- 15 -

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

73. On or about May 12, 2003 Mark Vehslage and Richard Schripsema caused $1113,000 to be transferred to Beta Asset Management or Brad Weaver for the benefit of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

74. On or about May 200, 2003 Mark Vehslage and Richard Schripsema caused $50,000 to be transferred to Beta Asset Management or Brad Weaver for the benefit of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

75. On or about June 3, 2003, Mark Vehslage and Richard Schripsema caused $60,000 to be transferred to Beta Asset Management or Brad Weaver for the benefit of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

76. On or about June 16, 2004, Mark Vehslage and Richard Schripsema caused 500,010 to be transferred to Beta Asset Management or Brad Weaver for the benefit of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

77.    On or about February 25, 2003, Lakewood received, for its benefit, $95,000 transferred from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

78.    On or about February 25, 2003, Lakewood received, for its benefit, $40,000 transferred from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

79.    On or about April 30, 2003 Lakewood received, for its benefit, $150,000 transferred from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

80.    On or about February 20, 2004, Lakewood received, for its benefit, $9,000 transferred from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

81.    On or about March 5, 2004, Lakewood received, for its benefit, $50,000 transferred from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

82.    On or about April 1, 2004, Lakewood received, for its benefit, $500,000 transferred from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

83.    On or about May 18, 2004, Lakewood received, for its benefit, $250,000 transferred from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

84.    On or about May 19, 2004, Lakewood received, for its benefit, $250,000 transferred from Beta A set Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

85.    On or about June 4, 2004, Lakewood received, for its benefit, $2,658,275.22 transferred from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 18 -

86.    A total of $4,502,275.22 was transferred from an account held by, or for the benefit of, Brad Weaver or Beta Asset Management to, or for the benefit of, Lakewood Properties, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

87.    Lakewood received $3,019,265.22 more from Brad Weaver and Beta Asset Management then it transferred to Brad Weaver and Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

88.    Attached as Exhibit 3 is a spreadsheet identifying each transfer of funds between, or for the benefit of, Lakewood and Brad Weaver or Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

89.    Lakewood profited in the amount of $3,019,265.22 from its transactions with Brad Weaver and Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

90.    Did Lakewood provide reasonably equivalent value to or for the benefit of Beta Asset Management or Brad Weaver in exchange for the funds it received from Beta Asset Management and Brad Weaver?

- 19 -

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

91.  Lakewood did not provide reasonably equivalent value to or for the benefit of Beta Asset Management or Brad Weaver in exchange for the funds it received from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

92.  Did Lakewood provide reasonably equivalent value to or for the benefit of Beta Asset Management or Brad Weaver in exchange for the $3,019,265.22 it received from Beta Asset Management and Brad Weaver?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

93.  Lakewood did not provide reasonably equivalent value to or for the benefit of Beta Asset Management or Brad Weaver in exchange for the $3,019,265.22 it received from Beta Asset Management and Brad Weaver, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

94.  Lakewood engaged in transfers of funds between it and Beta Asset Management or Brad Weaver between January 30, 2003 and June 16, 2004, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 20 -

95.    Lakewood received a 458% return on its transfers in less then 18 months, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

96.    A return of 458% in less then 18 months is not objectively reasonable, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

97.    Attached as Exhibit 4 is a group of documents purporting to be account statements for Lakewood Properties' account at Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

98.    The documents that constitute Exhibit 4 are dated July 3, 2003, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

99.    The documents that are Exhibit 4 show that Lakewood Properties has a Net Worth at Beta Asset Management of $4,332,000.94 as of July 3, 2003, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 21 -

100.  As of July 3, 2003 Lakewood had transferred $483,010.00 to Beta Asset Management and had already received $285,000 from Beta Asset Management, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

101.  Thus, Exhibit 4 shows that of July 3, 2003, if the statement were true, that Lakewood had received a return on its purported investments of 2,322%, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

102.  A return of 2,322% in less then 7 months is objectively unreasonable, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

103.  Lakewood knew that the purported statement contained in Exhibit 4 was false, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

104.  Lakewood knew that each statement it received from Beta Asset Management and Brad Weaver was false, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 22 -

105.    Lakewood knew that each indication of its account value from Brad Weaver or Beta Asset Management was false, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

106.    Lakewood knew that Beta Asset Management was insolvent at the time of the transfers, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

107.    Lakewood knew that Beta Asset Management and Brad Weaver transferred funds to it, and for its benefit, with the actual intent to hinder, delay, or defraud any creditor, including other purported Beta Asset Management investors, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

108.    Lakewood failed to accurately report the transfers it received from Beta Asset Management and Brad Weaver on its income tax returns filed with the Internal Revenue Service, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

109.    Lakewood filed false tax returns with the Internal Revenue Service in 2004, correct?

- 23 -

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

110.    Mark Vehslage and Richard Schripsema caused Lakewood to file false returns with the Internal Revenue Service, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

111.    Lakewood transferred the funds it received from Beta Asset Management and Brad Weaver to Mark Vehslage, Heather Vehslage and Richard Schripsema, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

112.    Lakewood's transfers of funds received from Beta Asset Management and Brad Weaver to Mark Vehslage were not made in good faith, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

113.    Lakewood's transfers of funds received from Beta Asset Management and Brad Weaver to Mark Vehslage were not made for value, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

- 24 -

114.  Lakewood's transfers of funds received from Beta Asset Management and Brad
      Weaver to Richard Schripsema were not made in good faith, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth
Amendment to the Constitution of the United States and decline to answer the question on the
grounds that the answer may tend to incriminate me.

115.  Lakewood's transfers of funds received from Beta Asset Management and Brad
      Weaver to Richard Schripsema were not made for value, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth
Amendment to the Constitution of the United States and decline to answer the question on the
grounds that the answer may tend to incriminate me.

116.  Lakewood's transfers of funds received from Beta Asset Management and Brad
      Weaver to Heather Vehslage were not made in good faith, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth
Amendment to the Constitution of the United States and decline to answer the question on the
grounds that the answer may tend to incriminate me.

117.  Lakewood's transfers of funds received from Beta Asset Management and Brad
      Weaver to Heather Vehslage were not made for value, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth
Amendment to the Constitution of the United States and decline to answer the question on the
grounds that the answer may tend to incriminate me.

118.  Lakewood knew that the funds it received from Beta Asset Management and Brad
      Weaver were not legitimate investment returns, but rather were funds received from
      other victims of Brad Weaver's fraud?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

119.  Attached as Group Exhibit 5 are documents Lakewood completed to transact business with Raymond James Financial Services, Inc., correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

120.  Mark Vehslage and Richard Schripsema signed the documents contained in Exhibit 5 on behalf of Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

121.  The documents contained in Exhibit 5 are true and genuine copies of the original documents Lakewood executed and submitted to Lakewood, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

122.  Attached as Exhibit 6 are portions of the tax returns Lakewood filed with the Internal Revenue Service for the year 2003, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

123.    Exhibit 6 is a true and genuine copy of the 2003 tax returns Lakewood filed with the Internal Revenue Service, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

124.    Attached as Exhibit 6 are portions of the tax returns Lakewood filed with the Internal Revenue Service for the year 2004, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

125.    Exhibit 6 is a true and genuine copy of the 2004 tax returns Lakewood filed with the Internal Revenue Service, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

126.    Your name is Mark Vehslage, correct?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

127.    What is your current home address?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

128.    What is/was Lakewood's business address?

**RESPONSE:** I respectfully assert my constitutional privilege under the Fifth Amendment to the Constitution of the United States and decline to answer the question on the grounds that the answer may tend to incriminate me.

Dated: March 12, 2008

                    Respectfully Submitted,

                    Lakewood Properties, Ltd.

                    Matthew C. Crowl
                    One of its Attorneys

                    Eugene J. Geekie, Jr.
                    Matthew C. Crowl
                    Zhiyuan "Mike" Xu
                    SCHIFF HARDIN LLP
                    6600 Sears Tower
                    233 South Wacker Drive
                    Chicago, IL 60606
                    Telephone: (312) 258-5500
                    Facsimile: (312) 258-5600
                    egeekie@schiffhardin.com
                    mcrowl@schiffhardin.com
                    mxu@schiffhardin.com

## CERTIFICATION OF ANSWERS TO WRITTEN DEPOSITION QUESTIONS

I, Mark Vehslage, hereby certify that the answers made in the foregoing

Answers to Plaintiff's Rules 31 and 30(b)(6) Deposition By Written Questions are true

and correct to the best of my knowledge, information, and belief.

Dated: <u>March 12, 2008</u>

_____
Mark Vehslage

Subscribed to and sworn to before me
this _____ day of _____, 2008.

_____
Notary Public

*see Attached*

CH1\5524343.1

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Santa Barbara_

On _March 12, 2008_ before me, _Patricia Luz Caballero, Notary Public_
Date                                    Here Insert Name and Title of the Officer

personally appeared _Mark R. Vehslage_
                                    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                        Signature of Notary Public

PATRICIA LUZ CABALLERO
Commission # 1640137
Notary Public - California
Santa Barbara County
My Comm. Expires Jan 22, 2010

Place Notary Seal Above

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____  Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Item #5907    Reorder: Call Toll-Free 1-800-876-6827

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on March 12, 2008, a copy of **Answers to Plaintiff's Rules 31 and 30(b)(6) Deposition of Defendant by Written Questions** was caused to be served upon the party listed below in the manner identified below.

<u>**Via Messenger**</u>

Pravin B. Rao

Perkins Coie LLP

131 South Dearborn Street, Suite 1700

Chicago, IL 60603-5559

Phone (312) 324-8592

Fax (312) 324-9400

PRao@perkinscoie.com

*Counsel for Plaintiff*

Matthew C. Crowl

CHI\5524795.1

# Exhibit N

| Form **1120S** | **U.S. Income Tax Return for an S Corporation** | | OMB No. 1545-0130 |
|---|---|---|---|
| Department of the Treasury Internal Revenue Service | Do not file this form unless the corporation has timely filed Form 2553 to elect to be an S corporation. | | **2004** |

For calendar year 2004, or tax year beginning _____, and ending _____

| A Effective date of S election | Use IRS label. Other- wise, print or type. | Name LAKEWOOD PROPERTIES, LTD C/O MARK VEHSLAGE | C Employer identification number |
|---|---|---|---|
| 05/15/1997 | | | 36-4163366 |
| B Business code number (see pages 33-38 of the insts.) | | Number, street, and room or suite no. (If a P.O. box, see page 12 of the instructions.) 2232 SANTA BARBARA | D Date incorporated 05/15/1997 |
| 531110 | | City or town, state, and ZIP code SANTA BARBARA, CA 93105 | E Total assets (see page 12 of instr) $ 1,312,444. |

F Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☒ Address change (5) ☒ Amended return

G Enter number of shareholders in the corporation at end of the tax year ▶ 2

Caution: *Include only trade or business income and expenses on lines 1a through 21. See page 13 of the instructions for more information.*

| Income | 1 a | Gross receipts or sales | | b Less returns and allowances | | c Bal ▶ | 1c | |
|---|---|---|---|---|---|---|---|---|
| | 2 | Cost of goods sold (Schedule A, line 8) | | | | | 2 | |
| | 3 | Gross profit. Subtract line 2 from line 1c | | | | | 3 | |
| | 4 | Net gain (loss) from Form 4797, Part II, line 17 *(attach Form 4797)* | | | | | 4 | 1,243,396. |
| | 5 | Other income (loss) *(attach schedule)* | | STATEMENT 1 | | | 5 | 2,600,000. |
| | 6 | **Total income (loss).** Combine lines 3 through 5 | | | | ▶ | 6 | 3,843,396. |
| Deductions (See Instructions for limitations) | 7 | Compensation of officers | | | | | 7 | |
| | 8 | Salaries and wages (less employment credits) | | | | | 8 | |
| | 9 | Repairs and maintenance | | | | | 9 | |
| | 10 | Bad debts | | | | | 10 | |
| | 11 | Rents | | | | | 11 | |
| | 12 | Taxes and licenses | | | | | 12 | |
| | 13 | Interest | | | | | 13 | |
| | 14 a | Depreciation (attach Form 4562) | | | 14a | | | |
| | b | Depreciation claimed on Schedule A and elsewhere on return | | | 14b | | | |
| | c | Subtract line 14b from line 14a | | | | | 14c | |
| | 15 | Depletion (Do not deduct oil and gas depletion.) | | | | | 15 | |
| | 16 | Advertising | | | | | 16 | |
| | 17 | Pension, profit-sharing, etc., plans | | | | | 17 | |
| | 18 | Employee benefit programs | | | | | 18 | |
| | 19 | Other deductions *(attach schedule)* | | | | | 19 | |
| | 20 | **Total deductions.** Add the amounts shown in the far right column for lines 7 through 19 | | | | ▶ | 20 | |
| | 21 | Ordinary business income (loss). Subtract line 20 from line 6 | | | | | 21 | 3,843,396. |
| Tax and Payments | 22 | Tax: a Excess net passive income tax *(attach schedule)* | | | 22a | | | |
| | b | Tax from Schedule D (Form 1120S) | | | 22b | | | |
| | c | Add lines 22a and 22b | | | | | 22c | |
| | 23 | Payments: a 2004 estimated tax payments and amount applied from 2003 return | | | 23a | | | |
| | b | Tax deposited with Form 7004 | | | 23b | | | |
| | c | Credit for Federal tax paid on fuels *(attach Form 4136)* | | | 23c | | | |
| | d | Add lines 23a through 23c | | | | | 23d | |
| | 24 | Estimated tax penalty. Check if Form 2220 is attached | | | | ▶ ☐ | 24 | |
| | 25 | Tax due. If line 23d is smaller than the total of lines 22c and 24, enter amount owed. | | | | | 25 | |
| | 26 | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | | | | | 26 | |
| | 27 | Enter amount of line 26 you want: Credited to 2005 estimated tax ▶ | | Refunded ▶ | | | 27 | |

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | | May the IRS discuss this return with the preparer shown below (see instr.)? ☒ Yes ☐ No |
|---|---|---|---|
| | **TAXPAYER'S COPY** | | |
| | Signature of officer                    Date | Title | |

| Paid Preparer's Use Only | Preparer's signature | [signature]       Date 03/13/08 | Check if self-employed ☐ | Preparer's SSN or PTIN P00024633 |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code | FGMK, LLC 2801 LAKESIDE DRIVE, 3RD FLOOR BANNOCKBURN, IL 60015 | EIN | 36-2929601 |
| | | | Phone no. | 847-374-0400 |

JWA  411701  01-05-05    For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.    Form **1120S** (2004)

LWP 000459

Form 1120S (2004)    **LAKEWOOD ~~ROPERTIES, LTD C/O MARK VE~~LA**    36-4163366    Page 2

## Schedule A    Cost of Goods Sold (see page 18 of the instructions)

| | | |
|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule) | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9 a  Check all methods used for valuing closing inventory:    (i) ☐ Cost as described in Regulations section 1.471-3
  (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4
  (iii) ☐ Other (specify method used and attach explanation) ▶
 b Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) ▶ ☐
 c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ▶ ☐
 d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory
   computed under LIFO ........................ | 9d |
 e If property produced or acquired for resale, do the rules of Section 263A apply to the corporation? ☐ Yes ☐ No
 f Was there any change in determining quantities, cost, or valuations between opening and closing inventory? ☐ Yes ☐ No
   If "Yes," attach explanation.

## Schedule B    Other Information (see page 19 of the instructions)

|  | | Yes | No |
|---|---|---|---|
1 Check method of accounting: (a) ☒ Cash   (b) ☐ Accrual   (c) ☐ Other (specify) ▶
2 See pages 36 through 38 of the instructions and enter the:
 (a) Business activity ▶ **REAL ESTATE**     (b) Product or service ▶ **RESIDENTIAL RENTALS**
3 At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic
 corporation? (For rules of attribution, see section 267(c).) If "Yes," attach a schedule showing: (a) name, address, and
 employer identification number and (b) percentage owned | | | X
4 Was the corporation a member of a controlled group subject to the provisions of section 1561? | | | X
5 Check this box if the corporation has filed or is required to file Form 8264, Application for Registration of a Tax Shelter ▶ ☐
6 Check this box if the corporation issued publicly offered debt instruments with original issue discount ▶ ☐
 If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount
 Instruments.
7 If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an
 asset with a basis determined by reference to its basis (or the basis of any other property) in the hands of a
 C corporation and (b) has net unrealized built-in gain (defined in section 1374(d)(1)) in excess of the net recognized
 built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior
 years ▶ $
8 Check this box if the corporation had accumulated earnings and profits at the close of the tax year ▶ ☐
9 Are the corporation's total receipts (see page 19 of the instructions) for the tax year and its total assets at the end
 of the tax year less than $250,000? If "Yes," the corporation is not required to complete Schedules L and M-1 | | | X
Note: If the corporation had assets or operated a business in a foreign country or U.S. possession, it may be required to attach
Schedule N (Form 1120), Foreign Operations of U.S. Corporations, to this return. See Schedule N for details.

## Schedule K    Shareholders' Shares of Income, Deductions, Credits, etc.

| | Shareholders' Pro Rata Share Items | | Total amount |
|---|---|---|---|
| 1 | Ordinary business income (loss) (page 1, line 21) | 1 | 3,843,396. |
| 2 | Net rental real estate income (loss) (attach Form 8825)    STATEMENT 2 | 2 | <57,868.> |
| 3a | Other gross rental income (loss) | 3a | |
| b | Expenses from other rental activities (attach schedule) | 3b | |
| c | Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| 4 | Interest income | 4 | 190. |
| 5 | Dividends: a Ordinary dividends | 5a | |
| | b Qualified dividends | 5b | |
| 6 | Royalties | 6 | |
| 7 | Net short-term capital gain (loss) | 7 | |
| 8a | Net long-term capital gain (loss) | 8a | |
| b | Collectibles (28%) gain (loss) | 8b | |
| c | Unrecaptured section 1250 gain (attach schedule) | 8c | |
| 9 | Net section 1231 gain (loss) (attach Form 4797) | 9 | |
| 10 | Other income (loss) (attach schedule) | 10 | |

(left margin: Income (Loss))

JWA
41171l
01-12-05

Form **1120S** (2004)

LWP 000460

Form 1120S (2004)  **LAKEWOOD PROPERTIES, LTD C/O MARK VE LA**  36-4163366. Page **3**

| | Shareholders' Pro Rata Share Items (continued) | | Total amount |
|---|---|---|---|
| **Deductions** | **11** Section 179 deduction (attach Form 4562) | 11 | |
| | **12a** Contributions | 12a | |
| | **b** Deductions related to portfolio income (attach schedule) | 12b | |
| | **c** Investment interest expense | 12c | |
| | **d** Section 59(e)(2) expenditures (1) Type ▶ | | |
| | (2) Amount ▶ | 12d(2) | |
| | **e** Other deductions (attach schedule) | 12e | |
| **Credits & Credit Recapture** | **13a** Low-income housing credit (section 42(j)(5)) | 13a | |
| | **b** Low-income housing credit (other) | 13b | |
| | **c** Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 13c | |
| | **d** Other rental real estate credits | 13d | |
| | **e** Other rental credits | 13e | |
| | **f** Credit for alcohol used as fuel (attach Form 6478) | 13f | |
| | **g** Other credits and credit recapture (attach schedule) | 13g | |
| **Foreign Transactions** | **14a** Name of country or U.S. possession ▶ | | |
| | **b** Gross income from all sources | 14b | |
| | **c** Gross income sourced at shareholder level | 14c | |
| | Foreign gross income sourced at corporate level: | | |
| | **d** Passive | 14d | |
| | **e** Listed categories (attach schedule) | 14e | |
| | **f** General limitation | 14f | |
| | Deductions allocated and apportioned at shareholder level: | | |
| | **g** Interest expense | 14g | |
| | **h** Other | 14h | |
| | Deductions allocated and apportioned at corporate level to foreign source income: | | |
| | **i** Passive | 14i | |
| | **j** Listed categories (attach schedule) | 14j | |
| | **k** General limitation | 14k | |
| | Other information: | | |
| | **l** Foreign taxes paid | 14l | |
| | **m** Foreign taxes accrued | 14m | |
| | **n** Reduction in taxes available for credit (attach schedule) | 14n | |
| **Alternative Minimum Tax (AMT) Items** | **15a** Post-1986 depreciation adjustment | 15a | |
| | **b** Adjusted gain or loss | 15b | |
| | **c** Depletion (other than oil and gas) | 15c | |
| | **d** Oil, gas, and geothermal properties - gross income | 15d | |
| | **e** Oil, gas, and geothermal properties - deductions | 15e | |
| | **f** Other AMT items (attach schedule) | 15f | |
| **Items Affecting Shareholder Basis** | **16a** Tax-exempt interest income | 16a | |
| | **b** Other tax-exempt income | 16b | |
| | **c** Nondeductible expenses | 16c | |
| | **d** Property distributions | 16d | 2,111,825. |
| | **e** Repayment of loans from shareholders | 16e | 488,175. |
| **Other Information** | **17a** Investment income | 17a | 190. |
| | **b** Investment expenses | 17b | |
| | **c** Dividend distributions paid from accumulated earnings and profits | 17c | |
| | **d** Other items and amounts (attach schedule) | | |
| | **e** Income/loss reconciliation. (Required only if Schedule M-1 must be completed.) Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12e and lines 14l or 14m, whichever applies | 17e | 3,785,718. |

JWA                                                                Form **1120S** (2004)

411721
03-11-05

LWP 000461

Form 1120S (2004)   **LAKEWOOD PROPERTIES, LTD C/O MARK VEHGLA**    36-4163366   Page 4

**Note;** The corporation is not required to complete Schedules L and M-1 if question 9 of Schedule B is answered

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| **Assets** | | (a) | (b) | (c) | (d) |
| 1 | Cash | | 75,900. | | 324,321. |
| 2 a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | | | | |
| 3 | Inventories | | | | |
| 4 | U.S. Government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets (Att. Sch.) | STATEMENT 5 | 201,388. | | |
| 7 | Loans to shareholders | | | | |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (Att. Sch.) | | | | |
| 10 a | Buildings and other depreciable assets | 2,673,168. | | 1,159,771. | |
| b | Less accumulated depreciation | 540,022. | 2,133,146. | 171,648. | 988,123. |
| 11 a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 12 | Land (net of any amortization) | | 261,000. | | |
| 13 a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | | | | |
| 14 | Other assets (Att. Sch.) | | | | |
| 15 | Total assets | | 2,671,434. | | 1,312,444. |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable | | | | |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (Att. Sch.) | | | | |
| 19 | Loans from shareholders | | 488,175. | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | 2,544,708. | | |
| 21 | Other liabilities (Att. Sch.) | | | | |
| 22 | Capital stock | | 1,000. | | 1,000. |
| 23 | Additional paid-in capital | | 344,000. | | 344,000. |
| 24 | Retained earnings | STATEMENT 6 | <706,449.> | | 967,444. |
| 25 | Adjustments to shareholders' equity (Att. Sch.) | | | | |
| 26 | Less cost of treasury stock | | ( ) | | ( ) |
| 27 | Total liabilities and shareholders' equity | | 2,671,434. | | 1,312,444. |

| Schedule M-1 | Reconciliation of Income (Loss) per Books With Income (Loss) per Return |
|---|---|
| 1 Net income (loss) per books | 3,785,718. |

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | 3,785,718. | 5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, 10, not recorded on books this year (itemize): _____ | | a Tax-exempt interest  $ _____ | |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l or (14m) (itemize): | | 6 Deductions included on Schedule K, lines 1 through 12, and 14l or (14m), not charged against book income this year (itemize): | |
| a Depreciation  $ _____ | | a Depreciation  $ _____ | |
| b Travel and entertainment $ _____ | | 7 Add lines 5 and 6 | |
| 4 Add lines 1 through 3 | 3,785,718. | 8 Income (loss) (Schedule K, line 17e). Line 4 less line 7 | 3,785,718. |

| Schedule M-2 | Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see page 32 of the instructions) |
|---|---|

| | | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|---|
| 1 | Balance at beginning of tax year | <706,449.> | | |
| 2 | Ordinary income from page 1, line 21 | 3,843,396. | | |
| 3 | Other additions     STATEMENT 3 | 190. | | |
| 4 | Loss from page 1, line 21 | ( ) | | |
| 5 | Other reductions     STATEMENT 4 | 57,868. | ( ) | |
| 6 | Combine lines 1 through 5 | 3,079,269. | | |
| 7 | Distributions other than dividend distributions | 2,111,825. | | |
| 8 | Balance at end of tax year. Subtract line 7 from line 6 | 967,444. | | |

411731
01-12-05   JWA

Form **1120S** (2004)

LWP 000462

 

LAKEWOOD PROPERTIES, LTD
36-4163366
2004 AMENDED FORM 1120S

EXPLANATION OF CHANGES:

1.  TO REPORT INCOME FROM BETA CAPITAL PARTNERS LP. SEE FORM
    1120S, LINE 5. THE AMOUNT WAS ORIGINALLY TREATED AS A LOAN
    FROM BETA. THAT DETERMINATION HAS BEEN CHANGED TO
    INCOME FROM BETA.

2.  TO CHANGE THE CHARACTER OF THE GAIN ON THE SALE OF
    CONDOS FROM SECTION 1231 TO ORDINARY INCOME. SEE FORM
    4797. THAT DETERMINATION HAS CHANGED BASED UPON THE
    FACTS AND CIRCUMSTANCES OF THE TAXPAYER HAVING DEALER
    RATHER THAN INVESTOR STATUS.

3.  TO REMOVE THE ESCROW LOSS FROM SCHEDULE D. THAT
    DETERMINATION HAS CHANGED FROM AN INVESTMENT TO A
    PERSONAL LOSS OF A SHAREHOLDER. IN THE PREPARATION OF THE
    ORIGINAL RETURN, THE ESCROW AMOUNT WAS TREATED AS A
    CORPORATE ITEM. UPON FURTHER REVIEW IT HAS BEEN
    DETERMINED THAT THE AMOUNT IS A PERSONAL NON-DEDUCTIBLE
    LOSS OF A SHAREHOLDER.

THE CHANGES TO THIS RETURN WERE MADE FROM INFORMATION
PROVIDED BY THE TAXPAYERS THROUGH THEIR LEGAL COUNSEL
AND HAVE NOT BEEN AUDITED OR OTHERWISE VERIFIED.

LWP 000463



**Richard Schripsema, 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**
**Mark Vehslage, 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**
**Lakewood Properties, Ltd., 36-4163366**

The above identified taxpayers (individually, a "Taxpayer" or collectively, the "Taxpayers") submit this disclosure schedule as part of their respective amended income tax returns for 2004. The amendments reflect each of the Taxpayers' allocable shares of amounts received during 2004 from Beta Asset Management ("Beta"), an investment firm or fund that the Taxpayers understand is owned or controlled by Mr. Brad A. Weaver, a registered securities broker ("Weaver"). The Taxpayers understand that Weaver and Beta perpetrated a "Ponzi Scheme" and that Weaver currently is in federal custody, having pled guilty to a criminal indictment, and having been sentenced to a term of 12 years. The Securities and Exchange Commission brought a civil action against Weaver and Beta. James L. Kopecky was appointed as the receiver for Weaver and Beta. As described below, the tax consequences of the Taxpayers' dealings with Beta and Weaver since 2003 are by no means clear.

The Taxpayers first met Weaver in 2003. Weaver described to the Taxpayers an opportunity to invest in "busted trades" of which Weaver became aware in his capacity as a branch manager with Raymond James Financial Services, Inc. Weaver planned to offer this and other investment opportunities through Beta Capital Partners, L.P., a hedge fund that he planned to organize. In this regard, Weaver provided the Taxpayers with offering materials dated May 1, 2004 and subscription agreements for the hedge fund.

During 2003 and 2004, Mark Vehslage ("Mark") and Richard Schripsema ("Rich") each owned 50% of the outstanding shares of Lakewood Properties, Ltd., an S

corporation that owned rental properties in Chicago, Illinois.   During 2003 and 2004, the Taxpayers made a series of investments with Beta[1] and also received a series of payments.

Because it was apparently not Beta's or Weaver's business practice to provide regular account statements, the Taxpayers have a limited, incomplete set of account statements initially purporting to come from Raymond James Financial Services Inc. and later purporting to come from "Beta Asset Management."   From the account statements actually received, it is unclear whether any of the Taxpayers' funds were ever treated by Weaver as being contributed to the Beta Capital Partners, L.P. hedge fund.

At no time were the Taxpayers provided with a Schedule K-1, Form 1099 or other formal or informal notification of the income tax consequences of the amounts received from Beta.  As a result, none of these amounts received from Beta were included in the original 2003 or 2004 Forms 1040 filed by the Taxpayers.  Those returns were prepared by Jon E. Withey, a CPA who had prepared the Taxpayers' returns for many years.

In 2004, Lakewood converted rental properties that it had held for several years to condominiums.  The project was financed with construction loans by Citibank.  Citibank advised Lakewood that Citibank would not partially release mortgage liens on individual units until the entire principal balance of its loans of $2,549,133 was paid in full.  The Taxpayers discussed this situation with their counsel, who advised them to pay off the Citibank construction loan.  The Taxpayers then contacted Weaver, who agreed to have Beta transfer $2.6 million to an account at Chicago Title and Trust for the benefit of Lakewood on June 04, 2004.  The funds allowed

---

[1]        For the remainder of this disclosure statement, "Beta" is used to refer collectively to Weaver, Beta Asset Management and Beta Capital Partners, L. P., the hedge fund.

2

Lakewood to retire the Citibank construction loan. Shortly thereafter, on June 16, 2004, Mark returned $500,000 to Beta. The $2.6 million transfer by Beta in favor of Lakewood was not documented by Beta or Lakewood. This lack of documentation regarding the payment, along with the lack of any tax reporting information from Beta as noted previously, makes it very difficult to determine the appropriate income tax consequences to the Taxpayers. The failure to document the transaction is consistent with Beta's failure to provide tax reporting information to the Taxpayers. As discussed below, after Weaver's scheme was uncovered, the possibility that the funds would have to be returned in whole or in part further made it difficult for the Taxpayers to determine the appropriate income tax consequences of the $2.6 million transfer.

Unfortunately, after the $2.6 million payment was made by Beta, the Taxpayers found it increasingly more difficult to communicate with Weaver and many of their attempts to contact Weaver went unanswered. In December of 2004, the Taxpayers learned that Weaver and Beta were under investigation by federal authorities and that further information would not likely be forthcoming. This lack of information left the Taxpayers to speculate about how to report the various transactions with Beta, and whether the funds would be required to be returned in whole or in part. In light of the extraordinary facts and the lack of any tax reporting from Beta, the Taxpayers did not reflect the transactions with Beta on their 2003 or 2004 income tax returns. The individual Taxpayers, Mark and Rich, already have filed amended 2003 returns making protective claims for losses (since as of 12/31/03, the amounts invested with Beta had exceeded the amounts returned to them by Beta). The individual Taxpayers, Mark and Rich, also have previously filed amended returns for 2004 which, in a separate disclosure statement, discussed various ways to report the net proceeds received by the Taxpayers from Beta and ultimately

LWP 000466

elected to report $2.6 million of such monies so received as income in the year in which settlement is reached with the receiver.

The Taxpayers now believe that the presentation on their respective revised amended returns for 2004 as ordinary income is the most conservative treatment of the amounts in question.

No payments have been made with the amended returns for Mark and Rich.[2] There are two reasons for this. First, the Taxpayers are unclear about the correct income tax consequences of these transactions, particularly if the allegations against Weaver are true and there were no trading profits.

Second, in March of this year, the Taxpayers were first notified by the receiver for Beta that the receiver was analyzing their investments with, and distributions from, Beta. The receiver currently is trying to recover the funds paid by Beta to the Taxpayers. Through their counsel, the Taxpayers have attempted to reach an equitable agreement with the receiver. They have yet to do so in large part because of the uncertainty of the amount of income taxes ultimately payable as a result of Lakewood's transactions with Beta. The Taxpayers do not have sufficient funds to both pay the additional taxes reflected on their amended 2004 returns and to repay the amounts demanded by the receiver. The Taxpayers look forward to discussing their situation with the appropriate representatives of the IRS as soon as possible so as to reach a global resolution of these matters.

---

[2] Since Lakewood was an S corporation, it has no federal income tax liability. Instead, its income is reflected I equal shares on the returns of Mark and Rich.

LWP 000467

Form **4797**

Department of the Treasury
Internal Revenue Service (99)

## Sales of Business Property

(Also Involuntary Conversions and Recapture Amounts
Under Sections 179 and 280F(b)(2))
► Attach to your tax return.

OMB No. 1545-0184

**2004**

Attachment
Sequence No. **27**

Name(s) shown on return
LAKEWOOD PROPERTIES, LTD
C/O MARK VEHSLAGE

Identifying number
36-4163366

1  Enter the gross proceeds from sales or exchanges reported to you for 2004 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20 (see instructions) ......................................... | 1 |

| **Part I** | **Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft - Most Property Held More Than 1 Year** |

| (a) Description of property | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Gross sales price | (e) Depreciation allowed or allowable since acquisition | (f) Cost or other basis, plus improvements and expense of sale | (g) Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| 2 | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| 3  Gain, if any, from Form 4684, line 39 ............................................... | **3** | |
| 4  Section 1231 gain from installment sales from Form 6252, line 26 or 37 ............ | **4** | |
| 5  Section 1231 gain or (loss) from like-kind exchanges from Form 8824 .............. | **5** | |
| 6  Gain, if any, from line 32, from other than casualty or theft .................... | **6** | |
| 7  Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows: | **7** | |

**Partnerships (except electing large partnerships) and S corporations.** Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

**All others.** If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you did not have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on Schedule D and skip lines 8, 9, 11, and 12 below.

| | | | |
|---|---|---|---|
| 8  Nonrecaptured net section 1231 losses from prior years (see instructions) ........ | **8** | |
| 9  Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on Schedule D (see instructions) ............................... | **9** | |

| **Part II** | **Ordinary Gains and Losses** |

10  Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| (a) | (b) | (c) | (d) | (e) | (f) | (g) |
|---|---|---|---|---|---|---|
| CONDOS, 855-859 N LASALLE, CHICAGO | 060197 | 060104 | 3296000. | 368,374. | 2,420,978. | 1,243,396. |
| | | | | | | |

| | | | |
|---|---|---|---|
| 11  Loss, if any, from line 7 ...................................................... | **11** ( | ) |
| 12  Gain, if any, from line 7 or amount from line 8, if applicable ................... | **12** | |
| 13  Gain, if any, from line 31 ..................................................... | **13** | |
| 14  Net gain or (loss) from Form 4684, lines 31 and 38a ............................ | **14** | |
| 15  Ordinary gain from installment sales from Form 6252, line 25 or 36 ............. | **15** | |
| 16  Ordinary gain or (loss) from like-kind exchanges from Form 8824 ............... | **16** | |
| 17  Combine lines 10 through 16 ................................................. | **17** | 1,243,396. |

18  For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below:

a  If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the part of the loss from income-producing property on Schedule A (Form 1040), line 27, and the part of the loss from property used as an employee on Schedule A (Form 1040), line 22. Identify as from "Form 4797, line 18a."
See instructions ....................................................................... | **18a** |

b  Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Form 1040, line 14 ......................................................................... | **18b** |

JWA  For Paperwork Reduction Act Notice, see page 8 of the instructions.

Form **4797** (2004)

418001
11-09-04

LWP 000468

LAKEWOOD PROPERTIES, LTD C/O MARK VEHSLA                                       36-4163366

Form 4797 (2004)                                                                        Page 2

## Part III  Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255

|  |  | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) |
|---|---|---|---|
| **19 (a)** Description of section 1245, 1250, 1252, 1254, or 1255 property: | | | |
| A | | | |
| B | | | |
| C | | | |
| D | | | |

| | These columns relate to the properties on lines 19A through 19D. ▶ | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|
| 20 | Gross sales price (Note: See line 1 before completing.)  **20** | | | | |
| 21 | Cost or other basis plus expense of sale  **21** | | | | |
| 22 | Depreciation (or depletion) allowed or allowable  **22** | | | | |
| 23 | Adjusted basis. Subtract line 22 from line 21  **23** | | | | |
| 24 | Total gain. Subtract line 23 from line 20  **24** | | | | |
| 25 | If section 1245 property: | | | | |
| a | Depreciation allowed or allowable from line 22  **25a** | | | | |
| b | Enter the smaller of line 24 or 25a  **25b** | | | | |
| 26 | If section 1250 property: If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | |
| a | Additional depreciation after 1975  **26a** | | | | |
| b | Applicable percentage multiplied by the smaller of line 24 or line 26a  **26b** | | | | |
| c | Subtract line 26a from line 24. If residential rental property or line 24 is not more than line 26a, skip lines 26d and 26e  **26c** | | | | |
| d | Additional depreciation after 1969 and before 1976  **26d** | | | | |
| e | Enter the smaller of line 26c or 26d  **26e** | | | | |
| f | Section 291 amount (corporations only)  **26f** | | | | |
| g | Add lines 26b, 26e, and 26f  **26g** | | | | |
| 27 | If section 1252 property: Skip this section if you did not dispose of farmland or if this form is being completed for a partnership (other than an electing large partnership). | | | | |
| a | Soil, water, and land clearing expenses  **27a** | | | | |
| b | Line 27a multiplied by applicable percentage  **27b** | | | | |
| c | Enter the smaller of line 24 or 27b  **27c** | | | | |
| 28 | If section 1254 property: | | | | |
| a | Intangible drilling and development costs, expenditures for development of mines and other natural deposits, and mining exploration costs  **28a** | | | | |
| b | Enter the smaller of line 24 or 28a  **28b** | | | | |
| 29 | If section 1255 property: | | | | |
| a | Applicable percentage of payments excluded from income under section 126  **29a** | | | | |
| b | Enter the smaller of line 24 or 29a  **29b** | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| | | |
|---|---|---|
| 30 | Total gains for all properties. Add property columns A through D, line 24  **30** | |
| 31 | Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13  **31** | |
| 32 | Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6  **32** | |

## Part IV  Recapture Amounts Under Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less
(see instructions.)

| | | | (a) Section 179 | (b) Section 280F(b)(2) |
|---|---|---|---|---|
| 33 | Section 179 expense deduction or depreciation allowable in prior years  **33** | | | |
| 34 | Recomputed depreciation. See instructions  **34** | | | |
| 35 | Recapture amount. Subtract line 34 from line 33. See the instructions for where to report  **35** | | | |

419002
11-09-04    JWA

LWP 000469

Form **8825**

Department of the Treasury
Internal Revenue Service

**Rental Real Estate Income and Expenses of a Partnership or an S Corporation**
▶ See instructions on page 2.
▶ Attach to Form 1065, Form 1065-B, or Form 1120S.

OMB No. 1545-1186

**2004**

Name LAKEWOOD PROPERTIES, LTD
C/O MARK VEHSLAGE

Employer identification number
36 4163366

**1** Show the kind and location of each property. See page 2 for additional properties.

A FIVE UNITS, 859 N. LASALLE DRIVE CHICAGO, IL

B _____

C _____

D _____

| | | Properties | | | |
|---|---|---|---|---|---|
| | | **A** | **B** | **C** | **D** |
| **Rental Real Estate Income** | | | | | |
| 2 Gross rents | 2 | 24,240. | | | |
| **Rental Real Estate Expenses** | | | | | |
| 3 Advertising | 3 | | | | |
| 4 Auto and travel | 4 | | | | |
| 5 Cleaning and maintenance | 5 | | | | |
| 6 Commissions | 6 | | | | |
| 7 Insurance | 7 | 5,294. | | | |
| 8 Legal and other professional fees | 8 | 450. | | | |
| 9 Interest | 9 | 50,508. | | | |
| 10 Repairs | 10 | 676. | | | |
| 11 Taxes | 11 | 19,128. | | | |
| 12 Utilities | 12 | 6,052. | | | |
| 13 Wages and salaries | 13 | | | | |
| 14 Depreciation (see instructions) | 14 | | | | |
| 15 Other (list) ▶ | | | | | |
| _____ | 15 | | | | |
| 16 Total expenses for each property. Add lines 3 through 15 | 16 | 82,108. | | | |

**17** Total gross rents. Add gross rents from line 2, columns A through H .................................. | 17 | 24,240.

**18** Total expenses. Add total expenses from line 16, columns A through H .............................. | 18 | ( 82,108.)

**19** Net gain (loss) from Form 4797, Part II, line 17, from the disposition of property from rental
estate activities ............................................................................... | 19 |

**20a** Net income (loss) from rental real estate activities from partnerships, estates, and trusts in which
this partnership or S corporation is a partner or beneficiary (from Schedule K-1) ............... | 20a |
**b** Identify below the partnerships, estates, or trusts from which net income (loss) is shown on line 20a.
Attach a schedule if more space is needed:

| **(1)** Name | **(2)** Employer identification number |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**21** Net rental real estate income (loss). Combine lines 17 through 20a. Enter the result
here and on:
• Form 1065 or 1120S: Schedule K, line 2, or
• Form 1065-B: Part I, line 4 | 21 | <57,868.>

420141
10-22-04  JWA  For Paperwork Reduction Act Notice, see page 2 of form.

Form **8825** (2004)

LWP 000470

**LAKEWOOD PROPERTIES, LTD C/O MARK VEHSLA**                    36-4163366

Form 8825 (2004)                                                                      Page **2**

**1** Show the kind and location of each property.

**E** _____

**F** _____

**G** _____

**H** _____

|  |  | Properties | | | |
|---|---|---|---|---|---|
| | | **E** | **F** | **G** | **H** |
| **Rental Real Estate Income** | | | | | |
| 2 Gross rents | 2 | | | | |
| **Rental Real Estate Expenses** | | | | | |
| 3 Advertising | 3 | | | | |
| 4 Auto and travel | 4 | | | | |
| 5 Cleaning and maintenance | 5 | | | | |
| 6 Commissions | 6 | | | | |
| 7 Insurance | 7 | | | | |
| 8 Legal and other professional fees | 8 | | | | |
| 9 Interest | 9 | | | | |
| 10 Repairs | 10 | | | | |
| 11 Taxes | 11 | | | | |
| 12 Utilities | 12 | | | | |
| 13 Wages and salaries | 13 | | | | |
| 14 Depreciation (see instructions) | 14 | | | | |
| 15 Other (list) ▶ _____ | 15 | | | | |
| _____ | | | | | |
| _____ | | | | | |
| 16 Total expenses for each property. Add lines 3 through 15 | 16 | | | | |

JWA                                                                            Form 8825 (2004)

420142
10-22-04

LWP 000471

LAKEWOOD PROPERTIES, LTD. C/O MARK VEHSLA                              36-4163366

| FORM 1120S | OTHER INCOME | | STATEMENT | 1 |
|------------|--------------|--|-----------|---|

| DESCRIPTION | AMOUNT |
|-------------|--------|
| BETA CAPITAL PARTNERS LP | 2,600,000. |
| TOTAL TO FORM 1120S, PAGE 1, LINE 5 | 2,600,000. |

| SCHEDULE K | NET RENTAL REAL ESTATE INCOME (LOSS) | | STATEMENT | 2 |
|------------|--------------------------------------|--|-----------|---|

| DESCRIPTION | INCOME | EXPENSES | NET AMOUNT |
|-------------|--------|----------|------------|
| FIVE UNITS, 859 N. LASALLE DRIVE CHICAGO, IL | 24,240. | 82,108. | <57,868.> |
| TOTAL NET AMOUNT TO SCHEDULE K, LINE 2 | 24,240. | 82,108. | <57,868.> |

| SCHEDULE M-2  ACCUMULATED ADJUSTMENTS ACCOUNT - OTHER ADDITIONS | STATEMENT | 3 |
|------------------------------------------------------------------|-----------|---|

| DESCRIPTION | AMOUNT |
|-------------|--------|
| PORTFOLIO INTEREST INCOME | 190. |
| TOTAL TO SCHEDULE M-2, LINE 3 - COLUMN (A) | 190. |

| SCHEDULE M-2  ACCUMULATED ADJUSTMENTS ACCOUNT- OTHER REDUCTIONS | STATEMENT | 4 |
|------------------------------------------------------------------|-----------|---|

| DESCRIPTION | AMOUNT |
|-------------|--------|
| NET RENTAL REAL ESTATE LOSS | 57,868. |
| TOTAL TO SCHEDULE M-2, LINE 5 - COLUMN (A) | 57,868. |

STATEMENT(S) 1, 2, 3, 4

LWP 000472

LAKEWOOD PROPERTIES, LTD. C/O MARK VEHSLA                    36-4163366

---

| SCHEDULE L | OTHER CURRENT ASSETS | | STATEMENT    5 |
|------------|----------------------|---|----------------|
| DESCRIPTION | | BEGINNING OF TAX YEAR | END OF TAX YEAR |
| CONDO REHAB EXPENSES - 859 | | 98,967. | |
| CONDO REHAB EXPENSES - 855-57 | | 102,421. | |
| TOTAL TO SCHEDULE L, LINE 6 | | 201,388. | |

---

| SCHEDULE L | ANALYSIS OF TOTAL RETAINED EARNINGS PER BOOKS | STATEMENT    6 |
|------------|------------------------------------------------|----------------|
| DESCRIPTION | | AMOUNT |
| BALANCE AT BEGINNING OF YEAR - SCHEDULE L, LINE 24, COLUMN (B) | | <706,449.> |
| NET INCOME PER BOOKS - SCHEDULE M-1, LINE 1 | | 3,785,718. |
| DISTRIBUTIONS | | <2,111,825.> |
| OTHER INCREASES (DECREASES) | | |
| BALANCE AT END OF YEAR - SCHEDULE L, LINE 24, COLUMN (D) | | 967,444. |

6711

**Schedule K-1**
**(Form 1120S)**

**2004**

Department of the Treasury
Internal Revenue Service

Tax year beginning _____
and ending _____

**Shareholder's Share of Income, Deductions,**
**Credits, etc.**

► See separate instructions.

| | | |
|---|---|---|
| ☐ Final K-1 | ☒ Amended K-1 | OMB No. 1545-0130 |

**Part III   Shareholder's Share of Current Year Income,**
**Deductions, Credits, and Other Items**

| | |
|---|---|
| 1 Ordinary business income (loss) 1,921,698. | 13 Credits & credit recapture |
| 2 Net rental real estate income (loss) <28,934.> | |
| 3 Other net rental income (loss) | |
| 4 Interest income 95. | |
| 5a Ordinary dividends | |
| 5b Qualified dividends | 14 Foreign transactions |
| 6 Royalties | |
| 7 Net short-term capital gain (loss) | |
| 8a Net long-term capital gain (loss) | |
| 8b Collectibles (28%) gain (loss) | |
| 8c Unrecaptured sec 1250 gain | |
| 9 Net section 1231 gain (loss) 0. | |
| 10 Other income (loss) | 15 Alternative min tax (AMT) items |
| 11 Section 179 deduction | 16 Items affecting shareholder basis D   1,055,913. |
| 12 Other deductions | E      244,087. |
| | 17 Other information A      95. |

**Part I     Information About the Corporation**

**A** Corporation's employer identification number:
36-4163366

**B** Corporation's name, address, city, state, and ZIP code
LAKEWOOD PROPERTIES, LTD
C/O MARK VEHSLAGE
2232 SANTA BARBARA
SANTA BARBARA, CA  93105

**C** IRS Center where corporation filed return:
OGDEN, UT

**D** ☐ Tax shelter registration number, if any _____

**E** ☐ Check if Form 8271 is attached

**Part II    Information About the Shareholder**

**F** Shareholder's identifying number:
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

**G** Shareholder's name, address, city, state and ZIP code
RICHARD SCHRIPSEMA
1106 HARBOR HILLS DRIVE
SANTA BARBARA, CA 93109

**H** Shareholder's percentage of stock
ownership for tax year ........................... 50.000000%

For IRS Use Only

411271
01-05-05     JWA   For Privacy Act and Paperwork Reduction Act Notice, see Instructions for Form 1120S.

*See attached statement for additional information.

Schedule K-1 (Form 1120S) 2004

SHAREHOLDER NUMBER 1

LWP 000474

6711

| | | |
|---|---|---|
| **Schedule K-1** (Form 1120S) | **2004** | ☐ Final K-1   ☒ Amended K-1   OMB No. 1545-0130 |

Department of the Treasury
Internal Revenue Service

Tax year beginning _____
and ending _____

**Shareholder's Share of Income, Deductions, Credits, etc.**

▶ **See separate instructions.**

| **Part I** | **Information About the Corporation** |
|---|---|

**A** Corporation's employer identification number:
36-4163366

**B** Corporation's name, address, city, state, and ZIP code
LAKEWOOD PROPERTIES, LTD
C/O MARK VEHSLAGE
2232 SANTA BARBARA
SANTA BARBARA, CA  93105

**C** IRS Center where corporation filed return:
OGDEN, UT

**D** ☐ Tax shelter registration number, if any _____

**E** ☐ Check if Form 8271 is attached

| **Part II** | **Information About the Shareholder** |
|---|---|

**F** Shareholder's identifying number:
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

**G** Shareholder's name, address, city, state and ZIP code
MARK VEHSLAGE
2232 SANTA BARBARA
SANTA BARBARA, CA 93105

**H** Shareholder's percentage of stock
ownership for tax year .................................  50.000000%

**For IRS Use Only**

**Part III**  Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| **1** Ordinary business income (loss) | 1,921,698. | **13** Credits & credit recapture | |
| **2** Net rental real estate income (loss) | <28,934.> | | |
| **3** Other net rental income (loss) | | | |
| **4** Interest income | 95. | | |
| **5a** Ordinary dividends | | | |
| **5b** Qualified dividends | | **14** Foreign transactions | |
| **6** Royalties | | | |
| **7** Net short-term capital gain (loss) | | | |
| **8a** Net long-term capital gain (loss) | | | |
| **8b** Collectibles (28%) gain (loss) | | | |
| **8c** Unrecaptured sec 1250 gain | | | |
| **9** Net section 1231 gain (loss) | 0. | | |
| **10** Other income (loss) | | **15** Alternative min tax (AMT) items | |
| **11** Section 179 deduction | | **16** Items affecting shareholder basis | |
| | | D | 1,055,912. |
| **12** Other deductions | | E | 244,088. |
| | | **17** Other information | |
| | | A | 95. |

*See attached statement for additional information.

Schedule K-1 (Form 1120S) 2004

SHAREHOLDER NUMBER 2

LWP 000475

| Form **1120S** | **U.S. Income Tax Return for an S Corporation** | OMB No. 1545-0130 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ► Do not file this form unless the corporation has timely filed Form 2553 to elect to be an S corporation. ► See separate instructions. | **2004** |

For calendar year 2004, or tax year beginning _____ , 2004, and ending _____

| | | | |
|---|---|---|---|
| **A** Effective date of S election 05/15/97 | Use the IRS label. Other- wise, print or type. | **Name** LAKEWOOD PROPERTIES, LTD. | **C** Employer identification number 36-4163366 |
| **B** Business code number (see instructions) 531110 | | **Number, street, and room or suite no.** (If a P.O. box, see instructions.) 5405 N. CLARK STREET | **D** Date incorporated 05/15/97 |
| | | **City or town, state, and ZIP code** CHICAGO         IL  60640 | **E** Total assets (see instructions) $  1,312,444. |

**F** Check applicable boxes: (1) ☐ Initial return  (2) ☐ Final return  (3) ☐ Name change  (4) ☐ Address change  (5) ☐ Amended return
**G** Enter number of shareholders in the corporation at end of the tax year .......................... ► 2

**Caution:** Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | |
|---|---|---|
| **I N C O M E** | **1a** Gross receipts or sales ..  **b** Less returns and allowances ..  **c** Bal ► | **1c** |
| | **2** Cost of goods sold (Schedule A, line 8) ......................... | **2** |
| | **3** Gross profit. Subtract line 2 from line 1c ......................... | **3** |
| | **4** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) ...... | **4** 0. |
| | **5** Other income (loss) (attach schedule) ......................... | **5** |
| | **6** Total income (loss). Add lines 3 through 5 ..................... ► | **6** 0. |
| **D E D U C T I O N S (SEE INSTRUCTIONS)** | **7** Compensation of officers .................................... | **7** |
| | **8** Salaries and wages (less employment credits) ..................... | **8** |
| | **9** Repairs and maintenance ................................... | **9** |
| | **10** Bad debts ............................................. | **10** |
| | **11** Rents ................................................ | **11** |
| | **12** Taxes and licenses ...................................... | **12** |
| | **13** Interest .............................................. | **13** |
| | **14a** Depreciation (attach Form 4562) ..................... **14a** | |
| | **b** Depreciation claimed on Schedule A and elsewhere on return ...... **14b** | |
| | **c** Subtract line 14b from line 14a ............................. | **14c** |
| | **15** Depletion (Do not deduct oil and gas depletion.) ................. | **15** |
| | **16** Advertising ........................................... | **16** |
| | **17** Pension, profit-sharing, etc, plans ........................... | **17** |
| | **18** Employee benefit programs ................................. | **18** |
| | **19** Other deductions (attach schedule) .......................... | **19** |
| | **20** Total deductions. Add the amounts shown in the far right column for lines 7 through 19. .......... | **20** |
| | **21** Ordinary business income (loss). Subtract line 20 from line 6. ...... | **21** 0. |
| **T A X A N D P A Y M E N T S** | **22** Tax: **a** Excess net passive income tax (attach schedule) .......... **22a** | |
| | **b** Tax from Schedule D (Form 1120S) ...................... **22b** | |
| | **c** Add lines 22a and 22b (see instructions for additional taxes) ...... | **22c** |
| | **23** Payments: **a** 2004 estimated tax payments and amount applied from 2003 return .. **23a** | |
| | **b** Tax deposited with Form 7004 ........................ **23b** | |
| | **c** Credit for Federal tax paid on fuels (attach Form 4136) ........ **23c** | |
| | **d** Add lines 23a through 23c .................................. | **23d** |
| | **24** Estimated tax penalty (see instructions). Check if Form 2220 is attached ► ☐ | **24** |
| | **25** Tax due. If line 23d is smaller than the total of lines 22c and 24, enter amount owed........... | **25** |
| | **26** Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid......... | **26** |
| | **27** Enter amount of line 26 you want: Credited to 2005 estimated tax _____ Refunded ► | **27** |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| ► Signature of officer | Date | ► Title PRESIDENT | May the IRS discuss this return with the preparer shown below (see instructions)? [X] Yes ☐ No |
|---|---|---|---|

| **Paid Preparer's Use Only** | Preparer's signature ► | Date | Check if self-employed .... [X] | Preparer's SSN or PTIN P00144037 |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code ► | JON E. WITHEY, CPA 5405 N CLARK ST CHICAGO          IL  60640 | EIN | |
| | | | Phone no. (773) 334-3800 | |

BAA  For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.     SPSA0112  08/04/04     Form 1120S (2004)

## As Originally Filed

LWP 000476

Form 1120S (2004)  LAKEWOOD PROPERTIES, LTD.                                36-4163366          Page 2

## Schedule A     Cost of Goods Sold (see instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule) | 5 | |
| 6 | Total. Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9a Check all methods used for valuing closing inventory:

    (i) ☐ Cost as described in Regulations section 1.471-3

    (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4

    (iii) ☐ Other (specify method used and attach explanation) ▶

  b Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) ........................ ▶ ☐

  c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ................. ▶ ☐

  d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory computed under LIFO | 9d |

  e If property is produced or acquired for resale, do the rules of Section 263A apply to the corporation? ............ ☐ Yes ☒ No

  f Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If 'Yes,' attach explanation ................ ☐ Yes ☐ No

## Schedule B     Other Information  (see instructions)

| | | Yes | No |
|---|---|---|---|
| 1 | Check method of accounting:  (a) ☒ Cash  (b) ☐ Accrual  (c) ☐ Other (specify) ▶ | | |
| 2 | See the instructions and enter the: | | |
| | (a) Business activity ▶ REAL ESTATE          (b) Product or service ▶ RESIDENTIAL RENTALS | | |
| 3 | At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) If 'Yes,' attach a schedule showing: (a) name, address, and employer identification number and (b) percentage owned | | X |
| 4 | Was the corporation a member of a controlled group subject to the provisions of section 1561? | | X |
| 5 | Check this box if the corporation has filed or is required to file Form 8264, Application for Registration of a Tax Shelter | ▶ ☐ | |
| 6 | Check this box if the corporation issued publicly offered debt instruments with original issue discount. If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | ▶ ☐ | |
| 7 | If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to its basis (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain (defined in section 1374(d)(1)) in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years ▶ $ | | |
| 8 | Check this box if the corporation had accumulated earnings and profits at the close of the tax year | ▶ ☐ | |
| 9 | Are the corporation's total receipts (see instructions) for the tax year and its total assets at the end of the tax year less than $250,000? If 'Yes,' the corporation is not required to complete Schedules L and M-1 | | X |

Note: If the corporation had assets or operated a business in a foreign country or U.S. possession, it may be required to attach Schedule N (Form 1120), Foreign Operations of U.S. Corporations, to this return. See Schedule N for details.

## Schedule K     Shareholders' Shares of Income, Deductions, Credits, etc

| | Shareholders' Pro Rata Share Items | | | Total amount |
|---|---|---|---|---|
| I | 1 Ordinary business income (loss) (page 1, line 21) | | 1 | 0. |
| N | 2 Net rental real estate income (loss) (attach Form 8825) | | 2 | -57,868. |
| C | 3a Other gross rental income (loss) | 3a | 3a | |
| O | b Expenses from other rental activities (attach schedule) | 3b | | |
| M | c Other net rental income (loss). Subtract line 3b from line 3a | | 3c | |
| E | 4 Interest income | | 4 | 190. |
| | 5 Dividends:  a Ordinary dividends | | 5a | |
| (L | b Qualified dividends | 5b | | |
| O | 6 Royalties | | 6 | |
| S | 7 Net short-term capital gain (loss) | | 7 | -159,000. |
| S) | 8a Net long-term capital gain (loss) | | 8a | |
| | b Collectibles (28%) gain (loss) | 8b | | |
| | c Unrecaptured section 1250 gain (attach schedule) | 8c | 368,374. | |
| | 9 Net section 1231 gain (loss) (attach Form 4797) | | 9 | 1,243,396. |
| | 10 Other income (loss) (attach schedule) | | 10 | |

SPSA0112   03/04/04

# As Originally Filed

Form 1120S (2004)

LWP 000477

 

Form 1120S (2004)  LAKEWOOD PROPERTIES, LTD.    36-4163366    Page 3

| | Shareholders' Pro Rata Share Items (continued) | | Total amount |
|---|---|---|---|
| **Deductions** | 11  Section 179 deduction (attach Form 4562).. | 11 | |
| | 12a Contributions................................... STMT | 12a | |
| | b Deductions related to portfolio income (attach schedule) ........................ | 12b | |
| | c Investment interest expense..................................... | 12c | |
| | d Section 59(e)(2) expenditures (1) Type ► _ _ _ _ _ _ _ _ _ (2) Amount ► | 12d (2) | |
| | e Other deductions (attach schedule) ..................................... | 12e | |
| **Credits and Credit Recapture** | 13a Low-income housing credit (section 42(j)(5)).................................. | 13a | |
| | b Low-income housing credit (other)..................................... | 13b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) ........... | 13c | |
| | d Other rental real estate credits ..................................... | 13d | |
| | e Other rental credits ..................................... | 13e | |
| | f Credit for alcohol used as fuel (attach Form 6478) ........................... | 13f | |
| | g Other credits and credit recapture (att schedule) ........................... | 13g | 0. |
| **Foreign Trans-actions** | 14a Name of country or U.S. possession........ ► _ _ _ _ _ _ _ _ _ _ | | |
| | b Gross income from all sources ..................................... | 14b | |
| | c Gross income sourced at shareholder level.................................. | 14c | |
| | Foreign gross income sourced at corporate level: | | |
| | d Passive ..................................... | 14d | |
| | e Listed categories (attach schedule) ..................................... | 14e | |
| | f General limitation ..................................... | 14f | |
| | Deductions allocated and apportioned at shareholder level: | | |
| | g Interest expense ..................................... | 14g | |
| | h Other ..................................... | 14h | |
| | Deductions allocated and apportioned at corporate level to foreign source income: | | |
| | i Passive ..................................... | 14i | |
| | j Listed categories (attach schedule) ..................................... | 14j | |
| | k General limitation ..................................... | 14k | |
| | Other information: | | |
| | l Foreign taxes paid..................................... | 14l | |
| | m Foreign taxes accrued ..................................... | 14m | |
| | n Reduction in taxes available for credit (attach schedule)..................................... | 14n | |
| **Alterna-tive Mini-mum Tax (AMT) Items** | 15a Post-1986 depreciation adjustment .................................. | 15a | |
| | b Adjusted gain or loss ..................................... | 15b | |
| | c Depletion (other than oil and gas).................................. | 15c | |
| | d Oil, gas, and geothermal properties — gross income ............................ | 15d | |
| | e Oil, gas, and geothermal properties — deductions............................. | 15e | |
| | f Other AMT items (attach schedule) ..................................... | 15f | |
| **Items Affect-ing Share-holder Basis** | 16a Tax-exempt interest income..................................... | 16a | |
| | b Other tax-exempt income ..................................... | 16b | |
| | c Nondeductible expenses ..................................... | 16c | |
| | d Property distributions ..................................... | 16d | |
| | e Repayment of loans from shareholders..................................... | 16e | |
| **Other Inform-ation** | 17a Investment income ..................................... | 17a | 190. |
| | b Investment expenses ..................................... | 17b | |
| | c Dividend distributions paid from accumulated earnings and profits ................. | 17c | |
| | d Other items and amounts (attach schedule)..................................... | | |
| | e Income/loss reconciliation. (Required only if Schedule M-1 must be completed.) Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12e and lines 14l or 14m, whichever applies | 17e | 1,026,718. |

BAA    Form 1120S (2004)

SPSA0134  01/05/05  **As Originally Filed**

LWP 000478



Form 1120S (2004)  LAKEWOOD PROPERTIES, LTD.                                36-4163366                Page 4

Note: The corporation is not required to complete Schedules L and M-1 if question 9 of Schedule B is answered 'Yes'.

**Schedule L  Balance Sheets per Books**

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1  Cash | | 75,900. | | 324,321. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3  Inventories | | | | |
| 4  U.S. government obligations | | | | |
| 5  Tax-exempt securities | | | | 0. |
| 6  Other current assets (attach schedule) Ln. 6. St. | | 201,388. | | |
| 7  Loans to shareholders | | | | |
| 8  Mortgage and real estate loans | | | | |
| 9  Other investments (attach schedule) | | | | |
| 10a Buildings and other depreciable assets | 2,673,168. | | 1,59,771. | |
| b Less accumulated depreciation | 540,022. | 2,133,146. | 71,648. | 938,123. |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 12 Land (net of any amortization) | | 261,000. | | 0. |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 14 Other assets (attach schedule) | | 2,671,434. | | 1,312,444. |
| 15 Total assets | | 2,671,434. | | 1,312,444. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | | | |
| 17 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 Other current liabilities (attach sch) | | 488,175. | | 647,175. |
| 19 Loans from shareholders | | 2,544,708. | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 Other liabilities (attach schedule) | | 1,000. | | 1,000. |
| 22 Capital stock | | 344,000. | | 344,000. |
| 23 Additional paid-in capital | | -706,449. | | 320,269. |
| 24 Retained earnings | | | | |
| 25 Adjustments to shareholders' equity (att sch) | | | | |
| 26 Less cost of treasury stock | | | | |
| 27 Total liabilities and shareholders' equity | | 2,671,434. | | 1,312,444. |

**Schedule M-1  Reconciliation of Income (Loss) per Books With Income (Loss) per Return**

| | | | |
|---|---|---|---|
| 1 Net income (loss) per books | 1,026,718. | 5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize): | | a Tax-exempt interest . $ _____ | |
| | | 6 Deductions included on Schedule K, lines 1 through 12, and 14l or (14m), not charged against book income this year (itemize): | |
| 3 Expenses recorded on books this year not included on Schedule K, lines 1 through 12, & 14l or (14m) (itemize): | | a Depreciation ..... $ _____ | |
| a Depreciation ....... $ _____ | | | |
| b Travel and entertainment . $ _____ | | 7 Add lines 5 and 6 | 1,026,718. |
| 4 Add lines 1 through 3 | 1,026,718. | 8 Income (loss) (Schedule K, ln 17e). Ln 4 less ln 7 | |

**Schedule M-2  Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed** (see instructions)

| | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|
| 1 Balance at beginning of tax year | -706,449. | | |
| 2 Ordinary income from page 1, line 21 | | | |
| 3 Other additions ....... STMT | 1,243,586. | | |
| 4 Loss from page 1, line 21 | | | |
| 5 Other reductions .....STMT | 216,868. | | |
| 6 Combine lines 1 through 5 | 320,269. | | |
| 7 Distributions other than dividend distributions | | | |
| 8 Balance at end of tax year. Subtract line 7 from line 6 | 320,269. | | |

SPSA0134   01/05/05                                                    Form 1120S (2004)

## As Originally Filed

LWP 000479

| SCHEDULE D<br>(Form 1120S)<br>Department of the Treasury<br>Internal Revenue Service | **Capital Gains and Losses and Built-In Gains**<br>► Attach to Form 1120S.<br>► See separate instructions. | OMB No. 1545-0130<br>**2004** |
|---|---|---|

| Name | Employer identification number |
|---|---|
| LAKEWOOD PROPERTIES, LTD. | 36-4163366 |

### Part I   Short-Term Capital Gains and Losses — Assets Held One Year or Less

| 1 | (a) Description of property<br>(Example, 100 shares of 'Z' Co) | (b) Date acquired<br>(month, day, year) | (c) Date sold<br>(month, day, year) | (d) Sales price | (e) Cost or other basis<br>(see instructions) | (f) Gain or (loss)<br>(Subtract (e) from (d)) |
|---|---|---|---|---|---|---|
| | ESCROW LOSS – INVESTMENT PROPERTY, CALIFORNIA | 07/30/04 | 12/28/04 | 0. | 159,000. | -159,000. |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| 2 | Short-term capital gain from installment sales from Form 6252, line 26 or 37 | 2 | |
| 3 | Short-term capital gain or (loss) from like-kind exchanges from Form 8824 | 3 | |
| 4 | Combine lines 1 through 3 in column (f) | 4 | -159,000. |
| 5 | Tax on short-term capital gain included on line 21 below | 5 | |
| 6 | Net short-term capital gain or (loss). Combine lines 4 and 5. Enter here and on Form 1120S, Schedule K, line 7 or 10 | 6 | -159,000. |

### Part II   Long-Term Capital Gains and Losses — Assets Held More Than One Year

| 7 | (a) Description of property<br>(Example, 100 shares of 'Z' Co) | (b) Date acquired<br>(month, day, year) | (c) Date sold<br>(month, day, year) | (d) Sales price | (e) Cost or other basis<br>(see instructions) | (f) Gain or (loss)<br>(Subtract (e) from (d)) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| 8 | Long-term capital gain from installment sales from Form 6252, line 26 or 37 | 8 | |
| 9 | Long-term capital gain or (loss) from like-kind exchanges from Form 8824 | 9 | |
| 10 | Capital gain distributions | 10 | |
| 11 | Combine lines 7 through 10 in column (f) | 11 | |
| 12 | Tax on long-term capital gain included on line 21 below | 12 | |
| 13 | Net long-term capital gain or (loss). Combine lines 11 and 12. Enter here and on Form 1120S, Schedule K, line 8a or 10 | 13 | |

### Part III   Built-In Gains Tax (See instructions before completing this part.)

| | | | |
|---|---|---|---|
| 14 | Excess of recognized built-in gains over recognized built-in losses (attach computation schedule) | 14 | |
| 15 | Taxable income (attach computation schedule) | 15 | |
| 16 | Net recognized built-in gain. Enter the smallest of line 14, line 15, or line 7 of Schedule B | 16 | |
| 17 | Section 1374(b)(2) deduction | 17 | |
| 18 | Subtract line 17 from line 16. If zero or less, enter -0- here and on line 21 | 18 | |
| 19 | Enter 35% of line 18 | 19 | |
| 20 | Section 1374(b)(3) business credit and minimum tax credit carryforwards from C corporation years | 20 | |
| 21 | Tax. Subtract line 20 from line 19 (if zero or less, enter -0-). Enter here and on Form 1120S, page 1, line 22b | 21 | |

BAA For Privacy Act and Paperwork Reduction Act Notice, see the instructions for Form 1120S.     Schedule D (Form 1120S) 2004

## As Originally Filed

SPSA0312   03/18/05

LWP 000480

Form **4797**

Department of the Treasury
Internal Revenue Service    (99)

**Sales of Business Property**
(Also Involuntary Conversions and Recapture Amounts
Under Sections 179 and 280F(b)(2))
► Attach to your tax return.    ► See separate Instructions.

OMB No. 1545-0184

**2004**

27

| Name(s) shown on return | Identifying number |
|---|---|
| LAKEWOOD PROPERTIES, LTD. | 36-4163366 |

1  Enter the gross proceeds from sales or exchanges reported to you for 2004 on Form(s) 1099-B or 1099-S
(or substitute statement) that you are including on line 2, 10, or 20 (see instructions) . . . . . . . . . . . . . . | 1 |

**Part I  Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft — Most Property Held More Than 1 Year (see instructions)**

| 2 (a) Description of property | (b) Date acquired (month, day, year) | (c) Date sold (month, day, year) | (d) Gross sales price | (e) Depreciation allowed or allowable since acquisition | (f) Cost or other basis, plus improvements and expense of sale | (g) Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| 3  Gain, if any, from Form 4684, line 39. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3** | | |
| 4  Section 1231 gain from installment sales from Form 6252, line 26 or 37 . . . . . . . . . . . . . . | **4** | | |
| 5  Section 1231 gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . . . . . . . . | **5** | | |
| 6  Gain, if any, from line 32, from other than casualty or theft . . . . . . . . . . . . . . . . . . . . | **6** | 1,243,396. | |
| 7  Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows. . . . . . . . . . . . | **7** | 1,243,396. | |

**Partnerships (except electing large partnerships) and S corporations.** Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

**All others.** If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you did not have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on Schedule D and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---|
| 8  Nonrecaptured net section 1231 losses from prior years (see instructions) . . . . . . . . . . . . . . . . . . | **8** | |
| 9  Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on Schedule D (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . | **9** | |

**Part II  Ordinary Gains and Losses**

10  Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| 11  Loss, if any, from line 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11** | | |
| 12  Gain, if any, from line 7 or amount from line 8, if applicable . . . . . . . . . . . . . . . . . . . | **12** | | |
| 13  Gain, if any, from line 31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **13** | 0. | |
| 14  Net gain or (loss) from Form 4684, lines 31 and 38a . . . . . . . . . . . . . . . . . . . . . . . | **14** | | |
| 15  Ordinary gain from installment sales from Form 6252, line 25 or 36 . . . . . . . . . . . . . . . . | **15** | | |
| 16  Ordinary gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . . . . . . . . . | **16** | | |
| 17  Combine lines 10 through 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **17** | 0. | |

18  For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below:

| | | |
|---|---|---|
| a If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the part of the loss from income-producing property on Schedule A (Form 1040), line 27, and the part of the loss from property used as an employee on Schedule A (Form 1040), line 22. Identify as from Form 4797, line 18a.' See instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **18a** | |
| b Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Form 1040, line 14 . . . . | **18b** | |

BAA For Paperwork Reduction Act Notice, see instructions.

Form **4797** (2004)

# As Originally Filed

FDIZ1001   10/12/04

LWP 000481




Form 4797 (2004) LAKEWOOD PROPERTIES, LTD.    36-4163366    Page 2

**Part III** Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255

| | | (b) Date acquired (mo, day, yr) | (c) Date sold (mo, day, yr) |
|---|---|---|---|
| 19 (a) Description of section 1245, 1250, 1252, 1254, or 1255 property: | | | |
| A CONDOS, 855-859 N LASALLE, CHICAGO | | 06/01/97 | 06/01/2004 |
| B | | | |
| C | | | |
| D | | | |

| These columns relate to the properties on lines 19A through 19D ......► | | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|
| 20 Gross sales price (Note: *See line 1 before completing.*) ............ | 20 | 3,296,000. | | | |
| 21 Cost or other basis plus expense of sale ....... | 21 | 2,420,978. | | | |
| 22 Depreciation (or depletion) allowed or allowable.. | 22 | 368,374. | | | |
| 23 Adjusted basis. Subtract line 22 from line 21 .. | 23 | 2,052,604. | | | |
| 24 Total gain. Subtract line 23 from line 20 .... | 24 | 1,243,396. | | | |
| 25 If section 1245 property: | | | | | |
| a Depreciation allowed or allowable from line 22 .. | 25a | | | | |
| b Enter the smaller of line 24 or 25a... | 25b | | | | |
| 26 If section 1250 property: If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| a Additional depreciation after 1975 (see instrs) | 26a | | | | |
| b Applicable percentage multiplied by the smaller of line 24 or line 26a (see instructions) ...... | 26b | 0. | | | |
| c Subtract line 26a from line 24. If residential rental property or line 24 is not more than line 26a, skip lines 26d and 26e ... | 26c | 1,243,396. | | | |
| d Additional depreciation after 1969 & before 1976 | 26d | | | | |
| e Enter the smaller of line 26c or 26d.... | 26e | 0. | | | |
| f Section 291 amount (corporations only) ........ | 26f | | | | |
| g Add lines 26b, 26e, and 26f ... | 26g | 0. | | | |
| 27 If section 1252 property: Skip this section if you did not dispose of farmland or if this form is being completed for a partnership (other than an electing large partnership). | | | | | |
| a Soil, water, and land clearing expenses ........ | 27a | | | | |
| b Line 27a multiplied by applicable percentage (see instructions)........ | 27b | | | | |
| c Enter the smaller of line 24 or 27b..... | 27c | | | | |
| 28 If section 1254 property: | | | | | |
| a Intangible drilling and development costs, expenditures for development of mines and other natural deposits, and mining exploration costs (see instructions) | 28a | | | | |
| b Enter the smaller of line 24 or 28a..... | 28b | | | | |
| 29 If section 1255 property: | | | | | |
| a Applicable percentage of payments excluded from income under section 126 (see instructions)........ | 29a | | | | |
| b Enter the smaller of line 24 or 25a (see instrs).. | 29b | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| | | |
|---|---|---|
| 30 Total gains for all properties. Add property columns A through D, line 24.......................... | 30 | 1,243,396. |
| 31 Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13 ............. | 31 | 0. |
| 32 Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 ........................ | 32 | 1,243,396. |

**Part IV** Recapture Amounts Under Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less (see instructions)

| | | (a) Section 179 | (b) Section 280F(b)(2) |
|---|---|---|---|
| 33 Section 179 expense deduction or depreciation allowable in prior years.............. | 33 | | |
| 34 Recomputed depreciation. See instructions.................................. | 34 | | |
| 35 Recapture amount. Subtract line 34 from line 33. See the instructions for where to report... | 35 | | |

BAA    FDIZ1002  06/09/04    Form 4797 (2004)

# As Originally Filed

LWP 000482




Form **8825**

Department of the Treasury
Internal Revenue Service

**Rental Real Estate Income and Expenses of a
Partnership or an S Corporation**

► See instructions.
► Attach to Form 1065, Form 1065-B, or Form 1120S.

OMB No. 1545-1186

**2004**

Name
LAKEWOOD PROPERTIES, LTD.

Employer identification number
36-4163366

**1** Show the kind and location of each property. See page 2 for additional properties.

A FIVE UNITS, 859 N. LASALLE DRIVE, CHICAGO, IL _____

B _____

C _____

D _____

|  | | | Properties | | | |
|---|---|---|---|---|---|---|
| **Rental Real Estate Income** | | **A** | **B** | **C** | **D** |
| **2** Gross rents | 2 | 24,240. | | | |
| **Rental Real Estate Expenses** | | | | | |
| **3** Advertising | 3 | | | | |
| **4** Auto and travel | 4 | | | | |
| **5** Cleaning and maintenance | 5 | | | | |
| **6** Commissions | 6 | | | | |
| **7** Insurance | 7 | 5,294. | | | |
| **8** Legal and other professional fees | 8 | 450. | | | |
| **9** Interest | 9 | 50,508. | | | |
| **10** Repairs | 10 | 676. | | | |
| **11** Taxes | 11 | 19,128. | | | |
| **12** Utilities | 12 | 6,052. | | | |
| **13** Wages and salaries | 13 | | | | |
| **14** Depreciation (see instructions) | 14 | | | | |
| **15** Other (list) ► _____ _____ | 15 | | | | |
| **16** Total expenses for each property. Add lines 3 through 15 | 16 | 82,108. | | | |

**17** Total gross rents. Add gross rents from line 2, columns A through H ................................. | **17** | 24,240.
**18** Total expenses. Add total expenses from line 16, columns A through H ............................... | **18** | -82,108.
**19** Net gain (loss) from Form 4797, Part II, line 17, from the disposition of property from rental real estate activities .................................................................................... | **19** |
**20 a** Net income (loss) from rental real estate activities from partnerships, estates, and trusts in which this partnership or S corporation is a partner or beneficiary (from Schedule K-1) ........................ | **20a** |
**b** Identify below the partnerships, estates, or trusts from which net income (loss) is shown on line 20a. Attach a schedule if more space is needed:

**(1)** Name                                    **(2)** Employer identification number

_____       _____

_____       _____

**21** Net rental real estate income (loss). Combine lines 17 through 20a. Enter the result here and on:
• Form 1065 or 1120S: Schedule K, line 2, or ..................................................
• Form 1065-B: Part I, line 4 | **21** | -57,868.

BAA  For Paperwork Reduction Act Notice, see the separate instructions.

Form 8825 (2004)

SPSZ0101  10/22/04  **As Originally Filed**

LWP 000483



**Illinois Department of Revenue**

# IL-843 Amended Return or Notice of Change in Income

Attach to your revised Form IL-1120-ST, IL-1065, IL-1041, IL-1023-C, or IL-990-T.

Check one: ☐ For calendar year  2004 . ☐ Other year beginning _____ , ending _____ .

## Part 1: Provide the following information

**1** Print or type your name, current address, and FEIN.

LAKEWOOD PROPERTIES, LTD
Name

C/O MARK VEHSLAGE
In care of

2232 SANTA BARBARA
Mailing address

SANTA BARBARA     CA     91305
City                State        ZIP

|36-4163366|
Federal employer identification number (FEIN)

|5945-7926|
Illinois business tax (IBT) number

**3** Check the appropriate box for the type of change being made.

☐ NOL            ☐ State change
Federal change —  ☐ Partial agreed    ☒ Finalized

Write the date of IRS finalization.  03/07/2008
                                       Month  Day  Year

**2** Check the box if any of the above information is new.  ☒
Check the box if you are filing this form only to report an increased net loss (See instructions.)  ☐

**4** Explain, in detail, why you are filing this form. SEE EXPLANATION OF CHANGES IN ATTACHED FEDERAL AMENDED FORM 1120S.

**5** Check the type of Illinois return you originally filed.
☒ Form IL-1120-ST    ☐ Form IL-1041 — ☐ Trust or ☐ Estate      ☐ Form IL-990-T — ☐ Corporation or ☐ Trust
☐ Form IL-1065       ☐ Form IL-1023-C
You must attach a revised copy of the appropriate Illinois return and any required schedules.

Complete Part 2 if you are reporting a change in federal ordinary or taxable income; otherwise go to Part 3.

## Part 2: Report changes in your federal ordinary or taxable income

**6** Write your income as originally reported.

**a** Ordinary income (from U.S. Form 1120S or U.S. Form 1065) or taxable income (from U.S. Form 1065-B). Attach a worksheet detailing any change in income, as well as changes in amounts reported on Schedule K of U.S. Form 1120S, U.S. Form 1065, or U.S. Form 1065-B. Refer to Form IL-1120-ST or IL-1065, Part IA, and specific instructions. Or

**b** Taxable income (from U.S. Form 1041 or U.S. Form 990-T). Refer to Form IL-1041 or Form IL-990-T, Part I, Line 1, specific instructions for the year being amended. **6** 1,026,718

**7** Write your corrected income. **7** 3,785,718

**8** Subtract Line 6 from Line 7. This is your net change. **8** 2,759,000

## Part 3: Figure your refund or balance due

**9** Write the tax withheld. Attach Form W-2 (fiduciaries only.) **9** _____

**10** Write the estimated payments and/or payments made with Form IL-505-B. **10** _____

**11** Write the tax paid with your original return (do not include penalty and interest). **11** 4,804

**12** Write any subsequent tax payments (do not include penalty and interest). **12** _____

**13** Add Lines 9 through 12. This is your total tax paid. **13** 4,804

**14** Write the total amounts previously refunded and/or credited for the year being amended. **14** _____

**15** Subtract Line 14 from Line 13. This is your net tax paid. **15** 4,804

**16** Write the corrected net tax (not less than zero) after recapture and tax credits. **16** 46,189

**17** Refund. Subtract Line 16 from Line 15. **17** 0

**18** Tax due. Subtract Line 15 from Line 16. **18** 41,385

**19** Penalty and interest due (see instructions.) **19** _____

**20** Total balance due. Add Lines 18 and 19. Pay in full if $1 or more. (See instructions.) **20** 41,385

Do not write in this box.

Under penalties of perjury, I state that I have examined this return and, to the best of my knowledge, it is true, correct, and complete. **TAXPAYER'S COPY**

**Sign here**

Signature _____   Date 03/05/08   Title 36-2929601   Phone _____  Check if self-employed → ☐

Signature of preparer   Date

FGMK, LLC
Preparer firm's name (or yours, if self-employed)

2801 LAKESIDE DRIVE, 3RD FLOOR
Address BANNOCKBURN, IL 60015

Phone 847-374-0400

➤ Mail this return to: Illinois Department of Revenue, P.O. Box 19016, Springfield, IL 62794-9016 ➤

This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. Failure to provide information could result in a penalty. This form has been approved by the Forms Management Center.  IL-492-0077

Page 1 of 4

IL-843 (R-12/04)
ID1265
STF IL13983F

LWP 000484

<span style="writing-mode: vertical">Attach remittance payable to "Illinois Department of Revenue" here.</span>

**Illinois Department of Revenue**
**2004 Form IL-1120-ST**    ● **REVISED**    ● **Small Business Corporation Replacement Tax Return**

or fiscal year beginning _____, 2004, ending _____
Due on or before the 15th day of the 3rd month following the close of the tax year.

Do not write above this line.

**Type or print**

Name: LAKEWOOD PROPERTIES, LTD
C/O MARK VEHSLAGE

C/O

Mailing address: 2232 SANTA BARBARA

City: SANTA BARBARA    State: CA    ZIP: 93105

Check the box if your name or address has changed. [X]

36-4163366
Federal employer identification number (FEIN)

Illinois business tax (IBT) number: _____

[ ] Check this box if you are unitary and write the FEIN of the Sch. UB filer _____
Check the box if this is your: [ ] First return
[ ] Final return, complete the questions at the end.

**Part I - Base income or loss**    Complete Part IA before completing Part I

| | | |
|---|---|---|
| 1 Write your unmodified base income or loss from Part IA, Line 5. | 1 | 3,785,718. |
| 2 Additions (See specific instructions for Part I.) | | |
| a State, municipal, and other interest income excluded in arriving at Line 1 above | 2a | |
| b Illinois replacement tax deducted in arriving at Line 1 above | 2b | |
| c Other additions (specify: ) | 2c | |
| d The share of loss distributable to a shareholder subject to Illinois replacement tax | | |
| 3 Add Lines 2a through 2d. This is the total of your additions. | 3 | |
| 4 Add Lines 1 and 3. This is your total income. | 4 | 3,785,718. |
| 5 Subtractions. (See specific instructions for Part I.) | | |
| a Interest income from U.S. Treasury and other exempt federal obligations | 5a | |
| b Enterprise zone subtractions from Schedule 1299-A (See instructions.) | 5b | |
| c The share of income distributable to a shareholder subject to Illinois replacement tax | 5c | |
| d Expenses incurred in producing certain federally tax-exempt income (See instructions.) | 5d | |
| e Other subtractions (specify: ) | 5e | |
| 6 Add Lines 5a through 5e. This is the total of your subtractions. | 6 | |
| 7 Subtract Line 6 from Line 4. This is your base income or loss. | | |
| If your base income or loss is derived solely inside Illinois, write this amount on Part II, Line 1a. | | |
| If any portion of your base income or loss is derived outside Illinois, write this amount on Part III, Line 1. | 7 | 3,785,718. |

**Part II - Net income or loss and replacement tax**

| | | |
|---|---|---|
| 1 a Write your base income or loss from Part III, Line 9, if applicable; otherwise, from Part I, Line 7. | 1a | 3,785,718. |
| b Illinois net loss deduction (NLD). (Attach Schedule NLD, see instructions.) | 1b | 706,449. |
| c Subtract Line 1b from Line 1a (cannot be less than zero). This is your income after NLD. | 1c | 3,079,269. |
| 2 a Multiply Line 1c by 1.5% (.015). This is your replacement tax. | 2a 46,189. | |
| b Recapture of investment credits from Schedule 4255. (See instructions.) | 2b | |
| 3 Add Lines 2a and 2b. This is the total of your replacement tax before investment credits. | 3 | 46,189. |
| 4 Investment credits from Form IL-477. (Attach Form IL-477, see instructions.) | 4 | |
| 5 Subtract Line 4 from Line 3 (cannot be less than zero). This is your net replacement tax. | 5 | 46,189. |
| 6 Tax paid with Form IL-505-B. Include any 2003 overpayment credited to 2004 tax. | 6 | |
| 7 Overpayment. Subtract Line 5 from Line 6. | 7 | |
| a Write the amount of overpayment to be credited to 2005. | 7a | |
| 8 Tax due. Subtract Line 6 from Line 5. This is your balance of tax due (see instructions). Pay in full if $1 or more. | 8 | 46,189. |

Under penalties of perjury, I state that I have examined this return and, to the best of my knowledge, it is true, correct, and complete.

Do not write in this box.

**Sign here**
Signature of authorized officer    Date 03/13/08    Phone 36-2929601    [ ] Check if self-employed

Signature of preparer    Date    Preparer's SSN, FEIN, or PTIN

Preparer's firm's name (or yours, if self-employed): FGMK, LLC    Phone 847-374-0400
Address: 2801 LAKESIDE DRIVE, 3RD FLOOR
BANNOCKBURN, IL    60015

► Mail this return to: Illinois Department of Revenue, P.O. Box 19032, Springfield, IL 62794-9032 ◄

NS  TS  ME  ED  TF  FI  BS  XX  MA  MC  BD  LF  IM  MH  DE  IZ  TG  UR  US  AL ___ DR ___ ID ___

449301  12-09-04  **ID: 3021**  IL-1120-ST Page 1 (R-12/04)

LWP 000485

**LAKEWOOD PROPERTIES, LTD C/O MARK VEHSLA**                    36-4163366

**Part IA – Ordinary income adjustments –** (See instructions.)

1 Write your ordinary income or loss from U.S. Form 1120S, Schedule K, Line 1.      1    3,843,396.

2 Write the appropriate amounts from U.S. Form 1120S, Schedule K.

| | | | |
|---|---|---|---|
| a | Net income or loss from rental real estate activities from Line 2 | 2a | <57,868.> |
| b | Net income or loss from other rental activities from Line 3c | 2b | |
| c | Portfolio income or loss from Lines 4 through 8c | 2c | 190. |
| d | Net gain or loss from sale or exchange of property used in trade or business and certain involuntary conversions under IRC, Section 1231, from Line 9 | 2d | |
| e | Other income from Line 10 | 2e | |
| f | Any other items of income or loss that were not included in the computation of ordinary income or loss on U.S. Form 1120S, Page 1 Identify:_____ | 2f | |

2 **Total.** Add Lines 2a through 2f.                                     2    <57,678.>

3 Add Lines 1 and 2.                                                  3    3,785,718.

4 Write the appropriate amounts from U.S. Form 1120S, Schedule K.

| | | | |
|---|---|---|---|
| a | Charitable contributions from Line 12a | 4a | |
| b | Expense deduction under IRC, Section 179, from Line 11 | 4b | |
| c | Oil and gas depletion (See instructions.) | 4c | |
| d | Interest on investment indebtedness from Line 12c | 4d | |
| e | Any other items of expense that were not deducted in the computation of ordinary income or loss on U.S. Form 1120S, Page 1 Identify:_____ | 4e | |

4 **Total.** Add Lines 4a through 4e.                                     4

5 Subtract Line 4 from Line 3. This is your unmodified base income or loss. Write here and on Part I, Line 1.   5    3,785,718.

**Part III – Base income or loss allocable to Illinois**

Complete Part III only if any portion of your base income or loss is derived outside Illinois.

1 Write your base income or loss from Part I, Line 7

| | | | |
|---|---|---|---|
| 2 a | Nonbusiness income or loss included in Part III, Line 1. (Attach Schedule NB.) If you are making the business income election, check this box and write zero here and on Part III, Line 7. (See instructions.) ➡ ☐ 2a | 1 | |
| b | Business income or loss from non-unitary partnerships, trusts, and estates included in Part III, Line 1. (See instructions.) | 2b | |

3 Add Lines 2a and 2b. This is the total of your subtractions.            3

4 Subtract Line 3 from Line 1. This is your business income or loss.        4

5 Business income apportionment formula. **(Financial organizations and transportation companies:** check the appropriate box and see Special Apportionment Formulas instructions.)   ☐ F   ☐ T

| | | | |
|---|---|---|---|
| a | Total sales everywhere | 5a | |
| b | Total sales within Illinois | 5b | |
| c | Divide Line 5b by Line 5a. (Carry to six decimal places.) This is your apportionment factor. | 5c | |

6 Multiply Line 4 by Line 5c. This is your business income or loss apportionable to Illinois.    6

7 Nonbusiness income or loss allocable to Illinois. (Attach Sch. NB.) If you checked the box on Line 2a, write zero here.   7

8 Business income or loss apportionable to Illinois from non-unitary partnerships, trusts, and estates. (See instr.)   8

9 Add Lines 6 through 8. This is your base income or net loss allocable to Illinois. Write here and on Part II, Line 1a.   9

---

1 Check the method of accounting used in preparing this return:   ☒ Cash   ☐ Accrual   ☐ Other (specify: _____ )

**If you discontinued or sold your business, please complete the following.**

2 If you discontinued your business, write the date: _____

3 If you sold your business, write the date: _____

4 Tell us the new owner's name: _____

5 Tell us the new owner's address: _____

6 Tell us the former owner's forwarding address: _____

449302
03-10-05   **ID: 3021**     This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. Failure to provide information could result in a penalty. This form has been approved by the Forms Management Center.     IL-492-0066

IL-1120-ST page 2 (R-12/04)

LWP 000486

**Illinois Department of Revenue** 
**Schedule B** Partners' or Shareholders' Identification
Attach to your Form IL-1065 or Form IL-1120-ST

| | Year ending |
|---|---|
| **12** | **04** |
| Month | Year |

Write your name as shown on your Form IL-1065 or Form IL-1120-ST

LAKEWOOD PROPERTIES, LTD
C/O MARK VEHSLAGE

Write your federal employer identification number (FEIN)

36-4163366

**Identify your partners or shareholders**

| | A & B Name and Address | C Social Security number or FEIN | D Share of income or loss (%) |
|---|---|---|---|
| 1 | RICHARD SCHRIPSEMA 1106 HARBOR HILLS DRIVE SANTA BARBARA, CA 93109 | 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 | 50.000000 |
| 2 | MARK VEHSLAGE 2232 SANTA BARBARA SANTA BARBARA, CA 93105 | 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 | 50.000000 |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |

449311
10-29-04    ID: 3021    Schedule B (R-12/04)

LWP 000487

**Illinois Department of Revenue**  

Carry year ending

## Schedule NLD    Illinois Net Loss Deduction

For Illinois net losses arising in tax years ending on or after December 31, 1986.
Attach to your Form IL-1120, IL-1120-ST, IL-1041, IL-1065, IL-1120-X, IL-1120X-PY, or IL-843.

| 12 | 04 |
|----|----|
| Month | Year |

Write your name as shown on your return
LAKEWOOD PROPERTIES, LTD
C/O MARK VEHSLAGE

Write your federal employer identification number (FEIN)

36-4163366

## Step 1: Figure your Illinois net loss deduction (NLD)

Read the instructions before completing this schedule.
"Carry year" is the year to which the loss is being carried.
Write all amounts as positive figures.

|  |  | A | B | C |
|--|--|---|---|---|
|  |  | Earliest loss year ending **12/97**<br>Month  Year | Loss year ending **12/98**<br>Month  Year | Loss year ending **12/99**<br>Month  Year |
| 1 | Write your reported Illinois net loss. See instructions. | 17,041. | 53,098. | 81,482. |
| 2a | Write the carry year and the amount of Illinois net loss previously carried back or forward. See instructions. | 2a   0.<br>Month Year   Loss carried | 0.<br>Month Year   Loss carried | 0.<br>Month Year   Loss carried |
| b |  | 0.<br>Month Year   Loss carried | 0.<br>Month Year   Loss carried | 0.<br>Month Year   Loss carried |
| c |  | 0.<br>Month Year   Loss carried | 0.<br>Month Year   Loss carried | 0.<br>Month Year   Loss carried |
| 2d | Add Lines 2a through 2c. This is your total amount of loss previously carried. | 2d | | |
| 3 | Subtract Line 2d from Line 1. This is your remaining Illinois net loss. | 17,041. | 53,098. | 81,482. |
| 4 | Write the Illinois base income for this carry year. See instructions. | 3,785,718. ▶ | 3,768,677. ▶<br>▲ Write Line 6 from previous column ▲ | 3,715,579.<br>▲ Write Line 6 from previous column ▲ |
| 5 | Write the lesser of Line 3 or Line 4. This is your Illinois net loss deduction (NLD). | 17,041. | 53,098. | 81,482. |
| 6 | Subtract Line 5 from Line 4. This is your remaining income after NLD. | 3,768,677. | 3,715,579. | 3,634,097. |
| 7 | Subtract Line 5 from Line 3. This is your remaining NLD for subsequent years. | 0. | 0. | 0. |

706,449.
Total of Columns A, B, and C, Line 5. See instructions.

Remember: You must attach supporting documentation to this schedule.

## Step 2: Identify the loss year company

Complete this part only if the loss shown on Step 1, Line 1, originated from a company other than the one filing this return.
Write the FEIN of the company and the reason (e.g., merger) you are allowed to use that company's losses.

| A | B | C |
|---|---|---|
| 8 FEIN: _____ | 9 FEIN: _____ | 10 FEIN: _____ |
| Reason: _____ | Reason: _____ | Reason: _____ |
| _____ | _____ | _____ |

Schedule NLD Page 1 (R-12/04)
449261
12-09-04   **ID: 3021**

This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. Failure to provide information could result in a penalty. This form has been approved by the Forms Management Center.    IL-492-2331

LWP 000488

**Illinois Department of Revenue**  

Carry year ending

## Schedule NLD    Illinois Net Loss Deduction

For Illinois net losses arising in tax years ending on or after December 31, 1986.
Attach to your Form IL-1120, IL-1120-ST, IL-1041, IL-1065, IL-1120-X, IL-1120X-PY, or IL-843.

| 12 | 04 |
|---|---|
| Month | Year |

Write your name as shown on your return
LAKEWOOD PROPERTIES, LTD
C/O MARK VEHSLAGE

Write your federal employer identification number (FEIN)
36-4163366

## Step 1:  Figure your Illinois net loss deduction (NLD)

Read the instructions before completing this schedule.
"Carry year" is the year to which the loss is being carried.
Write all amounts as positive figures.

|  |  | A | B | C |
|---|---|---|---|---|
|  |  | Earliest loss year ending **12/00** Month Year | Loss year ending **12/01** Month Year | Loss year ending **12/02** Month Year |
| 1 | Write your reported Illinois net loss. See instructions. | 105,782. | 139,898. | 116,377. |
| 2a | Write the carry year and the amount of Illinois net loss previously carried back or forward. See instructions. | 2a  Month Year  Loss carried  0. | Month Year  Loss carried  0. | Month Year  Loss carried  0. |
| b |  | b  Month Year  Loss carried  0. | Month Year  Loss carried  0. | Month Year  Loss carried  0. |
| c |  | c  Month Year  Loss carried  0. | Month Year  Loss carried  0. | Month Year  Loss carried  0. |
| 2d | Add Lines 2a through 2c. This is your total amount of loss previously carried. | 2d | | |
| 3 | Subtract Line 2d from Line 1. This is your remaining Illinois net loss. | 105,782. | 139,898. | 116,377. |
| 4 | Write the Illinois base income for this carry year. See instructions. | 3,634,097. | 3,528,315. | 3,388,417. |
| 5 | Write the lesser of Line 3 or Line 4. This is your Illinois net loss deduction (NLD). | 105,782. | 139,898. | 116,377. |
| 6 | Subtract Line 5 from Line 4. This is your remaining income after NLD. | 3,528,315. | 3,388,417. | 3,272,040. |
| 7 | Subtract Line 5 from Line 3. This is your remaining NLD for subsequent years. | 0. | 0. | 0. |

For Line 4 column B: Write Line 6 from previous column
For Line 4 column C: Write Line 6 from previous column

Total of Columns A, B, and C, Line 5. See instructions.

**Remember:** You must attach supporting documentation to this schedule.

## Step 2:  Identify the loss year company

Complete this part only if the loss shown on Step 1, Line 1, originated from a company other than the one filing this return.
Write the FEIN of the company and the reason (e.g., merger) you are allowed to use that company's losses.

| A | B | C |
|---|---|---|
| 8 FEIN: _____ | 9 FEIN: _____ | 10 FEIN: _____ |
| Reason: _____ | Reason: _____ | Reason: _____ |

Schedule NLD Page 1 (R-12/04)
449261
12-00-04    **ID: 3021**

This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. Failure to provide information could result in a penalty. This form has been approved by the Forms Management Center.    IL-492-2331

LWP 000489

Illinois Department of Revenue   

| | | Carry year ending |
|---|---|---|
| | | 12 / 04 |
| | | Month / Year |

## Schedule NLD    Illinois Net Loss Deduction

For Illinois net losses arising in tax years ending on or after December 31, 1986.

Attach to your Form IL-1120, IL-1120-ST, IL-1041, IL-1065, IL-1120-X, IL-1120X-PY, or IL-843.

Write your name as shown on your return

LAKEWOOD PROPERTIES, LTD
C/O MARK VEHSLAGE

Write your federal employer identification number (FEIN)

36-4163366

## Step 1:  Figure your Illinois net loss deduction (NLD)

Read the instructions before completing this schedule.

"Carry year" is the year to which the loss is being carried.

Write all amounts as positive figures.

| | | A Earliest loss year ending 12/03 Month Year | B Loss year ending Month Year | C Loss year ending Month Year |
|---|---|---|---|---|
| 1 | Write your reported Illinois net loss. See instructions. | 192,771. | | |
| 2a | Write the carry year and the amount of Illinois net loss previously carried back or forward. See instructions. | 2a 0. Month Year Loss carried | Month Year Loss carried | Month Year Loss carried |
| b | | 0. Month Year Loss carried | Month Year Loss carried | Month Year Loss carried |
| c | | 0. Month Year Loss carried | Month Year Loss carried | Month Year Loss carried |
| 2d | Add Lines 2a through 2c. This is your total amount of loss previously carried. | 2d | | |
| 3 | Subtract Line 2d from Line 1. This is your remaining Illinois net loss. | 192,771. | | |
| 4 | Write the Illinois base income for this carry year. See instructions. | 3,272,040. | ➤ Write Line 5 from previous column ▲ | ➤ Write Line 5 from previous column ▲ |
| 5 | Write the lesser of Line 3 or Line 4. This is your Illinois net loss deduction (NLD). | 192,771. | | Total of Columns A, B, and C, Line 5. See instructions. |
| 6 | Subtract Line 5 from Line 4. This is your remaining income after NLD. | 3,079,269. | | |
| 7 | Subtract Line 5 from Line 3. This is your remaining NLD for subsequent years. | 0. | | |

Remember: You must attach supporting documentation to this schedule.

## Step 2:  Identify the loss year company

Complete this part only if the loss shown on Step 1, Line 1, originated from a company other than the one filing this return.

Write the FEIN of the company and the reason (e.g., merger) you are allowed to use that company's losses.

| A | B | C |
|---|---|---|
| 8 FEIN: _____ | 9 FEIN: _____ | 10 FEIN: _____ |
| Reason: _____ | Reason: _____ | Reason: _____ |

Schedule NLD Page 1 (R-12/04)
449281
12-09-04  ID: 3021

This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. Failure to provide information could result in a penalty. This form has been approved by the Forms Management Center.    IL-492-2331

LWP 000490

Illinois Department of Revenue  
**Schedule K-1-P**  
For partnerships filing Form IL-1065 or S corporations filing Form IL-1120-ST.  
Do not attach this form to your Form IL-1065 or Form IL-1120-ST.

**Partner's or Shareholder's Share of Income, Deductions, Credits, and Recapture**

**Year ending**

| 12 | 04 |
|----|----|
| Month | Year |

**CORRECTED**

## Step 1:  Identify your partnership or S corporation

1 Check your business type ☐ partnership  ☒ S corporation

**LAKEWOOD PROPERTIES, LTD**

2 **C/O MARK VEHSLAGE**  
Write your name as shown on your Form IL-1065 or Form IL-1120-ST

3 **36-4163366**  
Write your federal employer identification number (FEIN)

4 Write the apportionment factor from Part II, Line 5c, of Form IL-1065 or Form IL-1120-ST; otherwise, write "1."  **1.000000**

## Step 2:  Identify your partner or shareholder

5 **RICHARD SCHRIPSEMA**  
Name

6 **1106 HARBOR HILLS DRIVE**  
Mailing address

**SANTA BARBARA, CA 93109**  
City                                State          ZIP

7 **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**  
Social Security number or FEIN

8 **50.000000**  
Share (%)

9 Check the appropriate box  
☒ Individual  ☐ corporation  ☐ trust  
☐ partnership  ☐ S corporation  ☐ estate

## Step 3:  Figure your partner's or shareholder's share of your nonbusiness income

|  | A Member's share (see instructions) | B Nonresident member's share allocable to Illinois |
|---|---|---|
| 10 Interest | 10 _____ | _____ |
| 11 Dividends | 11 _____ | _____ |
| 12 Rental income | 12 _____ | _____ |
| 13 Patent royalties | 13 _____ | _____ |
| 14 Copyright royalties | 14 _____ | _____ |
| 15 Other royalty income | 15 _____ | _____ |
| 16 Capital gain or loss from real property | 16 _____ | _____ |
| 17 Capital gain or loss from tangible personal property | 17 _____ | _____ |
| 18 Capital gain or loss from intangible personal property | 18 _____ | _____ |
| 19 Other income and expense | 19 _____ | _____ |
|   Specify |  |  |

## Step 4:  Figure your partner's or shareholder's share of your business income (loss)
(See instructions.)

|  | A Member's share from U.S. Schedule K-1, less nonbusiness income | B Nonresident member's share apportioned to Illinois |
|---|---|---|
| 20 Ordinary income (loss) from trade or business activity | 20 **1,921,698.** | _____ |
| 21 Net income (loss) from rental real estate activities | 21 **<28,934.>** | _____ |
| 22 Net income (loss) from other rental activities | 22 _____ | _____ |
| 23 Interest | 23 **95.** | _____ |
| 24 Dividends | 24 _____ | _____ |
| 25 Royalties | 25 _____ | _____ |
| 26 Net short-term capital gain (loss) | 26 _____ | _____ |
| 27 Net long-term capital gain (loss). (Total for year) | 27 _____ | _____ |
| 28 Other portfolio income (loss) | 28 _____ | _____ |
| 29 Guaranteed payments to partner (U.S. Form 1065 only) | 29 _____ | _____ |
| 30 Net Section 1231 gain (loss) (other than casualty or theft) | 30 _____ | _____ |
| 31 Other income and expense _____ | 31 _____ | _____ |
|   Specify |  |  |

Schedule K-1-P page 1 (R-12/04)  
**ID: 3021**  
440131  
12-09-04

This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. This form has been approved by the Forms Management Center.  
IL-492-3873

**SHAREHOLDER NUMBER    1**

LWP 000491

LAKEWOOD PROPERTIES, LTD C/O MARK VEHSLA                36-4163366

## Step 5: Figure your partner's or shareholder's share of Illinois additions and subtractions

| | A<br>Member's share from<br>Form IL-1065 or IL-1120-ST | B<br>Nonresident member's<br>share apportioned or<br>allocated to Illinois |
|---|---|---|

**Additions**

| | | | |
|---|---|---|---|
| 32 Federally tax-exempt interest income | 32 | | |
| 33 Illinois replacement tax deducted | 33 | | |
| 34 Other additions _____ Specify | 34 | | |

**Subtractions**

| | | | |
|---|---|---|---|
| 35 a Interest from U.S. Treasury obligations included as business income | 35a | | |
| b Interest from U.S. Treasury obligations included as nonbusiness income | 35b | | |
| 36 Schedule 1299-A subtractions (see instructions) | | | |
| a Enterprise Zone Dividend Subtraction | 36a | | |
| b High Impact Business within a Foreign Trade Zone (or sub-zone) Dividend Subtraction | 36b | | |
| c Contribution Subtraction (Form IL-1120-ST filers only) | 36c | | |
| d Interest Subtraction - Enterprise Zones (Form IL-1120-ST financial organization filers only) | 36d | | |
| e Interest Subtraction - High Impact Business within a Foreign Trade Zone (or sub-zone) (Form IL-1120-ST financial organization filers only) | 36e | | |
| 37 Certain federally-disallowed deductions | 37 | | |
| 38 a Any refund of an overpayment of Illinois replacement tax | 38a | | |
| b Income exempt from taxation by Illinois by reason of its statutes or Constitution, or the Constitution, treaties, or statutes of the U.S. | 38b | | |
| c Subtractions from partnerships, S corps, trusts, or estates | 38c | | |
| d The deduction used to compute the federal tax credit for restoration of amounts held under claim of right | 38d | | |
| e Depreciation subtraction (see instructions) | 38e | | |
| f Other subtractions not listed above _____ Specify | 38f | | |

## Step 6: Figure your partner's or shareholder's (except a corporate partner or shareholder) share of your Illinois August 1, 1969, appreciation amounts

| | A<br>Member's share<br>from Illinois Schedule F<br>(Form IL-1065 or IL-1120-ST) | B<br>Nonresident member's<br>share apportioned or<br>allocated to Illinois |
|---|---|---|
| 39 Section 1245 and 1250 gain | 39 | |
| 40 Section 1231 gain | 40 | |
| 41 Section 1231 gain less casualty and theft gain (See instructions.) | 41 | |
| 42 Capital gain | 42 | |

## Step 7: Figure your partner's or shareholder's share of your Illinois credits and recapture (See instructions.)

| | A<br>Member's or nonresident member's<br>share from Illinois tax return |
|---|---|
| **43 Illinois credits** | |
| a Film Production Services Tax Credit | 43a |
| b Transportation Employee Credit | 43b |
| c Enterprise Zone Investment Credit | 43c |
| d Tax Credit for Affordable Housing Donations | 43d |
| e Economic Development for a Growing Economy (EDGE) Tax Credit | 43e |
| f Environmental Remediation Tax Credit carryforward | 43f |
| g Research & Development Tax Credit | 43g |
| h Replacement Tax Investment Credits (See instructions.) | 43h |
| **Recapture** | |
| 44 a Enterprise Zone Investment Credit recapture | 44a |
| b Replacement Tax Investment Credit recapture | 44b |

449132
12-09-04  ID: 3021

Schedule K-1-P page 2 (R-12/04)

SHAREHOLDER NUMBER        1

LWP 000492

**Illinois Department of Revenue**
## Schedule K-1-P
For partnerships filing Form IL-1065 or S corporations filing Form IL-1120-ST
Do not attach this form to your Form IL-1065 or Form IL-1120-ST.

**Partner's or Shareholder's Share Income, Deductions, Credits, and Recapture**

**Year ending**

| 12 | 04 |
|----|----|
| Month | Year |

CORRECTED

---

## Step 1:   Identify your partnership or S corporation

1 Check your business type  ☐ partnership   ☒ S corporation

**LAKEWOOD PROPERTIES, LTD**

2 **C/O MARK VEHSLAGE**
Write your name as shown on your Form IL-1065 or Form IL-1120-ST

3 **36-4163366**
Write your federal employer identification number (FEIN)

4 Write the apportionment factor from Part III, Line 5c, of Form IL-1065
or Form IL-1120-ST; otherwise, write "1."    **1.000000**

---

## Step 2:   Identify your partner or shareholder

5 **MARK VEHSLAGE**
Name

6 **2232 SANTA BARBARA**
Mailing address

**SANTA BARBARA, CA 93105**
City                     State        ZIP

7 **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**
Social Security number or FEIN

8 **50.000000**
Share (%)

9 Check the appropriate box
☒ individual        ☐ corporation        ☐ trust
☐ partnership       ☐ S corporation      ☐ estate

---

## Step 3:   Figure your partner's or shareholder's share of your nonbusiness income

| | | A<br>Member's share<br>(see instructions) | B<br>Nonresident member's<br>share allocable to Illinois |
|---|---|---|---|
| 10 | Interest | 10 _____ | _____ |
| 11 | Dividends | 11 _____ | _____ |
| 12 | Rental income | 12 _____ | _____ |
| 13 | Patent royalties | 13 _____ | _____ |
| 14 | Copyright royalties | 14 _____ | _____ |
| 15 | Other royalty income | 15 _____ | _____ |
| 16 | Capital gain or loss from real property | 16 _____ | _____ |
| 17 | Capital gain or loss from tangible personal property | 17 _____ | _____ |
| 18 | Capital gain or loss from intangible personal property | 18 _____ | _____ |
| 19 | Other income and expense _____ | 19 _____ | _____ |
| | Specify | | |

---

## Step 4:   Figure your partner's or shareholder's share of your business income (loss)
(See instructions.)

| | | A<br>Member's share<br>from U.S. Schedule K-1,<br>less nonbusiness income | B<br>Nonresident member's<br>share apportioned to Illinois |
|---|---|---|---|
| 20 | Ordinary income (loss) from trade or business activity | 20   1,921,698. | 1,921,698. |
| 21 | Net income (loss) from rental real estate activities | 21   <28,934.> | <28,934.> |
| 22 | Net income (loss) from other rental activities | 22 _____ | _____ |
| 23 | Interest | 23   95. | 95. |
| 24 | Dividends | 24 _____ | _____ |
| 25 | Royalties | 25 _____ | _____ |
| 26 | Net short-term capital gain (loss) | 26 _____ | _____ |
| 27 | Net long-term capital gain (loss). (Total for year) | 27 _____ | _____ |
| 28 | Other portfolio income (loss) | 28 _____ | _____ |
| 29 | Guaranteed payments to partner (U.S. Form 1065 only) | 29 _____ | _____ |
| 30 | Net Section 1231 gain (loss) (other than casualty or theft) | 30 _____ | _____ |
| 31 | Other income and expense _____ | 31 _____ | _____ |
| | Specify | | |

---

Schedule K-1-P page 1 (R-12/04)

This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. This form has been approved by the Forms Management Center.    IL-492-3873

ID: 3021
440131
12-09-04

**SHAREHOLDER NUMBER**        2

LWP 000493

LAKEWOOD PROPERTIES, LTD C/O MARK VEHSLA                36-4163366

| Step 5: Figure your partner's or shareholder's share of Illinois additions and subtractions | Member's share from Form IL-1065 or IL-1120-ST | B Nonresident member's share apportioned or allocated to Illinois |
|---|---|---|
| **Additions** | | |
| 32 Federally tax-exempt interest income | 32 _____ | _____ |
| 33 Illinois replacement tax deducted | 33 _____ | _____ |
| 34 Other additions _____ Specify | 34 _____ | _____ |
| **Subtractions** | | |
| 35 a Interest from U.S. Treasury obligations included as business income | 35a _____ | _____ |
| b Interest from U.S. Treasury obligations included as nonbusiness income | 35b _____ | _____ |
| 36 Schedule 1299-A subtractions (see instructions) | | |
| a Enterprise Zone Dividend Subtraction | 36a _____ | _____ |
| b High Impact Business within a Foreign Trade Zone (or sub-zone) Dividend Subtraction | 36b _____ | _____ |
| c Contribution Subtraction (Form IL-1120-ST filers only) | 36c _____ | _____ |
| d Interest Subtraction - Enterprise Zones (Form IL-1120-ST financial organization filers only) | 36d _____ | _____ |
| e Interest Subtraction - High Impact Business within a Foreign Trade Zone (or sub-zone) (Form IL-1120-ST financial organization filers only) | 36e _____ | _____ |
| 37 Certain federally-disallowed deductions | 37 _____ | _____ |
| 38 a Any refund of an overpayment of Illinois replacement tax | 38a _____ | _____ |
| b Income exempt from taxation by Illinois by reason of its statutes or Constitution, or the Constitution, treaties, or statutes of the U.S. | 38b _____ | _____ |
| c Subtractions from partnerships, S corps, trusts, or estates | 38c _____ | _____ |
| d The deduction used to compute the federal tax credit for restoration of amounts held under claim of right | 38d _____ | _____ |
| e Depreciation subtraction (see instructions) | 38e _____ | _____ |
| f Other subtractions not listed above _____ Specify | 38f _____ | _____ |

| Step 6: Figure your partner's or shareholder's (except a corporate partner or shareholder) share of your Illinois August 1, 1969, appreciation amounts | A Member's share from Illinois Schedule F (Form IL-1065 or IL-1120-ST) | B Nonresident member's share apportioned or allocated to Illinois |
|---|---|---|
| 39 Section 1245 and 1250 gain | 39 _____ | _____ |
| 40 Section 1231 gain | 40 _____ | _____ |
| 41 Section 1231 gain less casualty and theft gain (See instructions.) | 41 _____ | _____ |
| 42 Capital gain | 42 _____ | _____ |

| Step 7: Figure your partner's or shareholder's share of your Illinois credits and recapture (See instructions.) | A Member's or nonresident member's share from Illinois tax return |
|---|---|
| **43 Illinois credits** | |
| a Film Production Services Tax Credit | 43a _____ |
| b Transportation Employee Credit | 43b _____ |
| c Enterprise Zone Investment Credit | 43c _____ |
| d Tax Credit for Affordable Housing Donations | 43d _____ |
| e Economic Development for a Growing Economy (EDGE) Tax Credit | 43e _____ |
| f Environmental Remediation Tax Credit carryforward | 43f _____ |
| g Research & Development Tax Credit | 43g _____ |
| h Replacement Tax Investment Credits (See instructions.) | 43h _____ |
| **Recapture** | |
| 44 a Enterprise Zone Investment Credit recapture | 44a _____ |
| b Replacement Tax Investment Credit recapture | 44b _____ |

449132
12-00-04  **ID: 3021**

Schedule K-1-P page 2 (R-12/04)

SHAREHOLDER NUMBER    2

LWP 000494

| Form **1120S** | **U.S. Income Tax Return for an S Corporation** | OMB No. 1545-0130 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Do not file this form unless the corporation has timely filed Form 2553 to elect to be an S corporation. | **2004** |

For calendar year 2004, or tax year beginning _____ , and ending _____

| A Effective date of S election **05/15/1997** | Use IRS label. Other-wise, print or type. | Name **LAKEWOOD PROPERTIES, LTD C/O MARK VEHSLAGE** | C Employer identification number **36-4163366** |
|---|---|---|---|
| B Business code number (see pages 33-38 of the insts.) **531110** | | Number, street, and room or suite no. (If a P.O. box, see page 12 of the instructions.) **2232 SANTA BARBARA** | D Date incorporated **05/15/1997** |
| | | City or town, state, and ZIP code **SANTA BARBARA, CA 93105** | E Total assets (see page 12 of instr) $ **1,312,444.** |

F Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☒ Address change (5) ☒ Amended return

G Enter number of shareholders in the corporation at end of the tax year ▶ **2**

Caution: Include only trade or business income and expenses on lines 1a through 21. See page 13 of the instructions for more information.

| | | | | | |
|---|---|---|---|---|---|
| **Income** | 1 a Gross receipts or sales | b Less returns and allowances | c Bal ▶ | 1c | |
| | 2 Cost of goods sold (Schedule A, line 8) | | | 2 | |
| | 3 Gross profit. Subtract line 2 from line 1c | | | 3 | |
| | 4 Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | | 4 | 1,243,396. |
| | 5 Other income (loss) (attach schedule) | | STATEMENT 1 | 5 | 2,600,000. |
| | 6 Total income (loss). Combine lines 3 through 5 | | ▶ | 6 | 3,843,396. |
| **Deductions (See instructions for limitations)** | 7 Compensation of officers | | | 7 | |
| | 8 Salaries and wages (less employment credits) | | | 8 | |
| | 9 Repairs and maintenance | | | 9 | |
| | 10 Bad debts | | | 10 | |
| | 11 Rents | | | 11 | |
| | 12 Taxes and licenses | | | 12 | |
| | 13 Interest | | | 13 | |
| | 14 a Depreciation (attach Form 4562) | | 14a | | |
| | b Depreciation claimed on Schedule A and elsewhere on return | | 14b | | |
| | c Subtract line 14b from line 14a | | | 14c | |
| | 15 Depletion (Do not deduct oil and gas depletion.) | | | 15 | |
| | 16 Advertising | | | 16 | |
| | 17 Pension, profit-sharing, etc., plans | | | 17 | |
| | 18 Employee benefit programs | | | 18 | |
| | 19 Other deductions (attach schedule) | | | 19 | |
| | 20 Total deductions. Add the amounts shown in the far right column for lines 7 through 19 | | ▶ | 20 | |
| | 21 Ordinary business income (loss). Subtract line 20 from line 6 | | | 21 | 3,843,396. |
| **Tax and Payments** | 22 Tax a Excess net passive income tax (attach schedule) | | 22a | | |
| | b Tax from Schedule D (Form 1120S) | | 22b | | |
| | c Add lines 22a and 22b | | | 22c | |
| | 23 Payments: a 2004 estimated tax payments and amount applied from 2003 return | | 23a | | |
| | b Tax deposited with Form 7004 | | 23b | | |
| | c Credit for Federal tax paid on fuels (attach Form 4136) | | 23c | | |
| | d Add lines 23a through 23c | | | 23d | |
| | 24 Estimated tax penalty. Check if Form 2220 is attached ▶ ☐ | | | 24 | |
| | 25 Tax due. If line 23d is smaller than the total of lines 22c and 24, enter amount owed. | | | 25 | |
| | 26 Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | | | 26 | |
| | 27 Enter amount of line 26 you want: Credited to 2005 estimated tax ▶ | Refunded ▶ | | 27 | |

| **Sign Here** | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | May the IRS discuss this return with the preparer shown below (see instr.)? ☒ Yes ☐ No |
|---|---|---|
| | ▶ _____ ▶ _____ ▶ _____ | |
| | Signature of officer        Date        Title | |

| **Paid Preparer's Use Only** | Preparer's signature ▶ | Date **03/13/08** | Check if self-employed ☐ | Preparer's SSN or PTIN **P00024633** |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ **FGMK, LLC 2801 LAKESIDE DRIVE, 3RD FLOOR BANNOCKBURN, IL 60015** | | EIN **36-2929601** Phone no. **847-374-0400** | |

JWA 411701 01-05-05   For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.   Form **1120S** (2004)

LWP 000495

Form 1120S (2004)    LAKEWOOD PROPERTIES, LTD C/O MARK VELLA    36-4163366    Page 2

| Schedule A | Cost of Goods Sold (see page 18 of the instructions) | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule) | 5 | |
| 6 | Total. Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9 a Check all methods used for valuing closing inventory:   (i) ☐ Cost as described in Regulations section 1.471-3
   (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4
   (iii) ☐ Other (specify method used and attach explanation) ▶

b Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) ............................ ▶ ☐

c Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ............ ▶ ☐

d If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of closing inventory
   computed under LIFO | 9d |

e If property produced or acquired for resale, do the rules of Section 263A apply to the corporation? .................... ☐ Yes ☐ No

f Was there any change in determining quantities, cost, or valuations between opening and closing inventory? ....... ☐ Yes ☐ No
   If "Yes," attach explanation.

| Schedule B | Other Information (see page 19 of the instructions) | | Yes | No |
|---|---|---|---|---|
| 1 | Check method of accounting: (a) ☒ Cash   (b) ☐ Accrual   (c) ☐ Other (specify) ▶ | | | |
| 2 | See pages 36 through 38 of the instructions and enter the: | | | |
| | (a) Business activity ▶ REAL ESTATE   (b) Product or service ▶ RESIDENTIAL RENTALS | | | |
| 3 | At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) If "Yes," attach a schedule showing: (a) name, address, and employer identification number and (b) percentage owned | | | X |
| 4 | Was the corporation a member of a controlled group subject to the provisions of section 1561? | | | X |
| 5 | Check this box if the corporation has filed or is required to file Form 8264, Application for Registration of a Tax Shelter ........... ▶ ☐ | | | |
| 6 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ........... ▶ ☐ | | | |
| | If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | | |
| 7 | If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to its basis (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain (defined in section 1374(d)(1)) in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years ........... ▶ $ | | | |
| 8 | Check this box if the corporation had accumulated earnings and profits at the close of the tax year ........... ▶ ☐ | | | |
| 9 | Are the corporation's total receipts (see page 19 of the instructions) for the tax year and its total assets at the end of the tax year less than $250,000? If "Yes," the corporation is not required to complete Schedules L and M-1 | | | X |

Note: If the corporation had assets or operated a business in a foreign country or U.S. possession, it may be required to attach Schedule N (Form 1120), Foreign Operations of U.S. Corporations, to this return. See Schedule N for details.

| Schedule K | Shareholders' Shares of Income, Deductions, Credits, etc. | | | | |
|---|---|---|---|---|---|
| | Shareholders' Pro Rata Share Items | | | | Total amount |
| Income (Loss) | 1 | Ordinary business income (loss) (page 1, line 21) | | 1 | 3,843,396. |
| | 2 | Net rental real estate income (loss) (attach Form 8825)    STATEMENT 2 | | 2 | <57,868.> |
| | 3a | Other gross rental income (loss) | 3a | | |
| | b | Expenses from other rental activities (attach schedule) | 3b | | |
| | c | Net other rental income (loss). Subtract line 3b from line 3a | | 3c | |
| | 4 | Interest income | | 4 | 190. |
| | 5 | Dividends: a Ordinary dividends | | 5a | |
| | | b Qualified dividends | 5b | | |
| | 6 | Royalties | | 6 | |
| | 7 | Net short-term capital gain (loss) | | 7 | |
| | 8a | Net long-term capital gain (loss) | | 8a | |
| | b | Collectibles (28%) gain (loss) | 8b | | |
| | c | Unrecaptured section 1250 gain (attach schedule) | 8c | | |
| | 9 | Net section 1231 gain (loss) (attach Form 4797) | | 9 | |
| | 10 | Other income (loss) (attach schedule) | | 10 | |

JWA
411711
01-12-05

Form **1120S** (2004)

LWP 000496

Form 1120S (2004)    LAKEWOOD PROPERTIES, LTD C/O MARK VE BLA    36-4163366    Page 3

| | Shareholders' Pro Rata Share Items (continued) | | Total amount |
|---|---|---|---|
| **Deductions** | 11   Section 179 deduction (attach Form 4562) | 11 | |
| | 12a  Contributions | 12a | |
| | b  Deductions related to portfolio income (attach schedule) | 12b | |
| | c  Investment interest expense | 12c | |
| | d  Section 59(e)(2) expenditures   (1) Type ▶ | | |
| | (2) Amount ▶ | 12d(2) | |
| | e  Other deductions (attach schedule) | 12e | |
| **Credits & Credit Recapture** | 13a  Low-income housing credit (section 42(j)(5)) | 13a | |
| | b  Low-income housing credit (other) | 13b | |
| | c  Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 13c | |
| | d  Other rental real estate credits | 13d | |
| | e  Other rental credits | 13e | |
| | f  Credit for alcohol used as fuel (attach Form 6478) | 13f | |
| | g  Other credits and credit recapture (attach schedule) | 13g | |
| **Foreign Transactions** | 14a  Name of country or U.S. possession ▶ | | |
| | b  Gross income from all sources | 14b | |
| | c  Gross income sourced at shareholder level | 14c | |
| | Foreign gross income sourced at corporate level: | | |
| | d  Passive | 14d | |
| | e  Listed categories (attach schedule) | 14e | |
| | f  General limitation | 14f | |
| | Deductions allocated and apportioned at shareholder level: | | |
| | g  Interest expense | 14g | |
| | h  Other | 14h | |
| | Deductions allocated and apportioned at corporate level to foreign source income: | | |
| | i  Passive | 14i | |
| | j  Listed categories (attach schedule) | 14j | |
| | k  General limitation | 14k | |
| | Other information: | | |
| | l  Foreign taxes paid | 14l | |
| | m Foreign taxes accrued | 14m | |
| | n  Reduction in taxes available for credit (attach schedule) | 14n | |
| **Alternative Minimum Tax (AMT) Items** | 15a  Post-1986 depreciation adjustment | 15a | |
| | b  Adjusted gain or loss | 15b | |
| | c  Depletion (other than oil and gas) | 15c | |
| | d  Oil, gas, and geothermal properties - gross income | 15d | |
| | e  Oil, gas, and geothermal properties - deductions | 15e | |
| | f  Other AMT items (attach schedule) | 15f | |
| **Items Affecting Shareholder Basis** | 16a  Tax-exempt interest income | 16a | |
| | b  Other tax-exempt income | 16b | |
| | c  Nondeductible expenses | 16c | |
| | d  Property distributions | 16d | 2,111,825. |
| | e  Repayment of loans from shareholders | 16e | 488,175. |
| **Other Information** | 17a  Investment income | 17a | 190. |
| | b  Investment expenses | 17b | |
| | c  Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d  Other items and amounts (attach schedule) | | |
| | e  Income/loss reconciliation. (Required only if Schedule M-1 must be completed.) Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12e and lines 14l or 14m, whichever applies | 17e | 3,785,718. |

JWA    Form **1120S** (2004)

411721
03-11-05

LWP 000497

Form 1120S (2004)    LAKEWOOD PROPERTIES, LTD C/O MARK VECLA    36-4163366    Page 4

Note: The corporation is not required to complete Schedules L and M-1 if question 9 of Schedule B is answered "Yes."

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | Assets | (a) | (b) | (c) | (d) |
| 1 | Cash | | 75,900. | | 324,321. |
| 2 a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | | | | |
| 3 | Inventories | | | | |
| 4 | U.S. Government obligations | | | | |
| 5 | Tax-exempt securities | | | | |
| 6 | Other current assets (Att. Sch.) | STATEMENT 5 | 201,388. | | |
| 7 | Loans to shareholders | | | | |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (Att. Sch.) | | | | |
| 10 a | Buildings and other depreciable assets | 2,673,168. | | 1,159,771. | |
| b | Less accumulated depreciation | 540,022. | 2,133,146. | 171,648. | 988,123. |
| 11 a | Depletable assets | | | | |
| b | Less accumulated depletion | | | | |
| 12 | Land (net of any amortization) | | 261,000. | | |
| 13 a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | | | | |
| 14 | Other assets (Att. Sch.) | | | | |
| 15 | Total assets | | 2,671,434. | | 1,312,444. |
| | Liabilities and Shareholders' Equity | | | | |
| 16 | Accounts payable | | | | |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (Att. Sch.) | | | | |
| 19 | Loans from shareholders | | 488,175. | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | 2,544,708. | | |
| 21 | Other liabilities (Att. Sch.) | | | | |
| 22 | Capital stock | | 1,000. | | 1,000. |
| 23 | Additional paid-in capital | | 344,000. | | 344,000. |
| 24 | Retained earnings | STATEMENT 6 | <706,449.> | | 967,444. |
| 25 | Adjustments to shareholders' equity (Att. Sch.) | | | | |
| 26 | Less cost of treasury stock | | ( ) | | ( ) |
| 27 | Total liabilities and shareholders' equity | | 2,671,434. | | 1,312,444. |

| Schedule M-1 | Reconciliation of Income (Loss) per Books With Income (Loss) per Return | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | 3,785,718. | 5 Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, 10, not recorded on books this year (itemize): | | a Tax-exempt interest $ | | |
| 3 | Expenses recorded on books this year not included on Schedule K, lines 1 through 12, and 14l or (14m) (itemize): a Depreciation $ b Travel and entertainment $ | | 6 Deductions included on Schedule K, lines 1 through 12, and 14l or (14m), not charged against book income this year (itemize): a Depreciation $ | | |
| | | | 7 Add lines 5 and 6 | | |
| 4 | Add lines 1 through 3 | 3,785,718. | 8 Income (loss) (Schedule K, line 17a). Line 4 less line 7 | | 3,785,718. |

| Schedule M-2 | Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see page 32 of the instructions) | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|---|
| 1 | Balance at beginning of tax year | <706,449.> | | |
| 2 | Ordinary income from page 1, line 21 | 3,843,396. | | |
| 3 | Other additions    STATEMENT 3 | 190. | | |
| 4 | Loss from page 1, line 21 | ( ) | | |
| 5 | Other reductions    STATEMENT 4 | 57,868. | ( ) | |
| 6 | Combine lines 1 through 5 | 3,079,269. | | |
| 7 | Distributions other than dividend distributions | 2,111,825. | | |
| 8 | Balance at end of tax year. Subtract line 7 from line 6 | 967,444. | | |

411731
01-12-05    JWA

Form 1120S (2004)

LWP 000498



LAKEWOOD PROPERTIES, LTD
36-4163366
2004 AMENDED FORM 1120S

EXPLANATION OF CHANGES:

1. TO REPORT INCOME FROM BETA CAPITAL PARTNERS LP. SEE FORM 1120S, LINE 5. THE AMOUNT WAS ORIGINALLY TREATED AS A LOAN FROM BETA. THAT DETERMINATION HAS BEEN CHANGED TO INCOME FROM BETA.

2. TO CHANGE THE CHARACTER OF THE GAIN ON THE SALE OF CONDOS FROM SECTION 1231 TO ORDINARY INCOME. SEE FORM 4797. THAT DETERMINATION HAS CHANGED BASED UPON THE FACTS AND CIRCUMSTANCES OF THE TAXPAYER HAVING DEALER RATHER THAN INVESTOR STATUS.

3. TO REMOVE THE ESCROW LOSS FROM SCHEDULE D. THAT DETERMINATION HAS CHANGED FROM AN INVESTMENT TO A PERSONAL LOSS OF A SHAREHOLDER. IN THE PREPARATION OF THE ORIGINAL RETURN, THE ESCROW AMOUNT WAS TREATED AS A CORPORATE ITEM. UPON FURTHER REVIEW IT HAS BEEN DETERMINED THAT THE AMOUNT IS A PERSONAL NON-DEDUCTIBLE LOSS OF A SHAREHOLDER.

THE CHANGES TO THIS RETURN WERE MADE FROM INFORMATION PROVIDED BY THE TAXPAYERS THROUGH THEIR LEGAL COUNSEL AND HAVE NOT BEEN AUDITED OR OTHERWISE VERIFIED.

Richard Schripsema, 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
Mark Vehslage, 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
Lakewood Properties, Ltd., 36-4163366

The above identified taxpayers (individually, a "Taxpayer" or collectively, the "Taxpayers") submit this disclosure schedule as part of their respective amended income tax returns for 2004. The amendments reflect each of the Taxpayers' allocable shares of amounts received during 2004 from Beta Asset Management ("Beta"), an investment firm or fund that the Taxpayers understand is owned or controlled by Mr. Brad A. Weaver, a registered securities broker ("Weaver"). The Taxpayers understand that Weaver and Beta perpetrated a "Ponzi Scheme" and that Weaver currently is in federal custody, having pled guilty to a criminal indictment, and having been sentenced to a term of 12 years. The Securities and Exchange Commission brought a civil action against Weaver and Beta. James L. Kopecky was appointed as the receiver for Weaver and Beta. As described below, the tax consequences of the Taxpayers' dealings with Beta and Weaver since 2003 are by no means clear.

The Taxpayers first met Weaver in 2003. Weaver described to the Taxpayers an opportunity to invest in "busted trades" of which Weaver became aware in his capacity as a branch manager with Raymond James Financial Services, Inc. Weaver planned to offer this and other investment opportunities through Beta Capital Partners, L.P., a hedge fund that he planned to organize. In this regard, Weaver provided the Taxpayers with offering materials dated May 1, 2004 and subscription agreements for the hedge fund.

During 2003 and 2004, Mark Vehslage ("Mark") and Richard Schripsema ("Rich") each owned 50% of the outstanding shares of Lakewood Properties, Ltd., an S



corporation that owned rental properties in Chicago, Illinois.  During 2003 and 2004, the Taxpayers made a series of investments with Beta[1] and also received a series of payments.

Because it was apparently not Beta's or Weaver's business practice to provide regular account statements, the Taxpayers have a limited, incomplete set of account statements initially purporting to come from Raymond James Financial Services Inc. and later purporting to come from "Beta Asset Management."  From the account statements actually received, it is unclear whether any of the Taxpayers' funds were ever treated by Weaver as being contributed to the Beta Capital Partners, L.P. hedge fund.

At no time were the Taxpayers provided with a Schedule K-1, Form 1099 or other formal or informal notification of the income tax consequences of the amounts received from Beta.  As a result, none of these amounts received from Beta were included in the original 2003 or 2004 Forms 1040 filed by the Taxpayers.  Those returns were prepared by Jon E. Withey, a CPA who had prepared the Taxpayers' returns for many years.

In 2004, Lakewood converted rental properties that it had held for several years to condominiums.  The project was financed with construction loans by Citibank.  Citibank advised Lakewood that Citibank would not partially release mortgage liens on individual units until the entire principal balance of its loans of $2,549,133 was paid in full.  The Taxpayers discussed this situation with their counsel, who advised them to pay off the Citibank construction loan.  The Taxpayers then contacted Weaver, who agreed to have Beta transfer $2.6 million to an account at Chicago Title and Trust for the benefit of Lakewood on June 04, 2004.  The funds allowed

---

[1]    For the remainder of this disclosure statement, "Beta" is used to refer collectively to Weaver, Beta Asset Management and Beta Capital Partners, L. P., the hedge fund.

2

Lakewood to retire the Citibank construction loan. Shortly thereafter, on June 16, 2004, Mark returned $500,000 to Beta. The $2.6 million transfer by Beta in favor of Lakewood was not documented by Beta or Lakewood. This lack of documentation regarding the payment, along with the lack of any tax reporting information from Beta as noted previously, makes it very difficult to determine the appropriate income tax consequences to the Taxpayers. The failure to document the transaction is consistent with Beta's failure to provide tax reporting information to the Taxpayers. As discussed below, after Weaver's scheme was uncovered, the possibility that the funds would have to be returned in whole or in part further made it difficult for the Taxpayers to determine the appropriate income tax consequences of the $2.6 million transfer.

Unfortunately, after the $2.6 million payment was made by Beta, the Taxpayers found it increasingly more difficult to communicate with Weaver and many of their attempts to contact Weaver went unanswered. In December of 2004, the Taxpayers learned that Weaver and Beta were under investigation by federal authorities and that further information would not likely be forthcoming. This lack of information left the Taxpayers to speculate about how to report the various transactions with Beta, and whether the funds would be required to be returned in whole or in part. In light of the extraordinary facts and the lack of any tax reporting from Beta, the Taxpayers did not reflect the transactions with Beta on their 2003 or 2004 income tax returns. The individual Taxpayers, Mark and Rich, already have filed amended 2003 returns making protective claims for losses (since as of 12/31/03, the amounts invested with Beta had exceeded the amounts returned to them by Beta). The individual Taxpayers, Mark and Rich, also have previously filed amended returns for 2004 which, in a separate disclosure statement, discussed various ways to report the net proceeds received by the Taxpayers from Beta and ultimately

3

elected to report $2.6 million of such monies so received as income in the year in which settlement is reached with the receiver.

The Taxpayers now believe that the presentation on their respective revised amended returns for 2004 as ordinary income is the most conservative treatment of the amounts in question.

No payments have been made with the amended returns for Mark and Rich.[2] There are two reasons for this. First, the Taxpayers are unclear about the correct income tax consequences of these transactions, particularly if the allegations against Weaver are true and there were no trading profits.

Second, in March of this year, the Taxpayers were first notified by the receiver for Beta that the receiver was analyzing their investments with, and distributions from, Beta. The receiver currently is trying to recover the funds paid by Beta to the Taxpayers. Through their counsel, the Taxpayers have attempted to reach an equitable agreement with the receiver. They have yet to do so in large part because of the uncertainty of the amount of income taxes ultimately payable as a result of Lakewood's transactions with Beta. The Taxpayers do not have sufficient funds to both pay the additional taxes reflected on their amended 2004 returns and to repay the amounts demanded by the receiver. The Taxpayers look forward to discussing their situation with the appropriate representatives of the IRS as soon as possible so as to reach a global resolution of these matters.

---

[2] Since Lakewood was an S corporation, it has no federal income tax liability. Instead, its income is reflected I equal shares on the returns of Mark and Rich.

LWP 000503

# Exhibit

# O

| Form **1040X** | | Department of the Treasury - Internal Revenue Service | | OMB No. 1545-0091 | |
|---|---|---|---|---|---|
| (Rev. November 2004) | | **Amended U.S. Individual Income Tax Return** ▶ See separate Instructions. | | | |

This return is for calendar year ▶ **2004** , or fiscal year ended ▶

| Your first name and initial | Last name | Your social security number |
|---|---|---|
| MARK VEHSLAGE | | 271 66 4772 |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| HEATHER LENGYEL | | 381 88 5616 |
| Home address (no. and street) or P.O. box if mail is not delivered to your home | Apt. no. | Phone number |
| 2232 SANTA BARBARA | | |
| City, town or post office, state, and ZIP code | | For Paperwork Reduction Act Notice, see page 6. |
| SANTA BARBARA, CA 93105 | | |

A If the name or address shown above is different from that shown on the original return, check here ........................................ [X]

B Has the original return been changed or audited by the IRS or have you been notified that it will be? .......... ☐ Yes [X] No

C Filing status. Be sure to complete this line. Note. You cannot change from joint to separate returns after the due date.

On original return ▶  ☐ Single  [X] Married filing jointly  ☐ Married filing separately  ☐ Head of household  ☐ Qualifying widow(er)

On this return ▶  ☐ Single  [X] Married filing jointly  ☐ Married filing separately  ☐ Head of household*  ☐ Qualifying widow(er)

* If the qualifying person is a child but not your dependent, see page 2.

| Use Part II on page 2 to explain any changes | | A. Original amount or as previously adjusted (see page 3) | B. Net change - amount of increase or (decrease) - explain in Part II | C. Correct amount |
|---|---|---|---|---|
| **Income and Deductions (see pages 2-6)** | | | | |
| 1 Adjusted gross income (see page 3) ........................................... | 1 | 253,254. | 1,496,464. | 1,749,718. |
| 2 Itemized deductions or standard deduction (see page 3) .................. | 2 | 13,627. | <3,927.> | 9,700. |
| 3 Subtract line 2 from line 1 ...................................................... | 3 | 239,627. | 1,500,391. | 1,740,018. |
| 4 Exemptions. If changing, fill in Parts I and II on page 2 .................. | 4 | 8,432. | <8,432.> | 0. |
| 5 Taxable income. Subtract line 4 from line 3 ............................... | 5 | 231,195. | 1,508,823. | 1,740,018. |
| 6 Tax (see page 4). Method used in col. C  QDCGTW ..................... | 6 | 31,189. | 552,452. | 583,641. |
| 7 Credits (see page 4) .............................................................. | 7 | | | |
| 8 Subtract line 7 from line 6. Enter the result but not less than zero ... | 8 | 31,189. | 552,452. | 583,641. |
| 9 Other taxes (see page 4) ........................................................ | 9 | | | |
| 10 Total tax. Add lines 8 and 9 ................................................... | 10 | 31,189. | 552,452. | 583,641. |
| 11 Federal income tax withheld and excess social security and tier 1 RRTA tax withheld. If changing, see page 4 .......................... | 11 | 22. | | 22. |
| 12 Estimated tax payments, including amount applied from prior year's return ..................................................................... | 12 | | | |
| 13 Earned income credit (EIC) ..................................................... | 13 | | | |
| 14 Additional child tax credit from Form 8812 ................................. | 14 | | | |
| 15 Credits from Form 2439, Form 4136, or Form 8885 (see page 5) ...... | 15 | | | |
| 16 Amount paid with request for extension of time to file (see page 5) .......................................... | | | 16 | 31,167. |
| 17 Amount of tax paid with original return plus additional tax paid after it was filed ................................ | | | 17 | 31,189. |
| 18 Total payments. Add lines 11 through 17 in column C. ................................................................... | | | 18 | |
| **Refund or Amount You Owe** | | | | |
| 19 Overpayment, if any, as shown on original return or as previously adjusted by the IRS ......................... | | | 19 | |
| 20 Subtract line 19 from line 18 (see page 5) ................................................................................ | | | 20 | 31,189. |
| 21 Amount you owe. If line 10, column C, is more than line 20, enter the difference and see page 5 .......... | | | 21 | 552,452. |
| 22 If line 10, column C, is less than line 20, enter the difference .......................................................... | | | 22 | |
| 23 Amount of line 22 you want refunded to you ............................................................................... | | | 23 | |
| 24 Amount of line 22 you want applied to your    estimated tax | | 24 | | |

| **Sign Here** Joint return? See page 2. Keep a copy for your records. | Under penalties of perjury, I declare that I have filed an original return and that I have examined this amended return, including accompanying schedules and statements, and to the best of my knowledge and belief, this amended return is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which the preparer has any knowledge. | | |
|---|---|---|---|
| | ▶ *(signature)* Your signature | Date 3/31/08 | ▶ *(signature)* Spouse's signature. If a joint return, both must sign.  Date 1/31/08 |

| **Paid Preparer's Use Only** | Preparer's signature ▶ *(signature)* | | Date 03/17/08 | Check if self-employed ☐ | Preparer's SSN or PTIN P00024633 |
|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code | FGMK, LLC 2801 LAKESIDE DRIVE, 3RD FLOOR BANNOCKBURN, IL 60015 | | EIN 36-2929601 Phone no. 847-374-0400 | |

LHA
410791
11-03-04

Form **1040X** (Rev. 11-2004)

MV 0009

Form 1040X (Rev. 11-2004)  MARK VEHSLAGE & HEATHER LENGYEL                                  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  Page 2

## Exemptions. See Form 1040 or 1040A instructions.

If you are not changing your exemptions, do not complete this part.
If claiming more exemptions, complete lines 25-31.
If claiming fewer exemptions, complete lines 25-30.

| | | A. Original number of exemptions reported or as previously adjusted | B. Net change | C. Correct number of exemptions |
|---|---|---|---|---|
| 25 Yourself and spouse .......... **25** | | 2 | | 2 |
| Caution. If someone can claim you as a dependent, you cannot claim an exemption for yourself. | | | | |
| 26 Your dependent children who lived with you .......... **26** | | 2 | | 2 |
| 27 Your dependent children who did not live with you due to divorce or separation .......... **27** | | | | |
| 28 Other dependents .......... **28** | | | | |
| 29 Total number of exemptions. Add lines 25 through 28 .......... **29** | | 4 | | 4 |
| 30 Multiply the number of exemptions claimed on line 29 by the amount listed below for the tax year you are amending. Enter the result here and on line 4. | | | | |

| Tax year | Exemption amount | But see the instructions for line 4 on page 3 if the amount on line 1 is over: |
|---|---|---|
| 2004 | $3,100 | $107,025 |
| 2003 | 3,050 | 104,625 |
| 2002 | 3,000 | 103,000 |
| 2001 | 2,900 | 99,725 |

| | | | | |
|---|---|---|---|---|
| **30** | | 8,432. | <8,432.> | 0. |

**31** Dependents (children and other) not claimed on original (or adjusted) return:

| (a) First name  Last name | (b) Dependent's social security number | (c) Dependent's relationship to you | (d) Check if qualifying child for child tax credit |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

No. of children on 31 who:

- lived with you ..........  ▶ ☐
- did not live with you due to divorce or separation ..........  ▶ ☐

Dependents on 31 not entered above  ▶ ☐

## Explanation of Changes to Income, Deductions, and Credits

Enter the line number from page 1 for each item you are changing and give the reason for each change. Attach only the supporting forms and schedules for the items changed. If you do not attach the required information, your Form 1040X may be returned. Be sure to include your name and social security number on any attachments.

If the change relates to a net operating loss carryback or a general business credit carryback, attach the schedule or form that shows the year in which the loss or credit occurred. See page 2 of the instructions. Also, check here  ▶ ☐

THE RETURN IS BEING AMENDED TO REPORT THE ATTACHED AMENDED K-1 FROM
LAKEWOOD PROPERTIES, LTD.  ALSO THE CHARACTER OF THE INCOME FROM BETA
CAPITAL PARTNERS LP, REPORTED AS CAPITAL GAIN ON THE PREVIOUSLY FILED
RETURN, HAS BEEN AMENDED AS ORDINARY INCOME.

SEE THE ATTACHED AMENDED FORMS AND SCHEDULES AFFECTED.

## Presidential Election Campaign Fund. Checking below will not increase your tax or reduce your refund.

If you did not previously want $3 to go to the fund but now want to, check here ..........  ▶ ☐
If a joint return and your spouse did not previously want $3 to go to the fund but now wants to, check here ..........  ▶ ☐

Form 1040X (Rev. 11-2004)

410702
11-03-04

MV 0010

Form **8275**

(Rev. May 2001)

Department of the Treasury
Internal Revenue Service

**Disclosure Statement**

Do not use this form to disclose items or positions that are contrary to Treasury regulations. Instead, use Form 8275-R, Regulation Disclosure Statement.
See separate instructions.

▶ Attach to your tax return.

OMB No. 1545-0889

Attachment
Sequence No. **92**

Name(s) shown on return
MARK VEHSLAGE AND HEATHER LENGYEL

Identifying number shown on return
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

**Part I**    **General Information** (see instructions)

| (a)<br>Rev. Rul., Rev. Proc., etc. | (b)<br>Item or Group<br>of Items | (c)<br>Detailed Description<br>of Items | (d)<br>Form or<br>Schedule | (e)<br>Line<br>No. | (f)<br>Amount |
|---|---|---|---|---|---|
| 1 | | SEE ATTACHED DISCLOSURE<br><br>STATEMENT. | | | |
| 2 | | | | | |
| 3 | | | | | |

**Part II**    **Detailed Explanation** (see instructions)

1 _____

_____

2 _____

_____

3 _____

_____

**Part III**    **Information About Pass-Through Entity.** To be completed by partners, shareholders, beneficiaries, or residual interest holders.

Complete this part only if you are making adequate disclosure for a pass-through item.

Note: *A pass-through entity is a partnership, S corporation, estate, trust, regulated investment company (RIC), real estate investment trust (REIT), or real estate mortgage investment conduit (REMIC).*

| 1  Name, address, and ZIP code of pass-through entity | 2  Identifying number of pass-through entity |
|---|---|
| | 3  Tax year of pass-through entity<br><br>                            to |
| | 4  Internal Revenue Service Center where the pass-through entity filed<br>its return |

For Paperwork Reduction Act Notice, see separate Instructions.

ISA
STF FED6516F.1

Form **8275** (Rev. 5-2001)

MV 0011

Form 8275 (Rev. 5-2001)

| Part IV | Explanations *(continued from Parts I and/or II)* |
|---------|----------------------------------------------------|

Form **8275** (Rev. 5-2001)

**Form 8275 Disclosure Statement**

**Richard Schripsema, 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**
**Mark Vehslage, 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**
**Lakewood Properties, Ltd., 36-4163366**

The above identified taxpayers (individually, a "Taxpayer" or collectively, the "Taxpayers") submit this disclosure schedule as part of their respective amended income tax returns for 2004. The amendments reflect each of the Taxpayers' allocable shares of amounts received during 2004 from Beta Asset Management ("Beta"), an investment firm or fund that the Taxpayers understand is owned or controlled by Mr. Brad A. Weaver, a registered securities broker ("Weaver"). The Taxpayers understand that Weaver and Beta perpetrated a "Ponzi Scheme" and that Weaver currently is in federal custody, having pled guilty to a criminal indictment, and having been sentenced to a term of 12 years. The Securities and Exchange Commission brought a civil action against Weaver and Beta. James L. Kopecky was appointed as the receiver for Weaver and Beta. As described below, the tax consequences of the Taxpayers' dealings with Beta and Weaver since 2003 are by no means clear.

The Taxpayers first met Weaver in 2003. Weaver described to the Taxpayers an opportunity to invest in "busted trades" of which Weaver became aware in his capacity as a branch manager with Raymond James Financial Services, Inc. Weaver planned to offer this and other investment opportunities through Beta Capital Partners, L.P., a hedge fund that he planned to organize. In this regard, Weaver provided the Taxpayers with offering materials dated May 1, 2004 and subscription agreements for the hedge fund.

During 2003 and 2004, Mark Vehslage ("Mark") and Richard Schripsema ("Rich") each owned 50% of the outstanding shares of Lakewood Properties, Ltd., an S corporation that owned rental properties in Chicago, Illinois. During 2003 and 2004, the Taxpayers made a series of investments with Beta[1] and also received a series of payments.

Because it was apparently not Beta's or Weaver's business practice to provide regular account statements, the Taxpayers have a limited, incomplete set of account statements initially purporting to come from Raymond James Financial Services Inc. and later purporting to come from "Beta Asset Management." From the account statements actually received, it is unclear whether any of the Taxpayers' funds were ever treated by Weaver as being contributed to the Beta Capital Partners, L.P. hedge fund.

At no time were the Taxpayers provided with a Schedule K-1, Form 1099 or other formal or informal notification of the income tax consequences of the amounts received from Beta. As a result, none of these amounts received from Beta were included in the original 2003 or 2004 Forms 1040 filed by the Taxpayers. Those returns were prepared by Jon E. Withey, a CPA who had prepared the Taxpayers' returns for many years.

In 2004, Lakewood converted rental properties that it had held for several years to condominiums. The project was financed with construction loans by Citibank. Citibank advised Lakewood that Citibank would not partially release mortgage liens on individual units until the entire principal balance of its loans of $2,549,133 was paid in full. The Taxpayers discussed this situation with their counsel, who advised them to pay off the Citibank construction loan. The

---

[1]    For the remainder of this disclosure statement, "Beta" is used to refer collectively to Weaver, Beta Asset Management and Beta Capital Partners, L. P., the hedge fund.

2

Taxpayers then contacted Weaver, who agreed to have Beta transfer $2.6 million to an account at Chicago Title and Trust for the benefit of Lakewood on June 04, 2004. The funds allowed Lakewood to retire the Citibank construction loan. Shortly thereafter, on June 16, 2004, Mark returned $500,000 to Beta. The $2.6 million transfer by Beta in favor of Lakewood was not documented by Beta or Lakewood. This lack of documentation regarding the payment, along with the lack of any tax reporting information from Beta as noted previously, makes it very difficult to determine the appropriate income tax consequences to the Taxpayers. The failure to document the transaction is consistent with Beta's failure to provide tax reporting information to the Taxpayers. As discussed below, after Weaver's scheme was uncovered, the possibility that the funds would have to be returned in whole or in part further made it difficult for the Taxpayers to determine the appropriate income tax consequences of the $2.6 million transfer.

Unfortunately, after the $2.6 million payment was made by Beta, the Taxpayers found it increasingly more difficult to communicate with Weaver and many of their attempts to contact Weaver went unanswered. In December of 2004, the Taxpayers learned that Weaver and Beta were under investigation by federal authorities and that further information would not likely be forthcoming. This lack of information left the Taxpayers to speculate about how to report the various transactions with Beta, and whether the funds would be required to be returned in whole or in part. In light of the extraordinary facts and the lack of any tax reporting from Beta, the Taxpayers did not reflect the transactions with Beta on their 2003 or 2004 income tax returns. The individual Taxpayers, Mark and Rich, already have filed amended 2003 returns making protective claims for losses (since as of 12/31/03, the amounts invested with Beta had exceeded the amounts returned to them by Beta). The individual Taxpayers, Mark and Rich, also have previously filed amended returns for 2004 which, in a separate disclosure statement, discussed

3

various ways to report the net proceeds received by the Taxpayers from Beta and ultimately elected to report $2.6 million of such monies so received as income in the year in which settlement is reached with the receiver.

The Taxpayers now believe that the presentation on their respective revised amended returns for 2004 as ordinary income is the most conservative treatment of the amounts in question.

No payments have been made with the amended returns for Mark and Rich.[2] There are two reasons for this. First, the Taxpayers are unclear about the correct income tax consequences of these transactions, particularly if the allegations against Weaver are true and there were no trading profits.

Second, in March of this year, the Taxpayers were first notified by the receiver for Beta that the receiver was analyzing their investments with, and distributions from, Beta. The receiver currently is trying to recover the funds paid by Beta to the Taxpayers. Through their counsel, the Taxpayers have attempted to reach an equitable agreement with the receiver. They have yet to do so in large part because of the uncertainty of the amount of income taxes ultimately payable as a result of Lakewood's transactions with Beta. The Taxpayers do not have sufficient funds to both pay the additional taxes reflected on their amended 2004 returns and to repay the amounts demanded by the receiver. The Taxpayers look forward to discussing their situation with the appropriate representatives of the IRS as soon as possible so as to reach a global resolution of these matters.

---

[2] Since Lakewood was an S corporation, it has no federal income tax liability. Instead, its income is reflected I equal shares on the returns of Mark and Rich.

MV 0016

Form **1040**  U.S. Individual Income Tax Return  **2004** (99)  IRS Use Only - Do not write or staple in this space.

OMB No. 1545-0074

**Label** (See instructions on page 16.)

Use the IRS label. Otherwise, please print or type.

For the year Jan. 1-Dec. 31, 2004, or other tax year beginning _____, 2004, ending _____, 20 ___

Your first name and initial: **MARK**   Last name: **VEHSLAGE**

Your social security number: **271 66 4772**

If a joint return, spouse's first name and initial: **HEATHER**   Last name: **LENGYEL**

Spouse's social security number: **381 88 5616**

Home address (number and street). If you have a P.O. box, see page 16.: **2232 SANTA BARBARA**   Apt. no.

▲ **Important!** ▲
You must enter your SSN(s) above.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 16.: **SANTA BARBARA, CA 93105**

**Presidential Election Campaign** (See page 16.)
Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? ▶

| | You | Spouse |
|---|---|---|
| | Yes ☐ No ☐ | Yes ☐ No ☐ |

**Filing Status**

Check only one box.

1 ☐ Single
2 ☒ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 17.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (see page 17)

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a
b ☒ Spouse

| Boxes checked on 6a and 6b | **2** |
|---|---|

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 18) |
|---|---|---|---|
| MICHAELA VEHSLAGE | 328 96 1219 | DAUGHTER | X |
| MARK VEHSLAGE, JR | 333 98 1150 | SON | X |
| | | | |
| | | | |

No. of children on 6c who:
• lived with you **2**
• did not live with you due to divorce or separation (see page 18)

Dependents on 6c not entered above

If more than four dependents, see page 18.

Add numbers on lines above ▶ **4**

d Total number of exemptions claimed

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see page 19.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | 5,634. |
| 8a | Taxable interest. Attach Schedule B if required | 8a | 106. |
| b | Tax-exempt interest. Do not include on line 8a | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | 66. |
| b | Qualified dividends (see page 20) | 9b | 40. |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | <3,000.> |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions | 15a | b Taxable amount (see page 22) | 15b | |
| 16a | Pensions and annuities | 16a | b Taxable amount (see page 22) | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | 1,892,764. |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits | 20a | b Taxable amount (see page 24) | 20b | |
| 21 | Other income. List type and amount (see page 24)  SEE STATEMENT 1 | 21 | <145,852.> |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your total income ▶ | 22 | 1,749,718. |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses (see page 26) | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | IRA deduction (see page 26) | 25 | |
| 26 | Student loan interest deduction (see page 28) | 26 | |
| 27 | Tuition and fees deduction (see page 29) | 27 | |
| 28 | Health savings account deduction. Attach Form 8889 | 28 | |
| 29 | Moving expenses. Attach Form 3903 | 29 | |
| 30 | One-half of self-employment tax. Attach Schedule SE | 30 | |
| 31 | Self-employed health insurance deduction (see page 30) | 31 | |
| 32 | Self-employed SEP, SIMPLE, and qualified plans | 32 | |
| 33 | Penalty on early withdrawal of savings | 33 | |
| 34a | Alimony paid  b Recipient's SSN ▶ | 34a | |
| 35 | Add lines 23 through 34a | 35 | |
| 36 | Subtract line 35 from line 22. This is your adjusted gross income ▶ | 36 | 1,749,718. |

**As Amended**

410001 11-03-04
LHA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 76.

Form **1040** (2004)

MV 0017

Form 1040 (2004)   MARK VEHSLAGE & HEATHER LENGYEL          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                    Page 2

| Tax and Credits | | | | | |
|---|---|---|---|---|---|
| **Standard Deduction for -** | 37 | Amount from line 36 (adjusted gross income) .................................... | | 37 | 1,749,718. |
| • People who checked any box on line 38a or 38b Of who can be claimed as a dependent | 38a | Check if: ☐ You were born before January 2, 1940, ☐ Blind.  ☐ Spouse was born before January 2, 1940, ☐ Blind. | Total boxes checked ▶ 38a ☐ | | |
| | b | If your spouse itemizes on a separate return or you were a dual-status alien, see page 31 and check here ▶ 38b ☐ | | | |
| | 39 | Itemized deductions (from Schedule A) or your **standard deduction** (see left margin) ............ | | 39 | 9,700. |
| | 40 | Subtract line 39 from line 37 ................................................................ | | 40 | 1,740,018. |
| • All others: | 41 | If line 37 is $107,025 or less, multiply $3,100 by the total number of exemptions claimed on line 6d. If line 37 is over $107,025, see the worksheet on page 33 | | 41 | 0. |
| Single or Married filing separately, $4,850 | 42 | Taxable income. Subtract line 41 from line 40. If line 41 is more than line 40, enter -0- ........ | | 42 | 1,740,018. |
| Married filing jointly or Qualifying widow(er), $9,700 | 43 | Tax. Check if any tax is from: a ☐ Form(s) 8814  b ☐ Form 4972 ........................ | | 43 | 583,641. |
| | 44 | Alternative minimum tax. Attach Form 6251 ................................................ | | 44 | 0. |
| Head of household, $7,150 | 45 | Add lines 43 and 44 ...............................................................▶ | | 45 | 583,641. |
| | 46 | Foreign tax credit. Attach Form 1116 if required | 46 | | |
| | 47 | Credit for child and dependent care expenses. Attach Form 2441 | 47 | | |
| | 48 | Credit for the elderly or the disabled. Attach Schedule R | 48 | | |
| | 49 | Education credits. Attach Form 8863 | 49 | | |
| | 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | | |
| | 51 | Child tax credit (see page 37) | 51 | | |
| | 52 | Adoption credit. Attach Form 8839 | 52 | | |
| | 53 | Credits from: a ☐ Form 8396  b ☐ Form 8859 | 53 | | |
| | 54 | Other credits. Check applicable box(es): a ☐ Form 3800  b ☐ Form 8801  c ☐ Specify | 54 | | |
| | 55 | Add lines 46 through 54. These are your total credits ........................................ | | 55 | |
| | 56 | Subtract line 55 from line 45. If line 55 is more than line 45, enter -0- ....................▶ | | 56 | 583,641. |
| Other Taxes | 57 | Self-employment tax. Attach Schedule SE ................................................... | | 57 | |
| | 58 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 ........ | | 58 | |
| | 59 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required ........ | | 59 | |
| | 60 | Advance earned income credit payments from Form(s) W-2 ..................................... | | 60 | |
| | 61 | Household employment taxes. Attach Schedule H ............................................. | | 61 | |
| | 62 | Add lines 56 through 61. This is your total tax .........................................▶ | | 62 | 583,641. |
| Payments | 63 | Federal income tax withheld from Forms W-2 and 1099 | 63 | 22. | |
| If you have a qualifying child, attach Schedule EIC. | 64 | 2004 estimated tax payments and amount applied from 2003 return | 64 | | |
| | 65a | Earned income credit (EIC) | 65a | | |
| | b | Nontaxable combat pay election ▶ 65b | | | |
| | 66 | Excess social security and tier 1 RRTA tax withheld (see page 54) | 66 | | |
| | 67 | Additional child tax credit. Attach Form 8812 | 67 | | |
| | 68 | Amount paid with request for extension to file (see page 54) | 68 | | |
| | 69 | Other payments from: a ☐ Form 2439 b ☐ Form 4136 c ☐ Form 8885 | 69 | | |
| | 70 | Add lines 63, 64, 65a, and 66 through 69. These are your total payments ....................▶ | | 70 | 22. |
| Refund | 71 | If line 70 is more than line 62, subtract line 62 from line 70. This is the amount you overpaid ...... | | 71 | |
| Direct deposit? See page 54 and fill in 72b, 72c, and 72d. | 72a | Amount of line 71 you want refunded to you .........................................▶ | | 72a | |
| | b | Routing number ▶  ▶ c Type: ☐ Checking ☐ Savings  d Account number ▶ | | | |
| | 73 | Amount of line 71 you want applied to your 2005 estimated tax ▶ | 73 | | |
| Amount You Owe | 74 | Amount you owe. Subtract line 70 from line 62. For details on how to pay, see page 55 ........▶ | | 74 | 583,619. |
| | 75 | Estimated tax penalty (see page 55) | 75 | | |

| Third Party Designee | Do you want to allow another person to discuss this return with the IRS (see page 56)? ☒ Yes. Complete the following. ☐ No |
|---|---|
| | Designee's name ▶ PREPARER   Phone no. ▶   Personal identification number (PIN) ▶ |

**Sign Here**
Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See page 17. Keep a copy for your records.

| Your signature | Date | Your occupation | Daytime phone number |
|---|---|---|---|
| | | REAL ESTATE | |
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | |
| | | DIETICIAN | |

| Paid Preparer's Use Only | Preparer's signature ▶ | Date 03/17/08 | Check if self-employed ☐ | Preparer's SSN or PTIN P00024633 |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code | FGMK, LLC  2801 LAKESIDE DRIVE, 3RD FLOOR  BANNOCKBURN, IL  60015 | EIN 36:2929601 | Phone no. 847-374-0400 |

410002 11-03-04

# As Amended

MV 0018

MARK VEHSLAGE & HEATHER LENGYEL                          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

FORM 1040                    MISCELLANEOUS INCOME                STATEMENT    1

DESCRIPTION                                                      AMOUNT

BETA CAPITAL PARTNERS LP                                          86,000.
NOL CARRYOVER TO 2004                                          <231,852.>

TOTAL TO FORM 1040, LINE 21                                    <145,852.>

# As Amended

STATEMENT(S) 1

MARK VEHSLAGE & HEATHER LENGYEL                                    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

| FORM 1040 | PERSONAL EXEMPTION WORKSHEET | STATEMENT 2 |
|---|---|---|

1. IS THE AMOUNT ON FORM 1040, LINE 37, MORE THAN THE AMOUNT SHOWN ON LINE 4
   BELOW FOR YOUR FILING STATUS?
   NO.  STOP. MULTIPLY $3,100 BY THE TOTAL NUMBER OF EXEMPTIONS CLAIMED ON
       FORM 1040, LINE 6D, AND ENTER THE RESULT ON LINE 41.
   YES. GO TO LINE 2.
2. MULTIPLY $3,100 BY THE TOTAL NUMBER OF EXEMPTIONS CLAIMED
   ON FORM 1040, LINE 6D . . . . . . . . . . . . . . . . .          12,400.
3. ENTER THE AMOUNT FROM FORM 1040, LINE 37 . .       1,749,718.
4. ENTER THE AMOUNT FOR YOUR FILING STATUS  . .        214,050.
     MARRIED FILING SEPARATE          $107,025
     SINGLE                           $142,700
     HEAD OF HOUSEHOLD                $178,350
     MARRIED FILING JOINT OR WIDOW(ER) $214,050
5. SUBTRACT LINE 4 FROM LINE 3 . . . . . . . .       1,535,668.
   IF LINE 5 IS MORE THAN $122,500 ($61,250 IF
   MARRIED FILING SEPARATE) ENTER ZERO
   ON FORM 1040, LINE 41.
6. DIVIDE LINE 5 BY $2,500 ($1,250 IF MFS)  . .
7. MULTIPLY LINE 6 BY 2% (.02) AND ENTER THE RESULT
   AS A DECIMAL . . . . . . . . . . . . . . . . .
8. MULTIPLY LINE 2 BY LINE 7 . . . . . . . . . . . . . . . .
9. SUBTRACT LINE 8 FROM LINE 2. TOTAL TO FORM 1040, LINE 41.                0.

| FORM 1040 | WAGES RECEIVED AND TAXES WITHHELD | STATEMENT 3 |
|---|---|---|

| T S EMPLOYER'S NAME | AMOUNT PAID | FEDERAL TAX WITHHELD | STATE TAX WITHHELD | CITY SDI TAX W/H | FICA TAX | MEDICARE TAX |
|---|---|---|---|---|---|---|
| T | 5,634. | 22. | 107. | | 349. | 82. |
| TOTALS | 5,634. | 22. | 107. | | 349. | 82. |

| FORM 1040 | QUALIFIED DIVIDENDS | STATEMENT 4 |
|---|---|---|

| NAME OF PAYER | ORDINARY DIVIDENDS | QUALIFIED DIVIDENDS |
|---|---|---|
| DIVIDEND INCOME | 66. | 40. |
| TOTAL INCLUDED IN FORM 1040, LINE 9B | | 40. |

# As Amended

STATEMENT(S) 2, 3, 4

MV 0020

DOES NOT APPLY - NOT USED

**SCHEDULES A&B**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service    (99)

OMB No. 1545-0074

# Schedule A – Itemized Deductions
(Schedule B is on page 2)

▶ **Attach to Form 1040.**    ▶ **See Instructions for Schedules A and B (Form 1040).**

**2004**
Attachment
Sequence No. **07**

Name(s) shown on Form 1040

MARK VEHSLAGE & HEATHER LENGYEL

Your social security number

271 66 4772

| | | | | |
|---|---|---|---|---|
| **Medical and Dental Expenses** | Caution. Do not include expenses reimbursed or paid by others. | | | |
| | 1  Medical and dental expenses (see page A-2) | | **1** | |
| | 2  Enter amount from Form 1040, line 37 .............. | **2** | | |
| | 3  Multiply line 2 by 7.5% (.075) | | **3** | |
| | 4  Subtract line 3 from line 1. If line 3 is more than line 1, enter -0- | | | **4** |
| **Taxes You Paid**<br>(See page A-2.) | 5  State and local (check only one box):<br>  a [X] Income taxes, or<br>  b [ ] General sales taxes (see page A-2) | } | **5** | 3,111. |
| | 6  Real estate taxes (see page A-3) | | **6** | |
| | 7  Personal property taxes | | **7** | |
| | 8  Other taxes. List type and amount | | | |
| | | | **8** | |
| | 9  Add lines 5 through 8 | | | **9**  3,111. |
| **Interest You Paid**<br>(See page A-3.)<br><br>Note:<br>Personal interest is not deductible. | 10  Home mortgage interest and points reported to you on Form 1098 | | **10** | |
| | 11  Home mortgage interest not reported to you on Form 1098. If paid to the person from whom you bought the home, see page A-4 and show that person's name, identifying no., and address<br>▶ | | | |
| | | | **11** | |
| | 12  Points not reported to you on Form 1098. See page A-4 for special rules | | **12** | |
| | 13  Investment interest. Attach Form 4952 if required. (See page A-4.) | | **13** | |
| | 14  Add lines 10 through 13 | | | **14** |
| **Gifts to Charity**<br>If you made a gift and got a benefit for it, see page A-4. | 15  Gifts by cash or check. If you made any gift of $250 or more, see page A-4 | | **15** | 12,000. |
| | 16  Other than by cash or check. If any gift of $250 or more, see page A-4. You must attach Form 8283 if over $500 | | **16** | 1,833. |
| | 17  Carryover from prior year | | **17** | |
| | 18  Add lines 15 through 17 | | | **18**  13,833. |
| **Casualty and Theft Losses** | 19  Casualty or theft loss(es). Attach Form 4684. (See page A-5.) | | | **19** |
| **Job Expenses and Most Other Miscellaneous Deductions**<br><br>(See page A-5.) | 20  Unreimbursed employee expenses - job travel, union dues, job education, etc. Attach Form 2106 or 2106-EZ if required. (See page A-6.)<br>▶ | | | |
| | | | **20** | |
| | 21  Tax preparation fees | | **21** | |
| | 22  Other expenses - investment, safe deposit box, etc. List type and amount<br>▶ | | | |
| | | | **22** | |
| | 23  Add lines 20 through 22 | | **23** | |
| | 24  Enter amount from Form 1040, line 37 .............. | **24** | | |
| | 25  Multiply line 24 by 2% (.02) | | **25** | |
| | 26  Subtract line 25 from line 23. If line 25 is more than line 23, enter -0- | | | **26** |
| **Other Miscellaneous Deductions** | 27  Other - from list on page A-6. List type and amount<br>▶ | | | |
| | | | | **27** |
| **Total Itemized Deductions** | 28  Is Form 1040, line 37, over $142,700 (over $71,350 if married filing separately)?<br>  [ ] No.   Your deduction is not limited. Add the amounts in the far right column<br>      for lines 4 through 27. Also, enter this amount on Form 1040, line 39.<br>  [X] Yes.  Your deduction may be limited. See page A-6 for the amount to enter. | STMT 1 | ▶ | **28**  3,389. |

419501
12-30-04    LHA    For Paperwork Reduction Act Notice, see Form 1040 instructions.    Schedule A (Form 1040) 2004

As Amended

MV 0021

MARK VEHSLAGE & HEATHER LENGYEL                                          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

SCHEDULE A                  ITEMIZED DEDUCTIONS WORKSHEET                STATEMENT   1

1.  ADD THE AMOUNTS ON SCHEDULE A, LINES 4, 9, 14, 18,
    19, 26, AND 27 . . . . . . . . . . . . . . . . . . .              16,944.
2.  ADD THE AMOUNTS ON SCHEDULE A, LINES 4, 13, AND 19,
    PLUS ANY GAMBLING AND CASUALTY OR THEFT LOSSES INCLUDED
    ON LINE 27 . . . . . . . . . . . . . . . . . . . . .                   0.
3.  IS THE AMOUNT ON LINE 2 LESS THAN THE AMOUNT ON LINE 1?
    IF NO, YOUR DEDUCTION IS NOT LIMITED.  ENTER THE AMOUNT
    FROM LINE 1 ABOVE ON SCHEDULE A, LINE 28.
    IF YES, SUBTRACT LINE 2 FROM LINE 1 . . . . . . . . . .           16,944.
4.  MULTIPLY LINE 3 ABOVE BY 80% (.80) . . . . .      13,555.
5.  ENTER THE AMOUNT FROM FORM 1040, LINE 36. . .    1,749,718.
6.  ENTER: $142,700 ($71,350 IF MARRIED FILING
    SEPARATELY) . . . . . . . . . . . . . . . . .      142,700.
7.  IS THE AMOUNT ON LINE 6 LESS THAN THE AMOUNT
    ON LINE 5?
    IF NO, YOUR DEDUCTION IS NOT LIMITED.  ENTER
    THE AMOUNT FROM LINE 1 ABOVE ON SCHEDULE A,
    LINE 28.
    IF YES, SUBTRACT LINE 6 FROM LINE 5 . . . . .    1,607,018.
8.  MULTIPLY LINE 7 ABOVE BY 3% (.03) . . . . . .       48,211.
9.  ENTER THE SMALLER OF LINE 4 OR LINE 8 . . . . . . . . .           13,555.

10. TOTAL ITEMIZED DEDUCTIONS.  SUBTRACT LINE 9 FROM LINE 1.
    ENTER THE RESULT HERE AND ON SCHEDULE A, LINE 28  . . . .          3,389.

# As Amended

| SCHEDULE D (Form 1040) | Capital Gains and Losses | | OMB No. 1545-0074 |
|---|---|---|---|

**SCHEDULE D (Form 1040)**
Department of the Treasury
Internal Revenue Service   (99)

# Capital Gains and Losses

OMB No. 1545-0074
**2004**
Attachment
Sequence No. **12**

▶ **Attach to Form 1040.**     ▶ **See Instructions for Schedule D (Form 1040).**

Name(s) shown on Form 1040

MARK VEHSLAGE & HEATHER LENGYEL

Your social security number

271 66 4772

## Part I   Short-Term Capital Gains and Losses - Assets Held One Year or Less

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price | (e) Cost or other basis | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|
| **1** | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | | |
|---|---|---|---|
| **2** Enter your short-term totals ........................ | **2** | | |
| **3** Total short-term sales price amounts. Add lines 1 and 2 in column (d) | **3** | | |
| **4** Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 ........................ | **4** | | |
| **5** Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 ........................ | **5** | | |
| **6** Short-term capital loss carryover. Enter the amount, if any, from line 8 of your Capital Loss Carryover Worksheet in the instructions | **6** ( 119,964 ) | | |
| **7** Net short-term capital gain or (loss). Combine lines 1 through 6 in column (f) | **7** <119,964.> | | |

## Part II   Long-Term Capital Gains and Losses - Assets Held More Than One Year

| (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold (Mo., day, yr.) | (d) Sales price | (e) Cost or other basis | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|
| **8** | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | | |
|---|---|---|---|
| **9** Enter your long-term totals ........................ | **9** | | |
| **10** Total long-term sales price amounts. Add lines 8 and 9 in column (d) ........................ | **10** | | |
| **11** Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 | **11** | | |
| **12** Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | **12** | | |
| **13** Capital gain distributions ........................ | **13** | | |
| **14** Long-term capital loss carryover. Enter the amount, if any, from line 13 of your Capital Loss Carryover Worksheet in the instructions ........................ | **14** ( ) | | |
| **15** Net long-term capital gain or (loss). Combine lines 8 through 14 in column (f). Then go to Part III on page 2 | **15** | | |

LHA   For Paperwork Reduction Act Notice, see Form 1040 instructions.

Schedule D (Form 1040) 2004

## As Amended

42051 11/11-03-04

Schedule D (Form 1040) 2004  MARK VEHSLAGE & HEATHER LENGYEL                    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 Page 2

| Part III | Summary |
| --- | --- |

16  Combine lines 7 and 15 and enter the result. If line 16 is a loss, skip lines 17 through 20, and
    go to line 21. If a gain, enter the gain on Form 1040, line 13, and then go to line 17 below ..................   | **16** | <119,964.>

17  Are lines 15 and 16 both gains?
    ☐ **Yes.** Go to line 18.
    ☐ **No.** Skip lines 18 through 21, and go to line 22.

18  Enter the amount, if any, from line 7 of the 28% Rate Gain Worksheet on page D-7 of the
    instructions ..........................................................................................▶  | **18** |

19  Enter the amount, if any, from line 18 of the Unrecaptured Section 1250 Gain Worksheet on
    page D-8 of the instructions ...................................................................▶  | **19** |

20  Are lines 18 and 19 both zero or blank?
    ☒ **Yes.** Complete Form 1040 through line 42, and then complete the **Qualified Dividends and
    Capital Gain Tax Worksheet** on page 34 of the Instructions for Form 1040. Do not complete
    lines 21 and 22 below.
    ☐ **No.** Complete Form 1040 through line 42, and then complete the **Schedule D Tax Worksheet** on
    page D-9 of the instructions. Do not complete lines 21 and 22 below.

21  If line 16 is a loss, enter here and on Form 1040, line 13, the smaller of:

    • The loss on line 16 or          }  SEE STATEMENT 5        | **21** | ( 3,000.)
    • ($3,000), or if married filing separately, ($1,500)

    **Note.** When figuring which amount is smaller, treat both amounts as positive numbers.

22  Do you have qualified dividends on Form 1040, line 9b?
    ☒ **Yes.** Complete Form 1040 through line 42, and then complete the **Qualified Dividends and
    Capital Gain Tax Worksheet** on page 34 of the Instructions for Form 1040.
    ☐ **No.** Complete the rest of Form 1040.

Schedule D (Form 1040) 2004

## As Amended

420512  11-03-04

MARK VEHSLAGE & HEATHER LENGYEL                           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

SCHEDULE D                    CAPITAL LOSS CARRYOVER           STATEMENT   5

1.  ENTER THE AMOUNT FROM FORM 1040, LINE 40 . . . . . . . . .     1,740,018.
2.  ENTER THE LOSS FROM SCHEDULE D, LINE 21, AS A POSITIVE AMOUNT.     3,000.
3.  COMBINE LINES 1 AND 2. IF ZERO OR LESS, ENTER -0- . . . . . .   1,743,018.
4.  ENTER THE SMALLER OF LINE 2 OR LINE 3 . . . . . . . . . . .        3,000.

5.  ENTER THE LOSS FROM SCHEDULE D, LINE 7, AS A POSITIVE AMOUNT .    119,964.
6.  ENTER THE GAIN, IF ANY, FROM SCHEDULE D,
    LINE 15 . . . . . . . . . . . . . . . . . . . . .
7.  ADD LINES 4 AND 6 . . . . . . . . . . . . . . . . . . . . .        3,000.
8.  SHORT-TERM CAPITAL LOSS CARRYOVER TO 2005.
    SUBTRACT LINE 7 FROM LINE 5. IF ZERO OR LESS, ENTER -0- . . .     116,964.

9.  ENTER THE LOSS FROM SCHEDULE D, LINE 15, AS A POSITIVE AMOUNT.
10. ENTER THE GAIN, IF ANY, FROM SCHEDULE D,
    LINE 7 . . . . . . . . . . . . . . . . . . . . . . . . .
11. SUBTRACT LINE 5 FROM LINE 4.  IF ZERO OR LESS,
    ENTER -0- . . . . . . . . . . . . . . . . . . . . .
12. ADD LINES 10 AND 11 . . . . . . . . . . . . . . . . . . . .
13. LONG-TERM CAPITAL LOSS CARRYOVER TO 2005.
    SUBTRACT LINE 12 FROM LINE 9. IF ZERO OR LESS, ENTER -0-   . . .

# As Amended

STATEMENT(S) 5

MV 0025

Schedule E (Form 1040) 2004

Name(s) shown on return. Do not enter name and social security number if shown on page 1.

Attachment Sequence No. **13**     Page **2**

**Your social security number**
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

MARK VEHSLAGE & HEATHER LENGYEL

Caution: The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

| Part II | Income or Loss From Partnerships and S Corporations | Note. If you report a loss from an at-risk activity for which any amount is **not** at risk, you must check column (e) on line 28 and attach Form 6198. See page E-1. |
|---|---|---|

**27** Are you reporting any loss allowed in a prior year due to the at-risk or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses? ...... ☐ Yes ☒ No
If you answered "Yes," see page E-6 before completing this section.

| 28 | (a) Name | (b) Enter P for partnership; S for S corporation | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if any amount is not at risk |
|---|---|---|---|---|---|
| A | LAKEWOOD PROPERTIES, LTD | S | | 36-4163366 | |
| B | | | | | |
| C | | | | | |
| D | | | | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (f) Passive loss allowed (attach Form 8582 if required) | (g) Passive income from Schedule K-1 | (h) Nonpassive loss from Schedule K-1 | (i) Section 179 expense deduction from Form 4562 | (j) Nonpassive income from Schedule K-1 |
| A | | | | | 1,892,764. |
| B | | | | | |
| C | | | | | |
| D | | | | | |
| 29a Totals | | | | | 1,892,764. |
| b Totals | | | | | |

| 30 | Add columns (g) and (j) of line 29a | 30 | 1,892,764. |
|---|---|---|---|
| 31 | Add columns (f), (h), and (i) of line 29b | 31 | ( ) |
| 32 | Total partnership and S corporation income or (loss). Combine lines 30 and 31. Enter the result here and include in the total on line 41 below | 32 | 1,892,764. |

| Part III | Income or Loss From Estates and Trusts |
|---|---|

| 33 | (a) Name | (b) Employer identification number |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
|---|---|---|---|---|
| | (c) Passive deduction or loss allowed (attach Form 8582 if required) | (d) Passive income from Schedule K-1 | (e) Deduction or loss from Schedule K-1 | (f) Other income from Schedule K-1 |
| A | | | | |
| B | | | | |
| 34a Totals | | | | |
| b Totals | | | | |

| 35 | Add columns (d) and (f) of line 34a | 35 | |
|---|---|---|---|
| 36 | Add columns (c) and (e) of line 34b | 36 | ( ) |
| 37 | Total estate and trust income or (loss). Combine lines 35 and 36. Enter the result here and include in the total on line 41 below | 37 | |

| Part IV | Income or Loss From Real Estate Mortgage Investment Conduits (REMICs) - Residual Holder |
|---|---|

| 38 | (a) Name | (b) Employer identification number | (c) Excess inclusion from Schedules Q, line 2c | (d) Taxable income (net loss) from Schedules Q, line 1b | (e) Income from Schedules Q, line 3b |
|---|---|---|---|---|---|
| | | | | | |

| 39 | Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below | 39 | |
|---|---|---|---|

| Part V | Summary |
|---|---|

| 40 | Net farm rental income or (loss) from Form 4835. Also, complete line 42 below | 40 | |
|---|---|---|---|
| 41 | **Total income or (loss). Combine lines 26, 32, 37, 39, and 40. Enter the result here and on Form 1040, line 17** ▶ | 41 | 1,892,764. |
| 42 | Reconciliation of farming and fishing income. Enter your gross farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120S), box 17, code N; and Schedule K-1 (Form 1041), line 14 (see page E-6) ... | 42 | |
| 43 | Reconciliation for real estate professionals. If you were a real estate professional (see page E-1), enter the net income or (loss) you reported anywhere on Form 1040 from all rental real estate activities in which you materially participated under the passive activity loss rules | 43 | |

421501
11-22-04

Schedule E (Form 1040) 2004

As Amended

MV 0026

| Form **4797** | **Sales of Business Property** | OMB No. 1545-0184 |
|---|---|---|
| Department of the Treasury Internal Revenue Service   (99) | (Also Involuntary Conversions and Recapture Amounts Under Sections 179 and 280F(b)(2)) ▶ Attach to your tax return.    ▶ See separate instructions. | **2004** Attachment Sequence No. **27** |

Name(s) shown on return

| MARK VEHSLAGE & HEATHER LENGYEL | Identifying number  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 |
|---|---|

**1** Enter the gross proceeds from sales or exchanges reported to you for 2004 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20 .................................................. | **1** |

**Part I**   Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft-Most Property Held More Than 1 Year (see instructions)

| | **(a)** Description of property | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) | **(d)** Gross sales price | **(e)** Depreciation allowed or allowable since acquisition | **(f)** Cost or other basis, plus improvements and expense of sale | **(g)** Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|---|
| **2** | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| | | |
|---|---|---|
| **3** | Gain, if any, from Form 4684, line 39 ........................................................................ | **3** |
| **4** | Section 1231 gain from installment sales from Form 6252, line 26 or 37 ................................... | **4** |
| **5** | Section 1231 gain or (loss) from like-kind exchanges from Form 8824 ..................................... | **5** |
| **6** | Gain, if any, from line 32, from other than casualty or theft ................................................. | **6** |
| **7** | Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows: ........... | **7** |

Partnerships (except electing large partnerships) and S corporations. Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

All others. If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you did not have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on Schedule D and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---|
| **8** | Nonrecaptured net section 1231 losses from prior years (see instructions) ............................... | **8** |
| **9** | Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on Schedule D (see instructions) | **9** |

**Part II**   Ordinary Gains and Losses

| **10** | Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less): | |
|---|---|---|
| | | |
| | | |
| | | |

| | | |
|---|---|---|
| **11** | Loss, if any, from line 7 ........................................................................................ | **11** |
| **12** | Gain, if any, from line 7 or amount from line 8, if applicable ................................................ | **12** |
| **13** | Gain, if any, from line 31 ...................................................................................... | **13** |
| **14** | Net gain or (loss) from Form 4684, lines 31 and 38a ........................................................ | **14** |
| **15** | Ordinary gain from installment sales from Form 6252, line 25 or 36 ........................................ | **15** |
| **16** | Ordinary gain or (loss) from like-kind exchanges from Form 8824 .......................................... | **16** |
| **17** | Combine lines 10 through 16 ................................................................................... | **17** |
| **18** | For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below: | |
| **a** | If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the part of the loss from income-producing property on Schedule A (Form 1040), line 27, and the part of the loss from property used as an employee on Schedule A (Form 1040), line 22. Identify as from "Form 4797, line 18a." See instructions | **18a** |
| **b** | Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Form 1040, line 14 | **18b** |

LHA   For Paperwork Reduction Act Notice, see instructions.                                                      Form **4797** (2004)

## As Amended

416011/11-08-04

MV 0027

Form 4797 (2004) MARK VEHSLAGE & HEATHER LENGYEL                    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 Page **2**

| Part III | Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255 |

| 19 | (a) Description of section 1245, 1250, 1252, 1254, or 1255 property: | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) |
|---|---|---|---|
| A | | | |
| B | | | |
| C | | | |
| D | | | |

| These columns relate to the properties on lines 19A through 19D. ▶ | | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|
| 20 Gross sales price (**Note:** See line 1 before completing.) | 20 | | | | |
| 21 Cost or other basis plus expense of sale | 21 | | | | |
| 22 Depreciation (or depletion) allowed or allowable | 22 | | | | |
| 23 Adjusted basis. Subtract line 22 from line 21 | 23 | | | | |
| 24 Total gain. Subtract line 23 from line 20 | 24 | | | | |
| 25 **If section 1245 property:** | | | | | |
| a Depreciation allowed or allowable from line 22 | 25a | | | | |
| b Enter the smaller of line 24 or 25a | 25b | | | | |
| 26 **If section 1250 property:** If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| a Additional depreciation after 1975 (see instructions) | 26a | | | | |
| b Applicable percentage multiplied by the smaller of line 24 or line 26a (see instructions) | 26b | | | | |
| c Subtract line 26a from line 24. If residential rental property or line 24 is not more than line 26a, skip lines 26d and 26e | 26c | | | | |
| d Additional depreciation after 1969 and before 1976 | 26d | | | | |
| e Enter the smaller of line 26c or 26d | 26e | | | | |
| f Section 291 amount (corporations only) | 26f | | | | |
| g Add lines 26b, 26e, and 26f | 26g | | | | |
| 27 **If section 1252 property:** Skip this section if you did not dispose of farmland or if this form is being completed for a partnership (other than an electing large partnership). | | | | | |
| a Soil, water, and land clearing expenses | 27a | | | | |
| b Line 27a multiplied by applicable percentage | 27b | | | | |
| c Enter the smaller of line 24 or 27b | 27c | | | | |
| 28 **If section 1254 property:** | | | | | |
| a Intangible drilling and development costs, expenditures for development of mines and other natural deposits, and mining exploration costs (see instructions) | 28a | | | | |
| b Enter the smaller of line 24 or 28a | 28b | | | | |
| 29 **If section 1255 property:** | | | | | |
| a Applicable percentage of payments excluded from income under section 126 (see instructions) | 29a | | | | |
| b Enter the smaller of line 24 or 29a (see instructions) | 29b | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| | | |
|---|---|---|
| 30 Total gains for all properties. Add property columns A through D, line 24 | 30 | |
| 31 Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13 | 31 | |
| 32 Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 | 32 | |

| Part IV | Recapture Amounts Under Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less |
| | (see instructions) |

| | | (a) Section 179 | (b) Section 280F(b)(2) |
|---|---|---|---|
| 33 Section 179 expense deduction or depreciation allowable in prior years | 33 | | |
| 34 Recomputed depreciation. See instructions | 34 | | |
| 35 Recapture amount. Subtract line 34 from line 33. See the instructions for where to report | 35 | | |

418012/11-08-04

Form 4797 (2004)

As Amended

MV 0028

DOES NOT APPLY

OMB No. 1545-0227

Form **6251**

Department of the Treasury
Internal Revenue Service  (99)

## Alternative Minimum Tax - Individuals

▶ Attach to Form 1040 or Form 1040NR.

**2004**

Attachment
Sequence No. **32**

Name(s) shown on Form 1040

MARK VEHSLAGE & HEATHER LENGYEL

Your social security number

271 66 4772

### Part I   Alternative Minimum Taxable Income

| | | |
|---|---|---:|
| 1 | If filing Schedule A (Form 1040), enter the amount from Form 1040, line 40, and go to line 2. Otherwise, enter the amount from Form 1040, line 37, and go to line 7. (If less than zero, enter as a negative amount.) | 1 | 1,749,718. |
| 2 | Medical and dental. Enter the smaller of Schedule A (Form 1040), line 4, or 2 1/2% of Form 1040, line 37 | 2 | |
| 3 | Taxes from Schedule A (Form 1040), line 9 | 3 | |
| 4 | Enter the home mortgage interest adjustment, if any, from line 6 of the worksheet on page 2 of the instructions | 4 | |
| 5 | Miscellaneous deductions from Schedule A (Form 1040), line 26 | 5 | |
| 6 | If Form 1040, line 37, is over $142,700 (over $71,350 if married filing separately), enter the amount from line 9 of the Itemized Deductions Worksheet on page B-1 of the instructions for Schedules A & B (Form 1040) | 6 | |
| 7 | Tax refund from Form 1040, line 10 or line 21 | 7 | |
| 8 | Investment interest expense (difference between regular tax and AMT) | 8 | |
| 9 | Depletion (difference between regular tax and AMT) | 9 | |
| 10 | Net operating loss deduction from Form 1040, line 21. Enter as a positive amount | 10 | 231,852. |
| 11 | Interest from specified private activity bonds exempt from the regular tax | 11 | |
| 12 | Qualified small business stock (7% of gain excluded under section 1202) | 12 | |
| 13 | Exercise of incentive stock options (excess of AMT income over regular tax income) | 13 | |
| 14 | Estates and trusts (amount from Schedule K-1 (Form 1041), line 9) | 14 | |
| 15 | Electing large partnerships (amount from Schedule K-1 (Form 1065-B), box 6) | 15 | |
| 16 | Disposition of property (difference between AMT and regular tax gain or loss) | 16 | |
| 17 | Depreciation on assets placed in service after 1986 (difference between regular tax and AMT) | 17 | |
| 18 | Passive activities (difference between AMT and regular tax income or loss) | 18 | |
| 19 | Loss limitations (difference between AMT and regular tax income or loss) | 19 | |
| 20 | Circulation costs (difference between regular tax and AMT) | 20 | |
| 21 | Long-term contracts (difference between AMT and regular tax income) | 21 | |
| 22 | Mining costs (difference between regular tax and AMT) | 22 | |
| 23 | Research and experimental costs (difference between regular tax and AMT) | 23 | |
| 24 | Income from certain installment sales before January 1, 1987 | 24 | |
| 25 | Intangible drilling costs preference | 25 | |
| 26 | Other adjustments, including income-based related adjustments | 26 | 34,308. |
| 27 | Alternative tax net operating loss deduction | 27 | <231,852.> |
| 28 | Alternative minimum taxable income. Combine lines 1 through 27. (If married filing separately and line 28 is more than $191,000, see instructions.) | 28 | 1,784,026. |

### Part II   Alternative Minimum Tax

| | | |
|---|---|---:|
| 29 | Exemption. (If this form is for a child under age 14, see instructions.) | | |
| | IF your filing status is...   AND line 28 is not over...   THEN enter on line 29 ... | | |
| | Single or head of household .................... $112,500 .................... $40,250 | | |
| | Married filing jointly or qualifying widow(er) ... 150,000 .................... 58,000 | 29 | 0. |
| | Married filing separately ....................... 75,000 .................... 29,000 | | |
| | If line 28 is over the amount shown above for your filing status, see instructions. | | |
| 30 | Subtract line 29 from line 28. If zero or less, enter -0- here and on lines 33 and 35 and stop here | 30 | 1,784,026. |
| 31 | • If you reported capital gain distributions directly on Form 1040, line 13; you reported qualified dividends on Form 1040, line 9b; or you had a gain on both lines 15 and 16 of Schedule D (Form 1040) (as refigured for the AMT, if necessary), complete Part III on page 2 and enter the amount from line 55 here. <br> • All others: If line 30 is $175,000 or less ($87,500 or less if married filing separately), multiply line 30 by 26% (.26). Otherwise, multiply line 30 by 28% (.28) and subtract $3,500 ($1,750 if married filing separately) from the result. | 31 | 496,022. |
| 32 | Alternative minimum tax foreign tax credit (see instructions) | 32 | |
| 33 | Tentative minimum tax. Subtract line 32 from line 31 | 33 | 496,022. |
| 34 | Tax from Form 1040, line 43 (minus any tax from Form 4972 and any foreign tax credit from Form 1040, line 46). If you used Schedule J to figure your tax, the amounts for lines 43 and 46 of Form 1040 must be refigured without using Schedule J (see instructions) | 34 | 583,641. |
| 35 | Alternative minimum tax. Subtract line 34 from line 33. If zero or less, enter -0-. Enter here and on Form 1040, line 44 | 35 | 0. |

419481
11-22-04  LHA   For Paperwork Reduction Act Notice, see instructions.

**As Amended**

Form 6251 (2004)

MV 0029

Form 6251 (2004) MARK VEHSLAGE & HEATHER LENGYEL        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        Page **2**

**Part III    Tax Computation Using Maximum Capital Gains Rates**

| | | | |
|---|---|---|---|
| 36 Enter the amount from Form 6251, line 30 | | 36 | 1,784,026. |
| 37 Enter the amount from line 6 of the Qualified Dividends and Capital Gain Tax Worksheet in the instructions for Form 1040, line 43, or the amount from line 13 of the Schedule D Tax Worksheet on page D-9 of the instructions for Schedule D (Form 1040), whichever applies (as refigured for the AMT, if necessary) (see the instructions) | 37 | 40. | |
| 38 Enter the amount from Schedule D (Form 1040), line 19 (as refigured for the AMT, if necessary) (see instructions) | 38 | | |
| 39 If you did not complete a Schedule D Tax Worksheet for the regular tax or the AMT, enter the amount from line 37. Otherwise, add lines 37 and 38, and enter the smaller of that result or the amount from line 10 of the Schedule D Tax Worksheet (as refigured for the AMT, if necessary) | 39 | 40. | |
| 40 Enter the smaller of line 36 or line 39 | | 40 | 40. |
| 41 Subtract line 40 from line 36 | | 41 | 1,783,986. |
| 42 If line 41 is $175,000 or less ($87,500 or less if married filing separately), multiply line 41 by 26% (.26). Otherwise, multiply line 41 by 28% (.28) and subtract $3,500 ($1,750 if married filing separately) from the result | ▶ | 42 | 496,016. |
| 43 Enter:<br>• $58,100 if married filing jointly or qualifying widow(er),<br>• $29,050 if single or married filing separately, or<br>• $38,900 if head of household | 43 | 58,100. | |
| 44 Enter the amount from line 7 of the Qualified Dividends and Capital Gain Tax Worksheet in the instructions for Form 1040, line 43, or the amount from line 14 of the Schedule D Tax Worksheet on page D-9 of the instructions for Schedule D (Form 1040), whichever applies (as figured for the regular tax). If you did not complete either worksheet for the regular tax, enter -0- | 44 | 1,739,978. | |
| 45 Subtract line 44 from line 43. If zero or less, enter -0- | 45 | 0. | |
| 46 Enter the smaller of line 36 or line 37 | 46 | 40. | |
| 47 Enter the smaller of line 45 or line 46 | 47 | | |
| 48 Multiply line 47 by 5% (.05) | ▶ | 48 | |
| 49 Subtract line 47 from line 46 | 49 | 40. | |
| 50 Multiply line 49 by 15% (.15) | ▶ | 50 | 6. |
| If line 38 is zero or blank, skip lines 51 and 52 and go to line 53. Otherwise, go to line 51. | | | |
| 51 Subtract line 46 from line 40 | 51 | | |
| 52 Multiply line 51 by 25% (.25) | ▶ | 52 | |
| 53 Add lines 42, 48, 50, and 52 | | 53 | 496,022. |
| 54 If line 36 is $175,000 or less ($87,500 or less if married filing separately), multiply line 36 by 26% (.26). Otherwise, multiply line 36 by 28% (.28) and subtract $3,500 ($1,750 if married filing separately) from the result | | 54 | 496,027. |
| 55 Enter the smaller of line 53 or line 54 here and on line 31 | | 55 | 496,022. |

Form 6251 (2004)

**As Amended**

419591
11-22-04

MV 0030

6711

| Schedule K-1<br>(Form 1120S) | **2004** | | ☐ Final K-1   ☒ Amended K-1 | OMB No. 1545-0130 |
|---|---|---|---|---|

**Part III**   Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

Department of the Treasury
Internal Revenue Service

Tax year beginning _____
and ending _____

**Shareholder's Share of Income, Deductions, Credits, etc.**

► See separate instructions.

| | |
|---|---|
| 1 Ordinary business income (loss)<br>1,921,698. | 13 Credits & credit recapture |
| 2 Net rental real estate income (loss)<br><28,934.> | |
| 3 Other net rental income (loss) | |
| 4 Interest income<br>95. | |
| 5a Ordinary dividends | |
| 5b Qualified dividends | 14 Foreign transactions |
| 6 Royalties | |
| 7 Net short-term capital gain (loss) | |
| 8a Net long-term capital gain (loss) | |
| 8b Collectibles (28%) gain (loss) | |
| 8c Unrecaptured sec 1250 gain | |
| 9 Net section 1231 gain (loss)<br>0. | |
| 10 Other income (loss) | 15 Alternative min tax (AMT) items |

**Part I**   Information About the Corporation

A Corporation's employer identification number:
36-4163366

B Corporation's name, address, city, state, and ZIP code
LAKEWOOD PROPERTIES, LTD
C/O MARK VEHSLAGE
2232 SANTA BARBARA
SANTA BARBARA, CA  93105

C IRS Center where corporation filed return:
OGDEN, UT

D ☐ Tax shelter registration number, if any _____

E ☐ Check if Form 8271 is attached

**Part II**   Information About the Shareholder

F Shareholder's identifying number:
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

G Shareholder's name, address, city, state and ZIP code

MARK VEHSLAGE
2232 SANTA BARBARA
SANTA BARBARA, CA  93105

H Shareholder's percentage of stock
ownership for tax year ........................   50.000000%

| | |
|---|---|
| 11 Section 179 deduction | 16 Items affecting shareholder basis<br>D   1,055,912. |
| 12 Other deductions | E   244,088. |
| | 17 Other information<br>A   95. |

For IRS Use Only

As Amended

411271<br>01-05-05   JWA   For Privacy Act and Paperwork Reduction Act Notice, see Instructions for Form 1120S.

Schedule K-1 (Form 1120S) 2004

SHAREHOLDER NUMBER 2

MV 0031

Form **1040**   Department of the Treasury — Internal Revenue Service
**U.S. Individual Income Tax Return**  **2004**   (99)   IRS Use Only — Do not write or staple in this space.

For the year Jan 1 - Dec 31, 2004, or other tax year beginning   , 2004, ending   , 20   | OMB No. 1545-0074

| Label (See instructions) | Your first name | MI | Last name | | Your social security number |
|---|---|---|---|---|---|
| | MARK | | VEHSLAGE | | 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 |
| Use the IRS label. | If a joint return, spouse's first name | MI | Last name | | Spouse's social security number |
| | HEATHER | | LENGYEL | | 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 |
| Otherwise, please print or type. | Home address (number and street). If you have a P.O. box, see instructions. | | | Apartment no. | **Important!** |
| | 5105 N. CLARK STREET | | | | You must enter your social security number(s) above. |
| | City, town or post office. If you have a foreign address, see instructions. | | State | ZIP code | |
| | CHICAGO | | IL | 60640 | |

Presidential Election Campaign (See instructions) ► Note: Checking 'Yes' will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund?......  You [ ] Yes [X] No  Spouse [ ] Yes [X] No

**Filing Status**
Check only one box.

1 [ ] Single
2 [X] Married filing jointly (even if only one had income)
3 [ ] Married filing separately. Enter spouse's SSN above & full name here ►
4 [ ] Head of household (with qualifying person). (See instructions.) If the qualifying person is a child but not your dependent, enter this child's name here ►
5 [ ] Qualifying widow(er) with dependent child (see instructions)

**Exemptions**

6a [X] Yourself. If someone can claim you as a dependent, do not check box 6a...........   Boxes checked on 6a and 6b = 2
b [X] Spouse..........

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see instrs) |
|---|---|---|---|
| MICHAELA VEHSLAGE | 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 | Daughter | [X] |
| MARK VEHSLAGE, JR | 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 | Son | [X] |
| | | | [ ] |
| | | | [ ] |

No. of children on 6c who:
● lived with you = 2
● did not live with you due to divorce or separation (see instrs)
Dependents on 6c not entered above
Add numbers on lines above ► = 4

If more than four dependents, see instructions.

d Total number of exemptions claimed.................

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2............... | 7 | 5,634. |
| 8a | Taxable interest. Attach Schedule B if required............... | 8a | 106. |
| b | Tax-exempt interest. Do not include on line 8a...... | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required............. | 9a | – 66. |
| b | Qualified dividends (see instrs).......... | 9b | 40. |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see instructions) | 10 | |
| 11 | Alimony received.................. | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ......... | 12 | |
| 13 | Capital gain or (loss). Att Sch D if reqd. If not reqd, ck here ► [ ] | 13 | 508,234. |
| 14 | Other gains or (losses). Attach Form 4797............. | 14 | |
| 15a | IRA distributions......... 15a | b Taxable amount (see instrs) | 15b | |
| 16a | Pensions and annuities.... 16a | b Taxable amount (see instrs) | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | –28,934. |
| 18 | Farm income or (loss). Attach Schedule F............. | 18 | |
| 19 | Unemployment compensation.............. | 19 | |
| 20a | Social security benefits... 20a | b Taxable amount (see instrs) | 20b | |
| 21 | Other income NET OPERATING LOSS | 21 | –231,852. |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your total income ► | 22 | 253,254. |

**Adjusted Gross Income**

| 23 | Educator expenses (see instructions)............. | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ........ | 24 | |
| 25 | IRA deduction (see instructions)............ | 25 | |
| 26 | Student loan interest deduction (see instructions)......... | 26 | |
| 27 | Tuition and fees deduction (see instructions)........ | 27 | |
| 28 | Health savings account deduction. Attach Form 8889..... | 28 | |
| 29 | Moving expenses. Attach Form 3903.......... | 29 | |
| 30 | One-half of self-employment tax. Attach Schedule SE.... | 30 | |
| 31 | Self-employed health insurance deduction (see instrs).... | 31 | |
| 32 | Self-employed SEP, SIMPLE, and qualified plans......... | 32 | |
| 33 | Penalty on early withdrawal of savings.............. | 33 | |
| 34a | Alimony paid b Recipient's SSN ► | 34a | |
| 35 | Add lines 23 through 34a............. | 35 | |
| 36 | Subtract line 35 from line 22. This is your adjusted gross income........ ► | 36 | 253,254. |

BAA For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.    Form 1040 (2004)

As Originally Filed

MV 0032

Form 1040 (2004)  MARK VEHSLAGE & HEATHER LENGYEL    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    Page 2

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 37 Amount from line 36 (adjusted gross income) | | 37 | 253,254. |
| | 38a Check if: ☐ You were born before January 2, 1940, ☐ Blind. Total boxes<br>☐ Spouse was born before January 2, 1940, ☐ Blind. checked ▶ 38a | | | |
| **Standard Deduction for** | b If your spouse itemizes on a separate return, or you were a dual-status alien, see instructions and check here ▶ 38b ☐ | | | |
| • People who checked any box on line 38a or 38b or who can be claimed as a dependent, see instructions. | 39 Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | 39 | 13,627. |
| | 40 Subtract line 39 from line 37 | | 40 | 239,627. |
| | 41 If line 37 is $107,025 or less, multiply $3,100 by the total number of exemptions claimed on line 6d. If line 37 is over $107,025, see the worksheet in the instructions | | 41 | 8,432. |
| • All others: | 42 Taxable income. Subtract line 41 from line 40 | | 42 | 231,195. |
| Single or Married filing separately, $4,850 | 43 Tax (see instrs). Check if any tax is from: a ☐ Form(s) 8814 b ☐ Form 4972 | | 43 | ~28,869. |
| | 44 Alternative minimum tax (see instructions). Attach Form 6251 ▶ | | 44 | ~2,320. |
| Married filing jointly or Qualifying widow(er), $9,700 | 45 Add lines 43 and 44 ▶ | | 45 | ~31,189. |
| | 46 Foreign tax credit. Attach Form 1116 if required | 46 | | |
| | 47 Credit for child and dependent care expenses. Attach Form 2441 | 47 | | |
| Head of household, $7,150 | 48 Credit for the elderly or the disabled. Attach Schedule R | 48 | | |
| | 49 Education credits. Attach Form 8863 | 49 | | |
| | 50 Retirement savings contributions credit. Attach Form 8880 | 50 | | |
| | 51 Child tax credit (see instructions) | 51 | | |
| | 52 Adoption credit. Attach Form 8839 | 52 | | |
| | 53 Credits from: a ☐ Form 8396 b ☐ Form 8859 | 53 | | |
| | 54 Other credits. Check applicable box(es): a ☐ Form 3800<br>b ☐ Form 8801 c ☐ Specify | 54 | | |
| | 55 Add lines 46 through 54. These are your total credits | | 55 | |
| | 56 Subtract line 55 from line 45. If line 55 is more than line 45, enter -0- ▶ | | 56 | 31,189. |
| **Other Taxes** | 57 Self-employment tax. Attach Schedule SE | | 57 | |
| | 58 Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | | 58 | |
| | 59 Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | 59 | |
| | 60 Advance earned income credit payments from Form(s) W-2 | | 60 | |
| | 61 Household employment taxes. Attach Schedule H | | 61 | |
| | 62 Add lines 56-61. This is your total tax ▶ | | 62 | 31,189. |
| **Payments** | 63 Federal income tax withheld from Forms W-2 and 1099 | 63 | | 22. |
| If you have a qualifying child, attach Schedule EIC. | 64 2004 estimated tax payments and amount applied from 2003 return | 64 | | |
| | 65a Earned income credit (EIC) | 65a | | |
| | b Nontaxable combat pay election ▶ 65b | | | |
| | 66 Excess social security and tier 1 RRTA tax withheld (see instructions) | 66 | | |
| | 67 Additional child tax credit. Attach Form 8812 | 67 | | |
| | 68 Amount paid with request for extension to file (see instructions) | 68 | | |
| | 69 Other pmts from: a ☐ Form 2439 b ☐ Form 4136 c ☐ Form 8885 | 69 | | |
| | 70 Add lines 63, 64, 65a, and 66 through 69. These are your total payments ▶ | | 70 | 22. |
| **Refund**<br>Direct deposit?<br>See instructions and fill in 72b, 72c, and 72d. | 71 If line 70 is more than line 62, subtract line 62 from line 70. This is the amount you overpaid | | 71 | |
| | 72a Amount of line 71 you want refunded to you ▶ | | 72a | |
| | ▶ b Routing number ▶ c Type: ☐ Checking ☐ Savings | | | |
| | ▶ d Account number | | | |
| | 73 Amount of line 71 you want applied to your 2005 estimated tax ▶ 73 | | | |
| **Amount You Owe** | 74 Amount you owe. Subtract line 70 from line 62. For details on how to pay, see instructions ▶ | | 74 | |
| | 75 Estimated tax penalty (see instructions) | 75 | | |
| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS (see instructions)? ☒ Yes. Complete the following. ☐ No<br>Designee's name ▶ Preparer    Phone no. ▶    Personal identification number (PIN) ▶ | | | |
| **Sign Here**<br>Joint return?<br>See instructions.<br>Keep a copy for your records. | Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | | | |
| | Your signature    Date    Your occupation REAL ESTATE PROFESSIONAL    Daytime phone number | | | |
| | Spouse's signature. If a joint return, both must sign.    Date    Spouse's occupation DIETICIAN | | | |
| **Paid Preparer's Use Only** | Preparer's signature ▶    Date    Check if self-employed ☒    Preparer's SSN or PTIN P00144037 | | | |
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ | JON E. WITHEY, CPA<br>5405 N CLARK ST<br>CHICAGO    IL  60640 | EIN<br>Phone no. (773) 334-3800 | |

FDIA0112  11/10/04    **As Originally Filed**    Form 1040 (2004)

MV 0033

| SCHEDULE A (Form 1040) | | Itemized Deductions | | | OMB No. 1545-0074 |
|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service (99) | | ► Attach to Form 1040. ► See Instructions for Schedule A (Form 1040). | | | **2004** 07 |

Name(s) shown on Form 1040: **MARK VEHSLAGE & HEATHER LENGYEL**    Your social security number: **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**

**Medical and Dental Expenses**

Caution. Do not include expenses reimbursed or paid by others.

| 1 | Medical and dental expenses (see instructions) | 1 | |
|---|---|---|---|
| 2 | Enter amount from Form 1040, line 37 ..... 2 | | |
| 3 | Multiply line 2 by 7.5% (.075) | 3 | |
| 4 | Subtract line 3 from line 1. If line 3 is more than line 1, enter -0- | | 4 |

**Taxes You Paid**

(See instructions.)

| 5 | State and local (check only one box): a ☐ Income taxes, or b ☒ General sales taxes (see instructions) | 5 | 3,111. |
|---|---|---|---|
| 6 | Real estate taxes (see instructions) | 6 | |
| 7 | Personal property taxes | 7 | |
| 8 | Other taxes. List type and amount ► | 8 | |
| 9 | Add lines 5 through 8 | | 9 | 3,111. |

**Interest You Paid**

(See instructions.)

**Note. Personal interest is not deductible.**

| 10 | Home mtg interest and points reported to you on Form 1098 | 10 | |
|---|---|---|---|
| 11 | Home mortgage interest not reported to you on Form 1098. If paid to the person from whom you bought the home, see instructions and show that person's name, identifying number, and address ► | 11 | |
| 12 | Points not reported to you on Form 1098. See instrs for spcl rules | 12 | |
| 13 | Investment interest. Attach Form 4952 if required. (See instrs.) | 13 | |
| 14 | Add lines 10 through 13 | | 14 |

**Gifts to Charity**

If you made a gift and got a benefit for it, see instructions.

| 15 | Gifts by cash or check. If you made any gift of $250 or more, see instructions | 15 | 12,000. |
|---|---|---|---|
| 16 | Other than by cash or check. If any gift of $250 or more, see instructions. You must attach Form 8283 if over $500 | 16 | 1,833. |
| 17 | Carryover from prior year | 17 | |
| 18 | Add lines 15 through 17 | | 18 | 13,833. |

**Casualty and Theft Losses**

| 19 | Casualty or theft loss(es). Attach Form 4684. (See instructions.) | | 19 |
|---|---|---|---|

**Job Expenses and Most Other Miscellaneous Deductions**

(See instructions.)

| 20 | Unreimbursed employee expenses – job travel, union dues, job education, etc. Attach Form 2106 or 2106-EZ if required. (See instructions.) ► | 20 | |
|---|---|---|---|
| 21 | Tax preparation fees | 21 | |
| 22 | Other expenses – investment, safe deposit box, etc. List type and amount ► | 22 | |
| 23 | Add lines 20 through 22 | 23 | |
| 24 | Enter amount from Form 1040, line 37 ..... 24 | | |
| 25 | Multiply line 24 by 2% (.02) | 25 | |
| 26 | Subtract line 25 from line 23. If line 25 is more than line 23, enter -0- | | 26 |

**Other Miscellaneous Deductions**

| 27 | Other – from list in the instructions. List type and amount ► | | 27 |
|---|---|---|---|

**Total Itemized Deductions**

| 28 | Is Form 1040, line 37, over $142,700 (over $71,350 if MFS)? | | 28 | 13,627. |
|---|---|---|---|---|
| | ☐ No.  Your deduction is not limited. Add the amounts in the far right column for lines 4 through 27. Also, enter this amount on Form 1040, line 39. | | | |
| | ☒ Yes. Your deduction may be limited. See instructions for the amount to enter. | | | |

Itemized Deductions Limited per IRC Sec. 68.

As Originally Filed

BAA For Paperwork Reduction Act Notice, see Form 1040 instructions.    Schedule A (Form 1040) 2004

MV 0034

**SCHEDULE D**
(Form 1040)

Department of the Treasury
Internal Revenue Service  (99)

**Capital Gains and Losses**

► Attach to Form 1040.    ► See Instructions for Schedule D (Form 1040).
► Use Schedule D-1 to list additional transactions for lines 1 and 8.

OMB No. 1545-0074

**2004**

12

Name(s) shown on Form 1040

MARK VEHSLAGE & HEATHER LENGYEL

Your social security number

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

**Short-Term Capital Gains and Losses — Assets Held One Year or Less**

| (a) Description of property (Example: 100 shares XYZ Co) | (b) Date acquired (Mo, day, yr) | (c) Date sold (Mo, day, yr) | (d) Sales price (see instructions) | (e) Cost or other basis (see instructions) | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|
| 1 BETA ASSET MANAGEMENT ACTIVITY | Various | Various | 86,000. | 0. | 86,000. |

| | | |
|---|---|---|
| 2 Enter your short-term totals, if any, from Schedule D-1, line 2 ... | 2 | |
| 3 Total short-term sales price amounts. Add lines 1 and 2 in column (d) ... | 3 | 86,000. |
| 4 Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 ... | 4 | |
| 5 Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 ... | 5 | -79,500. |
| 6 Short-term capital loss carryover. Enter the amount, if any, from line 8 of your **Capital Loss Carryover Worksheet** in the instructions ... | 6 | -119,964. |
| 7 Net short-term capital gain or (loss). Combine lines 1 through 6 in column (f) ... | 7 | -113,464. |

**Long-Term Capital Gains and Losses — Assets Held More Than One Year**

| (a) Description of property (Example: 100 shares XYZ Co) | (b) Date acquired (Mo, day, yr) | (c) Date sold (Mo, day, yr) | (d) Sales price (see instructions) | (e) Cost or other basis (see instructions) | (f) Gain or (loss) Subtract (e) from (d) |
|---|---|---|---|---|---|
| 8 | | | | | |

| | | |
|---|---|---|
| 9 Enter your long-term totals, if any, from Schedule D-1, line 9 ... | 9 | |
| 10 Total long-term sales price amounts. Add lines 8 and 9 in column (d) ... | 10 | |
| 11 Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 ... | 11 | 621,698. |
| 12 Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 ... | 12 | |
| 13 Capital gain distributions. See instrs ... | 13 | |
| 14 Long-term capital loss carryover. Enter the amount, if any, from line 13 of your **Capital Loss Carryover Worksheet** in the instructions ... | 14 | |
| 15 Net long-term capital gain or (loss). Combine lines 8 through 14 in column (f). Then go to Part III on page 2 ... | 15 | 621,698. |

BAA For Paperwork Reduction Act Notice, see Form 1040 Instructions.

Schedule D (Form 1040) 2004

FDIA0612  11/02/04

**As Originally Filed**

MV 0035

Schedule D (Form 1040) 2004   MARK VEHSLAGE & HEATHER LENGYEL   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   Page 2

**Summary**

16  Combine lines 7 and 15 and enter the result. If line 16 is a loss, skip lines 17 through 20, and go to line 21. If a gain, enter the gain on Form 1040, line 13, and then go to line 17 below .......................... **16**  508,234.

17  Are lines 15 and 16 both gains?

[X] Yes. Go to line 18.

[ ] No. Skip lines 18 through 21, and go to line 22.

18  Enter the amount, if any, from line 7 of the 28% Rate Gain Worksheet in the instructions ............... ► **18**

19  Enter the amount, if any, from line 18 of the Unrecaptured Section 1250 Gain Worksheet in the instructions ................................................................ ► **19**  70,723.

20  Are lines 18 and 19 both zero or blank?

[ ] Yes. Complete Form 1040 through line 42, and then complete the **Qualified Dividends and Capital Gain Tax Worksheet** in the instructions for Form 1040. Do not complete lines 21 and 22 below.

[X] No. Complete Form 1040 through line 42, and then complete the **Schedule D Tax Worksheet** in the instructions. **Do not** complete lines 21 and 22 below.

21  If line 16 is a loss, enter here and on Form 1040, line 13, the smaller of:

● The loss on line 16 or
● ($3,000), or if married filing separately, ($1,500) ......................................... **21**

**Note.** When figuring which amount is smaller, treat both amounts as positive numbers.

22  Do you have qualified dividends on Form 1040, line 9b?

[ ] Yes. Complete Form 1040 through line 42, and then complete the **Qualified Dividends and Capital Gain Tax Worksheet** in the instructions for Form 1040.
[ ] No. Complete the rest of Form 1040.

Schedule D (Form 1040) 2004

FDIA0612  11/02/04

## As Originally Filed

MV 0036

Schedule E (Form 1040) 2004       **13**        Page **2**

Name(s) shown on return. Do not enter name and social security number if shown on Page 1.

Your social security number
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

MARK VERSLAGE & HEATHER LENGYEL

**Caution:** The IRS compares amounts reported on your tax return with amounts shown on Schedule(s) K-1.

### Part II   Income or Loss From Partnerships and S Corporations

**Note.** If you report a loss from an at-risk activity for which any amount is not at risk, you must check column (e) on line 28 and attach Form 6198. See instructions.

27   Are you reporting any loss not allowed in a prior year due to the at-risk or basis limitations, a prior year unallowed loss from a passive activity (if that loss was not reported on Form 8582), or unreimbursed partnership expenses?.... ☐ Yes   ☒ No

If you answered 'Yes,' see instructions before completing this section.

| 28 | (a) Name | (b) Enter P for partnership; S for S corporation | (c) Check if foreign partnership | (d) Employer identification number | (e) Check if any amount is not at risk |
|---|---|---|---|---|---|
| A | LAKEWOOD PROPERTIES, LTD. | S | | 36-4163366 | |
| B | | | | | |
| C | | | | | |
| D | | | | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | | |
|---|---|---|---|---|---|
| | (f) Passive loss allowed (attach Form 8582 if required) | (g) Passive income from Schedule K-1 | (h) Nonpassive loss from Schedule K-1 | (i) Section 179 expense deduction from Form 4562 | (j) Nonpassive income from Schedule K-1 |
| A | | | 28,934. | | |
| B | | | | | |
| C | | | | | |
| D | | | | | |

| 29a Totals | | | 28,934. | | |
|---|---|---|---|---|---|
| b Totals | | | | | |

| 30 | Add columns (g) and (j) of line 29a................................................. | 30 | |
|---|---|---|---|
| 31 | Add columns (f), (h), and (i) of line 29b........................................... | 31 | -28,934. |
| 32 | **Total partnership and S corporation income or (loss).** Combine lines 30 and 31. Enter the result here and include in the total on line 41 below................................................................ | 32 | -28,934. |

### Part III   Income or Loss From Estates and Trusts

| 33 | (a) Name | (b) Employer ID no. |
|---|---|---|
| A | | |
| B | | |

| | Passive Income and Loss | | Nonpassive Income and Loss | |
|---|---|---|---|---|
| | (c) Passive deduction or loss allowed (attach Form 8582 if required) | (d) Passive income from Schedule K-1 | (e) Deduction or loss from Schedule K-1 | (f) Other income from Schedule K-1 |
| A | | | | |
| B | | | | |

| 34a Totals | | | | |
|---|---|---|---|---|
| b Totals | | | | |

| 35 | Add columns (d) and (f) of line 34a.............................................. | 35 | |
|---|---|---|---|
| 36 | Add columns (c) and (e) of line 34b.............................................. | 36 | |
| 37 | **Total estate and trust income or (loss).** Combine lines 35 and 36. Enter the result here and include in the total on line 41 below......................... | 37 | |

### Part IV   Income or Loss From Real Estate Mortgage Investment Conduits (REMICs) — Residual Holder

| 38 | (a) Name | (b) Employer identification number | (c) Excess inclusion from Schedules Q, line 2c (see instructions) | (d) Taxable income (net loss) from Schedules Q, line 1b | (e) Income from Schedules Q, line 3b |
|---|---|---|---|---|---|
| | | | | | |

| 39 | Combine columns (d) and (e) only. Enter the result here and include in the total on line 41 below........... | 39 | |
|---|---|---|---|

### Part V   Summary

| 40 | Net farm rental income or (loss) from Form 4835. Also, complete line 42 below......................... | 40 | |
|---|---|---|---|
| 41 | **Total income or (loss).** Combine lines 26, 32, 37, 39, and 40. Enter the result here and on Form 1040, line 17 ........................................................................ ► | 41 | -28,934. |
| 42 | **Reconciliation of farming and fishing income.** Enter your gross farming and fishing income reported on Form 4835, line 7; Schedule K-1 (Form 1065), box 14, code B; Schedule K-1 (Form 1120S), box 17, code N; and Schedule K-1 (Form 1041), line 14 (see instructions)................. | 42 | |
| 43 | **Reconciliation for real estate professionals.** If you were a real estate professional (see instructions), enter the net income or (loss) you reported anywhere on Form 1040 from all rental real estate activities in which you materially participated under the passive activity loss rules................. | 43 | -28,934. |

BAA     FDIZ2302   05/12/04        As Originally Filed     Schedule E (Form 1040) 2004

MV 0037

Form **4797**

Department of the Treasury
Internal Revenue Service (99)

**Sales of Business Property**
(Also Involuntary Conversions and Recapture Amounts
Under Sections 179 and 280F(b)(2))
▶ Attach to your tax return.   ▶ See separate Instructions.

OMB No. 1545-0184

**2004**
**27**

Name(s) shown on return

MARK VENSLAGE & HEATHER LENGYEL

Identifying number

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

1   Enter the gross proceeds from sales or exchanges reported to you for 2004 on Form(s) 1099-B or 1099-S
(or substitute statement) that you are including on line 2, 10, or 20 (see instructions) . . . . . . . . . . . . | **1** |

**Part I   Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other
Than Casualty or Theft — Most Property Held More Than 1 Year (see instructions)**

| 2 | (a) Description of property | (b) Date acquired (month, day, year) | (c) Date sold (month, day, year) | (d) Gross sales price | (e) Depreciation allowed or allowable since acquisition | (f) Cost or other basis, plus improvements and expense of sale | (g) Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|---|
| From K-1 | | | | | | | 621,698. |
| | | | | | | | |
| | | | | | | | |

| | | |
|---|---|---|
| 3   Gain, if any, from Form 4684, line 39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3** | |
| 4   Section 1231 gain from installment sales from Form 6252, line 26 or 37 . . . . . . . . . . . . . . . . . . . . . | **4** | |
| 5   Section 1231 gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . . . . . . . . . . . . . . . | **5** | |
| 6   Gain, if any, from line 32, from other than casualty or theft . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** | |
| 7   Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows . . . . . . . . . . . . . . . | **7** | 621,698. |

Partnerships (except electing large partnerships) and S corporations. Report the gain or (loss) following the
instructions for Form 1065, Schedule K, line 10, or Form 1120S, Schedule K, line 9. Skip lines 8, 9, 11, and
12 below.

All others. If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7
is a gain and you did not have any prior year section 1231 losses, or they were recaptured in an earlier year, enter
the gain from line 7 as a long-term capital gain on Schedule D and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---|
| 8   Nonrecaptured net section 1231 losses from prior years (see instructions) . . . . . . . . . . . . . . . . . . . . | **8** | |
| 9   Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on Schedule D (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **9** | |

**Part II   Ordinary Gains and Losses**

10   Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| | | |
|---|---|---|
| 11   Loss, if any, from line 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11** | |
| 12   Gain, if any, from line 7 or amount from line 8, if applicable . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12** | |
| 13   Gain, if any, from line 31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **13** | |
| 14   Net gain or (loss) from Form 4684, lines 31 and 38a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **14** | |
| 15   Ordinary gain from installment sales from Form 6252, line 25 or 36 . . . . . . . . . . . . . . . . . . . . . . . | **15** | |
| 16   Ordinary gain or (loss) from like-kind exchanges from Form 8824 . . . . . . . . . . . . . . . . . . . . . . . . | **16** | |
| 17   Combine lines 10 through 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **17** | |

18   For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines
a and b below. For individual returns, complete lines a and b below:

| | | |
|---|---|---|
| a   If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the part of the loss from income-producing property on Schedule A (Form 1040), line 27, and the part of the loss from property used as an employee on Schedule A (Form 1040), line 22. Identify as from Form 4797, line 18a.' See Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **18a** | |
| b   Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Form 1040, line 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **18b** | |

BAA  For Paperwork Reduction Act Notice, see instructions.                                Form **4797** (2004)

FDIZ1001  10/12/04

**As Originally Filed**

MV 0038

**Form 6251**

Department of the Treasury
Internal Revenue Service  (99)

**Alternative Minimum Tax — Individuals**

► See separate instructions.
► Attach to Form 1040 or Form 1040NR.

OMB No. 1545-0227

**2004**

32

Name(s) shown on Form 1040

MARK VEHSLAGE & HEATHER LENGYEL

Your social security number

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

## Part I  Alternative Minimum Taxable Income (See instructions for how to complete each line.)

| | | |
|---|---|---|
| 1 | If filing Schedule A (Form 1040), enter the amount from Form 1040, line 40, and go to line 2. Otherwise, enter the amount from Form 1040, line 37, and go to line 7. (If less than zero, enter as a negative amount.) | 1 | 239,627. |
| 2 | Medical and dental. Enter the smaller of Schedule A (Form 1040), line 4 or 2-1/2% of Form 1040, line 37.... | 2 | 0. |
| 3 | Taxes from Schedule A (Form 1040), line 9 | 3 | 3,111. |
| 4 | Enter the home mortgage interest adjustment, if any, from line 6 of the worksheet on page 2 of the instructions | 4 | |
| 5 | Miscellaneous deductions from Schedule A (Form 1040), line 26 | 5 | |
| 6 | If Form 1040, line 37, is over $142,700 (over $71,350 if married filing separately), enter the amount from line 9 of the Itemized Deductions Worksheet in the Instructions for Schedules A and B (Form 1040) | 6 | -3,317. |
| 7 | Tax refund from Form 1040, line 10 or line 21 | 7 | |
| 8 | Investment interest expense (difference between regular tax and AMT) | 8 | |
| 9 | Depletion (difference between regular tax and AMT) | 9 | |
| 10 | Net operating loss deduction from Form 1040, line 21. Enter as a positive amount | 10 | 231,852. |
| 11 | Interest from specified private activity bonds exempt from the regular tax | 11 | |
| 12 | Qualified small business stock (7% of gain excluded under section 1202) | 12 | |
| 13 | Exercise of incentive stock options (excess of AMT income over regular tax income) | 13 | |
| 14 | Estates and trusts (amount from Schedule K-1 (Form 1041), line 9) | 14 | |
| 15 | Electing large partnerships (amount from Schedule K-1 (Form 1065-B), box 6) | 15 | |
| 16 | Disposition of property (difference between AMT and regular tax gain or loss) | 16 | |
| 17 | Depreciation on assets placed in service after 1986 (difference between AMT and regular tax) | 17 | |
| 18 | Passive activities (difference between AMT and regular tax income or loss) | 18 | |
| 19 | Loss limitations (difference between AMT and regular tax income or loss) | 19 | |
| 20 | Circulation costs (difference between regular tax and AMT) | 20 | |
| 21 | Long-term contracts (difference between AMT and regular tax income) | 21 | |
| 22 | Mining costs (difference between regular tax and AMT) | 22 | |
| 23 | Research and experimental costs (difference between regular tax and AMT) | 23 | |
| 24 | Income from certain installment sales before January 1, 1987 | 24 | |
| 25 | Intangible drilling costs preference | 25 | |
| 26 | Other adjustments, including income-based related adjustments | 26 | |
| 27 | Alternative tax net operating loss deduction | 27 | -197,544. |
| 28 | Alternative minimum taxable income. Combine lines 1 through 27. (If married filing separately and line 28 is more than $191,000, see instructions.) | 28 | 273,729. |

## Part II  Alternative Minimum Tax

29 Exemption. (If this form is for a child under age 14, see instructions.)

| IF your filing status is ... | AND line 28 is not over ... | THEN enter on line 29 ... |
|---|---|---|
| Single or head of household | $112,500 | $40,250 |
| Married filing jointly or qualifying widow(er) | 150,000 | 58,000 |
| Married filing separately | 75,000 | 29,000 |

If line 28 is over the amount shown above for your filing status, see instructions.

| 29 | 27,068. |

| | | |
|---|---|---|
| 30 | Subtract line 29 from line 28. If zero or less, enter -0- here and on lines 33 and 35 and stop here | 30 | 246,661. |
| 31 | • If you reported capital gain distributions directly on Form 1040, line 13; you reported qualified dividends on Form 1040, line 9b; or you had a gain on both lines 15 and 16 of Schedule D (Form 1040) (as refigured for the AMT, if necessary), complete Part III on page 2 and enter the amount from line 55 here.<br>• All others: If line 30 is $175,000 or less ($87,500 or less if married filing separately), multiply line 30 by 26% (.26). Otherwise, multiply line 30 by 28% (.28) and subtract $3,500 ($1,750 if married filing separately) from the result. | 31 | 31,189. |
| 32 | Alternative minimum tax foreign tax credit (see instructions) | 32 | |
| 33 | Tentative minimum tax. Subtract line 32 from line 31 | 33 | 31,189. |
| 34 | Tax from Form 1040, line 43 (minus any tax from Form 4972 and any foreign tax credit from Form 1040, line 46). If you used Schedule J to figure your tax, the amounts for lines 43 and 46 of Form 1040 must be refigured without using Schedule J (see instructions) | 34 | 28,869. |
| 35 | Alternative minimum tax. Subtract line 34 from line 33. If zero or less, enter -0-. Enter here and on Form 1040, line 44 | 35 | 3,320. |

BAA For Paperwork Reduction Act Notice, see separate instructions.

Form 6251 (2004)

As Originally Filed

MV 0039

Form 6251 (2004)    MARK VEHSLAGE & HEATHER LENGYEL                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         Page 2

**Tax Computation Using Maximum Capital Gains Rates**

| | | |
|---|---|---|
| 36 Enter the amount from Form 6251, line 30 ..................................... | **36** | 246,661. |
| 37 Enter the amount from line 6 of the Qualified Dividends and Capital Gain Tax Worksheet in the instructions for Form 1040, line 43, or the amount from line 13 of the Schedule D Tax Worksheet in the instructions for Schedule D (Form 1040), whichever applies (as refigured for the AMT, if necessary) (see instructions) .............................. **37** 437,551. | | |
| 38 Enter the amount from Schedule D (Form 1040), line 19 (as refigured for the AMT, if necessary) (see instructions) .............. **38** 70,723. | | |
| 39 If you did not complete a Schedule D Tax Worksheet for the regular tax or the AMT, enter the amount from line 37. Otherwise, add lines 37 and 38, and enter the smaller of that result or the amount from line 10 of the Schedule D Tax Worksheet (as refigured for the AMT, if necessary) ........ **39** 508,274. | | |
| 40 Enter the smaller of line 36 or line 39 .......................................... | **40** | 246,661. |
| 41 Subtract line 40 from line 36 ..................................................... | **41** | 0. |
| 42 If line 41 is $175,000 or less ($87,500 or less if married filing separately), multiply line 41 by 26% (.26). Otherwise, multiply line 41 by 28% (.28) and subtract $3,500 ($1,750 if married filing separately) from the result ..................................................... | **42** | 0. |
| 43 Enter: • $58,100 if married filing jointly or qualifying widow(er). • $29,050 if single or married filing separately, or • $38,900 if head of household. .......... **43** 58,100. | | |
| 44 Enter the amount from line 7 of the Qualified Dividends and Capital Gain Tax Worksheet in the instructions for Form 1040, line 43, or the amount from line 14 of the Schedule D Tax Worksheet in the instructions for Schedule D (Form 1040), whichever applies (as figured for the regular tax). If you did not complete either worksheet for the regular tax, enter -0-. ........ **44** 0. | | |
| 45 Subtract line 44 from line 43. If zero or less, enter -0- ...................... **45** 58,100. | | |
| 46 Enter the smaller of line 36 or line 37 .......................... **46** 246,661. | | |
| 47 Enter the smaller of line 45 or line 46 .......................... **47** 58,100. | | |
| 48 Multiply line 47 by 5% (.05) ..................................................... | **48** | 2,905. |
| 49 Subtract line 47 from line 46 .................................... **49** 188,561. | | |
| 50 Multiply line 49 by 15% (.15) ..................................................... If line 38 is zero or blank, skip lines 51 and 52 and go to line 53. Otherwise, go to line 51. | **50** | 28,284. |
| 51 Subtract line 46 from line 40 .................................... **51** 0. | | |
| 52 Multiply line 51 by 25% (.25) ..................................................... | **52** | 0. |
| 53 Add lines 42, 48, 50, and 52 ..................................................... | **53** | 31,189. |
| 54 If line 36 is $175,000 or less ($87,500 or less if married filing separately), multiply line 36 by 26% (.26). Otherwise, multiply line 36 by 28% (.28) and subtract $3,500 ($1,750 if married filing separately) from the result ..................... | **54** | 65,565. |
| 55 Enter the smaller of line 53 or line 54 here and on line 31. ................ | **55** | 31,189. |

Form 6251 (2004)

FDIA5312  11/24/04         **As Originally Filed**

MV 0040

☐ Final K-1   ☐ Amended K-1                          OMB No. 1545-0130

**Schedule K-1**
**(Form 1120S)**

**2004**

Department of the Treasury
Internal Revenue Service

Tax year beginning _____, 2004
and ending _____

**Shareholder's Share of Income, Deductions, Credits, etc.** ► See page 2 of form and separate instructions.

**Part I   Information About the Corporation**

A Corporation's employer identification number
36-4163366

B Corporation's name, address, city, state, and ZIP code
LAKEWOOD PROPERTIES, LTD.
5405 N. CLARK STREET
CHICAGO, IL 60640

C IRS Center where corporation filed return
Cincinnati, OH  45999-0013

D ☐ Tax shelter registration number, if any ............
E ☐ Check if Form 8271 is attached

**Part II   Information About the Shareholder**

F Shareholder's identifying number
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

G Shareholder's name, address, city, state, and ZIP code
MARK VEHSLAGE
5405 N. CLARK STREET
CHICAGO, IL 60610

H Shareholder's percentage of stock
ownership for tax year ...................... 50.00000 %

F
O
R

I
R
S

U
S
E

O
N
L
Y

**Part III   Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items**

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) 0. | 13 | Credits & credit recapture |
| 2 | Net rental real estate income (loss) -28,934. | | |
| 3 | Other net rental income (loss) | | |
| 4 | Interest income 95. | | |
| 5a | Ordinary dividends | | |
| 5b | Qualified dividends | 14 | Foreign transactions |
| 6 | Royalties | | |
| 7 | Net short-term capital gain (loss) -79,500. | | |
| 8a | Net long-term capital gain (loss) | | |
| 8b | Collectibles (28%) gain (loss) | | |
| 8c | Unrecaptured section 1250 gain 184,187. | | |
| 9 | Net section 1231 gain (loss) 621,698. | | |
| 10 | Other income (loss) | 15 | Alternative minimum tax (AMT) items |
| 11 | Section 179 deduction | 16 | Items affecting shareholder basis |
| 12 | Other deductions | | |
| | | 17 | Other information |
| | | A | 95. |

*See attached schedule for additional information.

Schedule K-1 (Form 1120S) 2004

BAA For Privacy Act and Paperwork Reduction Act Notice, see Instructions for Form 1120S.

SPSA0412   12/09/04

**As Originally Filed**

MV 0041

Illinois Department of Revenue
# Form IL-1040-X
**Amended Individual Income Tax Return**  for tax year or fiscal year ending __12__/__2004__     REV 10

## Step 1: Personal information
**1** Print or type your current Social Security number(s), name(s), and address.

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
<sub>Your Social Security number</sub>

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
<sub>Spouse's Social Security number</sub>

MARK VEHSLAGE & HEATHER LENGYEL
<sub>Your first name and initial</sub>    <sub>Spouse's first name (and last name if different)</sub>     <sub>Your last name</sub>

2232 SANTA BARBARA
<sub>Mailing address</sub>

SANTA BARBARA, CA   93105
<sub>City</sub>          <sub>State</sub>     <sub>ZIP</sub>

**2** [X] If your Social Security number(s), name(s), or address listed above are different from those on your previously filed return, check the box.

**3** Filing Status: ☐ Single or head of household   [X] Married filing jointly   ☐ Married filing separately   ☐ Widowed

**4** Residency:   [X] Resident            ☐ Nonresident *       ☐ Part-year resident *      *Complete and attach Schedule NR.

**5** Check the box that identifies why you are making this change. **Attach a copy of your federal finalization. (See instructions.)
[X] **Federal change accepted on 03/21/08       ☐ **NOL accepted on __/__/__        ☐ State change
<sub>Month  Day  Year</sub>                                <sub>Month  Day  Year</sub>

## Step 2: Financial information
Line numbers below may not match line numbers on your original return.

| | | Column A<br>Most recent figures filed | | Column B<br>Corrected figures |
|---|---|---|---|---|
| Income | **1** Adjusted gross income or loss | 1 | 253,254. | 1 | 1,749,718. |
| | **2** Federally tax-exempt interest and dividend income | 2 | | 2 | |
| | **3** Other additions. See instructions. | 3 | | 3 | |
| | **4** Total Income - Add Lines 1 through 3. | | | 4 | 1,749,718. |
| Subtractions | **5** Federally taxed Social Security and federally taxed retirement plans | 5 | | 5 | |
| | **6** Military pay included in adjusted gross income, Line 1 | 6 | | 6 | |
| | **7** Illinois Income Tax refund included in U.S. 1040, Line 10 | 7 | | 7 | |
| | **8** U.S. Treasury bonds, bills, notes, U.S. agency interest | 8 | | 8 | |
| | **9** Other subtractions. See instructions. | 9 | | 9 | |
| | **10** Total subtractions - Add Lines 5 through 9. | 10 | | 10 | |
| | **11** Subtract Column B, Line 10 from Line 4. This is your base income. | | | 11 | 1,749,718. |
| Exemptions and Net Income | **12** Number of exemptions: **a** yourself and your dependents | a | 4 | a | 4 |
| | **b** 65 years of age or older or legally blind | b | | b | |
| | **Residents:** Write your exemption allowance from Form IL-1040, Line 12. | 12 | 8,000. | 12 | 8,000. |
| | **Nonresidents and part-year residents:** Go to Line 14. | | | 13 | 1,741,718. |
| | **13** Net income: Subtract Column B, Line 12, from Line 11. | | | | |
| Tax and Contributions | **14** Tax - Include recapture amount from Schedule 4255 if applicable.<br>**Residents:** Multiply Line 13 by the applicable rate. (See instructions.)<br>**Nonresidents and part-year residents:** IL base income from Schedule NR,<br>Step 5, Line 49: most recent_____ corrected_____<br>Write the tax amount from Schedule NR, Line 55. (attach a corrected schedule) | 14 | 7,358. | 14 | 52,252. |
| | **15** Total of all previous overpayments, refunds, or credit carryforward (whether<br>or not you received it), and original contributions. (See instructions) | | | 15 | |
| | **16** Add Column B, Lines 14 and 15. | | | 16 | 52,252. |
| Payments and Credits | **17** Illinois Income Tax withheld (See instructions.) | 17 | 107. | 17 | 107. |
| | **18** Estimated payments (IL-1040-ES, IL-505-I, and prior year credit) | 18 | | 18 | |
| | **19** Credit from Illinois Schedule CR (attach a corrected schedule) | 19 | | 19 | |
| | **20** Property tax credit - Complete a corrected PT Worksheet, and write Line 3<br>amount here ➧ **20a** _____ and Line 8 amount in Col. B. | 20b | | 20b | |
| | **21** Education expense credit - Complete a corrected Sch. ED or ED Worksheet,<br>and write Line 1 amount here ➧ **21a** _____ and Line 10<br>amount in Col. B. | 21b | | 21b | |
| | **22** Earned Income Credit - Complete a corrected EIC Worksheet, and write<br>Line 1 amount here ➧ **22a** _____ and your EIC credit<br>amount from the EIC Worksheet in Col. B.<br>Check if you have a qualifying child (See instructions) ☐ | 22b | | 22b | |
| | **23** Tax credits from Illinois Schedule 1299-C (attach a corrected schedule) | 23 | | 23 | |
| | **24** Previous payments. | | | 24 | 7,251. |
| | **25** Total payments and credits - Add Column B, Lines 17 through 24. | | | 25 | 7,358. |

449051
01-27-05   L-1040-X (R-12/04)  IO: 3021

MV 0042

Name MARK VEHSLAGE _____    Social Security no. 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 ___    For tax year 12 / 2004

## Step 2: Continued from Page 1

**Column B**
Corrected figures

| | | | |
|---|---|---|---|
| 25 | Write the amount from Page 1, Line 25. | 25 | 7,358. |
| 26 | If Line 16 is less than Line 25, subtract Line 16 from Line 25. This is your refund. | 26 | |
| 27 | If Line 16 is greater than Line 25, subtract Line 25 from Line 16. This is your tax due. | 27 | 44,894. |
| 28 | Penalty and interest (See instructions).        Penalty amount    +    Interest amount    = | 28 | |
| 29 | Add Lines 27 and 28. This is your total balance due. | 29 | 44,894. |

Official Use

## Step 3: Reason for filing (Everyone filing this return must complete this step.)

**STOP**    If you are changing your Illinois return due to a change to your federal return, do not file this form until you receive notification that the IRS has accepted the changes. Refer to "How long do I have to correct or amend my return?" on Page 1 of the Form IL-1040-X instructions.

30  For the tax year you are amending, on what date did you file your most recent Illinois Form IL-1040,
    Form IL-1040-X, electronically filed return, or TeleFiled return?      03 / 31 / 07
                                                                        Month  Day  Year

31  Did you file a U.S. Form 1040X?                                      [X] yes    [ ] no
    If you did file a U.S. Form 1040X, you must attach to this form:
    ▶ a copy of your U.S. Form 1040X, and
    ▶ a copy of the notification you received from the Internal Revenue Service (IRS) that they accepted the changes
      shown on your U.S. Form 1040X; e.g., a refund check, "Statement of Account," agreement, or judgment.
      You must write the date the IRS notified you (not the date you filed your U.S. 1040X) in the appropriate space
      in Step 1, Line 5. Failure to provide this date could result in an assessment of a late-payment penalty.

32  Are you filing this form because of a federal audit?                 [ ] yes    [X] no
    If "yes," be sure to write the date of finalization in the appropriate space in Step 1, Line 5, and attach copies
    of all federal audit reports. Failure to provide this date could result in assessment of a late-payment penalty.

33  Have you received notification that your return is under audit by the Illinois Department of Revenue?    [ ] yes    [X] no

34  Explain, in detail, the reason(s) for filing this amended return. Attach a separate sheet if necessary.
    SEE ATTACHED FEDERAL RETURN.

## Step 4: Sign and date

Under penalties of perjury, I state that I have examined this return, and, to the best of my knowledge, it is true, correct, and complete.

**Sign here**

Your signature _____    3/31/08    Daytime phone number    Your spouse's signature _____    3-31-08
                             Date                                                                      Date

Paid preparer's signature _____    03/18/08    847-374-0400    P00024633
                                         Date    Preparer's phone number    Preparer's FEIN, SSN, or PTIN

**Mail to: Illinois Department of Revenue, P.O. Box 19007, Springfield, IL 62794-9007**

This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. Failure to provide information could result in a penalty. This form has been approved by the Forms Management Center.    IL-492-C074

Page 2    RD _____    DX   PX   QX   XF   XY   NO    RA _____    X   J   F    DR _____    ID _____    IL-1040-X (R-12/04)
ID:3021

449052
12-13-04

MV 0043

Illinois Department of Revenue
## 2004 Form IL-1040
Individual Income Tax Return    or for fiscal year ending _____ /05

www.IL.tax.com

Do not write above this line.

### Step 1: Personal Information

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    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

MARK VEHSLAGE
HEATHER LENGYEL
2232 SANTA BARBARA
SANTA BARBARA, CA  93105

**C** Filing status (check one)
☐ Single or head of household  ☒ Married filing jointly  ☐ Married filing separately  ☐ Widowed

### Step 2: Income

| | | | |
|---|---|---|---|
| 1 | Federal adjusted gross income from your U.S. 1040, Line 36; U.S. 1040A, Line 21; U.S. 1040EZ, Line 4; or U.S. TeleFile Tax Record, Line I. | 1 | 1,749,718. |
| 2 | Federally tax-exempt interest and dividend income from your U.S. 1040 or 1040A, Line 8b; or U.S. 1040EZ. | 2 | |
| 3 | Other additions to your income. Attach Schedule M. | 3 | |
| 4 | Add Lines 1 through 3. This is your total income. | 4 | 1,749,718. |

*Complete Schedule M.*

### Step 3: Base Income

| | | | |
|---|---|---|---|
| 5 | Income received from Social Security benefits and certain retirement plans if included in Step 2, Line 1. Attach federal page 1, Form W-2, 1099-R. | 5 | |
| 6 | Military pay earned if included in Step 2, Line 1. Attach military W-2. | 6 | |
| 7 | Illinois Income Tax overpayment included in U.S. 1040, Line 10. | 7 | |
| 8 | U.S. Treasury bonds, bills, notes, savings bonds, and U.S. agency interest from U.S. 1040, Schedule B, or U.S. 1040A, Schedule 1. | 8 | |
| 9 | Other subtractions to your income. Attach Schedule M. Check if Line 9 includes any amount from Schedule 1299-C. ☐ | 9 | |
| 10 | Add Lines 5 through 9. This is the total of your subtractions. | 10 | |
| 11 | Subtract Line 10 from Line 4. This is your Illinois base income. | 11 | 1,749,718. |

*Complete Schedule M.*

*Staple W-2 and 1099 forms here*

### Step 4: Exemptions

*See instructions before completing this step.*

| | | | |
|---|---|---|---|
| 12 a | Number of exemptions from your federal return.  4  x $2,000 | a | 8,000. |
| b | If someone else claimed you or your spouse as a dependent on their return, see instructions to figure the number to write here. ___ x $2,000 | b | |
| c | Check if 65 or older: ☐ You + ☐ Spouse = ___ x $1,000 | c | |
| d | Check if legally blind: ☐ You + ☐ Spouse = ___ x $1,000 | d | |
| | Add Lines a through d. This is your total Illinois exemption allowance. | 12 | 8,000. |

### Step 5: Net Income

| | | | |
|---|---|---|---|
| 13 | Residents only: Subtract Line 12 from Line 11. This is your net income. *Skip Line 14.* | 13 | 1,741,718. |
| 14 | Nonresidents and part-year residents only: Check the box that applies to you during the year 2004. ☐ Nonresident  ☐ Part-year resident Illinois base income from Schedule NR. Attach Schedule NR. | 14 | |

*Staple your check*

### Step 6: Tax

| | | | |
|---|---|---|---|
| 15 | Residents: Multiply Line 13 by 3% (.03). Write the result here. This is your tax. Nonresidents and part-year residents: Write the tax from Schedule NR. This amount may not be less than zero. | 15 | 52,252. |

This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. Failure to provide information could result in a penalty. This form has been approved by the Forms Management Center. IL-492-0085

**As Amended**

IL-1040 page 1 (R-12/04)
ID: 3021

449001  12-08-04

MV 0044

**16** Tax amount from Page 1, Step 6, Line 15    **16** _52,252._

## Step 7: Payments and Credits

**17** Illinois Income Tax withheld. Attach W-2 and 1099 forms.    **17** _107._

**18** Estimated payments from Forms IL-505-I and IL-1040-ES, including overpayment applied from 2003 return    **18** _____

Nonresidents may not claim a credit on Lines 19, 20, or 21.

The total of Lines 19, 20b, and 21b may not exceed the tax amount on Line16.

**19** Income tax paid to another state while an Illinois resident. Attach Schedule CR and other states' returns.    **19** _____

**20** Illinois Property Tax credit. You must complete PT Worksheet in instructions.
PT Worksheet Line 3 amount   **20a** _____
PT Worksheet Line 8 amount   **20b** _____

**21** Education expenses credit. You must complete ED Worksheet in instructions or Schedule ED. Attach receipt or Schedule ED.
ED Worksheet or Schedule ED Line 1 amount   **21a** _____
ED Worksheet or Schedule ED Line 10 amount   **21b** _____

**22** Earned Income Credit. You must complete EIC Worksheet in instructions.
EIC Worksheet Line 1 amount   **22a** _____
EIC credit amount from the EIC Worksheet   **22b** _____
Check if you have a qualifying child (living with you) born after 12/31/86. ☐

**23** Income tax credit amount from Schedule 1299-C. Attach Schedule 1299-C   **23** _____

**24** Add Lines 17, 18, 19, 20b, 21b, 22b, and 23. This is the total of your payments and credits.    **24** _107._

## Step 8: Overpayment or Tax Due

**25** If Line 24 is greater than Line 16, subtract Line 16 from Line 24. This is your overpayment.    **25** _____

**26** If Line 16 is greater than Line 24, subtract Line 24 from Line 16. This is your tax due.    **26** _52,145._

## Step 9: Penalty

**27** Late-payment penalty for underpayment of estimated tax.    **27** _____
**a** Check if you annualized your income on Form IL-2210, Step 6, or if you are 65 or older and permanently living in a nursing home. Attach Form IL-2210. ☐
**b** Check if at least two-thirds of your federal gross income is from farming. ☐

## Step 10: Donations Any donation will reduce your refund or increase the amount you owe

**28** Amount you wish to donate to one or more of the following voluntary contribution funds
Wildlife Preservation **a** _____   Multiple Sclerosis **f** _____
Child Abuse Prevention **b** _____   Military Family Relief **g** _____
Alzheimer's Research **c** _____   Lou Gehrig's Disease **h** _____
Homeless Assistance **d** _____   Illinois Veterans' Home **i** _____
Breast Cancer Research **e** _____
Add Lines a through i. This is your donations total.   **28** _____

**29** Add Line 27 and Line 28. This is your total penalty and donations.    **29** _____

## Step 11: Refund or Amount You Owe

**30** If you have an overpayment on Line 25 and this amount is greater than Line 29, subtract Line 29 from Line 25.    **30** _____
**31** Amount from Line 30 that you want applied to 2005 estimated tax.    **31** _____
**32** Subtract Line 31 from Line 30. This is your refund.    **32** _____
**33** Complete to direct deposit your refund.
Routing number _____ ☐ Checking or ☐ Savings
Account number _____

**Direct Deposit**   See instructions for payment options

**34** If you have tax due on Line 26, add Lines 26 and 29. **or**
If you have an overpayment on Line 25 and this amount is less than Line 29, subtract Line 25 from Line 29. This is the amount you owe.    **34** _52,145._

## Step 12: Sign and Date

Under penalties of perjury, I state that I have examined this return and, to the best of my knowledge, it is true, correct, and complete.

Your signature _____ Date _03/17/08_ Daytime phone number _847-374-0400_ Your spouse's signature _____ Date _____

Paid preparer's signature _____ Date _____ Preparer's phone number _____ Preparer's FEIN, SSN, or PTIN _P00024633_

If no payment is enclosed, mail to: ILLINOIS DEPARTMENT OF REVENUE SPRINGFIELD IL 62719-0001

If payment enclosed, mail to: ILLINOIS DEPARTMENT OF REVENUE SPRINGFIELD IL 62726-0001

**As Amended**

449002 12-08-04 ID: 3321

IL-1040 page 2 (R-12/04)   DR_____ AP_____ CA ME NS PR RV WA WV ZZ ID_____

**MV 0045**

Illinois Department of Revenue
## 2004 Form IL-1040
### Individual Income Tax Return    or for fiscal year ending    2005

### Step 1:  Personal Information



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      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
MARK              VEHSLAGE
HEATHER           LENGYEL
5105 N. CLARK STREET
CHICAGO                IL   60640

**C** Filing status (check one)

☐ Single or head of household   ☒ Married filing jointly   ☐ Married filing separately   ☐ Widowed

### Step 2:  Income

| | | | |
|---|---|---|---|
| 1 | Federal adjusted gross income from your U.S. 1040, Line 35; U.S. 1040A, Line 21; U.S. 1040EZ, Line 4; or U.S. TeleFile Tax Record, Line I | 1 | 253,254. |
| 2 | Federally tax-exempt interest and dividend income from your 1040 or 1040A, Line 8b; or U.S. 1040EZ | 2 | |
| 3 | Other additions to your income. Attach Schedule M | 3 | |
| 4 | Add Lines 1 through 3. This is your income | 4 | 253,254. |

*New — Complete Schedule M.*

### Step 3:  Base Income

| | | | |
|---|---|---|---|
| 5 | Income received from Social Security benefits and certain retirement plans if included in Step 2, Line 1. Attach federal page 1, Form W-2, 1099-R | 5 | |
| 6 | Military pay earned if included in Step 2, Line 1. Attach military W-2 | 6 | |
| 7 | Illinois income tax overpayment included in U.S. 1040, Line 10 | 7 | |
| 8 | U.S. Treasury bonds, bills, notes, savings bonds, and U.S. agency interest from U.S. 1040, Schedule B, or U.S. 1040A, Schedule 1 | 8 | |
| 9 | Other subtractions to your income. Attach Schedule M Check if Line 9 includes any amount from Schedule 1299-C ☐ | 9 | |
| 10 | Add Lines 5 through 9. This is the total of your subtractions | 10 | |
| 11 | Subtract Line 10 from Line 4. This is your Illinois base income | 11 | 253,254. |

*New — Complete Schedule M.*

### Step 4:  Exemptions

*See instructions before completing this step.*

| | | | |
|---|---|---|---|
| 12a | Number of exemptions from your federal return ...... 4 X $2,000 | a | 8,000. |
| b | If someone else claimed you or your spouse as a dependent on their return, see instructions to figure the number to enter here ........... X $2,000 | b | |
| c | Check if 65 or older:  You +☐  Spouse =☐  X $1,000 | c | |
| d | Check if legally blind:  You +☐  Spouse =☐  X $1,000 | d | |
| | Add Lines a through d. This is your total Illinois exemption allowance | 12 | 8,000. |

### Step 5:  Net Income

| | | | |
|---|---|---|---|
| 13 | *Residents only:* Subtract Line 12 from Line 11. This is your net income. Skip Line 14 | 13 | 245,254. |
| 14 | *Nonresidents and part-year residents only:* Check the box that applies to you during the year 2004 ........ ☐ Nonresident  ☐ Part-year resident Illinois base income from Schedule NR. Attach Schedule NR .. | 14 | |

### Step 6:  Tax

| | | | |
|---|---|---|---|
| 15 | *Residents:* Multiply Line 13 by 3% (.03). Enter the result here. This is your tax. *Nonresidents and part-year residents only:* Enter the tax from Schedule NR. This amount may not be less than zero. | 15 | 7,358. |

This form is authorized as outlined by the Illinois Income Tax Act. Disclosure of this information is REQUIRED. Failure to provide information could result in a penalty. This form has been approved by the Forms Management Center. IL-492-0065

ILIA0112  12/10/04

As Originally Filed

MV 0046

MARK VEHSLAGE & HEATHER LENGYEL                                   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                    Page 2

| | 16 | Tax amount from Page 1, Step 6, Line 15 | 16 | 7,358. |
|---|---|---|---|---|

## Step 7: Payments and Credits

| | | | | |
|---|---|---|---|---|
| | 17 | Illinois Income Tax withheld. Attach W-2 and 1099 forms | 17 | 107. |
| | 18 | Estimated payments from Forms IL-505-I and IL-1040-ES including any overpayment applied from 2003 return | 18 | |
| Nonresidents may not claim a credit on Lines 19, 20, or 21. | 19 | Income tax paid to another state while an Illinois resident. Attach Schedule CR and other states' returns. | 19 | |
| | 20 | Illinois Property Tax credit. You must complete the PT Worksheet in instructions. | | |
| | | PT Worksheet Line 3 amount ......... 20 a | | |
| The total of Lines 19, 20b, and 21b may not exceed the tax amount on Line 16. | | PT Worksheet Line 8 amount .................. | 20 b | |
| | 21 | Education expense credit. You must complete ED Worksheet in instructions or Schedule ED. Attach receipt or Schedule ED. | | |
| | | ED Worksheet or Schedule ED Line 1 amount .................. 21 a | | |
| | | ED Worksheet or Schedule ED Line 10 amount .................. | 21 b | |
| | 22 | Earned Income Credit. You must complete EIC Worksheet in instructions. | | |
| | | EIC Worksheet Line 1 amount ......... 22 a | | |
| | | EIC credit amount from the EIC worksheet .................. | 22 b | |
| | | Check if you have a qualifying child (living with you) born after 12/31/86 .... ☐ | | |
| | 23 | Income tax credit amount from Schedule 1299-C. Attach Schedule 1299-C..... | 23 | |
| | 24 | Add Lines 17, 18, 19, 20b, 21b, 22b, and 23. This is the total of your payments and credits | 24 | 107. |

## Step 8: Overpayment or Tax Due

| | | | | |
|---|---|---|---|---|
| | 25 | If Line 24 is greater than Line 16, subtract Line 16 from Line 24. This is your overpayment | 25 | |
| | 26 | If Line 16 is greater than Line 24, subtract Line 24 from Line 16. This is your tax due | 26 | 7,251. |

## Step 9: Penalty

| | | | |
|---|---|---|---|
| | 27 | Late-payment penalty for underpayment of estimated tax | 27 |
| | a | Check if you annualized your income on Form IL-2210, Step 6, or if you are 65 or older and permanently living in a nursing home. Attach Form IL-2210 | ☐ |
| | b | Check if at least two-thirds of your federal gross income is from farming | ☐ |
| | 28 | *Any donation will reduce your refund or increase the amount you owe* | |

## Step 10: Donations

28 Amount you wish to donate to one or more of the following voluntary contribution funds.

| | | | | |
|---|---|---|---|---|
| Wildlife Preservation ........ a | | Multiple Sclerosis ......... f | |
| Child Abuse Prevention ...... b | | Military Family Relief ...... g | |
| Alzheimer's Research ....... c | | Lou Gehrig's Disease .... h | |
| Homeless Assistance ...... d | | Illinois Veterans' Home .... i | |
| Breast Cancer Research ..... e | | | |

| | | | | |
|---|---|---|---|---|
| | | Add Lines a through i. This is your donations total .................. | 28 | |
| | 29 | Add Line 27 and Line 28. This is your total penalty and donations | 29 | |

## Step 11: Refund or Amount You Owe

| | | | | |
|---|---|---|---|---|
| | 30 | If you have an overpayment on Line 25 and this amount is greater than Line 29, subtract Line 29 from Line 25 | 30 | |
| | 31 | Amount from Line 30 that you want applied to your 2005 estimated tax | 31 | |
| *Direct Deposit* ▶ | 32 | Subtract Line 31 from Line 30. This is your refund | 32 | |
| | 33 | Complete to direct deposit your refund | | |
| | | Routing number _____ | | |
| | | Account number _____   ☐ Checking or ☐ Savings | | |
| See instructions for payment options. | 34 | If you have tax due on Line 26, add Lines 26 and 29, or if you have an overpayment on Line 25 and this amount is less than Line 29, subtract Line 25 from Line 29. This is the amount you owe | 34 | |

## Step 12: Sign and Date

Under penalties of perjury, I state that I have examined this return and, to the best of my knowledge, it is true, correct, and complete.

| Your signature | Date | Daytime phone number | Your spouse's signature | Date |
|---|---|---|---|---|
| | | (773) 334-3800 | P00144037 | |
| Paid preparer's signature | Date | Preparer's phone number | Preparer's FEIN, SSN, or PTIN | |

| | | |
|---|---|---|
| If no payment enclosed, mail to: | ILLINOIS DEPARTMENT OF REVENUE SPRINGFIELD, IL 62719-0001 | If payment enclosed, mail to: |
| | | ILLINOIS DEPARTMENT OF REVENUE SPRINGFIELD, IL 62726-0001 |

| DR | AP | | CA | ME | NS | PR | RV | WA | WV | |
|---|---|---|---|---|---|---|---|---|---|---|

ILIA0112  12/10/04

**As Originally Filed**

MV 0047

# Exhibit
# P

### Form 8275 Disclosure Statement

**Richard Schripsema, 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**
**Mark Vehslage, 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**
**Lakewood Properties, Ltd., 36-4163366**

The above identified taxpayers (individually, a "Taxpayer" or collectively, the "Taxpayers") submit this disclosure schedule as part of their respective amended income tax returns for 2004. The amendments reflect each of the Taxpayers' allocable shares of amounts received during 2004 from Beta Asset Management ("Beta"), an investment firm or fund that the Taxpayers understand is owned or controlled by Mr. Brad A. Weaver, a registered securities broker ("Weaver"). The Taxpayers understand that Weaver and Beta perpetrated a "Ponzi Scheme" and that Weaver currently is in federal custody, having pled guilty to a criminal indictment, and having been sentenced to a term of 12 years. The Securities and Exchange Commission brought a civil action against Weaver and Beta. James L. Kopecky was appointed as the receiver for Weaver and Beta. As described below, the tax consequences of the Taxpayers' dealings with Beta and Weaver since 2003 are by no means clear.

The Taxpayers first met Weaver in 2003. Weaver described to the Taxpayers an opportunity to invest in "busted trades" of which Weaver became aware in his capacity as a branch manager with Raymond James Financial Services, Inc. Weaver planned to offer this and other investment opportunities through Beta Capital Partners, L.P., a hedge fund that he planned to organize. In this regard, Weaver provided the Taxpayers with offering materials dated May 1, 2004 and subscription agreements for the hedge fund.

MV 0013

During 2003 and 2004, Mark Vehslage ("Mark") and Richard Schripsema ("Rich") each owned 50% of the outstanding shares of Lakewood Properties, Ltd., an S corporation that owned rental properties in Chicago, Illinois. During 2003 and 2004, the Taxpayers made a series of investments with Beta[1] and also received a series of payments.

Because it was apparently not Beta's or Weaver's business practice to provide regular account statements, the Taxpayers have a limited, incomplete set of account statements initially purporting to come from Raymond James Financial Services Inc. and later purporting to come from "Beta Asset Management." From the account statements actually received, it is unclear whether any of the Taxpayers' funds were ever treated by Weaver as being contributed to the Beta Capital Partners, L.P. hedge fund.

At no time were the Taxpayers provided with a Schedule K-1, Form 1099 or other formal or informal notification of the income tax consequences of the amounts received from Beta. As a result, none of these amounts received from Beta were included in the original 2003 or 2004 Forms 1040 filed by the Taxpayers. Those returns were prepared by Jon E. Withey, a CPA who had prepared the Taxpayers' returns for many years.

In 2004, Lakewood converted rental properties that it had held for several years to condominiums. The project was financed with construction loans by Citibank. Citibank advised Lakewood that Citibank would not partially release mortgage liens on individual units until the entire principal balance of its loans of $2,549,133 was paid in full. The Taxpayers discussed this situation with their counsel, who advised them to pay off the Citibank construction loan. The

---

[1]    For the remainder of this disclosure statement, "Beta" is used to refer collectively to Weaver, Beta Asset Management and Beta Capital Partners, L. P., the hedge fund.

2

Case 1:07-cv-02600

Taxpayers then contacted Weaver, who agreed to have Beta transfer $2.6 million to an account at Chicago Title and Trust for the benefit of Lakewood on June 04, 2004. The funds allowed Lakewood to retire the Citibank construction loan. Shortly thereafter, on June 16, 2004, Mark returned $500,000 to Beta. The $2.6 million transfer by Beta in favor of Lakewood was not documented by Beta or Lakewood. This lack of documentation regarding the payment, along with the lack of any tax reporting information from Beta as noted previously, makes it very difficult to determine the appropriate income tax consequences to the Taxpayers. The failure to document the transaction is consistent with Beta's failure to provide tax reporting information to the Taxpayers. As discussed below, after Weaver's scheme was uncovered, the possibility that the funds would have to be returned in whole or in part further made it difficult for the Taxpayers to determine the appropriate income tax consequences of the $2.6 million transfer.

Unfortunately, after the $2.6 million payment was made by Beta, the Taxpayers found it increasingly more difficult to communicate with Weaver and many of their attempts to contact Weaver went unanswered. In December of 2004, the Taxpayers learned that Weaver and Beta were under investigation by federal authorities and that further information would not likely be forthcoming. This lack of information left the Taxpayers to speculate about how to report the various transactions with Beta, and whether the funds would be required to be returned in whole or in part. In light of the extraordinary facts and the lack of any tax reporting from Beta, the Taxpayers did not reflect the transactions with Beta on their 2003 or 2004 income tax returns. The individual Taxpayers, Mark and Rich, already have filed amended 2003 returns making protective claims for losses (since as of 12/31/03, the amounts invested with Beta had exceeded the amounts returned to them by Beta). The individual Taxpayers, Mark and Rich, also have previously filed amended returns for 2004 which, in a separate disclosure statement, discussed

MV 0015

various ways to report the net proceeds received by the Taxpayers from Beta and ultimately elected to report $2.6 million of such monies so received as income in the year in which settlement is reached with the receiver.

The Taxpayers now believe that the presentation on their respective revised amended returns for 2004 as ordinary income is the most conservative treatment of the amounts in question.

No payments have been made with the amended returns for Mark and Rich.[2] There are two reasons for this. First, the Taxpayers are unclear about the correct income tax consequences of these transactions, particularly if the allegations against Weaver are true and there were no trading profits.

Second, in March of this year, the Taxpayers were first notified by the receiver for Beta that the receiver was analyzing their investments with, and distributions from, Beta. The receiver currently is trying to recover the funds paid by Beta to the Taxpayers. Through their counsel, the Taxpayers have attempted to reach an equitable agreement with the receiver. They have yet to do so in large part because of the uncertainty of the amount of income taxes ultimately payable as a result of Lakewood's transactions with Beta. The Taxpayers do not have sufficient funds to both pay the additional taxes reflected on their amended 2004 returns and to repay the amounts demanded by the receiver. The Taxpayers look forward to discussing their situation with the appropriate representatives of the IRS as soon as possible so as to reach a global resolution of these matters.

---

[2] Since Lakewood was an S corporation, it has no federal income tax liability. Instead, its income is reflected I equal shares on the returns of Mark and Rich.

4

# Exhibit Q

JON E. WITHEY, APRIL 21, 2008

1             IN THE UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF ILLINOIS

3                   EASTERN DIVISION

4

5   JAMES L. KOPECKY, RECEIVER FOR    )

6   BRAD A. WEAVER AND BETA ASSET     )

7   MANAGEMENT, INC.,                 )

8              Plaintiffs,            )

9   vs.                               )No. 07 C 2862

10  LAKEWOOD PROPERTIES, LTD.,        )Judge Rebecca R. Pallmeyer

11             Defendant.             )

12

13            The deposition of JON E. WITHEY, called

14  for examination, taken pursuant to the Federal Rules of

15  Civil Procedure of the United States District Courts

16  pertaining to the taking of depositions, taken before

17  MARILYN T. LaPORTE, a Notary Public within and for the

18  County of Cook, State of Illinois, and a Certified

19  Shorthand Reporter of said state, at Suite 1700,

20  Conference Room 18B, 131 South Dearborn Street, Chicago,

21  Illinois, on the 21st day of April, A.D. 2008, at 9:36

22  a.m.

23

24

JON E. WITHEY, APRIL 21, 2008

Page 27

1    questions.

2          From 1997 until today, to the best of your

3    knowledge, besides Mr. Schripsema and Mr. Vehslage, was

4    anyone else involved or was a partner in LakeWood?

5        A.    No, sir.

6        Q.    So when you were introduced to LakeWood

7    Properties in approximately 1997, what was your role

8    with LakeWood?  What were you being asked to do?

9        A.    Well, corporations are separate legal

10   entities.  The owners are requiring tax filings, and I

11   became their tax man.

12       Q.    And to do the tax filings for LakeWood; is

13   that correct?

14       A.    Yes.

15       Q.    And how were you paid?  Was it a fixed fee?

16   Hourly fee?

17       A.    It would have been basically a fixed fee

18   based upon my minimum at the time, plus the individual

19   idiosyncracies of the information I was given, and the

20   detailed work involved.

21       Q.    What was your understanding with LakeWood

22   Properties?  What their business was?

23       A.    To purchase and rent real estate.

24   Residential.

JON E. WITHEY, APRIL 21, 2008

Page 31

1       Q.   And without getting into any particulars, in

2  general, for other corporate clients, do you serve as a

3  registered agent for other corporate clients also?

4       A.   I do.

5       Q.   Do you charge any particular fee for doing

6  that?

7       A.   I do not.

8       Q.   So this one I'm just going to ask generally,

9  and then we'll go through some more specific returns

10  that you provided us.

11      A.   Okay.

12      Q.   What documents did you receive from

13  LakeWood, in general, to help you prepare the income tax

14  returns?  Federal and state?

15      A.   You mean in general, or in specific years?

16      Q.   In general.

17      A.   Well, I found that Mr. Vehslage was fairly

18  astute about numbers, and finances, and things like

19  that.

20          So he would prepare -- I'm quite certain it

21  was him, but it might have been Mr. Schripsema.

22          I think Mr. Vehslage put together the

23  summaries annually of the rental activity, rents

24  collected, expenses paid, et cetera, which I found to be

JON E. WITHEY, APRIL 21, 2008

Page 74

1    second.

2              You said that that included all the Citi

3    accounts.  That includes the bank account as well as the

4    brokerage account?

5         A.    Yes.  I believe so.

6         Q.    And does Line 1, the Cash, does that include

7    any other investment besides what's in the Citi account?

8         A.    No.

9         Q.    Or in the bank account?

10        A.    I don't believe so.  No.

11        Q.    Looking at -- do you have any recollection

12   that there was any investment during the 2003 time

13   period being reflected in the Brad -- I'm going to call

14   it the Brad investment.

15             Either in the beginning number or the ending

16   number of 2003?

17        A.    Well, this predates that.  So I --

18   absolutely, no.

19        Q.    Did you receive any information from

20   Mr. Vehslage or Mr. Schripsema that LakeWood had

21   invested in Brad so that could be reflected in the

22   beginning or the ending cash?

23        A.    No, sir.

24        Q.    So it was your understanding that there was

JON E. WITHEY, APRIL 21, 2008

Page 75

1    no investment in Brad in 2003 that you had to document?

2        A.    Yes.

3        Q.    And if you had received that there was an

4    investment beyond Citibank, would that be reflected here

5    somewhere on a tax return?

6        A.    Yes.  It should be.

7        Q.    And where would that be reflected?

8        A.    It depends on what the investment would be,

9    you know.

10            If it were a cash account, it would go in

11    cash.  If it were securities, or other kinds of

12    investments, there is a separate line item for --

13    sometimes Other current assets, or Line 9, Other

14    investments.  It would be either one of those two.

15        Q.    So here, the 201,388, which is under Current

16    assets, you already specified that was on Page 375, and

17    that does add up to -- that was all the condo expenses?

18        A.    That's correct.

19        Q.    And there is no other assets in terms of

20    Line 14.  That's what you're referencing?

21        A.    No.  I was saying Line -- either it would go

22    on Line 6, Other current assets.  We know what that is,

23    or Line 9, Other investments.

24        Q.    So there's nothing there under investments?

JON E. WITHEY, APRIL 21, 2008

Page 112

1      Q.    And that number, that approximately 1.243

2    million from 316, that's reflected also in Schedule M-2

3    on Line 3?

4      A.    Yes, it is.

5      Q.    In Line 7, in terms of distributions, I'm

6    still back on Page 313, Schedule M-2, it says "zero."

7           So there were no distributions made to

8    either Mr. Schripsema or Mr. Vehslage?

9      A.    I don't know.  That's just -- you know,

10   that's my plug-in number.  The pluses and minuses

11   between the shareholder and the corporation.

12          That's a difficult number to ascertain with

13   small corporations.  You know, most small entities,

14   small businesses with one owner primarily, and sometimes

15   two or three owners.

16          You know, the company is their personal

17   checkbook and vice versa, and there's a whole lot of

18   intermingle between how I handle my personal finances,

19   and how I handle my corporate finances.

20     Q.    So unless Mr. Vehslage and Mr. Schripsema

21   specifically told you that they had taken money out of

22   the corporation, you wouldn't know?

23     A.    That's correct.  But what I would know is if

24   I identify all the assets, and identify all the true

Page 117

1     A.    Yes, absolutely.

2     Q.    Is there anywhere reflected on the 2004

3 returns any income, or gain, or dividend, or profit

4 related to any investment made by LakeWood in this

5 Brad Weaver investment?

6     A.    No.

7     Q.    Were you provided any information, orally or

8 in writing, for Mr. Vehslage or Mr. Schripsema about any

9 investment made in Brad Weaver or Beta Asset Management

10 during 2004 that needed to be recorded?

11     A.    No.

12     Q.    Did they ask you any advice during this time

13 period in preparation of the 2004 returns whether any

14 gains, profits, dividends, interest resulting from

15 Brad Weaver or Beta Asset Management needed to be

16 declared on the LakeWood returns?

17     A.    No.

18     Q.    If they had provided you with information

19 that there was some gain associated with any other

20 investment program, would it have been your practice to

21 put it on the LakeWood return?

22     A.    Yes.

23     Q.    Is LakeWood allowed to pay taxes?

24     A.    State only.  It's an S-corporation for tax

JON E. WITHEY, APRIL 21, 2008

Page 133

1        A.    Maybe before.  I might surprise you.  Do you

2   need a copy on that, Mr. Geekie?

3        MR. GEEKIE:  I'll get it from Pravin.

4        MR. RAO:  Yes.  Anything I get from you, I'll send

5   it to him.

6        THE WITNESS:  Okay.

7   BY MR. RAO:

8        Q.    Let me go back to the 2005 return.  We'll

9   sidetrack.

10             Now, 262 through 266, JW 266.  What are

11   those documents?

12        A.    That is my trial balance on the corporation

13   for this year.

14             I did a little more formalized analysis just

15   because we had so much going on with the sale with the

16   sold and the unsold units.

17             I wanted to do it in a -- basically I wanted

18   to do this in a format that I could follow year over

19   year because there were -- it was a continuation

20   situation.

21        Q.    And Page 267, what does that relate to?

22        A.    This is one of the closing statements on the

23   three units that were sold in '05.

24        Q.    So 267, 268 through 278?

JON E. WITHEY, APRIL 21, 2008

Page 134

1      A.    Yes.

2      Q.    267 through 278 -- those are the three units

3    that were sold in 2005?

4      A.    That's correct.

5      Q.    Then 279.  What is that?

6      A.    This would be this Citibank investment

7    account that they had for a series of years.

8      Q.    There's some handwriting there, some numbers

9    circled on 279, and the word final is written there.

10          Is that your handwriting?

11     A.    It is not mine, no.

12     Q.    Do you know what that relates to?

13     A.    I do not know.

14     Q.    Do you recognize the handwriting?

15     A.    No.

16     Q.    Is there any discussion about this being the

17    final statement for Citibank?

18     A.    There would be a logic to assuming that.

19    What's the date on this?

20          Since there's an ending balance, $4,676 in

21    the account, it may not have been the final.

22     Q.    And then on Page 280, there's a fax cover

23    sheet.

24          Is this the fax cover sheet that was

JON E. WITHEY, APRIL 21, 2008

Page 150

1       A.      Right.

2       Q.      Brad Weaver or Beta Asset Management?

3       A.      Did I have any discussions?

4       Q.      Yes.

5       A.      No.

6       Q.      Now, did you ever have any discussion

7   with Mr. Vehslage or Mr. Schripsema that they had

8   received anything?  Any return on any investments with

9   Brad Weaver?

10      A.      No.

11      Q.      Did you have any conversations with either

12  Mr. Vehslage or Mr. Schripsema that LakeWood had

13  received anything from Beta Asset Management in terms of

14  return on investment?

15      A.      No.

16      Q.      Did you ever have a discussion that funds

17  from Beta Asset Management or Brad Weaver were used to

18  payoff the mortgages on the three properties we talked

19  about?  Those two mortgages?

20      A.      I did not.

21      Q.      Did they need -- did LakeWood need an

22  infusion of those funds from -- whether it's from Beta

23  Asset, or Brad Weaver, or any source, in order to payoff

24  those mortgages based on your understanding of the

Page 156

1    actually happened at the closing.

2    BY MR. RAO:

3         Q.    You can still answer the question.

4         A.    I have nothing to offer.

5         Q.    Did you have a -- my question is:  He can

6    object, but you can still answer it.

7         A.    I have no specific knowledge whether they

8    would all -- I knew what the plan was to close them all

9    on June 1.

10              I expect if I look through here, I -- you

11    know, to refresh my memory, I would find that happened,

12    but I don't know what specifically it did.

13        Q.    So let's look through that.  I won't point

14    to every page, but look at Page 25, the first property

15    there.

16              It's the property 859, Unit 1.  That closed

17    on June 1st, 2004?

18        A.    Right.

19        Q.    And I'm looking at the lower right-hand

20    corner at the date there.

21              Was this one of the properties that was

22    being sold?

23        A.    Yes.

24        Q.    As part of the six?

JON E. WITHEY,  APRIL 21, 2008

Page 157

1      A.     Yes.

2      Q.     Then looking at JW 40, this is for 859 North

3   LaSalle, Unit 2.

4             It looks like it closed on June 30th,

5   settlement date.

6      A.     Yes, it did.

7      Q.     Was this also one of the properties?

8      A.     I --

9      Q.     If you know.  Do you know?

10     A.     I don't know.  My guess is not -- you mean

11  one of the six?

12     Q.     Yeah.  One of the six.

13     A.     I don't think they were going to get clear

14  title, you know, closing 30 days apart, but I'm

15  guessing.

16     Q.     Looking at No. 62, this is Unit No. 859,

17  Unit 3 with a closing of 4-15-05.

18     A.     Right.

19     Q.     This is not one of those six properties?

20     A.     This is in '05.  This is the next year sale.

21     Q.     Then the next page is Page 93?

22     A.     Right.

23     Q.     This is 857, Unit G.  This has a closing of

24  6-1-04.

JON E. WITHEY, APRIL 21, 2008

Page 158

1       A.    No.  I think you missed one.  What page are

2   you on?

3       Q.    I'm sorry.  Which one did I miss?

4       A.    What page you on?

5       Q.    I was on 93.  Which one --

6       A.    It's 78.

7       Q.    Oh, I did miss that one.  You're right.  I'm

8   sorry.  I did miss that one.

9             That's 859, Unit 4, and that's Page 78.

10  That has a closing of?

11      A.    June 1.

12      Q.    That's one of the six?

13      A.    Yeah.  It seems to be.

14      Q.    Then Page 93.  That's 857, Unit G.  Is that

15  one of the six?

16      A.    Yeah.  June 1.  And 112.

17      Q.    Then 112.  That's 857, Unit 1.  That says

18  "June 14th"?

19      A.    June 14th.  So I assume it's not part of the

20  six.

21      Q.    And 857 -- I'm sorry.  The next page would

22  be 134?

23      A.    No, 128.

24      Q.    Oh, 128?

Page 159

1     A.     On the HUD-1.

2     Q.     Sorry.  On the HUD-1, 128.  That's 857, Unit

3  2, and that says "June 1"?

4     A.     Right.  133.

5     Q.     And 133?

6     A.     That's 2005.

7     Q.     So that's not one of 'em.  Then the next

8  one -- now, it's Page 133 for 857, Unit 3.  I believe

9  it's Page 158.

10     A.     I missed that one.  Right.

11     Q.     So that says "June 1st."  So that's one of

12  the six?

13     A.     Right.

14     Q.     Then, I think, the final one I have is

15  JW 179.  That has February 28, 2005?

16     A.     Right.

17     Q.     So that's not one of the ones?

18     A.     Right.  No, it's not.  Did we miss some?

19     Q.     Yeah.  I mean, it looks like we have --

20     A.     Which ones did you not check off there?

21     Q.     I have 859-1.

22     A.     Well, I think they're in order here.  That

23  should be the first one.  Maybe it started beyond that

24  one.  859-G.

JON E. WITHEY, APRIL 21, 2008

Page 160

1     Q.     859-G is the very first one?

2     A.     Yeah.  That's an October 2004 sale.

3     Q.     Yeah.  I skipped that one as a result.

4     A.     You did note that, right?

5     Q.     Yeah.

6     A.     What other ones don't you have then?

7     Q.     I think we went through all the other ones.

8     A.     We were looking for all the June 1's.  I get

9     it as 859-1.

10    Q.     You're writing on the exhibit.

11    A.     That's okay.  It's mine I thought.

12    Q.     No.

13    A.     I apologize.

14    Q.     I'll give you a sheet of paper, if you want

15    to keep track of it.

16           You know what?  I'm actually keeping track

17    of it.  Let me do that.  Let me just do that.  I'll keep

18    track of it.

19    A.     Okay.  Well, here.  859-1 is a June 1 sale.

20    Q.     Yeah.

21    A.     Then 859-2, is June 30th.  That doesn't

22    count.  You're just looking for the six, right?

23    Q.     Yes.

24    A.     859-3 is April of '05.

JON E. WITHEY, APRIL 21, 2008

1      Q.    Yeah.  That doesn't count.

2      A.    That doesn't count.  859-4 we did.  I

3  remember that's a June 1.  That's two, right?

4      Q.    Yes.

5      A.    857-G is a June 1.

6      Q.    Yes.

7      A.    That's three.  857-1 is June 14th.  So I

8  assume that doesn't go into the mix.  857, Unit 2, is a

9  June 1.  All right?

10     Q.    Okay.

11     A.    857-3 is 2005.  855, Unit 1, is a June 1.

12  How many is that?

13     Q.    That's five.

14     A.    Okay.  I think I remember an 85505 sale.

15     Q.    85502.

16     A.    Yeah.  But I don't what it said, you know,

17  but it's a June -- it's a February '05.

18     Q.    That's all I had.  You mentioned six.  So

19  are we missing a closing?

20     A.    Maybe the June -- you know, it's a matter of

21  the numbers, though.

22           Did they get enough cash?  So what is the

23  cash?

24           Do you know which ones we're looking for

Page 164

1           MR. RAO:  I am reading it to him.

2           MR. GEEKIE:  I haven't heard any foundation yet

3    that he can answer any questions about this document.

4           MR. RAO:  Yeah.  I'm going to ask him.

5           MR. GEEKIE:  Okay.

6    BY MR. RAO:

7           Q.    That's what I read from here Mr. Withey,

8    the -- what appears to be the amount of the wire.

9           A.    Right.

10          Q.    That number, approximately $2.6 million, did

11   you have an understanding in the June time period that

12   there was any inflows or outflows of funds to LakeWood

13   involving $2.6 million?

14          A.    I did not.

15          Q.    Were you aware of approximately 2.6, $2.7

16   million coming from Beta Asset Management to LakeWood in

17   the June 2004 time period?

18          A.    I was not.

19          Q.    Any time in 2004, did you have an

20   understanding that that much came to LakeWood, or was

21   sent to LakeWood?

22          A.    I do not.

23          Q.    Is there -- did you have any discussion with

24   either Mr. Vehslage or Mr. Schripsema that two $2.7

JON E. WITHEY, APRIL 21, 2008

Page 166

1    kind of treatment, but what it was I don't know.

2         Q.    Would it be reflected in -- forget about the

3    prepared tax returns.

4              There's a lot of notes, and a lot of trial

5    balances, and calculations you do in your handwriting.

6              Is that something you would have written

7    down as part of your calculations in preparing the tax

8    returns?

9         A.    Is what something I would have written down?

10        Q.    If there was a 2.6 or $2.7 million inflow or

11   outflow.

12        A.    Yes, sir.

13        Q.    For a company of LakeWood's size, and based

14   on your history with them since 1997, is that a

15   significant amount of money, either as an asset, or a

16   liability, or an income, or a loss?

17        MR. GEEKIE:  Objection.  Form, foundation, vague,

18   and ambiguous.  It calls for speculation.

19   BY MR. RAO:

20        Q.    Go ahead.

21        A.    Yes.  It's a significant amount of money.

22        Q.    Now, when you meet with Mr. Schripsema and

23   Mr. Vehslage, and after they provide you with the

24   documents, is there any sort of questionnaire or any

JON E. WITHEY, APRIL 21, 2008

Page 170

1        Q.    Oh, in 2005.   And were the -- what was the

2    issue with them not being able to close on that

3    property?

4        A.    They could not get the funding.

5        Q.    And why is it they were telling you?   What

6    was the context in which they were telling you about

7    this?  Not getting the funding for the property?

8        A.    Well, it's what happens for tax purposes

9    when we have to back out of a deal and lose our deposit.

10       Q.    How much was the deposit?

11       A.    $159,000.

12       Q.    What sort of property was it?

13       A.    That I don't even know.

14       Q.    Where in California?

15       A.    I don't know.

16       Q.    Did you know the value of the property in

17   question?

18       A.    I do not.

19       Q.    And the 159,000 was a -- I'm sorry.  Did you

20   say that it was a security deposit?

21       A.    It was earnest money.

22       Q.    Earnest money?

23       A.    Earnest money.  It was 2004, by the way.

24       Q.    In 2004?

Page 171

1      A.    Yeah.

2      Q.    And what is it that you're reading that's

3  kind of giving you -- refreshing your recollection?  I

4  notice you're going through --

5      A.    It's the escrow loss on the California deal.

6  The 2004 Schedule D, Page 314.

7      Q.    So that was investment property that you're

8  talking about.

9            We're talking July 30th, and then has the

10  Date acquired, and then it says "Date sold, December

11  28th."

12           I'm looking at JW 314.  So what does that

13  mean?

14     A.    My recollection of this is that on July 30th

15  they put a deposit on the property.

16           At the end of the year, they worked out an

17  agreement with the seller to void the contract.

18     Q.    And they lost the 159,000?

19     A.    That's correct.

20     Q.    And do you know where they got the 159,000?

21     A.    No.

22     Q.    Was there a discussion why they were moving

23  from investment property in Illinois to California; do

24  you know?